IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware corporation | : : : | C.A. No. |
| | : | TRIAL BY JURY |
| Plaintiffs, | : : | OF TWELVE DEMANDED |
| v. | : : | |
| GLES, INC., a Delaware corporation, d/b/a SWEET OIL COMPANY, | : : : | |
| Defendant/Third-Party Plaintiff | : : | |
| v. | : : | |
| Sunoco, Inc. | : : | |
| Third-Party Defendant | : : | |

## NOTICE OF REMOVAL

Defendant/Third-Party Plaintiff, GLeS, Inc., d/b/a Sweet Oil Company, by and

through its undersigned counsel, hereby gives notice that this matter has been removed, pursuant

to 28 U.S.C. § 1441, to the United States District Court for the District of Delaware.  The

grounds for removal are as follows:

1.      Plaintiffs, BCG, Inc., and Chesapeake Products & Services, Inc.

("Plaintiffs"), commenced this action, entitled *BCG, Inc. and Chesapeake Products & Services,*

*Inc. v. GLES, Inc., d/b/a Sweet Oil Company,* No. 06C-10-024, in the Superior Court of the State

of Delaware in and for Kent County.  The complaint was filed on or about October 19, 2006.  A

copy is attached as Exhibit "A".

2.    In the original complaint, Plaintiffs alleged claims for breach of contract, declaratory judgment, tortious interference with contract, bad faith, and violation of a Delaware Franchise Security Law.  There were no federal claims asserted.

3.    On or about December 18, 2006, GLeS filed an answer and a counterclaim for declaratory relief and indemnification. A copy is attached as Exhibit "B".

4.    On or about January 3, 2007, GLeS filed a third-party complaint against Sunoco, Inc. for declaratory relief and filed an interpleader action.  A copy is attached as Exhibit "C".

5.    On or about March 27, 2007, the Plaintiffs amended their original complaint to add claims against GLeS pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq.   A copy is attached as Exhibit "D".

6.    No further proceedings in this matter have occurred since March 27, 2007.

7.    By filing of the amended complaint, this action now includes federal claims under the Petroleum Marketing Practices Act, conferring original jurisdiction upon this Court.

8.    To the extent the Plaintiffs are asserting any claims under state law, this Court has supplemental jurisdiction over said claims pursuant to 28 U.S.C. § 1367.

9.    This Notice of Removal is being filed within thirty (30) days of the Defendant's receipt of the Plaintiffs' amended complaint and is hereby timely filed under 28 U.S.C. § 1446(b).

10.    Defendant/Third-Party Plaintiff, GLeS, has filed a true and correct copy of the Notice of Removal with the Superior Court of the State of Delaware in and for Kent County. A copy of the Notice is attached as Exhibit "E".

DB02:5892871.1                                                                                                                                054769.1031

WHEREFORE, Defendant, GLeS, Inc., d/b/a Sweet Oil Company, respectfully requests that this action, now pending against it in the Superior Court of the State of Delaware in and for Kent County, be removed therefrom to this Court and that this action be placed on the docket of this Court for further proceedings as though this action originally had been instituted in this Court.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
(302) 576-3442 (fax)

Attorneys for Defendant GLeS, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Of Counsel:

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

Dated: April 19, 2007

### CERTIFICATE OF SERVICE

I, Seth J. Reidenberg, Esquire, hereby certify that the foregoing Notice of Filing

Notice of Removal, along with related attachments, and this certificate of service, was served on

April 19, 2007, by hand delivery on the following counsel of record:

John W. Paradee, Esquire
D. Benjamin Snyder, Esquire
Glenn C. Mandalas, Esquire
PRICKETT, JONES & ELLIOTT, P.A.
11 North State Street
Dover, Delaware 19901

Thomas H. Kovach, Esquire
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709


_____
Seth J. Reidenberg, Esquire (No. 3657)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
(302) 576-3442 (fax)

Attorneys for Defendant GLeS, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

DB02:5892871.1                                                                 054769.1031

# EXHIBIT A

## SUMMONS

### IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR KENT COUNTY

| | |
|---|---|
| BCG, INC., a Delaware corporation,<br>CHESAPEAKE PRODUCTS &<br>SERVICES, INC., a Delaware corporation, | :<br>: C.A. No. 06C-10-024 (RBY)<br>: |
| Plaintiffs, | : TRIAL BY JURY<br>: OF TWELVE DEMANDED<br>: |
| v. | : NON-ARBITRATION CASE<br>: |
| GLES, INC., a Delaware corporation,<br>d/b/a SWEET OIL COMPANY, | :<br>: |
| Defendant. | : |

**THE STATE OF DELAWARE,**
**TO THE SHERIFF OF NEW CASTLE COUNTY:**
**YOU ARE COMMANDED:**

To summon the above named Defendants so that, within 20 days after service hereof upon Defendant, exclusive of the day of service, Defendant shall serve upon D. Benjamin Snyder, Esquire, Plaintiffs' attorney, whose address is 11 North State Street, Dover, DE 19901, an Answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense).

To serve upon Defendant a copy hereof and of the Complaint (and of the Affidavit of Demand, if any has been filed by Plaintiffs).

Dated: 10-25-06

_____
*Prothonotary*

_____
*Per Deputy*

**TO THE ABOVE NAMED DEFENDANT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on Plaintiffs' attorney named above an Answer to the Complaint (and, if an Affidavit of Demand has been filed, an Affidavit of Defense), judgment by default will be rendered against you for the relief demanded in the Complaint (or in the Affidavit of Demand, if any).

_____
*Prothonotary*

_____
*Per Deputy*

IN THE S⁗⁗⁗OR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

BCG, INC., a Delaware corporation,
CHESAPEAKE PRODUCTS & SERVICES,
INC., a Delaware corporation,

                 Plaintiffs,

      v.

GLES, INC., a Delaware corporation d/b/a
SWEET OIL COMPANY

                 Defendant.

C.A. No.  06C-10-024  (RBY)

TRIAL BY JURY OF
TWELVE DEMANDED

NON-ARBITRATION CASE

## CERTIFICATE OF VALUE

      I, D. Benjamin Snyder, Esquire, counsel for the Plaintiffs in the above-captioned matter,

hereby certify, in good faith at this time, that the monetary damages sought in this case exceed

One Hundred Thousand Dollars ($100,000.00), exclusive of costs and interest.

                        **PRICKETT, JONES & ELLIOTT, P.A.**

                        D. BENJAMIN SNYDER (#4038)
                        11 North State Street
                        Dover, Delaware 19901
                        (302)674-3841
                        *Attorney for the Plaintiffs.*

Dated: October 18, 2006

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| BCG, INC., a Delaware corporation, CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware corporation, | : <br> : C.A. No. 06C-10-024 (RBY) <br> : <br> : TRIAL BY JURY |
| Plaintiffs, | : OF TWELVE DEMANDED <br> : |
| v. | : NON-ARBITRATION CASE <br> : |
| GLES, INC., a Delaware corporation, d/b/a SWEET OIL COMPANY, | : <br> : <br> : |
| Defendant. | : |

## COMPLAINT

COMES NOW BCG, Inc. and Chesapeake Products & Services, Inc., the Plaintiffs in the above-captioned action, by and through their attorneys, Prickett, Jones & Elliott, P.A., who hereby allege as follows:

### The Parties

1.     The Plaintiffs are BCG, Inc. (hereinafter referred to as "BCG"), a Delaware corporation doing business in the State of Delaware, with a business address of 30759 Sussex Highway (P.O. Box 311) Laurel, Delaware 19956, and Chesapeake Products & Services, Inc. (hereinafter referred to as "Chesapeake"), a Delaware corporation doing business within the State of Delaware with a business address of 30759 Sussex Highway (P.O. Box 311) Laurel, DE 19956.

2.     The Defendant is GLeS, Inc., a Delaware corporation doing business within the State of Delaware as Sweet Oil Company (hereinafter referred to as "Sweet Oil"), with a business address of 2604 Eastburn Center, Newark, Delaware

19711, and that may be served upon its registered ag̲ ̲ ̲ ̲ ̲ ̲ LES, Inc., at 2604 Eastburn Center, Delaware 19711. Sweet Oil is a distributor of motor fuel and related products.

## Jurisdiction

3.    This Court has jurisdiction over the subject matter of this action pursuant to 10 Del. C. § 6501, et. seq.

## Nature of the Case

4.    This is an action for, among other things, breach of contract and tortious interference against the supplier of motor fuel to two retail stations owned by the Plaintiffs.   The exclusive supply agreements for the two stations were assigned along with the original supplier's other supply agreements to the Defendant, Sweet Oil, approximately one year ago in September of 2005.   Since Sweet Oil has assumed the obligations under the aforesaid supply agreements, it has intentionally and utterly failed to abide by the clear and unambiguous terms of the supply agreements (and the well-established course of performance between the Plaintiffs and their previous supplier) by, among other things, refusing (even to this day) to pay the Plaintiffs' incentive fees, refusing to competitively price the Plaintiffs' gasoline, which was often priced up to twenty cents (20¢) per gallon more than the Plaintiffs' immediate competitors, and threatening baseless criminal prosecutions, all of which was undertaken in a concerted effort to coerce new, more favorable, long-term supply agreements from the Plaintiffs for the two gas stations.

5.    The Plaintiffs seek compensatory, punitive and statutory damages

from Sweet Oil, including, but not limited to, compensation for unpaid in⋯  
fees, lost profits and goodwill, and reimbursement for credit card fees, equipment repairs, and overcharged freight paid by the Plaintiffs, as well as a declaratory judgment stating that Sweet Oil has breached the exclusive supply agreements, thereby rendering them null and void.

### Background Facts

6.     The Plaintiffs are the owners of two gas stations, a Mobil gas station located in Delmar, Maryland (the "Mobil Station") and a non-branded gas station in Laurel, Delaware named the Laurel Oasis (the "Oasis Station"). The Mobil Station was built and opened in March of 2002, has a convenience store on site and two restaurants, has 13 pumps and sold approximately 1.5 million gallons of gas and fuel in 2005. The Oasis Station was purchased in 1985, has a convenience store and two restaurants on site, has 12 pumps, and sold approximately 2.2 million gallons of gas and fuel in 2005.

### The Mobil Station

7.     On October 3, 2002, the Plaintiffs and Peninsula Oil Company ("Peninsula") entered into an agreement ("the Dealer Agreement"), whereby Peninsula agreed to, among other things, supply Mobil branded gasoline to the Mobil Station, and the Plaintiffs agreed to purchase all of their motor fuel from Peninsula for a term of ten (10) years. *See* Dealer Agreement attached as Exhibit "A". The Mobil brand was an important and material part of the Dealer Agreement.

8.     Pursuant to Paragraph 2(a) of the Dealer Agreement, Peninsula

agreed to pay a three-cent (3¢) incentive payment to the Plaintiffs for each gallon of Mobil gasoline sold to the Plaintiffs from August 1, 2002 to July 31, 2006.

9.    Pursuant to Paragraph 2(b) of the Dealer Agreement, the Plaintiffs' obligation to repay Peninsula for the incentive payments in the event that the Plaintiffs defaulted under the terms of the Dealer Agreement and Peninsula was required to repay the incentive money to Mobil is secured by a second mortgage on the Mobil Station's premises (the "Second Mortgage").

10.    The Dealer Agreement further provides that the price paid by the Plaintiffs for gasoline and fuel from Peninsula is to be set at a price that provides Peninsula a profit of one-cent (1¢) per gallon in addition to common carrier freight and certain fees and taxes.

11.    Paragraph 6 of the Dealer Agreement provides that Peninsula "shall make deliveries in its usual manner."

12.    Paragraph 8 of the Dealer Agreement provides that "[i]f the Mobil Brand becomes unavailable, [the parties] shall mutually agree on what brand the Dealer will resell."

13.    On or about August 16, 2005, Peninsula notified the Plaintiffs that it was transferring its business to Sweet Oil Company as of September 1, 2005. *See* Letter attached as Exhibit "B". Plaintiffs were not asked to, nor did they, consent to the assignment to Sweet Oil. As a result of the assignment, Plaintiffs' risks and burdens were materially increased.

14.    Prior to assigning the Dealer Agreement to Sweet Oil, Peninsula

4

faithfully and timely performed its obligations under the aforesaid agreement for more than three and one-half years.

15.    Almost immediately after accepting an assignment of the Dealer Agreement, however, Sweet Oil failed to perform its obligations thereunder, including, but not limited to, its obligations to (1) pay the Plaintiffs the Mobil incentive fees, (2) use the least expensive common carrier as Peninsula had previously done, (3) provide transportation without charging an additional administrative fee as Peninsula had previously done, and (4) continue to allow the Plaintiffs to sell Mobil brand products.

16.    On March 15, 2006, the Plaintiffs sent a letter to Sweet Oil requesting that Sweet Oil provide adequate assurances that it would cease deviating from the prior course of performance over the previous three and one-half years between the Plaintiffs and Peninsula Company, specifically noting that the Plaintiffs had not received payments of the Mobil incentive money owed and that the Plaintiffs were being overcharged for freight on product deliveries. *See* Letter attached as Exhibit "C".

17.    Despite the Plaintiffs' request, Sweet Oil failed to provide adequate assurances of future performance within a reasonable time, which, therefore, constitutes a repudiation of the Dealer Agreement.

18.    On March 20, 2006, Sweet Oil notified Plaintiffs that it had been assigned Peninsula's agreements with the Plaintiffs, but that it did not owe the Plaintiffs any money and was not overcharging the Plaintiffs for freight. *See* Letter

attached as Exhibit "D".

19.    On April 17, 2006, Sweet Oil sent the Plaintiffs an email stating that Sunoco had purchased the Plaintiffs' Mobil supply agreement and intended to convert the Plaintiffs' Mobil gas station "effective immediately" to a "Sunoco" gas station. Sweet Oil also threatened that, if the Plaintiffs' did not convert to (and pay for) Sunoco's credit card system, the Plaintiffs' gas station would "be cash only in less than 2 weeks." *See* E-Mail attached as Exhibit "E".

20.    In keeping with the Defendant's threat, the Plaintiffs have been unable to accept purchases on Mobil credit cards since approximately July 2, 2006.

21.    On April 18, 2006, the Plaintiffs sent a letter to Sweet Oil asking when Sweet Oil intended to remove the Mobil brand from the Delmar gas station as Sweet had advised it intended to do, when the Plaintiffs could expect to receive the Mobil unpaid incentive money, and whether Sweet Oil would cease overcharging the Plaintiffs for freight. *See* Letter attached as Exhibit "F".

22.    On May 16, 2006, Sweet Oil offered the Plaintiffs a one-cent per gallon Sunoco incentive fee and to pay the brand conversion costs if the Plaintiffs signed a new ten-year deal with Sunoco. *See* Letter attached as Exhibit "G".

23.    On May 22, 2006, the Plaintiffs sent Sweet Oil a letter following up on their letter dated April 18, 2006 and again soliciting a response from Sweet Oil regarding its intentions for removing the Mobil brand from the Delmar location, for paying the Plaintiffs' the three-cent per gallon Mobil incentive fee, and for continuing to overcharge the Plaintiffs on freight. *See* Letter attached as Exhibit

"H".

24.    On June 5, 2006, Sweet Oil wrote a letter that fails to address the Plaintiffs' previous inquiries and instead takes the untenable legal position that Sweet Oil has not breached paragraph 8 of the Dealer Agreement, which requires mutual consent to establish a replacement brand in the event the Mobil brand becomes unavailable. Sweet Oil falsely wrote that "Mobil has become Sunoco in the Mid-Atlantic states by FTC decree." *See* Letter attached as Exhibit "I".

25.    On June 20, 2006, the Plaintiffs sent Sweet Oil a letter indicating that it would not grant approval to change its brand to Sunoco and noting that (1) Sweet Oil has been overcharging the Plaintiffs on freight, (2) Sweet Oil had agreed to have the fuel delivered by the least expensive common carrier without the addition of a carrier administration fee that the Plaintiffs had never agreed to pay and is not charged by any other common carrier, (3) Sweet Oil has failed to pay the three-cent Mobil incentive money for a period of more than ten months, and (4) Sweet Oil attempted to convince the Plaintiffs to pay for credit card processing changes by representing that they were Mobil upgrades when, in fact, it would have switched the Plaintiffs over to the Sunoco credit card network, for which Sweet Oil now says Sunoco will pay. *See* Letter attached hereto as Exhibit "J".

26.    On June 28, 2006, Sweet Oil forwarded to the Plaintiffs an email ostensibly from a representative of Sunoco threatening the Plaintiffs with penalties and stating that Sweet Oil should "bag" the Plaintiffs' Mobil sign and refuse to provide Mobil brand gas in direct contravention of the Dealer Agreement. *See* E-

7

Mail attached as Exhibit "K".

27.    On August 30, 2006, Sweet Oil sent a letter to all of the gas stations that it supplies indicating that it had agreed to sell its assets to GPM Investments, which owns and operates the Fasmart/Shore Stop franchise.  *See* Exhibit Letter attached as "L".

28.    Upon information and belief, as of the filing of this Complaint, the Plaintiffs' agreements with Sweet Oil have not been assigned or otherwise transferred to GPM Investments.

### The Laurel Oasis

29.    On February 13, 1990, BCG entered into an agency agreement with Peninsula (the "Agency Agreement") with regard to the Oasis Station in Laurel, Delaware.  Pursuant to this ten (10) year Agency Agreement, Peninsula agreed (i) to install certain fuel dispensing equipment (which Penisula Oil would own until the expiration of that Agency Agreement), and (ii) to maintain the oil and gas pumps at the Oasis Station.  Pursuant to the Agency Agreement, Peninsula supplied BCG with gasoline on consignment, which BCG would sell to the public at retail prices set exclusively by Peninsula, and BCG purchased diesel fuel from Peninsula, and resold that diesel fuel to the motoring public at retail prices set by BCG.  *See* Agency Agreement attached as Exhibit "M" and Equipment and Loan Agreement attached as Exhibit "N".  The Agency Agreement superseded a previous agency agreement dated January 2, 1986 and was later extended to January 31, 2008.  *See* Letter attached as Exhibit "O".

30.    Under par          4 of the Agency Agreement, Peninsula reserved
"absolute control" to set the price of gasoline sold to customers at the Oasis Station,
"except that the price shall be competitively priced with locations in that area."

31.    On February 13, 1990, Peninsula and BCG entered into an additional
agreement (hereinafter referred collectively with the Agency Agreement as the
"Agency Agreement"), whereby, among other things, Peninsula promised to set the
wholesale price for diesel  based upon Peninsula's posted transport price at the time
of delivery and, in any event, no higher than .025 per gallon over Salisbury Rack
prices (the "Price Cap"). *See* Agreement attached as Exhibit "P".  Plaintiffs would
thereafter set the retail price for diesel fuel.

32.    In addition, the Plaintiffs and Peninsula entered into a Credit Card
Loan Equipment Agreement (hereinafter referred to collectively with the Agency
Agreement as the "Agency Agreement"), whereby they agreed that the Plaintiffs
were not responsible for paying any credit card fees, and that any such fees were to
be paid by Peninsula. *See* Credit Card Loan Equipment Agreement attached as
Exhibit "Q".

33.    Under paragraph 5 of the Agency Agreement, Peninsula also agreed to
pay BCG four cents (4¢) for each gallon of unleaded and unleaded plus gasoline and
six cents (6¢) for each gallon of premium unleaded gasoline sold by BCG (the "Gas
Commissions").

34.    Since accepting an assignment of the Agency Agreement, Sweet Oil
has failed and/or refused to perform the above-mentioned provisions of the Agency

9

Agreement.

35.    Over the past twelve months, the Plaintiffs have sent Sweet Oil hundreds of daily faxes that provided gas prices for three locations in BCG's local area, identified daily gas and fuel sales, requested that Sweet Oil abide by the contract and keep retail prices competitive with BCG's competitors, and explained the damage Sweet Oil's overpricing was causing BCG's business.  *See* Faxes attached as Exhibit "R".

36.    In direct violation of its obligation pursuant to the Agency Agreement to competitively price at retail its gasoline and to set the wholesale diesel fuel price below the Price Cap, Sweet Oil ignored the previous well-established course of performance between BCG and Peninsula. Sweet Oil knowingly priced BCG's gasoline ten to twenty cents higher than BCG's direct competitors, and exceeded the Price Cap for diesel fuel, thereby placing BCG at a severe competitive disadvantage.

37.    In direct contravention of its obligations under the Agency Agreement, Sweet Oil also refused and/or failed to pay Gas Commissions to the Plaintiffs for seven (7) of the (10) applicable months.

38.    On December 8, 2005, the Plaintiffs' bookkeeper called Sweet Oil's bookkeeper asking for the Plaintiffs' gas commission checks, but Sweet Oil's bookkeeper said he did not know anything about Gas Commissions and that the Plaintiffs needed to contact John Collins or Mark Greco of Sweet Oil.

39.    On December 9, 2005, the Plaintiffs' bookkeeper faxed to Sweet Oil a recap summary of the first three (3) months of Gas Commissions owed by Sweet Oil,

10

but Sweet Oil failed and/or refused to provide a response.

40. On December 31, 2005, the Plaintiffs' bookkeeper faxed a recap summary for the first four (4) months of Gas Commissions with a note asking what the problem was regarding the Gas Commissions, but Sweet Oil failed and/or refused to provide a response.

41. On March 6, 2006, the Plaintiffs' bookkeeper discovered an electronic funds transfer deposit in the Plaintiffs' bank account statement for the month of January of 2006. While Sweet Oil said that it did not know why the money was deposited, this money was clearly the payment for the first three months of Gas Commissions as it equaled the exact amount owed by Sweet Oil for those months.

42. In direct contravention of its obligations under the Agency Agreement, Sweet Oil also electronically transferred funds out of the Plaintiffs' bank account for equipment repairs and continued to send the Plaintiffs repair bills after the Plaintiffs eliminated Sweet Oil's access to the Plaintiffs' bank account.

43. In direct contravention of its obligations under the Credit Card Loan Equipment Agreement and the Plaintiffs and Peninsula's previous course of performance, Sweet Oil began subtracting credit card fees from the Plaintiffs' credit card monthly settlement payments. *See* Documents attached as Exhibit "S".

44. On March 15, 2006, the Plaintiffs sent a letter advising Sweet Oil that it would no longer be authorized to electronically transfer funds from the Plaintiffs' checking account. *See* Letter attached as Exhibit "T".

45. Sweet Oil has wrongfully transferred at least Three Thousand Seven

11

Hundred Eighty Seven Dollars and Forty One Cents ($3,878.41) through unauthorized electronic transfers from the Plaintiffs' accounts for credit card fees, which were the sole responsibility of (and should have been paid for by) Sweet Oil.

46.    On June 21, 2006, Sweet Oil also sent a letter to the Plaintiffs demanding that they repair Sweet Oil's equipment. Sweet Oil's failure to do so is in direct contravention of the Plaintiffs' written agreements and course of performance with Peninsula.

47.    On July 11, 2006, the Plaintiffs sent a letter to Sweet Oil terminating the Agency Agreement given Sweet Oil's multiple, bad-faith breaches of the aforesaid agreement, and explaining that the Plaintiffs were going to offset the Gas Commissions, overcharges on diesel fuel, costs of equipment repairs, and credit card fees incurred prior to that date from amounts owed by BCG to Sweet Oil for diesel fuel. *See* Letter attached as Exhibit "U".

48.    On or about July 11, 2006, Sweet Oil responded to the Plaintiffs' termination letter by refusing to accept the aforesaid termination and claiming that the Plaintiffs and Sweet Oil "mutually agreed" to re-brand the Oasis station from Texaco to Citgo, that due to the Plaintiffs' failures it lacked sufficient information to determine whether it was competitively pricing the gasoline, that Sweet Oil has been only charging the Plaintiffs the Salisbury rack price plus .01 per gallon consistent with the Agency Agreement, that Sweet Oil had not wrongfully electronically transferred funds from the Plaintiffs' accounts, and that due to the Plaintiffs' failures it lacked sufficient information to determine whether it was

properly paying the Plaintiffs' Gas Commissions. Furthermore, the letter threatened "criminal prosecution for . . . theft" for "illegally [seizing] possession of [Sweet Oil's] credit card transaction receipts for all sales" and alleged damage to Citgo credit card software, which had suddenly "come to [their] attention." *See* Letter attached as Exhibit "V".

49.    The Plaintiffs only agreed to re-brand to Citgo because the Defendant told the Plaintiffs that the Texaco brand was going to be eliminated, which the Plaintiffs later learned was false.

50.    On July 20, 2006, the Plaintiffs sent Sweet Oil a letter stating that its "claims are denied" and that "[a]ny adverse actions Sweet Oil takes that result in further damages to BCG will be dealt with accordingly." *See* Letter attached as Exhibit "W".

51.    The Plaintiffs later learned that, on July 19, 2006, Sweet Oil sent a letter (the "Letter"), which contained several absolute misrepresentations and falsehoods, to numerous companies that might supply gasoline to the Plaintiffs, including Valero Energy Corporation, the Delaware City Refinery, Eagle Transport, Carroll Independent Fuel, CATO, Inc., Eastern Petroleum, Ewing Oil Company, J. Wm. Gordy Fuel, Ocean Petroleum, Pep-Up, PMG, Service Energy, LLP, and Wilson Baker, stating as follows:

> Sweet Oil Company has an exclusive Sales Agreement (the "Agreement") with B.C.G., Inc. t/a the Laurel Oasis, operating as a SWEET OIL COMPANY SUPPLIED CITGO gasoline station at Sussex Highway (the "Station"). Under the terms of the Agreement, Sweet Oil has the exclusive right [sic] sell and B.C.G., Inc. t/a The Laurel Oasis has the duty to exclusively purchase motor fuel branded

under the SWEET OIL COMPANY SUPPLIED CITGO name at the Station.

This letter is written to put you on notice of the Agreement and that any sale of motor fuel products to the Station will be deemed to be with full knowledge that the motor fuel product was not a SWEET OIL COMPANY SUPPLIED CITGO branded product. Such a sale constitutes, at a minimum, a deceptive trade practice, and further constitutes tortuous interference with Sweet Oil's exclusive contract with B.C.G., Inc. t/a The Laurel Oasis. The Office of Retail Gasoline Sales will be notified if such a sale occurs. **Currently, the station is being monitored to evaluate compliance/non-compliance with the Agreement.**

Accordingly, Sweet Oil has initiated legal action to **enjoin** any company from selling and/or transporting any motor fuel with the intention that it be sold to the public from this location. Said legal action may include a lawsuit seeking an injunction against any offending company for the sale of motor fuel, as well as a lawsuit for damages. In addition, the state may choose to proceed against an offending party and impose a penalty for a willful violation of the applicable laws.

This letter serves as notice to cease and desist from any sales and/or transport of motor fuel to B.C.G., Inc. t/a The Laurel Oasis.

*See* Letter attached as Exhibit "X" (emphasis in original).

52.    Shortly after the Letter was sent, several companies have told the Plaintiffs that they will not supply the Plaintiffs because of the threats made by the Defendant in the Letter.

## COUNT I
### Breach of Contract - The Mobil Station

53.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 52 above, as if fully set forth herein.

54.    The Defendant's conduct as aforesaid, including the Defendant's failure to pay the Mobil incentive fees to the Plaintiff, the Defendant's unilateral

14

attempt at re-branding the Mobil station to Sunoco, the Defendant's continued overcharging for freight, the Defendant's unilateral institution of an administrative fee for shipping, and the Defendant's elimination of the Plaintiffs' ability to accept Mobil credit card payments, constitutes material breaches of the Dealer Agreement and the well-established course of performance between the Plaintiffs and Peninsula.

55.    As a direct and proximate result of the Defendant's material breaches as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to lost customers, lost gas and ancillary sales, lost goodwill, and lost incentive fees, overcharges on freight, and unwarranted administrative fees on shipping.

## COUNT II
### Declaratory Judgment - The Mobil Station

56.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 55 above, as if fully set forth herein.

57.    Pursuant to 10 Del. C. § 6501, et. seq., the Plaintiffs request that the Court find that the Plaintiffs are entitled to enforce their rights under the Dealer Agreement, and declare that (1) the assignment from Peninsula to Sweet Oil materially increased Plaintiffs' risks and burdens and was therefore unlawful, (2) the Defendant has breached material provisions of the Dealer Agreement and/or failed to provide timely adequate assurances of future performance, such that the Dealer Agreement is rendered, null, void and unenforceable at the election of the

Plaintiffs, and (3) the Defendant is therefore obligated to release and/or satisfy the Second Mortgage.

58.    In this regard, paragraph 4 of the Dealer Agreement provides that "[i]f [Peninsula] fails to comply with any payment requirements as herein provided, the Dealer may terminate this Agreement."

59.    Similarly, paragraph 9 of the Dealer Agreement provides that "[i]n the event [Peninsula] breaches and [sic] of the provisions of this Agreement, the Dealer, at its sole option, may terminate this Agreement and the Dealer will not be precluded from seeking other remedies which the Dealer may have against the Company for said breach."

60.    Plaintiffs have a legitimate interest in a prompt resolution of their rights under the Dealer Agreement given the Defendant's stated intention to refuse to abide by the terms of the Dealer Agreement, and the Defendant's near absolute failure to abide by the terms of the Dealer Agreement thus far.

61.    Plaintiffs face considerable hardship, including severe economic hardship and further delay on behalf of the Defendants, should the parties dispute regarding the Dealer Agreement not be resolved immediately and/or the need to enforce the terms of the Dealer Agreement arises again in the future.

62.    Given that questions of breach and enforcement of the Dealer Agreement are now before the Court, any further issues regarding the rights and obligations of the parties under the Dealer Agreement are ripe for judicial action and hereby made part of this action.

## COUNT III
## Breach of Contract - The Oasis Station

63.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 62 above, as if fully set forth herein.

64.    The Defendant's conduct as aforesaid, including the Defendant's failure to competitively price gasoline at the Oasis Station, overcharging of BCG for the price of diesel fuel, failure to pay the Gas Commissions, failure to make repairs to the Defendant's equipment at the Oasis Station, and charging BCG for repairs to the Defendant's equipment at the Oasis Station, constitutes material breaches of the Agency Agreement and the well-established course of performance between the Plaintiffs and Peninsula.

65.    As a direct and proximate result of the Defendant's material breaches as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, lost customers, lost gas and ancillary sales, lost goodwill, and lost Gas Commissions, overcharges on diesel fuel, equipment repairs, and credit card fees.

## COUNT IV
## Declaratory Judgment - The Oasis Station

66.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 65 above, as if fully set forth herein.

67.    Pursuant to 10 Del. C. § 6501, et. seq., the Plaintiffs request that the Court find that the Plaintiffs are entitled to enforce their rights under the Agency Agreement, declare that the Defendant has breached material provisions of the Agency Agreement such that the Agency Agreement was rendered, null, void and

17

unenforceable pursuant to the Plaintiffs' letter terminating the aforesaid Agreement, and declare that the assignment from Peninsula to Sweet Oil materially increased Plaintiffs' risks and burdens and was therefore unlawful.

68.    Plaintiffs have a legitimate interest in a prompt resolution of their rights under the Agency Agreement given the Defendant's stated refusal to accept the Plaintiffs' termination of the Agency Agreement, the Defendant's tortious interference with its contractual and expectancy relationships, the Defendant's threats of criminal prosecution, and the Defendant's near absolute failure to abide by the terms of the Agency Agreement.

69.    Plaintiffs face considerable hardship, including severe economic hardship and further delay on behalf of the Defendants, should the parties dispute regarding the Agency Agreement not be resolved immediately and/or the need to enforce the terms of the Agency Agreement arises again in the future.

70.    Given that questions of breach and enforcement of the Agency Agreement are now before the Court, any further issues regarding the rights and obligations of the parties under the Dealer Agreement are ripe for judicial action and hereby made part of this action.

## COUNT V
### Tortious Interference - The Oasis Station

71.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 70 above, as if fully set forth herein.

72.    Sweet Oil directed the Letter, which contains representations that Sweet Oil knew to be false, to businesses with which Sweet Oil knew the Plaintiffs

had valid business relationships and expectancies for such relationships.

73.    Sweet Oil's conduct as aforesaid has wrongfully caused the Plaintiffs to lose valid business relationships and expectancies for such relationships.

74.    Sweet Oil intentionally interfered with the Plaintiffs' actual and prospective business relationships and expectancies without justification and has induced and caused businesses to breach and terminate their relationship or expectancy with the Plaintiffs, which has caused the Plaintiffs substantial damages.

75.    This case involves the rights and legal relations of the Plaintiffs and Sweet Oil.

76.    The Plaintiffs and Sweet Oil have an interest in pursuing and/or contesting the Plaintiffs' claims.

77.    Sweet Oil's and Plaintiffs' interests are real, adverse, and ripe for judicial determination.

78.    As a direct and proximate result of the Defendant's tortious interference as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, the attorneys' fees incurred to prosecute the above-captioned action.

## COUNT VI
### Bad Faith - The Mobil Station & The Oasis Station

82.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 78 above, as if fully set forth herein.

83.    Notwithstanding repeated demands by the Plaintiffs, the Defendant has failed and/or refused to abide by the clear and unambiguous terms of the Dealer

Agreement, the Agency Agreement and the well-established course of performance between the Plaintiffs and Peninsula as aforesaid.

84.    The Defendant's actions in refusing to meet and fulfill its obligations as aforesaid, solely in an effort to force a renegotiation of the aforesaid agreements to include terms less favorable to the Plaintiffs, constitute deliberate bad faith and unfair dealing, in blatant and unconscionable breach of the terms and conditions of the aforesaid agreements and the obligation of good faith and fair dealing implied in every contract.

85.    As a direct and proximate result of the Defendant's bad faith and unfair dealing, the Plaintiffs have suffered substantial damages.

## COUNT VII
### Delaware Franchise Security Law
### The Oasis Station and The Mobil Station

86.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 82 above, as if fully set forth herein.

87.    The Plaintiffs are Franchised Distributors and the Defendant is a Franchisor pursuant to the Delaware Franchise Security Law, 6 Del. C. § 2551, et seq.

88.    Pursuant to 6 Del. C. § 2552, a Franchisor may not attempt to unjustly terminate a franchise and/or attempt to purge itself of the relationship by refusing to deal with the Franchised Distributor.

89.    The Defendant's actions in refusing to meet and fulfill its obligations as aforesaid, tortiously interfering with the Plaintiffs' actual and prospective

contractual relationships, and intentionally misrepresenting the availability of the Mobil and Texaco brands, solely in an effort to terminate and purge its existing contractual obligations to the Plaintiffs and force a renegotiation of the aforesaid agreements to include terms less favorable to the Plaintiffs, constitute violations of the Delaware Franchise Security Law.

90.     As a direct and proximate result of the Defendant's violations of the Delaware Franchise Security Law, as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, lost customers, lost gas and ancillary sales, and lost goodwill.

91.     Pursuant to 6 <u>Del. C.</u> § 2553, the Plaintiffs are entitled to recover damages, including loss of profits, which shall be presumed to be no less than five (5) times the profit obtained by the franchised distributor, by virtue of the terminated franchise, in the most recently completed fiscal year.

<div align="center">

**COUNT VIII**
**<u>Attorneys' Fees - The Mobil Station And The Oasis Station</u>**

</div>

92.     The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 91 above, as if fully set forth herein.

93.     The Plaintiffs are entitled to reasonable attorneys' fees pursuant to paragraph 20(d) of the Dealer Agreement, which provides that "[i]n the event either party breaches any of the terms of this Agreement and the party not in default employs Attorneys to protect or enforce its rights hereunder and prevails, the defaulting party agrees to pay the other party reasonable Attorneys fees and costs it so incurred."

<div align="center">21</div>

94. Furthermore, because the Defendant's conduct as aforesaid is both willful and malicious, the Court should also award the Plaintiffs their reasonable attorneys' fees.

95. In addition, the Plaintiffs are entitled to recover attorneys' fees and costs incurred in establishing their rights under and securing enforcement of the Dealer Agreement and the Agency Agreement pursuant to 10 Del. C. § 6510, and to recover reasonable counsel fees pursuant to 6 Del. C. § 2553 as a result of the Defendant's violation of the Delaware Franchise Security Law.

WHEREFORE, the Plaintiffs respectfully request a judgment in favor of the Plaintiffs and against the Defendant be entered by this Court:

A. Awarding the Plaintiffs compensatory damages in an amount sufficient to fully compensate the Plaintiffs for any and all damages sustained by the Plaintiffs as a result of the Defendant's breach of contract, together with interest at the legal rate;

B. Awarding the Plaintiffs statutory damages pursuant to 6 Del. C. § 2553.

C. Awarding the Plaintiffs punitive damages for the Defendant's bad faith and tortious conduct in an amount sufficient to punish and deter the Defendant from engaging in similar conduct in the future;

D. Awarding the Plaintiffs all of their costs and reasonable attorneys' fees incurred in pursuing the claims set forth herein and securing enforcement of the Plaintiffs' contractual rights; and

E.     Declaratory relief

(1)     The Defendant has breached material provisions of the Dealer Agreement and/or failed to provide timely adequate assurances of future performance, such that the Dealer Agreement is rendered, null, void and unenforceable at the election of the Plaintiffs;

(2)     The assignment of the Dealer Agreement and the Agency Agreement from Peninsula to Sweet Oil materially and unreasonably increased the Plaintiffs' risks and burdens, such that the Dealer Agreement and the Agency Agreement are rendered null, void and unenforceable at the election of the Plaintiffs;

(3)     The Defendant is obligated to release and/or satisfy the Second Mortgage; and

(4)     The Defendant has breached material provisions of the Agency Agreement such that the Agency Agreement was rendered, null, void and unenforceable pursuant to the Plaintiffs' letter terminating the aforesaid Agreement.

F.     Granting such further relief as the interests of equity and justice may require.

PRENTICE, JONES & ELLIOTT, P.A.

_D. Benjamin Snyder_

John W. Paradee (DE Bar No. 2767)
D. Benjamin Snyder (DE Bar No. 4038)
Glenn C. Mandalas (DE Bar No. 4432)
11 North State Street
Dover, Delaware 19901
(302) 674-3841

*and*

Harry C. Storm
Lerch, Early & Brewer, Chartered
3 Bethesda Metro Center, Suite 460
Bethesda, MD 20814

Date: October 19, 2006          *Attorneys for the Plaintiffs*

EXHIBIT "A"

*10/3/02*

PENINSULA OIL CO., INC.

and

CHESAPEAKE PRODUCTS & SERVICE, INC.

Dealer Agreement

Motor Fuels

THIS AGREEMENT ("Agreement") is made this __3__ day of __October__, A.D. 2002, between **PENINSULA OIL CO., INC.**, a Delaware corporation (hereinafter the "Company"), with offices at South Market Street, P. O. Box 389, Seaford, Delaware 19973, party of the first part, and **CHESAPEAKE PRODUCTS & SERVICES, INC.**, a Delaware corporation, and **B.C.G., INC.**, a Delaware corporation (hereinafter collectively called the "Dealer"), doing business at premises located at Map 11 Grid 24 Parcel 44, Wicomico County, Maryland, (hereinafter called the "Premises"), parties of the second part.

WITNESSETH

1.    **TERM OF AGREEMENT:**    This Agreement shall be in effect for a period of ten (10) years, beginning on or about March 1, 2002, and terminating on or about March 1, 2012, unless sooner terminated as herein provided or unless renewed by agreement of the parties.

2.    **PRODUCTS AND QUANTITIES:**

a.    The Company shall sell and deliver to the Dealer and the Dealer shall purchase and take from the Company during the above term, the Dealer's requirements of the Company's gasolines, diesel, fuel and kerosene at the above Premises of the Dealer. The Dealer shall not, during the term of this Agreement, sell any goods of any other person or entity, which shall, in any way, compete with the sale of the goods covered by this Agreement. This Agreement shall only apply to the above location, unless the parties amend this Agreement to include other locations.

b.    If the Dealer breaches any of the provisions of this Agreement, the Dealer agrees to reimburse the Company in the amount of three cents (3¢) per gallon for each gallon of gasoline sold by the Dealer during the four-year period beginning on or about March 1, 2002, and terminating on or about March 1, 2006. This is in recognition that the Company will receive from Mobil three cents (3¢) per gallon for gasoline sold to the Dealer during the above four-year period (which payment is referred to among the Company, the Dealer and Mobil as an incentive payment), that the Company will, in turn, pay such three cents (3¢) to the Dealer, and that the Company is liable to repay Mobil such three cents (3¢) per gallon according to the following schedule:

PARNE & BAILEY, P. A
ATTORNEYS AT LAW
P. O. BOX 132
SALISBURY, MD 21803-0132

PHONE:    (410) 749-5144
FAX:      (410) 749-8273

| Year Debranded | % of Incentive to be Returned to Mobil |
|---|---|
| Years 1 through 5 | 100% |
| Year 6 | 80% |
| Year 7 | 60% |
| Year 8 | 40% |
| Year 9 | 30% |
| Year 10 | 20% |

Should the Company be required to repay Mobil any incentive payment because of debranding prior to March 1, 2012, the Dealer agrees to pay the Company such amount repaid to Mobil. As partial security for the Dealer's obligation to the Company, the Dealer agrees to execute a mortgage on the Premises, which mortgage shall be at least a second mortgage.

3.    **GASOLINE PRICING.**    The price the Dealer pays the Company for gasoline will be computed pursuant to the following formula: the posted terminal price on the date of delivery, plus any federal, state or local environmental fees charged at the terminal rack, plus any taxes now or thereafter charged by Federal, State or Local authorities collected at the terminal rack or collected from the Dealer and paid by the Company, plus the common carrier freight rate per gallon from the terminal to the Premises, including any fuel or other surcharges charged by the common carrier, plus profit to the Company of $.01 per gallon, plus current and future taxes, such as gross receipts taxes. The Dealer will receive the benefit of any discounts or TVAs below the rack price, but not any prompt pay discounts received by the Company.

4.    **TERMS.**    The Dealer shall pay the Company within seven (7) days following delivery. The Company shall reconcile all credit card payments weekly from the previous week's credit card purchases. If the Dealer fails to comply with any payment requirements imposed by the Company, the Company is entitled to suspend its deliveries pending such failure or refusal or it may terminate this Agreement. If the Company fails to comply with any payment requirements as herein provided, the Dealer may terminate this Agreement.

5.    **TAXES.**    In addition to the provided purchase price, the Dealer shall pay all duties, taxes and other charges now or hereafter imposed by any federal, state or other governmental authority in the United States with respect to the importation, production, transportation, manufacture, sale, delivery or use of any of the products covered by this contract which the Company may be required by any such authority or otherwise to assume, pay or collect.

6.    **DELIVERIES AND INVENTORY RECONCILIATION.**    All products shall be delivered to the above Premises of the Dealer and the Company shall make deliveries in its usual manner. The Dealer shall keep accurate records on the Premises showing the type or product and periodic reconciliation between sales, use, receipts and inventory on hand and the Company shall have the right to inspect the same at any reasonable time. The Company reserves

the right to refuse to make deliveries into any storage equipment of the Dealer, which, in the sole judgement of the Company, is unsafe or otherwise unsatisfactory for the receipt of deliveries.

7.    **TITLE OF FUELS TO REMAIN IN COMPANY UNTIL PAYMENT.** Title to the fuels shall remain in the Company until the purchase price herein specified has been received.

8.    **BRANDS.** The Dealer shall resell the products purchased under the Company's names, trademarks and brands. The Company reserves the right to change, discontinue, add and/or adopt any product, grade, brand and /or trade name of its products. If the Mobil Brand becomes unavailable, the Company and the Dealer shall mutually agree on what brand the Dealer will resell.

9.    **BREACH.** In the event the Dealer breaches any of the provisions of this Agreement, the Company, at its sole option, may suspend or refuse deliveries hereunder and the Dealer's obligation to repay the debranding incentive set forth in paragraph 2 shall remain an obligation of the Dealer according to the terms of this Agreement. Upon the expiration or any termination of the term hereof, any unpaid account of the Dealer with the Company shall become immediately due and payable. In the event the Company breaches and of the provisions of this Agreement, the Dealer, at its sole option, may terminate this Agreement and the Dealer will not be precluded from seeking other remedies which the Dealer may have against the Company for said breach.

10.    **COSTS TO BE PAID BY DEALER.** The Dealer agrees to pay all equipment and communication costs associated with the acceptance of credit cards whether or not processed through the Company.

11.    **WAIVER AND AMENDMENTS.** No representative of the Company has authority to waive any provisions or to modify or to change the terms of this Agreement except by supplemental written agreement executed by a duly authorized officer of both the Company and the Dealer.

12.    **NOTICES.** All notices shall be in writing, may be given to the Dealer by personal service or to either the Dealer or the Company by certified or registered letter or telegram and, in the latter instances, notice shall be deemed given when the letter is deposited in the mail or telegram is deposited with the telegraph company, postage or charges prepaid and directed to the party for whom intended, at such party's address first herein specified or such other address as such party may have substituted therefore by notice so given to the other.

13.    **THE COMPANY AND THE DEALER.** The relationship between the Company and the Dealer is that of vendor and purchaser. The Dealer is an independent contractor and shall not have authority to act for or to bind the Company, in any way, or to represent that the Company, in any way, is responsible for the acts of the Dealer. The company shall not have authority to act for or bind the Dealer, in any way, or to represent that the Dealer, in any way, is responsible for the acts of the Company. This Agreement does not establish a joint venture.

agency or partnership between the parties nor does it create an employer-employee or franchisor-franchisee relationship. The Dealer shall bear sole responsibility for any statements or claims of the Dealer regarding the products which have not been authorized in advance and in writing by the Company. The parties shall indemnify and save each other harmless from and against any and all liability, loss, damages, costs or expenses which they may incur in the event a party does not comply with the obligations specified in this paragraph.

14.    **TERMINATION OF CONTRACT.** The parties reserves the right to terminate this Agreement prior to the end of the primary term hereof, and prior to the end of any term thereafter, by notice given in accordance with applicable law, upon any grounds provided in any applicable law, statute, rule or regulation, including by way of illustration, but not limited to:

a.    A party's failure to comply with any reasonable and material provision hereof;

b.    A party's failure to exert good faith efforts to carry out a provision of this Agreement;

c.    The occurrence of any event which is reasonable relevant to the relationship of the parties under this Agreement including, for example, but not by way of limitation:

1.    Fraud or criminal misconduct by a party;

2.    A party's bankruptcy or judicially-determined insolvency;

3.    A party's failure to pay the other party in a timely manner when due all sums to which either party is legally entitled; or

4.    Purposeful adulteration, mislabeling of motor fuels or other trademark violations by a party.

d.    In addition to the above, the Dealer reserves the right to terminate this Agreement at any time in the event the Dealer, in its sole discretion, determines that the Company's fuel prices are not competitive.

15.    **PAYMENT OF COMPENSATION UPON TERMINATION.** Upon the termination of this Agreement, all accrued but unpaid amounts up to and through the date of such termination, including Mobil incentive money, shall be paid to the party entitled thereto. Payment shall be made as soon as the amount due is determined.

16.    **INSURANCE.** The Dealer shall maintain pollution liability insurance in amounts reasonably satisfactory to the Company, naming the Company as an additional insured party. The Dealer shall also maintain liability insurance in amounts as required by law. This liability policy shall name the Company as an additional insured. The Dealer shall annually provide the Company with copies of certificates evidencing these insurance coverages.

- 4 -

17.    **FORCE MAJEURE.**    The Company shall not be held responsible for any damage or loss to the Dealer resulting from failure or delay in making deliveries which may be due to strike, accident, fire, war, insufficient supply of such products, failure or delay in transportation, Act of God or any other cause beyond the Company's control, whether or not similar to the causes enumerated herein. The Company may apportion its available supply among its customers in such manner as is required by law.

18.    **ASSIGNMENT.**    This Agreement is not assignable by the Dealer without the prior written consent of the Company, which shall not be unreasonably withheld, and otherwise is binding on and for the benefit of the Company and the Dealer and their respective legal representatives, successors and assigns. Notwithstanding a permitted assignment by the Dealer, the Dealer's obligation to repay the debranding incentive set forth in Paragraph 2 shall survive such assignment and shall remain an obligation of the Dealer following such assignment.

19.    **ENTIRETY-RELEASE-EXECUTION-SUCCESSION.**    This Agreement comprises the entire agreement, and merges and supersedes all prior contracts, representations and warranties (oral or written, express or implied) between the Company and the Dealer concerning the subject matter or in consideration hereof. Neither this Agreement nor any subsequent agreement amending or supplementing this Agreement shall be binding on the parties unless it is signed by authorized representatives of the parties.

20.    **MISCELLANEOUS.**

a.    This Agreement shall be construed under and in accordance with the laws of the State of Delaware, notwithstanding the fact the Premises are situate in Maryland.

b.    In case any one or more of the provisions contained in this Agreement shall be, for any reason, held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not effect any other provision and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

c.    No waiver by the parties hereto of any breach or default of any term, condition or covenant of this Agreement shall be deemed to be a waiver of any other breach of the same or any other term, condition or covenant contained herein.

d.    In the event either party breaches any of the terms of this Agreement and the party not in default employs Attorneys to protect or enforce its rights hereunder and prevails, the defaulting party agrees to pay the other party reasonable Attorneys fees and costs it so incurred.

5

EXECUTED as of the date first herein specified.

ATTEST:                                PENINSULA OIL CO., INC.
                                       A Delaware Corporation

_____                BY: _____
Secretary                                        President

                                       (Corporate Seal)


ATTEST:                                CHESAPEAKE PRODUCTS & SERVICES, INC.

_____                BY: _____
Secretary                                        President

                                       (Corporate Seal)


ATTEST:                                B. C. G., INC., a Delaware corporation

_____                BY: _____
Secretary                                        President

                                       (Corporate Seal)


F:\Users\sf\3497\Agrt

EXHIBIT "B"



8/16/05

S. MARKET ST. • P.O. BOX 389 • SEAFORD, DE 19973 • 5 MILL ST. • P.O. BOX D • MILFORD, DE 19963
ELLIS AVE. • P.O. BOX 146 • SELBYVILLE, DE 19975
WWW.PENOIL.COM

August 16, 2005

Dear Retail Dealer:

Thank you for your valued business over the past years. As Peninsula Oil & Propane moves out of the dealer gasoline business our plan is to place more emphasis on our heating oil, propane and HVAC business.

I anticipate that Sweet Oil Company will be a good partner for you in the years ahead.

When the transfer of business to Sweet Oil Company occurs, a representative of Peninsula Oil Company and Sweet Oil Company will be at your site to take a final inventory. During the weeks prior to transfer, we will conduct business as usual.

I am requesting that all monies due to Peninsula Oil Company be paid on or before September 1, 2005. If you have any questions please do not hesitate to call me at 302-629-2480, Ext. 19.

Sincerely,

Donald Williams, V.P. Operations

WE MAKE IT EASY ... *for you*

*Seaford*
629-3001

*Milford*
422-6691

*Hickman & Willey*
436-8533

EXHIBIT "C"

*3/15/06*

Chesapeake Products and Services Inc.
P.O. Box 311
Laurel, DE 19956
302-875-6014

3/15/06

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re: Peninsula Oil Co., Inc. And Chesapeake Products and Service, Inc. Dealer Agreement
     Motor Fuels dated 10/3/02

Dear Sirs,

Since the assignment of the above referenced contract from Peninsula Oil Inc. To GleS, Inc. t/a
Sweet Oil Company has taken place,  you have deviated from the course of performance as
established by Peninsula Oil Co., Inc. during the first three and half years.  Specifically we have
not received payments of all moneys owed and by being overcharged the freight rate of product
deliveries.   We need assurances that you are going to perform the contract as it was historically
preformed by Peninsula Oil Co., Inc.  Provide these assurances in writing within 30 days.

Thank You

Charlie Glenn VP

*sent certified 3/17/06*

EXHIBIT "D"



# GLeS, Inc.
## t/a
### Sweet Oil Company

Chesapeake Products & Services Inc.                    March 20, 2006
Mr. Charlie Glenn

Dear Sir,

I am in receipt of your letter dated March 15, 2006 and have the following comments in response:

GLeS, Inc. t/a Sweet Oil Company did in fact take assignment of the Peninsula Oil agreements and is in compliance with those agreements and to the best of our knowledge has not "deviated in our course of performance" as you stated in your letter. No two distributors operate exactly the same. Peninsula had reasons for selling this business, as did we for purchasing it. We believe we operate very efficiently, and competitively and have been very successful as referenced by our tremendous growth not only in your market, but in all five states we operate in. As you are aware we have made you an extremely competitive offer to extend our relationship for another ten years, and have met nearly all of your requests. I believe this shows our commitment to you as our customer, by meeting or exceeding our competition for your business. Is it possible we do not have copies of a specific written agreement which you are basing your comments on? If you believe you have such document, please provide us with a copy and we will fulfill our obligations as always. If not, we must continue to operate within the boundries of the written documents which we received in our purchase of Peninsula's dealer business.

In addition, you state you have not received all payments of monies owed by being overcharged on freight of product. You are being charged Sweet Oil's applicable delivery to your locations which is not subject to audit under the contract. I do not see how you could establish if you were overcharged when there is no basis for this discrepancy.

Sincerely Yours,

Mark L. Greco

EXHIBIT "E"

4/17/06                                                                    4/17/06

Reminder: AOL will never ask you to send us your password or credit card number in an email.   This message has been scanned for known viruses.

**From:** Mark Greco

**To:** Bill Glenn

**Cc:** Adam Gray, DOLORES LOVE

**Subject:** Re: Delmar EOL

**Date:** Mon, 17 Apr 2006 15:34:55 -0400

**Files:** Mark_Greco.vcf (126)

Bill,

We have notified you many times on this but you continue to ignore the fact that your credit card processing system is going to be shut off at the end of this month. Your speedpass is already off, as is your debit processing. JCV gave you a quote last September to make the upgrades to process on the new system. Peninsula gave you notices begining May 2005, and I personally notified you in writing on April 4, March 6, December 21, as well as being told by our Marketing Represenative Adam Gray several times verbally, and you still ignor these notices. I do not want you to call on May 1st when your system is shut off and say you didn't know.

In addition, Sunoco purchased your Mobil supply agreement and intends to convert your Mobil as well as all other Mobil branded sites in Delaware, Maryland, Washington DC, and Virginia to the Sunoco brand effective immediately. The credit card processing system you are currently using is being shut off and replaced with Sunoco's system. Without upgrades to your G-site, you will be cash only in less than 2 weeks. I urge you to call JCV or the contractor of your choice right away to make this necessary upgrade, otherwise you will be cash only on May 1st.

Why do you not respond to our messages?

Do you intend to continue to operate with cash only after May 1st?

Please respond.

Mark Greco
Sweet Oil

CONFIDENTIALITY NOTICE: This Electronic Mail (e-mail) contains confidential and privileged information intended only for the use of the individual or entity to which it is sent. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please immediately notify the sender by reply e-mail or telephone

>>> LOVE, DOLORES<DLOVE@sunocoinc.com> 04/13 9:01 AM >>>

Mark:
Once again I have been notified that the Delmar site is still running on an EOL. We are now about two weeks away from his system being shut down. There have been so many communications to you to get this site changed out, and now you're in a situation were you are just asking for problems. I don't know how you are going to do this, but you need to get on this immediately. It's disturbing that the lack of action on your part will now only create a disruption in service to all

EXHIBIT "F"

4/18/06

Chesapeake Products and Services Inc.
P.O. Box 311
Laurel, DE 19956
302-875-6014

4/18/06

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re: Peninsula Oil Co., Inc. And Chesapeake Products and Service, Inc. Dealer Agreement
    Motor Fuels dated 10/3/02

Dear Sirs,

 In response to our recent conversations and letters, please provide written confirmation on the following;
1. When do you intend to remove the Mobil brand from our Delmar location?

2. When can we expect to receive our Mobil incentive money as specified in 2.b. of the contract? (Contract enclosed.)

3. Historically we had used the most cost competitive common carrier freight company to haul our fuels. You have been overcharging us on the freight, as we have quotes from the historical carrier that are $.0075 cheaper, including all surcharges than you are billing us for.


Thank You

Charlie Glenn VP

Sent certified

EXHIBIT "G"



5/16/06

# GLeS, Inc.
## t/a
## Sweet Oil Company

Chesapeake Products & Services Inc.                    May 16, 2006
Mr. Charlie Glenn
Mr. Bill Glenn

Dear Sirs,

In response to your telephone call with Adam this morning I have attached the Sunoco brand conversion incentive program. As you are aware up until now you have been on the current Mobil incentive program and are due to receive your final payment next month. Your current contract has approximately 6 years left before it expires. Sunoco has made a generous offer which I think you will be excited about. They are going to cover the brand conversion cost in full, including the hardware & software upgrade necessary for you to accept credit and debit cards at the dispenser islands. In addition, for resetting your contract term to 10 years, Sunoco has offered to pay you an additional incentive of 1 cent per gallon for all gasoline gallons purchased for the entire new term of 10 years. They would like the brand conversion to occur immediately, as they are converting the entire market to Sunoco over the summer months. Sweet Oil has already begun our brand conversion efforts at our other Sunoco supplied Mobil sites and will be completed within the next 60 days. We would like your station to begin the brand conversion process in June so your new incentive program can be effective July 1st when your current incentive program payments end. This will enhance the strength of the Sunoco brand in your market and give you the maximum benefit of converting your site during the period in which all other Mobil's become Sunoco.

If you choose not to extend your contract to allow for a 10 year term, Sunoco will still re-brand your site, and pay for the brand conversion cost, however there will be no incentive program. At your current volume, this incentive program is valued at approximately $ 150,000.00 to you.

Please contact Adam at your earliest convenience to let us know if you would like to extend your contract term and receive the new incentive program or not, as we need to file the necessary paperwork with Sunoco to insure your payments will begin on time.


Sincerely Yours,

Mark L. Greco

EXHIBIT "H"

5/17/06

Chesapeake Products and Services Inc.
P.O. Box 311
Laurel, DE 19956
302-875-6014

5/22/06

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711
Attn: Mark Greco

Re: no written response to letter dated 4/18/06

Dear Sirs,

We have yet to get a response to our letter dated 4/18/06, please provide written confirmation on the following;

1. When do you intend to remove the Mobil brand from our Delmar location?
   (Second request: 1st from letter dated 4/18/06)

2. When can we expect to receive our Mobil incentive money as specified in 2.b. of the contract?
   (Third request: 1st from letter dated 3/15//06 "Specifically we have not received payments Of all moneys owed" 2nd from letter dated 4/18/06 "When can we expect to receive our Mobil incentive money?")

3. Historically we had used the most cost competitive common carrier freight company to haul our fuels. You have been overcharging us on the freight, as we have quotes from the historical carrier that are $.0075 cheaper, including all surcharges than you are billing us for. Do you intend to continue to overcharge us on freight?

We can't make any future business decision without these issues being addressed.

Please send all corespondents in writing to the address above.

Thank You,

Charlie Glenn VP

EXHIBIT "I"



6/5/06

# GLeS, Inc.
## t/a
## Sweet Oil Company

Chesapeake Products & Services Inc.                    June 5, 2006
Mr. Charlie Glenn
PO Box 311
Laurel, Delaware
19956

Dear Sir,

      I am in receipt of a letter today dated May 22, 2006 titled "no response to letter dated 4-18-06" and do not understand as we have addressed these items in several previous letters dated (1) March 20, 2006 in which I addressed your freight concerns (see copies attached of price breakdown spreadsheets sent to you on your request in September 2005) and questioned your basis for accusing us of overcharging you, as well as addressing any monies due to you from Sunoco (as successor to your Mobil agreement) as they are paid to you as we receive them from Sunoco (see attached submittals for the 4th quarter 2005, and the 1st quarter 2006), and (2) May 16, 2006 outlining Sunoco's conversion incentive program. Additionally, we have communicated through a multitude of email messages informing you of the purchase of all Mobil rights by Sunoco and their approval of assumption of rights by the FTC in which we addressed these issues, as well as the providing you with faxes of Sunoco's credit card processing fees and Honor All credit card conversion program, and VSAT agreement, all of which are attached to this letter again for your files, as well as providing you with Sunoco's market share report to help you feel good about your conversion (also attached to this letter).

We have previously been instructed by your brother Bill that you haven't decided whether you will be converting to Sunoco or buying out your contractual obligations. Adam furnished to Bill, Sunoco's brand substitution incentive program (and I followed up by sending another copy to the site by fax on May 16, 2006) but received no response. We have sent many notices in addition to the notices sent to you by ExxonMobil and Peninsula Oil of Sunoco's intention to stop supporting the Mobil credit card network, and the roll over to their network which began in December of last year.

You received a quote from JCV outlining your cost to upgrade your system to become compatible with the new network (approx cost $4500.00) almost a year ago. In my May 16th letter, I informed you it was our intention to convert all of our other Mobil sites to the Sunoco brand beginning this month, stating "We would like your station to begin the brand conversion process in June so your new incentive program can be effective July 1st when your current incentive program payments end.", however we never received a response from you regarding your acceptance or rejection of the program.

You sent me another copy of your Delmar contract with your April 18, 2006 letter which states in paragraph 8 labeled "Brands" in which a case arises whereby the Mobil brand becomes unavailable, both you and Sweet Oil would mutually agree on a replacement brand. This is not the case, as Mobil has become Sunoco in the Mid-Atlantic states by FTC decree. We came to you as a courtesy and asked for your input regarding this event. We were told you reserved your right to buy-out the recapture agreement as provided in your contract and were evaluating whether or not you would consent to becoming Sunoco.

We would like to convert your Mobil signs to Sunoco this month, but are waiting for you to respond to us with your intentions. We will **not** move forward until we hear from you. By your letter asking when we will

– 2 –

June 5, 2006

remove the Mobil sign, are you granting approval to convert to Sunoco?

**Do you cons**··· **being converted to Sunoco?** If so we will begin immediately with ordering materials and will paint your facility to Sunoco specs. If not, we should get together for a meeting to discuss your intentions as soon as possible.

We look forward to your response.

Sincerely Yours,

Mark L. Greco

EXHIBIT "J"

6/20/06

Chesapeake Products and Services Inc.
P.O. Box 311
Laurel, DE 19956
302-875-6014

6/20/06

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re: Peninsula Oil Co., Inc. And Chesapeake Products and Service, Inc. Dealer Agreement
    Motor Fuels dated 10/3/02

Dear Sirs,

 We are in receipt of your letter dated June 5, 2006.  It has never been our intent and we are not granting approval to change our branded location to Sunoco, or buy out our contract.  The FTC decree does not mandate that we change to Sunoco, nor does our contract require this brand change.  We have spent four years building up our Exxon/Mobil credit card base, only to see the brand threatened to be removed from our location. You have still never answered when you intend to remove the brand from our location, or when the brand will become unavailable.


Since your company has taken over our contract: You have been overcharging us on freight, and claim to have addressed this by stating that "the delivery to our location is not subject to audit under the contract".  Although in a previous letter you had agreed to have our product delivered by the least expensive common carrier as was done historically without adding on a carrier administration fee that we have never agreed to pay, and is not charged by any other common carrier.  You have failed to pay us three cents per gallon incentive money due us for the last ten months, and your letter states you intend to pay us only two cents per gallon.  You tried to get us to pay $4500.00 for credit card processing changes by saying they were Mobil upgrades, when in fact it would have switched us over to the Sunoco credit card network, which you now state Sunoco will pay for.

We can't make any future business decisions without these issues being addressed.


Thank You

Charlie Glenn VP

EXHIBIT "K"

So - Delmar

Page 1

6/28/06

**From:** LOVE, DOLORES<DLOVE@sunocoinc.com>
**To:** mgreco@sweetoil.com
**Date:** 6/20/2006 11:22:00 AM
**Subject:** Delmar

Mark:
Please give me a status on this site. Now that they are not processing credit cards, they are in violation of their contract. You should no longer supply
them Mobil branded gas and the sign needs to be bagged until we can get it debranded or preferably converted to Sunoco. Should they decide not to
convert to Sunoco immediately, I will have to have the penalty clause in their contract reviewed and any penalties due will have to be paid.

Please contact Tania Kahmer for the sign bag. Either way, this sign needs to be bagged.

Dolores Love
936 Skyline Drive
Chester Springs, PA 19425
Telephone: 610-220-5768
Fax: 610-827-2041

This message and any files transmitted with it is intended solely for the designated recipient and may contain privileged, proprietary or otherwise private information. Unauthorized use, copying or distribution of this e-mail, in whole or in part, is strictly prohibited. If you have received it in error, please notify the sender immediately and delete the original and any attachments.

**CC:** TKAHMER@sunocoinc.com

Rec Certified
6/29/06

Charlie, Bill,
Please advise,
What is your decision?
[signature]

EXHIBIT "L"

*8/30/06*



*G l . e S ,   I n c .*

*S w e e t   O i l   C o m p a n y*

August 30, 2006

TO ALL Sweet Oil Company owned and/or supplied stations:

In a strategic move to help grow our chain's competitive edge, and as a response to the overwhelming dealer survey as well as in keeping with our commitment to better serve our customers, Sweet Oil Co. has signed preliminary agreements to sell our assets and merge our operations with a company by the name of GPM Investments. GPM owns and operates the Fasmart/Shore Stop franchise and with the addition of our sites will have over 300 locations throughout the mid Atlantic.

After combining our locations with theirs, the company will become the strongest marketer in Delaware and has aggressive plans for immediate additional growth throughout the east coast.

**There will be:**
>   More Market Share
>   More competitive pricing
>   More branding opportunities
>   More growth throughout the east coast

**There will be NO:**
>   Immediate brand changes
>   Personnel changes

Our <u>Entire Chain</u> will benefit from **GPM's buying power** in terms of **guaranteed supply, better pricing,** and **more competitive brand offerings**. We anticipate this transaction to be smooth with absolutely **no interruption of service** to you.

We expect that you may have questions, and have made arrangements to visit your location within the next 24 to 48 hours to discuss in more detail this exciting news.

Thank you for your support,
Sweet Oil Company
Mark Greco
Ben LeRoy
Bill Sweet

EXHIBIT "M"

AGENCY AGREEMENT

This is a Agency Agreement, entered into this _____ day of _____, A. D. 1976, between Peninsula Oil Company, Inc., a corporation of the state of Delaware, hereinafter referred to as "principal"

-AND-

BCG Inc.  DBA The Laurel Oasis

hereinafter referred to as "Agent."

Now, witnesseth, Principal agrees to appoint Agent custody of certain petroleum products and equipment listed in the Equipment Loan Agreement dated _____ and _____ installed on Agents real estate located at ___Route 13, Laurel, Delaware._____

subject to the following uses, covenants and conditions:

1) The term of the agreement shall be for a period of 10 years, commencing the 1st day of Feb. A D 1990, to the 31st day of Feb. A D 19__ Should the Agency continue at the expiration of the above noted term, the Agency shall thereafter continue on a year-to-year basis until either party thereafter gives sixty (60) days notice prior to the expiration of the term or extension indicating termination of the Agency.

2) It is understood and agreed among the parties hereto that the oil and gas pumps and other equipment used and needed in the dispensing of oil and motor fuel products shall be and remain under the exclusive owner- ship and control of Principal with the exception that Agent shall dispense the motor fuels supplied by Principal through the equipment owned by Principal.

3) Principal shall supply and maintain, at its own expense and cost, all motor fuel contemplated to be dispensed during the regular business hours of the Agent.  Agent shall maintain daily records of the motor fuels which are dispensed.  Agent shall pay to Principal net 10 days from billing the sums received from the sale of gasoline and Agent will pay for diesel fuel 10 days from the billing date.

4) In the dispensing of gasoline , the price of such fuel shall at all times be under the absolute control of Principal.

(1)

~~The principal shall pay agent not less than one cent (.01¢) per gallon of motor gasoline sales as dispensed through the~~

equipment of the Principal
* 1 - No-Lead Gasoline - .04 cents per gallon
   2 - No-Lead Plus Gasoline - .04 cents per gallon
   3 - Premium no-lead Gasoline - .06 cents per gallon.

6) Agent shall be open for business a minimum of One Hundred Twenty-Six

(126) hours per week and at least a portion of all seven (7) days of each

week.

~~7) Agent shall maintain liability insurance in a sum no less than Two Hundred Fifty Thousand Dollars ($250,000.00) for one (1) person per occurrence, Five Hundred Thousand Dollars ($500,000.00) per occurrence, and Fifty Thousand Dollars for property damage per occurrence, to protect both the Agent and the Principal against any claims filed by any persons, companies, organizations or individuals arising out of the use, lease or ownership of the said property. Each party shall maintain whatever insurance it desires to protect against loss of its equipment or to protect against any liability which may arise against either party from their own acts, omissions or conduct.~~

8) Agent shall not permit refuse to accumulate upon the premises but shall at all times maintain the building and surrounding premises, which shall include the entire area covered under this Agreement, free of refuse. Additionally, Agent shall at all times comply with all local, county, state and federal regulations applicable in the operation of its business.

9) All signs proposed to be erected by the Principal upon the premises herein demised shall be first approved by the Agent before such erection. Such signs shall be in accordance with the local Planning and zoning regulations and at all times in conformity with all city, county, state or federal laws. Agent shall not unreasonably withhold its consent to the erection of signs which in all ways comply with all local city, county and state and federal regulations.

10)  It is further convenanted and agreed that if the Agent shall
                    from gasoline
fail to pay over the daily receipts intact or shall otherwise fail to comply
with the conditions set forth herein, when and as the same should be done and
as and when the same shall fall due and become due, or shall fail to keep and
perform any of the covenants or agreements herein contained, then the Principal,
at its option, may terminate the Agency and shall have the right to remove all
equipment listed in the Equipment Loan Agreement dated  2/13/90  and
Principal's gasoline.

    11)  Agent covenant and agree that they shall not at any time
            Principal's
dispose of ⋀ inventory, property or equipment except in the usual course
of business when they are delinquent in any manner in the payment of any sums
specified in this agreement.

equipment listed in the Equipment ⋀ and shall, in its sole discretion, supply the
                    Loan Agreement dated  2/13/90

The equipment listed in the Equipment at all times be maintained

that Agent shall at all times during the hours of business have available proper
personnel to dispense the motor fuels which will be available on the premises
for sale as supplied by Principal during the minimum business hours as set forth
herein.  13)  This Agency Agreement is expressly subject to the terms and conditions
of the Recovery Agreement dated  2/13/90 .
    14)  This agreement shall be binding upon the parties hereto, their
heirs, successors, administrators and assigns.

    IN WITNESS WHEREOF, the parties hereto have set their hands and seals,
the day and year aforesaid.

                                        By: _____

Attest: _____        _____ Pres
                                        for BGG, Inc
        _____        _____ VP for Blue

                                (3)

3/76

# TEXACO RETAILER TRAVEL CARD AGREEMENT

Agreement made this _____ day of _____, 19__, between TEXACO INC., a Delaware corporation, having offices at 303 Fellowship Rd., Moorestown, N.J. 08057 (hereinafter called "TEXACO") and BCG, Inc. DBA The Laurel Oasis (hereinafter having a place of business at Toute 13, Laurel, Del. 19956 (hereinafter called "Retailer");

## WITNESSETH THAT:

WHEREAS, Retailer is engaged in the sale of Texaco petroleum products at the above address in connection with which Retailer wishes to avail himself of the benefits of Texaco's Travel Card Program; and

WHEREAS, Texaco is willing to authorize Retailer to honor Texaco Travel Cards and hereinafter set forth:

IT IS THEREFORE AGREED:

(1) Authorized Travel Card Transactions. Texaco hereby authorizes Retailer to honor at his place of business unexpired and uncancelled Texaco Travel Cards and any other special credit cards authorized by Texaco, for the sale on credit of the following goods and services:

(a) All Texaco brand products for motor vehicles, watercraft, home and gardens, but sales of motor fuel may not exceed the capacity of the vehicle's or craft's fuel tank, plus an additional 26 gallons of motor fuel or one case of motor oil.

(b) Other merchandise sold by Texaco to Retailers or Retailer's suppliers for resale. Tires, tubes, batteries and automotive accessories must be mounted on the vehicle or craft at time of sale. If customer wishes, TBA purchases may be made under Texaco's Time Charge Plan.

(c) Marfak lubrication, Texaco rustproofing, car washing and polishing services.

(d) Emergency and/or mechanical repairs including all parts, labor, and services to a maximum of $250.00 provided that such equipment is attached to or mounted on the vehicle or craft. If customer wishes, such purchases may be made under Texaco's Time Charge Plan.

Credit Cards issued by Texaco Puerto Rico Inc. and Texaco Canada Limited may be honored in the same manner as Texaco Travel Cards, except that Texaco Time Charge Plan purchases are not authorized.

Credit Cards other than those referred to above may be honored only in accordance with special written authorization issued to Retailer by Texaco from time to time.

Texaco may tentatively credit to Retailer's account the face value of invoices remitted by him, reserving the right to charge back to his account, within nine (9) months of date of sale, the face value, or any portion thereof, of unauthorized, illegible, improperly prepared and disputed invoices, as more fully set forth in (3) below.

(2) Requirements of a Valid Travel Card Transaction. When a travel card bearing an expiration date is presented, Retailer must check the date to be sure the card is currently valid.

Retailer must seek approval of credit sales of a certain dollar amount as designated by special written notification by telephoning Texaco's Authorization Center; and if credit is approved, Retailer will record on the invoice in the space marked "Authorization Code", the authorization code number furnished. If the sale is disapproved, Retailer will be requested either:

(a) "DO NOT HONOR CARD"

(b) "PICK UP CARD—$20 REWARD."

(c) Since Retailers are independent businessmen, Texaco does not have the right to tell them how to conduct their private business affairs. However, this Agreement will serve to confirm that Texaco has not and will not request and does not authorize any Retailer to accuse any person of a crime or to file any complaint, civil or criminal, against any person for or in Texaco's name arising out of any credit card or other transaction. The instructions furnished by Texaco's "Charge Authorization Center" in connection with credit card transactions is not intended in any way to represent that any person has violated any law or ordinance.

It is suggested that a Retailer not take steps to be sure that any accusations, file a complaint or otherwise cause the arrest of a customer without first consulting his personal attorney.

After filling in the details of the transaction legibly with a ballpoint pen or pencil, Retailer must insert the invoice and the purchaser's travel card in the imprinter and imprint the travel card account number, the purchaser's name and the total amount of the transaction on the invoice. The written and imprinted totals must agree. If they do not, the imprinted amount shall prevail). The customer must then sign the invoice for the products and services and to confirm the accuracy of the completed invoice.

The Texaco Travel Card imprinter is the property of Texaco Inc. and may be used by Retailer only to imprint Texaco invoices with Texaco Travel Cards and any other special credit cards authorized by Texaco.

(3) Texaco's Chargeback Rights. Texaco may charge back to Retailer's account, within nine (9) months of date of sale, the face value, or any portion thereof, of invoices:

(a) Bearing an illegible travel card number or pricing entries;

(b) Imprinted with an expired travel card;

(c) With missing entries or notations where entries or notations are required by this Agreement;

(d) Remitted by Retailer more than 30 days after the date of purchase;

(e) In amount as specified which does not bear an authorization code number;

(f) Covering general repairs or replacements, mechanical and body work not specifically authorized by Texaco;

(g) Covering sales which subsequently become the subject of disputes between Retailer and his customers, except disputes solely involving the quality or performance of Texaco products.

(h) With a customer's name signed by Retailer or one of his employes without the authority of the travel card holder;

(i) Covering fraudulent sales or other activities by Retailer or his employe whether done alone or in concert with others;

(j) Covering sales made contrary to special written instructions from Texaco to Retailer; and

(k) Bearing incorrect, illegible, or missing license number or state of issue entries.

(l) In any other manner not authorized by or conforming to this Agreement.

From time to time new styled travel card invoices are furnished by Texaco to Retailers. Upon receipt of the new forms all obsolete travel card invoices should not be used. Any credit card sale made on an obsolete invoice will be subject to charge back three (3) months after notification.

Texaco will return, or furnish the Retailer with photocopies of unauthorized, illegible, improperly prepared and disputed invoices which are charged back.

(4) No Waiver of Chargeback and Termination Rights. It is understood that failure by Texaco to charge back to Retailer any such invoices from time to time shall not operate as a waiver of its right thereafter to charge back any invoices, within nine (9) months of the date of sale, which may thereafter be prepared in violation of the provisions of this Agreement and shall not operate as a waiver by Texaco of its right to terminate this Agreement or any other contractual arrangements between Texaco and Retailer relating to the place of business at the above address.

(5) In line with this Agreement, it is recommended that the Retailer refer to the booklet Form S-452 (Retailer) "Information on the Handling of Texaco Travel Card Transactions".

(6) Other Agreements Between the Parties. Retailer understands and agrees that any material violation of the provisions of this Agreement shall give Texaco the right, in addition to all other rights it may have hereunder, to terminate forthwith any or all other contractual arrangements between Texaco and Retailer relating to the place of business at the above address.

(7) Modification and Termination. Texaco reserves the right to modify this Agreement by written notice to Retailer. Texaco reserves the right to cancel this Agreement at any time and to repossess its travel card imprinter, other travel card equipment, completed and blank invoices and other travel card forms. This Agreement shall terminate automatically upon the termination or cancellation of the Agreement of Sale under which Retailer buys petroleum products from Texaco.

(8) Annual Travel Card Service Charge. The Retailer agrees to pay an annual charge for Texaco Travel Card service. The charge shall equal one-half of one percent (.5%) of the total amount of Texaco Travel Card and affiliated credit card invoices submitted by Retailer to Texaco during a representative month, selected by Texaco in each calendar year, but in no event shall the annual Travel Card service charge exceed thirty-six dollars ($36.00).

TEXACO INC.

by _____

_____
Retailer

EXHIBIT "N"

## EQUIPMENT  LOAN  AGREEMENT

Made this _13th_ day of _FEB_ 19 _90_

by and between THE PENINSULA OIL COMPANY, a body corporate of the State of Delaware, with offices. at Seaford, Delaware, hereinafter called the "SELLER" and

BCG Inc. DBA The Laurel Oasis _____ of _____ Laurel, Del.

hereinafter called "CUSTOMER" owning or leasing premises above.

No. 1  EQUIPMENT:  Seller agrees to lend and hereby lends to Customer the equipment installed at the above premises for the active and continuous storage, handling and dispensing of Seller's products ex-clusively, as follows:

| QUANTITY | EQUIPMENT |
|---|---|
| 1 | Automated Texaco Credit Card Machine |
| 1 | Automated Cascard Credit Card Machine |
| 8 | Electronic Gasoline and DIesel Fuel dispensers |
| 1 | Electronic Console system for Motor Fuel Sales |
| 1 | 2 pole Texaco ID sign, Module Sign, Island Canopy and signs |
| 1 | Texaco Moduler ID sign |

Said equipment shall remain the property of the Seller and be considered and treated as personal property and in no sense fixtures or part of the real estate regardless of the manner in which the same may be installed or placed on premises. Customer hereby acknowledges receipt of said equipment and agrees not to remove same without written consent, and guarantee to return said equipment upon expiration or termination of contract in good condition and without loss or impairment of Seller's title thereto unless title has been acquired by Customer under bill of sale.

No. 2  MAINTENANCE.  Customer shall maintain said equipment in good condition and in event of partial or total destruction of all or any of the same, shall reimburse Seller for damaged equipment or cost of replaced or restored equipment, which shall become the property of the Seller and be governed by this contract.

No. 3  DEFAULT AND TERMINATION:  If upon the expiration or termination of the contract said equipment is not sold to the Customer or to any other party, the Seller may without notice to the Customer at any time enter upon the premises and remove the equipment.

No. 4  INDEMNITY.  Customer shall indemnify and save the Seller harmless from all liability, cost and expense for any loss, damage, injury or expenses to Customer or any person or property in any way caused by said equipment or any property of the Seller or the use or handling thereof, whether or not due to any im-perfection therein or arising from negligence or otherwise. Customer hereby waives and releases any claim against the Seller hereunder in respect to the foregoing, however caused and for any losses or shortages aris-ing out of the use of any measuring devices furnished or due to any other matter or anything whatsoever.

No. 5  DURATION:  This contract shall continue in effect for a period of _10_ year from the date here-of and thereafter from year to year unless terminated at the end of the initial period or any such subsequent year by either party upon sixty days prior written notice to the other party at their above respective addresses.

No. 6  ADDITIONAL EQUIPMENT:  Any and all additional equipment loaned or installed or placed for the use of the Customer, shall be deemed to be loaned upon the terms and conditions of this agreement during the period of this contract.

No. 7  ASSIGNMENT:  This contract is not assignable by the Customer but otherwise is binding on and for the benefit of the Customer and the Seller and respective legal representatives, successors and assigns.

In Witness whereof, the parties have duly executed this agreement the above day and year.

THE PENINSULA OIL COMPANY

By _____

Witness

_____                Customer _____

_____                _____

EXHIBIT "O"

# PENINSULA OIL CC Inc

PLANTS:

SEAFORD
HARRINGTON
MILLSBORO
MILFORD
GEORGETOWN



DISTRIBUTORS OF

## Heating Oils - Gasoline
## Lubricants

P. O. BOX 389
SOUTH MARKET STREET
SEAFORD, DE. 19973
(302) 629 - 3001
Fax (302) 629-3870

November 15, 1993

William Glenn
Charles Glenn
T/A Laurel Oasis
Rte 13
Laurel, DE 19956

As per our meeting on November 9, 1993 we agree to participate in the following improvements at your Rte 13 facility.

An expenditure in the amount of $130,000 towards the purchase and installation of new pumps, canopy, console, signage, etc. needed for the resale of motor fuels.

An extension of your present contract by eight years which will now expire in January 31, 2008.

The signing of a new recovery agreement with the 31,249.85 remainder of the existing payout, and the $130,000 we are agreeing to expend with this new arrangement for a total of $161,249.85 to be recovered at the rate of $948.53 per month for 170 months ending 1/31/2008.

Yours truly,
PENINSULA OIL CO., INC.

Donald W. Williams

pt

EXHIBIT "P"

# PENINSULA OIL CO., Inc.

### DISTRIBUTORS OF

## Heating Oils – Gasoline
## Lubricants
## Burner Services

PLANTS:
SEAFORD
HARRINGTON
DAGSBORO
MILFORD
GEORGETOWN

P. O. BOX 389
SOUTH MARKET STREET
SEAFORD, DE. 19973
(302) 629-3001

Date _2/13/90_

This agreement is between Peninsula Oil Co., Inc., of Seaford, Delaware, and BCG, Inc. - DBA THe Laurel Oasis of Laurel, Del.

Purchase price of gasoline shall be the retail posted prices less commissions as outlined in the Agency Agreement. (dated _2/13/90_ ) Diesel Fuel price will be our posted transport price at time of delivery.*

Terms of payment will be cash or net ten (10) days. All deliveries to be made by transport truck upon 24 hours notice by buyer or at the convenience of Peninsula Oil Co., Inc. This agreement is expressly subject to the Agency Agreement and the Recovery Agreement of even date.

In consideration of the installation of pumps and other equipment as specified in the "Equipment Loan Agreement", BCG, Inc. - DBA THe Laurel Oasis agrees to purchase all gasoline motor fuels and diesel fuels exclusively from Peninsula Oil Company for a period of ten (10) years from the date of this agreement and thereafter from year to year until either party shall give the other written notice of cancellation at least sixty (60) days prior to the anniversary date.

Accepted _Charlie Senn VP_ (SEAL)     By _____
                                                    Peninsula Oil Company, Inc.
Accepted _Gene BcG Tree_ (SEAL)          Seaford, Del.

*Not to exceed Salisbury Md. prices by more than .02¢ per gallon.

## ASSENT OF OWNER OR MORTGAGEE

The owner and the mortgagees of the premises described in the foregoing agreement, here called the "Undersigned" hereby consents to said agreement and to all installations of equipment, whether as therein set forth and provided for and now or hereafter made thereunder or otherwise, and agree that no claim shall be made to said equipment by the undersigned, the heirs, legal representatives, successors or assigns of the undersigned and that the undersigned have (had) no mortgage lien upon said property and that said property shall be exempt from levy, sale, attachment or distress and that Peninsula Oil Company, its successors and assignes, may at any time enter upon said premises with such appliances and agents as it may deem necessary in accordance with Delaware law to. remove therefrom any or all of said property.

Signed and sealed this _13th_ day of _FEB_ 19 _90_

_____ for BcGFee (SEAL)
_Charlie Senn VP for BCG Inc._

_____     _____ (SEAL)

EXHIBIT "Q"

PENINSULA OIL CO., INC.
SEAFORD, DELAWARE

## CREDIT CARD LOAN EQUIPMENT AGREEMENT

This agreement made this 16th day of _March_ 19 94 and by and between _Peninsula Oil Co Inc_ _B&G Inc TA Laurel Oasis_ of _Laurel, De 19956_ hereafter called retailer owning or leasing premises above.

The monthly charges for leasing this _____ automated Credit Card Terminal with electronic printer will be as follows:

1.) ~~Terminal and Printer Fee~~
2.) ~~Bank Terminal Access Fee~~
3.) ~~Express Maintenance Fee~~

~~Total Monthly Fee~~

~~(Note: Bank Terminal Fees and Express Maintenance Fees are subject to any changes that the Bank or Credit Card Company may make from time to time.)~~

This agreement shall be in effect for _14_ years, commencing on _March 16, 1994_ and ending on _Jan 31, 2008_.

Retailer agrees to be responsible to _Peninsula Oil Co Inc_ for the performance of his employees using the automated system and all conditions set forth in _the Isfaco_ manual of "Handling Credit Cards" and any further changes they may make to the program from time to time.

PENINSULA OIL CO., INC.

BY _____

_____
Witness

_____
Witness

_B&G Inc._
Retailer

EXHIBIT "R"



# FAX COVER SHEET



Sweet Oil Company
GLeS, Incorporated
2604 Eastburn Center
Newark, DE 19711
Phone: 302-368-9095
Fax: 302-368-9045

| Company Name: Laurel Oasis CITGO | From: Chad |
|---|---|
| Attention: Shelly Domingo | Date: 12·6·05 |
| RE: Prices | Number of Pages-Including Cover Page: 2 |
| Fax Number: 1-302-875-6010 | Phone Number: (302) 368-9095 |
| | |

[ ] URGENT   [ ] REPLY ASAP   [✓] PLEASE REVIEW   [ ] FOR YOUR INFO

**COMMENTS:**

Shelly,

Per your request I am faxing you Laurel Oasis Citgo's Diesel price for today.

~~Also I am receiving your messages regarding~~ the retail gasoline prices. I personally can not (do not have the authority) determine what gas price should be posted at the station. I have been passing your notes on to the appropriate staff. They have met with the owner(s) of Laurel Oasis regarding this issue. If you have any other question or concerns, feel free to contact myself and/or Adam Gray 1-410-430-5216.

Sincerely,
Chad

# Laurel Oasis CITGO

(Daily Sales Reconciliation)

Date: 7 13 /2006

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| (gallons) | 935.331 | 105.589 | 40.289 | 177955 | |
| Price: Laurel Oasis | $ 3.09 | $ 3.19 | $ 3.29 | $ | $ |
| Shell Sunoco | 2.99 | 3.09 | 3.19 | | |
| Exxon | 2.99 | 3.09 | 3.19 | | |
| Royal Farms | 2.91 | 3.01 | 3.11 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| ...ses (gallons) | | | | | |
| ...ing Inventory | | | | | |
| ...: Inventory | 6789 | | 2456 | 17,731 | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |
| | | | | |
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |

Deposit Amount  $

Store Sales: _____

Lottery Sales: _____

Date _____  Deposit Amt: $ _____

*Shelly Domingo*

## Laurel Oasis CITGO

### (Daily Sales Reconciliation)

\#: _____

\tal: _____

Date: | 6 / 22 / 2005 |

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| (gallons) | 197,155 | 144.345 | 116.348 | 14,205 | 328 |
| Price: Laurel Oasis | $ 2.94 | $ 3.09 | $ 3.19 | $ | $ |
| Shell | 2.85 | 2.95 | 3.05 | | |
| Sunoco | | | | | |
| Exxon | 2.85 | 2.95 | 3.05 | | |
| Royal Farms | 2.85 | 2.95 | 3.05 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| ...ses (gallons) | | | | | |
| ...ning Inventory | | | | | |
| ...g Inventory | | | | | |

|  | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |

| | Shift Report | |
|---|---|---|
| EPOS | $ | |
| House Acct | $ | |
| Manual CC | $ | |
| Gas Card | $ | |
| Fuelman | $ | |
| Total Card Sales | $ | |

Deposit Amount | $ |

Store Sales: _____

Lottery Sales: _____

Date: _____  Deposit Amt: $ _____

*Shelly Domingo*

# Laurel Oasis CITGO

Cash Sales Reconciliation

Date: 6 8 2006

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| Gallons | 103.05 | 103.975 | 26.484 | 6238.862 | |
| Laurel Oasis | 2.99 | 3.14 | 3.19 | | |
| Shell | 2.93 | 3.03 | 3.13 | | |
| Exxon | 3.03 | 3.03 | 3.13 | | |
| Royal Farms | 2.89 | 2.99 | 3.09 | | |

Veeder Root
11:00 pm    4514           2527.8645
6/7/06

Shift Report        Manual Price Description

Shelly Domingo

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

2006

Date: 4/13/2005

VOL #: _____

Terminal: _____

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) 4/12 | 1279.566 | 79.358 | 80.104 | 4851.577 | |
| Retail Price, Laurel Oasis | $ 2.64 | $ 2.74 | $ 2.84 | $ | $ |
| Shell Sunoco | 2.59 | 2.69 | 2.79 | | |
| Exxon | 2.59 | 2.69 | 2.79 | | |
| Royal Farms | 2.59 | 2.69 | 2.79 | | |
| | 2.59 | 2.69 | 2.79 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 2387 | | 3137 | 12,395 | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |
| | | | | |
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |

Deposit Amount $ _____

Store Sales: _____   _____

Lottery Sales: _____   _____

Date: _____ Deposit Amt: $ _____

Shelly Domingo

Ter. 9.2005 09:13 3023689045                SWEET/OIL                                    2

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

BOL #: _____                              Date: [ 4 / 12 / 2005 ]

Terminal: _____ ___

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) 4/11 | 1237.051 | 76.174 | 69.389 | 7312.398 | |
| Retail Price: Laurel Oasis | $ 2.64 | $ 2.74 | $ 2.84 | $ | $ |
| Shell Sunoco | 2.59 | 2.69 | 2.79 | | |
| Exxon | 2.59 | 2.69 | 2.79 | | |
| Royal Farms | 2.59 | 2.69 | 2.79 | | |
| Shot Stop | 2.59 | 2.69 | 2.79 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory → | 3554 | | 3262 | 9964 | |

11:15 AM →

| | Shift Report | | Memo / Brief Description |
|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards: $ |
| Car Wash | | | |
| Total Sales | | | |
| | | | |
| EPOS | $ | | |
| House Acct | $ | | |
| Manual CC | $ | | |
| Gas Card | $ | | |
| Fuelman | $ | | |
| Total Card Sales | $ | | |
| | | | |
| Deposit Amount | $ | | |

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

Per our contract it states that we must be competive with our
Competition. Please price us competirely. WE ARE .05 cents
higher than our comptors.
PER YOUR request dated 4/11/06 Sunoco is not our
Competion the are a fuell Service Station only.
[illegible] Royal Farms and Shop axis our Competition.

APR.11.2006 09:23 3023689045          OASIS TRAVELPLAZA     #5195 P.001/001
                                                            PAGE  01
                                                            #2250 P.002/002

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

*Please fill in Price Survey Especially "Sunoco"*

Thank you Cheel

BOL #: _____

Terminal: _____

Date: 4 / 11 / 2006

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| **Sales (gallons)** | 1270733 | 72.888 | 80.882 | 5474.498 | |
| **Retail Price:** Laurel Oasis | $ 3.54 | $ 3.69 | $ 3.79 | $ | $ |
| Sunoco | | | | | |
| Exxon | | | | | |
| Royal Farms | | | | | |
| | | | | | |
| **Purchases (gallons)** | | | | | |
| **Beginning Inventory** | | | | | |
| **Ending Inventory** | 5149 | | 5371 | 10176 | |

7:26 AM
4/11

| Shift Report | | Memo / Brief Description | |
|---|---|---|---|
| **Fuel Sales** | $ | NET Credit Cards | $ |
| **Car Wash** | | | |
| **Total Sales** | | | |
| | | | |
| **CITGO** | $ | | |
| **House Acct** | $ | | |
| **Manual CC** | $ | | |
| **Gas Card** | $ | | |
| **Fuelman** | $ | | |
| **Total Card Sales** | $ | | |

Deposit Amount: $ _____

Store Sales: _____

Lottery Sales: _____

Date: _____     Deposit Amt: $ _____

*Shelly Domingo*

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

BOL #: _____

Terminal: _____

Date: | 4 | 10 | ~~2005~~ 2006

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) | 1087.663 | 121.220 | 149.159 | 3142.68 | |
| Retail Price: *Laurel Oasis* | $ 2.59 | $ 2.69 | $ 2.71 | $ | $ |
| *Sunoco* | .253 | 3.63 | 2.73 | | |
| *Exxon* | | | | | |
| *Royal Farms* | .253 | 2.63 | 2.73 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 1073 | | 3463 | 15029 | |

10:00AM

| | Shift Report | | Memo / Brief Description |
|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards $ |
| Car Wash | | | |
| Total Sales | | | |
| | | | |
| EPOS | $ | | |
| House Acct | $ | | |
| Manual CC | $ | | |
| Gas Card | $ | | |
| Fuelman | $ | | |
| Total Card Sales | $ | | |

| | | |
|---|---|---|
| Deposit Amount | $ | |

Store Sales: _____

Lottery Sales: _____

Date: _____    Deposit Amt: $ _____

Shelly Domingo

Chad When I get the paperwork for 4/7/06
that gets Dated for 4/8/06 I will send
it to you. TY Shelly

# Laurel Oasis CITGO

(Daily Sales Reconciliation)

Date: 4 / 4 / 2006

| | Regular | | Plus | | Super | | Diesel | | Kerosene | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Price $ | Gal | Price $ | Gal | Price $ | Gal | Price $ | Gal | Price $ | Gal |
| Opening () | 856.059 | | 31.154 | | 105.235 | | 4,689.034 | | | |
| Laurel Oasis | $2.59 | | $2.69 | | $2.79 | | $ | | $ | |
| Sunoco | 2.44 | | 2.54 | | 2.64 | | | | | |
| Exxon | 2.44 | | 2.54 | | 2.64 | | | | | |
| Royal Farms | 2.44 | | 2.54 | | 2.64 | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| Sales (gallons) | | | | | | | | | | |
| Closing Inventory | | | | | | | | | | |
| Opening Inventory | 8168 | | | | 4113 | | 9271 | | | |

5:5 Am

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | Ret Credit Cards | $ |
| Non Cash | | | | |
| Total Sales | | | | |
| | | | | |
| | $ | | | |
| Fuel Gal | $ | | | |
| Mobil Oil | $ | | | |
| Gas Card | $ | | | |
| | $ | | | |
| Total Card Sales | $ | | | |

Deposit Amount $

Store Sales

Lottery Sales

Date: _____ Deposit Amt $ _____

Shelly Domingo

La

(Dally Sales Reconciliation)

Date: 3 / 29 / 2006

L #: _____

minal: _____

| | Regular Price: $ | Plus Price: $ | Super Price: $ | Diesel Price: $ | Kerosene Price: $ |
|---|---|---|---|---|---|
| les (gallons) | 932.646 | 12.297 | 54.420 | 7299.734 | |
| tail Price: *Laurel Oasis* | $ 2.44 | $ 2.54 | $ 2.64 | $ | $ |
| *Sunoco* | | | | | |
| *Exxon* | 2.37 | 2.47 | 2.57 | | |
| *Royal Farms* | 2.35 | 2.45 | 2.55 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| rchases (gallons) | | | | | |
| ginning Inventory | | | | | |
| ding Inventory | 3028 | | 1598 | 15 787 | |

| Shift Report | | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |

| | | |
|---|---|---|
| EPOS | $ | |
| House Acct | $ | |
| Manual CC | $ | |
| Gas Card | $ | |
| Fuelman | $ | |
| Total Card Sales | $ | |

Deposit Amount $

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

PER Our contract it States we must be compative!
Are we going to price our gasoline compative ore not?
These prices have been 10-20 cents higher for the
last 8 months!    Thank you

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

Date: 1 / 19 / 2006

OL #: _____

rminal: _____

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| ales (gallons) 1/18 | 502.192 | | 18-724 | 1364.738 | |
| etail Price: Laurel Oasis | $ 2.39 | $ 2.49 | $ 2.59 | $ | $ |
| Sunoco | 2.29 | 2.39 | 2.49 | | |
| Exxon | 2.25 | 2.35 | 2.49 | | |
| Royal Farms | 2.24 | 2.34 | 2.49 | | |
| | 2.24 | 2.29 | 2.49 | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory 1/19 | 3413 | | 5281 | 9097 | |

| Shift Report | | Memo / Brief Description |
|---|---|---|
| Fuel Sales | $ | NET Credit Cards $ |
| Car Wash | | |
| Total Sales | | |

| | |
|---|---|
| EPOS | $ |
| House Acct | $ |
| Manual CC | $ |
| Gas Card | $ |
| Fuelman | $ |
| Total Card Sales | $ |

Deposit Amount $ _____

Store Sales: _____

Lottery Sales: _____

Date: _____  Deposit Amt: $ _____

MR. SWEET,
This is what these prices HAve done to gas
Sales. Can you Just Imagine what it has
done to my Store Sales.?? Thanks
Shelly M. Jimenez Domingo

P.19.2005 09:13 3023689

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

Date: 1 / 14 / 2005

)L #: _____

rminal: _____

| | Regular | | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|---|
| | Price: $ | Price: | Price: $ | Price: $ | Price: $ | Price: $ |
| les (gallons) | 1183.143 | | 135.169 | 155.641 | 5072.599 | |
| etail Price: Laurel Oasis | $ 2.39 | $ | 2.49 | $ 2.59 | $ | $ |
| Sunoco | 2.29 | | 2.39 | 2.49 | | |
| Exxon | 2.25 | | 2.35 | 2.45 | | |
| Royal Farms | 2.29 | | 2.39 | 2.49 | | |
| ShueStop | 2.29 | | 2.39 | 2.49 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| urchases (gallons) | | | | | | |
| eginning Inventory | | | | | | |
| nding Inventory | 1648 | | | 5787 | 10874 | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |
| | | | | |
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |
| | | | | |
| Deposit Amount | $ | | | |

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

Chad,
We are .10¢ to .14¢ Higher than
everyone around here. Whats up
With that? Shelley Jimenez Domingo

# La

**(Daily Sales Reconciliation)**

BOL #: _____

Terminal: _____

Date: 12 / 8 / 2005

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) 12/7 | 827.915 | 53391 | 51.083 | 4450.659 | |
| Retail Price: Laurel Oasis | $ 2.14 | $ 2.24 | $ 2.34 | $ | $ |
| Sunoco | 1.99 | 2.09 | 2.19 | | |
| Exxon | 1.99 | 2.09 | 2.19 | | |
| Royal Farms | 1.99 | 2.09 | 2.19 | | |
| Shore Stop | 1.99 | 2.09 | 2.19 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 5008 | | 3879 | 9/00 | |

verder foot

| Shift Report | | Memo / Brief Description | |
|---|---|---|---|
| Fuel Sales | $ | NET Credit Cards | $ |
| Car Wash | | | |
| Total Sales | | | |

| | | | |
|---|---|---|---|
| EPOS | $ | | |
| House Acct | $ | | |
| Manual CC | $ | | |
| Gas Card | $ | | |
| Fuelman | $ | | |
| Total Card Sales | $ | | |

Deposit Amount | $

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

Happy Holidays please lower prices  Shelly Domingo

# Laurel Oasis CITGO

(Daily Sales Reconciliation)

BOL #: _____

Terminal: _____

Date: | 12/5 | 2005

| | Regular Price: $ | Plus Price: $ | Super Price: $ | Diesel Price: $ | Kerosene Price: $ |
|---|---|---|---|---|---|
| Sales (gallons) | 730,419 | 41,930 | 109,674 | 988,636 | |
| Retail Price: Laurel Oasis | $ 2.15 | $ 2.24 | $ 2.34 | $ | $ |
| Sunoco | 1.99 | 2.09 | 2.19 | | |
| Exxon | 1.95 | 2.05 | 2.15 | | |
| Royal Farms | 1.99 | 2.09 | 2.19 | | |
| Shore Stop | 1.99 | 2.09 | 2.19 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 7539 | | 4115 | 15824 | |

| Shift Report | | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |

| EPOS | $ |
|---|---|
| House Acct | $ |
| Manual CC | $ |
| Gas Card | $ |
| Fuelman | $ |
| Total Card Sales | $ |

Deposit Amount | $

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

*Chad -*
*These don't look like very competitive prices here??*
*What's up call me so we can get these prices lowered*
*Shelley Domingo*

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

BOL #: _____

Terminal: _____

Date: | 12 | / | 2005 |

| | Regular Price: $ | Plus Price: $ | Super Price: $ | Diesel Price: $ | Kerosene Price: $ |
|---|---|---|---|---|---|
| Sales (gallons) | 742873 | 55.669 | 108.661 | 51633262 | |
| Retail Price: Laurel Oasis | $ 2.059 | $ 2.099 | $ 2.19 | $ | $ |
| Sunoco | 1.95 | 2.25 | 2.15 | | |
| Exxon | 1.95 | 2.05 | 2.15 | | |
| Royal Farms | 1.96 | 2.05 | 2.15 | | |
| Shore Stp | 1.94 | 2.04 | 2.14 | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 4342 | | 2491 | 7748 | |
| Veeder Root | | | | | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |

| | | | |
|---|---|---|---|
| EPOS | $ | | |
| House Acct | $ | | |
| Manual CC | $ | | |
| Gas Card | $ | | |
| Fuelman | $ | | |
| Total Card Sales | $ | | |

Deposit Amount | $ | |

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

*Shelly Domingo*

CHAD, We have talked about this many times. You are not keeping me competive with the other stations. gas sales have dropped and this is kind of a...

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

BOL #: _____

Terminal: _____

Date: 11 / 30 / 2005

| | Regular<br>Price: $ | Plus<br>Price: $ | Super<br>Price: $ | Diesel<br>Price: $ | Kerosene<br>Price: $ |
|---|---|---|---|---|---|
| Sales (gallons) | 1171.003 | 39.118 | 71.052 | 5208.06 | |
| Retail Price: Laurel Oasis | $ 2.05 | $ 2.09 | $ 2.19 | $ | $ |
| Sunoco | 1.95 | 2.05 | 2.15 | | |
| Exxon | 1.95 | 2.05 | 2.15 | | |
| Royal Farms | 1.95 | 2.05 | 2.15 | | |
| Shorestop | 1.94 | 2.04 | 2.14 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 5250 | | 2.539 | 13136 | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |
| | | | | |
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |
| | | | | |
| Deposit Amount | $ | | | |

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

*Shelly Domingo*

*Chuck Please work on Lowering our prices we are 10¢ and 11¢ Higher than Everyone. Shelly*

EXHIBIT "S"

GLES, INC.   DBA SWEET OIL COMPANY

CPS, Inc.

Pd thru 06/17/06

1010 WSFS

6/21/2006

32,678.01

32,678.01

7305

Paid
Owed    $32, 678.25
33, 446.21
Not    $768.-

| liveries | Invoice | Credit Card | Citgo Owed | Citgo Paid | plus minus | manual | Fee |
|---|---|---|---|---|---|---|---|
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | batch 15 | | | $0.00 | | |
| | | thru | | | $0.00 | | |
| | | batch 33 | $33,446.01 | $33,446.01 | $0.00 | | $768.00 |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | $0.00 | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| | | | | | $0.00 | | |
| ve owe | $0.00 | | $33,446.01 | $33,446.01 | $0.00 | $0.00 | $768.00 |
| hey owe | $32,678.01 | | | | | | |
| sweep | -$32,678.01 | | | | | | |

$33,446.01

## Sweet Oil Company

6/21/2006

Register: Undeposited Funds:37030 - 13959009
From 06/12/2006 through 06/21/2006
Sorted by: Date, Type, Number/Ref

| Date | Ref. | Payee | Account | Memo | Decrease | C | Increase | Balance |
|------|------|-------|---------|------|----------|---|----------|---------|
| | | | | | | | | -29,126.34 |
| 06/12/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/10/06 Citgo ... | 765.03 | | | -35,585.46 |
| 06/12/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/11/06 Citgo ... | 6,459.12 | | | -38,816.44 |
| 06/13/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/12/06 Citgo ... | 3,230.98 | | | -41,119.37 |
| 06/13/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/13/06 Citgo ... | 2,302.93 | | | -44,465 |
| 06/14/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/13/06 Citgo ... | 3,345.85 | | | -8,879.56 |
| 06/15/2006 | 7276 | CPS, Inc. | Cash:1010 WSFS | Pd thru 06/11/06 | | | 35,585.46 | -14,873.55 |
| 06/16/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/14/06 Citgo ... | 5,993.99 | | | -18,279.75 |
| 06/16/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/15/06 Citgo ... | 3,406.20 | | | -22,276.82 |
| 06/16/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/15/06 Citgo ... | 3,997.07 | | | -24,610.30 |
| 06/16/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/16/06 Citgo ... | 2,363.48 | | | -30,618.28 |
| 06/18/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/16/06 Citgo ... | 6,007.98 | | | -32,678.01 |
| 06/18/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/17/06 Citgo ... | 2,059.73 | | | -39,007.78 |
| 06/19/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/18/06 Citgo ... | 6,329.77 | | | -6,329.77 |
| 06/21/2006 | | CPS, Inc. | Cash:1010 WSFS | Pd thru 06/17/06 | | | 32,678.01 | -6,329.77 |

| Term | | Batch | Start | End | Qty | I/O | Type | Gross | Fee | Net |
|---|---|---|---|---|---|---|---|---|---|---|
| 009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 2 | I | POS AMERICAN EXPRESS | $388.52 | $12.62 | $375.90 |
| 69009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 1 | I | POS DEBIT CARD | $26.52 | $0.30 | $26.22 |
| 3959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 7 | I | POS VISA | $892.08 | $15.33 | $876.75 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 5 | I | POS WEX FLEET | $1,090.99 | $33.23 | $1,057.76 |
| Total for Term 01  Batch: 16 Inside Rdr | | | | | 15 | | | $2,398.11 | $61.48 | $2,336.63 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 2 | O | POS AMERICAN EXPRESS | $110.59 | $3.59 | $107.00 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 1 | O | POS CITGO PROPRIETARY | $29.80 | $0.00 | $29.80 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 1 | O | POS MASTERCARD | $53.00 | $1.00 | $52.00 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 15 | O | POS VISA | $462.68 | $9.66 | $453.02 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 1 | O | POS VOYAGER FLEET | $74.71 | $2.34 | $72.37 |
| Total for Term 01  Batch: 16 Outside Rdr | | | | | 20 | | | $730.78 | $16.59 | $714.19 |
| Total for Term 01  Batch: 16 (all) | | | | | 35 | | | $3,128.89 | $78.07 | $3,050.82 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 2 | I | POS DEBIT CARD | $14.24 | $0.60 | $13.64 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 1 | I | POS VISA | $12.05 | $0.34 | $11.71 |
| Total for Term 01  Batch: 17 Inside Rdr | | | | | 3 | | | $26.29 | $0.94 | $25.35 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 1 | O | POS AMERICAN EXPRESS | $35.03 | $1.14 | $33.89 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 1 | O | POS DEBIT CARD | $40.00 | $0.30 | $39.70 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 1 | O | POS MASTERCARD | $23.00 | $0.52 | $22.48 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 2 | O | POS VISA | $60.00 | $1.26 | $58.74 |
| Total for Term 01  Batch: 17 Outside Rdr | | | | | 5 | | | $158.03 | $3.22 | $154.81 |
| Total for Term 01  Batch: 17 (all) | | | | | 8 | | | $184.32 | $4.16 | $180.16 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 2 | I | POS DEBIT CARD | $12.20 | $0.60 | $11.60 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 1 | I | POS MASTERCARD | $97.25 | $1.71 | $95.54 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 2 | I | POS MASTERCARD FLEET | $296.18 | $9.09 | $287.09 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 11 | I | POS VISA | $1,086.95 | $19.04 | $1,067.91 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 1 | I | POS VOYAGER FLEET | $58.00 | $1.84 | $56.16 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 2 | I | POS WEX FLEET | $284.15 | $8.73 | $275.42 |
| Total for Term 01  Batch: 18 Inside Rdr | | | | | 19 | | | $1,834.73 | $41.01 | $1,793.72 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 3 | O | POS AMERICAN EXPRESS | $150.27 | $4.89 | $145.38 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 1 | O | POS CITGO PROPRIETARY | $24.30 | $0.00 | $24.30 |

https://www.citgo.com/MarketNet/ViewPOSSettlementReport.DailyReceivedTransactionSummar...  6/21/2006

JUN.21.2006 12:12    #1680 P.004/011

| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | | I | POS DEBIT CARD | $254.17 | $1.50 | $252.67 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 5 | I | POS VISA | $1,358.25 | $23.55 | $1,334.70 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 12 | I | POS WEX FLEET | $508.04 | $15.64 | $492.40 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 4 | I | | $2,735.13 | $44.77 | $2,690.36 |
| Total for Term 01  Batch: 21 Inside Rdr | | | | | 24 | | | | | |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | O | POS CITGO PROPRIETARY | $75.00 | $0.00 | $75.00 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | O | POS MASTERCARD | $29.83 | $0.63 | $29.20 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 5 | O | POS VISA | $150.34 | $3.15 | $147.19 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 4 | O | POS WEX FLEET | $267.68 | $8.43 | $259.25 |

...dTransactionSummar...  6/21/2006

JO MarketNet, Payment Card - POS Settlement Search Results

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 1 | O | POS MASTERCARD | $35.97 | $0.73 | $35.24 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 8 | O | POS VISA | $151.15 | $3.62 | $147.53 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 3 | O | POS WEX FLEET | $161.91 | $5.15 | $156.76 |
| Total for Term 01 Batch: 18 Outside Rdr | | | | | 16 | | | $523.60 | $14.39 | $509.21 |
| Total for Term 01 Batch: 18 (all) | | | | | 35 | | | $2,358.33 | $55.40 | $2,302.93 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 1 | I | POS DEBIT CARD | $5.49 | $0.30 | $5.19 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 4 | I | POS MASTERCARD | $649.84 | $11.00 | $638.84 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 4 | I | POS VISA | $415.96 | $7.26 | $408.70 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 7 | I | POS WEX FLEET | $914.01 | $28.11 | $885.90 |
| Total for Term 01 Batch: 19 Inside Rdr | | | | | 16 | | | $1,985.30 | $46.67 | $1,938.63 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 2 | O | POS AMERICAN EXPRESS | $86.05 | $2.80 | $83.25 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 2 | O | POS DEBIT CARD | $83.79 | $0.60 | $83.19 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 2 | O | POS MASTERCARD | $68.65 | $1.40 | $67.25 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 11 | O | POS VISA | $310.20 | $6.62 | $303.58 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 2 | O | POS WEX FLEET | $87.79 | $2.83 | $84.96 |
| Total for Term 01 Batch: 19 Outside Rdr | | | | | 19 | | | $636.48 | $14.25 | $622.23 |
| Total for Term 01 Batch: 19 (all) | | | | | 35 | | | $2,621.78 | $60.92 | $2,560.86 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 2 | I | POS DEBIT CARD | $14.71 | $0.60 | $14.11 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 2 | I | POS MASTERCARD | $26.01 | $0.71 | $25.30 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 1 | I | POS VISA | $150.00 | $2.55 | $147.45 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 1 | I | POS WEX FLEET | $113.75 | $3.51 | $110.24 |
| Total for Term 01 Batch: 20 Inside Rdr | | | | | 6 | | | $304.47 | $7.37 | $297.10 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 1 | O | POS CITGO PROPRIETARY | $52.80 | $0.00 | $52.80 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 2 | O | POS MASTERCARD | $86.00 | $1.68 | $84.32 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 9 | O | POS VISA | $185.56 | $4.32 | $181.24 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 2 | O | POS WEX FLEET | $174.77 | $5.44 | $169.33 |
| Total for Term 01 Batch: 20 Outside Rdr | | | | | 14 | | | $499.13 | $11.44 | $487.69 |
| Total for Term 01 Batch: 20 (all) | | | | | 20 | | | $803.60 | $18.81 | $784.79 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 2 | I | POS AMERICAN EXPRESS | $125.72 | $4.08 | $121.64 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | I | POS CITGO PROPRIETARY | $488.95 | $0.00 | $488.95 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 5 | I | POS DEBIT CARD | $254.17 | $1.50 | $252.67 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 12 | I | POS VISA | $1,358.25 | $23.55 | $1,334.70 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 4 | I | POS WEX FLEET | $508.04 | $15.64 | $492.40 |
| Total for Term 01 Batch: 21 Inside Rdr | | | | | 24 | | | $2,735.13 | $44.77 | $2,690.36 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | O | POS CITGO PROPRIETARY | $75.00 | $0.00 | $75.00 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | O | POS MASTERCARD | $29.83 | $0.63 | $29.20 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 5 | O | POS VISA | $150.34 | $3.15 | $147.19 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 4 | O | POS WEX FLEET | $267.68 | $8.43 | $259.25 |

JO MarketNet, Payment Card - POS Settlement Search Results

|  |  |  |  |  |  |  |  |  | $522.85 | $12.21 | $510.84 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| otal for To... ...tch: 21 Outside Rdr | | | | 11 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $3,257.98 | $56.98 | $3,20?.?0 |
| Total for Term 01  Batch: 21 (all) | | | | 35 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $172.18 | $5.60 | $166.58 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 2 | I | POS AMERICAN EXPRESS | | $36.14 | $1.20 | $34.94 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 4 | I | POS DEBIT CARD | | $5.86 | $0.24 | $5.62 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 1 | I | POS MASTERCARD | | $823.56 | $14.23 | $809.33 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 7 | I | POS VISA | | $649.57 | $19.79 | $629.78 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 3 | I | POS WEX FLEET | | $1,687.31 | $41.06 | $1,646.25 |
| Total for Term 01  Batch: 22 Inside Rdr | | | | 17 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $5.00 | $0.23 | $4.77 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 1 | O | POS MASTERCARD | | $34.09 | $1.12 | $32.97 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 1 | O | POS MASTERCARD FLEET | | $386.78 | $8.28 | $378.50 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 14 | O | POS VISA | | $75.00 | $2.35 | $72.65 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 1 | O | POS VOYAGER FLEET | | $62.80 | $1.98 | $60.82 |
| 13959009 | 01 | 22 | 06/14/2006 | 06/15/2006 | 1 | O | POS WEX FLEET | | $563.67 | $13.96 | $549.71 |
| Total for Term 01  Batch: 22 Outside Rdr | | | | 18 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $2,250.98 | $55.02 | $2,19?.?? |
| Total for Term 01  Batch: 22 (all) | | | | 35 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $6.70 | $0.30 | $6.40 |
| 13959009 | 01 | 23 | 06/14/2006 | 06/15/2006 | 1 | I | POS DEBIT CARD | | $70.53 | $1.28 | $69.25 |
| 13959009 | 01 | 23 | 06/14/2006 | 06/15/2006 | 1 | I | POS MASTERCARD | | $29.22 | $0.77 | $28.45 |
| 13959009 | 01 | 23 | 06/14/2006 | 06/15/2006 | 2 | I | POS VISA | | $269.15 | $8.17 | $260.98 |
| 13959009 | 01 | 23 | 06/14/2006 | 06/15/2006 | 1 | I | POS WEX FLEET | | $375.60 | $10.52 | $365.08 |
| Total for Term 01  Batch: 23 Inside Rdr | | | | 5 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $51.37 | $0.97 | $50.40 |
| 13959009 | 01 | 23 | 06/14/2006 | 06/15/2006 | 1 | O | POS MASTERCARD | | $185.57 | $4.02 | $181.55 |
| 13959009 | 01 | 23 | 06/14/2006 | 06/15/2006 | 7 | O | POS VISA | | $236.94 | $4.99 | $231.95 |
| Total for Term 01  Batch: 23 Outside Rdr | | | | 8 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $612.54 | $15.51 | $59?.?03 |
| Total for Term 01  Batch: 23 (all) | | | | 13 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $267.14 | $0.60 | $266.54 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 2 | I | POS DEBIT CARD | | $495.71 | $8.23 | $487.48 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 2 | I | POS MASTERCARD | | $110.79 | $3.42 | $107.37 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 1 | I | POS MASTERCARD FLEET | | $1,071.10 | $19.09 | $1,052.01 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 13 | I | POS VISA | | $130.00 | $4.00 | $126.00 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 1 | I | POS VOYAGER FLEET | | $937.39 | $28.81 | $908.58 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 7 | I | POS WEX FLEET | | $3,012.13 | $64.15 | $2,947.98 |
| Total for Term 01  Batch: 24 Inside Rdr | | | | 26 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $25.33 | $0.00 | $25.33 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 1 | O | POS CITGO PROPRIETARY | | $98.91 | $1.90 | $98.01 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 2 | O | POS MASTERCARD | | $224.89 | $4.20 | $220.69 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 4 | O | POS VISA | | $117.93 | $3.74 | $114.19 |
| 13959009 | 01 | 24 | 06/15/2006 | 06/15/2006 | 2 | O | POS WEX FLEET | | $468.06 | $9.84 | $458.22 |
| Total for Term 01  Batch: 24 Outside Rdr | | | | 9 | | | | | | | |
|  |  |  |  |  |  |  |  |  | $3,480.19 | $73.99 | $3,4?6.20 |
| Total for Term 01  Batch: 24 (all) | | | | 35 | | | | | | | |

JUN.21.2006 15:13

JO MarketNet, Payment Card - POS Settlement Search Results

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Total for Term 01  Batch: 27 (all) | | | | | 35 | | | | $2,387.78 | $54.30 | $2,333.48 |
| | | | | | | | | | | | |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | I | POS DEBIT CARD | | $50.00 | $0.30 | $49.70 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | I | POS MASTERCARD | | $15.05 | $0.39 | $14.66 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 2 | I | POS MASTERCARD FLEET | | $585.01 | $17.75 | $567.26 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 7 | I | POS VISA | | $201.25 | $4.25 | $197.00 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 4 | I | POS WEX FLEET | | $799.17 | $24.37 | $774.80 |
| Total for Term 01  Batch: 28 Inside Rdr | | | | | 15 | | | | $1,650.48 | $47.06 | $1,603.42 |
| | | | | | | | | | | | |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | O | POS AMERICAN EXPRESS | | $13.26 | $0.43 | $12.83 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 2 | O | POS DEBIT CARD | | $70.00 | $0.60 | $69.40 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 4 | O | POS MASTERCARD | | $149.48 | $2.99 | $146.49 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | O | POS MASTERCARD FLEET | | $36.24 | $1.19 | $35.05 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 10 | O | POS VISA | | $317.71 | $6.59 | $311.12 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | O | POS VOYAGER FLEET | | $28.50 | $0.96 | $27.54 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | O | POS WEX FLEET | | $80.02 | $2.50 | $77.52 |
| Total for Term 01  Batch: 28 Outside Rdr | | | | | 20 | | | | $695.21 | $15.26 | $679.95 |
| | | | | | | | | | | | |
| Total for Term 01  Batch: 28 (all) | | | | | 35 | | | | $2,345.69 | $62.32 | $2,283.37 |
| | | | | | | | | | | | |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 1 | I | POS DEBIT CARD | | $101.00 | $0.30 | $100.70 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 2 | I | POS MASTERCARD | | $75.26 | $1.51 | $73.75 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 4 | I | POS VISA | | $306.76 | $5.50 | $301.26 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 3 | I | POS WEX FLEET | | $468.88 | $14.37 | $454.51 |
| Total for Term 01  Batch: 29 Inside Rdr | | | | | 10 | | | | $951.90 | $21.68 | $930.22 |
| | | | | | | | | | | | |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 2 | O | POS AMERICAN EXPRESS | | $87.12 | $2.83 | $84.29 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 1 | O | POS CITGO FLEET (IFCS) | | $24.18 | $0.00 | $24.18 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 1 | O | POS CITGO PROPRIETARY | | $65.00 | $0.00 | $65.00 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 3 | O | POS MASTERCARD | | $125.01 | $2.45 | $122.56 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 15 | O | POS VISA | | $355.17 | $7.93 | $347.24 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 3 | O | POS WEX FLEET | | $147.70 | $4.73 | $142.97 |
| Total for Term 01  Batch: 29 Outside Rdr | | | | | 25 | | | | $804.18 | $17.94 | $786.24 |
| | | | | | | | | | | | |
| Total for Term 01  Batch: 29 (all) | | | | | 35 | | | | $1,756.08 | $39.62 | $1,716.46 |
| | | | | | | | | | | | |
| 13959009 | 01 | 30 | 06/16/2006 | 06/18/2006 | 1 | I | POS MASTERCARD | | $101.64 | $1.78 | $99.86 |
| 13959009 | 01 | 30 | 06/16/2006 | 06/18/2006 | 2 | I | POS VISA | | $76.41 | $1.52 | $74.89 |
| Total for Term 01  Batch: 30 Inside Rdr | | | | | 3 | | | | $178.05 | $3.30 | $174.75 |
| | | | | | | | | | | | |
| 13959009 | 01 | 30 | 06/16/2006 | 06/18/2006 | 1 | O | POS MASTERCARD | | $60.00 | $1.11 | $58.89 |
| 13959009 | 01 | 30 | 06/16/2006 | 06/18/2006 | 7 | O | POS VISA | | $200.25 | $4.26 | $195.99 |
| Total for Term 01  Batch: 30 Outside Rdr | | | | | 8 | | | | $260.25 | $5.37 | $254.88 |
| | | | | | | | | | | | |
| Total for Term 01  Batch: 30 (all) | | | | | 11 | | | | $438.30 | $8.67 | $429.63 |
| | | | | | | | | | | | |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 1 | I | POS AMERICAN EXPRESS | | $112.98 | $3.67 | $109.31 |

#1680 P.008/011

JUN.21.2006 15:13

GO MarketNet, Payment Card - POS Settlement Search Results

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 2 | I | POS MASTERCARD | $67.34 | $1.38 | $65.96 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 1 | I | POS MASTERCARD FLEET | $164.04 | $5.02 | $159.02 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 5 | I | POS VISA | $118.45 | $2.65 | $115.80 |
| 13959009 | 01 | 31 | 06/16/2006 | 06/18/2006 | 1 | I | POS VISA | $30.00 | $0.63 | $29.37 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 2 | I | POS WEX FLEET | $442.98 | $13.49 | $429.47 |
| Total for Term 01  Batch: 31 Inside Rdr | | | | | 12 | | | $935.77 | $26.84 | $908.93 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 1 | O | POS AMERICAN EXPRESS | $36.00 | $1.17 | $34.83 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 2 | O | POS CITGO PROPRIETARY | $40.68 | $0.00 | $40.68 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 2 | O | POS DEBIT CARD | $85.39 | $0.60 | $84.79 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 4 | O | POS MASTERCARD | $154.39 | $3.06 | $151.33 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 14 | O | POS VISA | $365.90 | $7.94 | $357.96 |
| Total for Term 01  Batch: 31 Outside Rdr | | | | | 23 | | | $682.36 | $12.77 | $669.59 |

| Total for Term 01  Batch: 31 (all) | | | | | 35 | | | $1,618.13 | $39.61 | $1,578.52 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | I | POS AMERICAN EXPRESS | $67.49 | $2.19 | $65.30 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | I | POS DEBIT CARD | $5.00 | $0.30 | $4.70 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 2 | I | POS MASTERCARD | $132.51 | $2.42 | $130.09 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 10 | I | POS VISA | $505.17 | $9.60 | $495.57 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | I | POS WEX FLEET | $93.24 | $2.90 | $90.34 |
| Total for Term 01  Batch: 32 Inside Rdr | | | | | 15 | | | $803.41 | $17.41 | $786.00 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 2 | O | POS AMERICAN EXPRESS | $96.87 | $3.15 | $93.72 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | O | POS CITGO PROPRIETARY | $32.29 | $0.00 | $32.29 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 2 | O | POS DEBIT CARD | $60.14 | $0.60 | $59.54 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | O | POS DISCOVER | $42.50 | $1.28 | $41.22 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 14 | O | POS VISA | $517.23 | $10.37 | $506.86 |
| Total for Term 01  Batch: 32 Outside Rdr | | | | | 20 | | | $749.03 | $15.40 | $733.63 |

| Total for Term 01  Batch: 32 (all) | | | | | 35 | | | $1,552.44 | $32.81 | $1,519.63 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 4 | I | POS DEBIT CARD | $131.85 | $1.20 | $130.65 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 1 | I | POS MASTERCARD | $12.67 | $0.35 | $12.32 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 3 | I | POS VISA | $44.90 | $1.17 | $43.73 |
| Total for Term 01  Batch: 33 Inside Rdr | | | | | 8 | | | $189.42 | $2.72 | $186.70 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 2 | O | POS CITGO PROPRIETARY | $63.78 | $0.00 | $63.78 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 1 | O | POS DEBIT CARD | $6.30 | $0.30 | $6.00 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 1 | O | POS DISCOVER | $51.33 | $1.54 | $49.79 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 1 | O | POS MASTERCARD | $24.75 | $0.55 | $24.20 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 6 | O | POS VISA | $213.95 | $4.32 | $209.63 |
| Total for Term 01  Batch: 33 Outside Rdr | | | | | 11 | | | $360.11 | $6.71 | $353.40 |

| Total for Term 01  Batch: 33 (all) | | | | | 19 | | | $549.53 | $9.43 | $540.10 |

JO MarketNet, Payment Card - POS Settlement Search Results

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | $25.34 | $0.60 | $24.74 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 2 | I | POS DEBIT CARD | $1.77 | $80.28 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 3 | I | POS VISA | $33.27 | $1,055.73 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 6 | I | POS WEX FLEET | $1,089.00 | |
| Total for Term 01 Batch: 25 Inside Rdr | | | | | 11 | | | $1,196.39 | $35.64 | $1,160.75 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 3 | O | POS AMERICAN EXPRESS | $167.16 | $5.44 | $161.72 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 3 | O | POS CITGO PROPRIETARY | $98.40 | $0.00 | $98.40 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 1 | O | POS DEBIT CARD | $24.00 | $0.30 | $23.70 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 3 | O | POS MASTERCARD | $128.38 | $2.50 | $125.88 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 13 | O | POS VISA | $412.61 | $8.56 | $404.05 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 1 | O | POS VOYAGER FLEET | $60.29 | $1.91 | $58.38 |
| Total for Term 01 Batch: 25 Outside Rdr | | | | | 24 | | | $890.84 | $18.71 | $872.13 |

Total for Term 01 Batch: 25 (all)    35    $2,087.23  $54.35  $2,012.88

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | I | POS AMERICAN EXPRESS | $109.28 | $3.55 | $105.73 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 2 | I | POS DEBIT CARD | $18.46 | $0.60 | $17.86 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 2 | I | POS MASTERCARD | $321.50 | $5.44 | $316.06 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 5 | I | POS VISA | $484.85 | $8.51 | $476.34 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | I | POS VOYAGER FLEET | $50.00 | $1.60 | $48.40 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 4 | I | POS WEX FLEET | $420.28 | $13.01 | $407.27 |
| Total for Term 01 Batch: 26 Inside Rdr | | | | | 15 | | | $1,404.37 | $32.71 | $1,371.66 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | O | POS AMERICAN EXPRESS | $74.00 | $2.41 | $71.59 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | O | POS DEBIT CARD | $34.00 | $0.30 | $33.70 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | O | POS DISCOVER | $42.06 | $1.26 | $40.80 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 2 | O | POS MASTERCARD | $59.28 | $1.25 | $58.03 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 10 | O | POS VISA | $253.41 | $5.55 | $247.86 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 2 | O | POS WEX FLEET | $145.10 | $4.55 | $140.55 |
| Total for Term 01 Batch: 26 Outside Rdr | | | | | 17 | | | $607.85 | $15.32 | $592.53 |

Total for Term 01 Batch: 26 (all)    32    $2,012.22  $48.03  $1,964.19

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 2 | I | POS AMERICAN EXPRESS | $85.80 | $2.79 | $83.01 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 3 | I | POS DEBIT CARD | $183.91 | $0.90 | $183.01 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 1 | I | POS DISCOVER | $6.17 | $0.19 | $5.98 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 3 | I | POS MASTERCARD | $254.69 | $4.52 | $250.17 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 11 | I | POS VISA | $692.51 | $12.74 | $679.77 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 6 | I | POS WEX FLEET | $831.28 | $25.54 | $805.74 |
| Total for Term 01 Batch: 27 Inside Rdr | | | | | 26 | | | $2,054.36 | $46.68 | $2,007.68 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 1 | O | POS MASTERCARD | $10.00 | $0.31 | $9.69 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 7 | O | POS VISA | $252.61 | $5.09 | $247.52 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 1 | O | POS WEX FLEET | $70.81 | $2.22 | $68.59 |
| Total for Term 01 Batch: 27 Outside Rdr | | | | | 9 | | | $333.42 | $7.62 | $325.80 |

JUN.21.2006 15:13
#1680 P.007/011

EXHIBIT "T"

B.C.G., Inc.
t/a The Laurel Oasis
P.O. Box 311
Laurel, DE 19956
302-875-6014

3/15/06    *sent certified 3/15/06*

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re: unauthorized electronic funds transfer (EFT) sweep for Laurel DE location

Dear Sirs,

Effective 3/20/06 you are no longer authorized to EFT sweep any moneys from any of our checking accounts pertaining to our Laurel Delaware location. Per our contract "Agent shall pay to Principal net 10 days from billing the sums received from the sale of gasoline and Agent will pay for diesel fuel 10 days from the billing date." All payments after 3/20/06 will be paid by check.

Thank You

Charlie Glenn VP

EXHIBIT "U"

B.C.G., Inc. t/a The Laurel Oasis
P.O. Box 311
Laurel, DE 19956
302-875-6014



GleS, Inc. t/a Sweet Oil Co.
2604 Eastburn Center
Newark, DE19711
302-368-9095

7/11/06

Re: material breach of the Franchise commission agency agreement dated 2/13/1990 extended by letter dated 11/15/1993, and as thereafter supplemented and amended Between Peninsula Oil company (as subsequently assigned to and assumed by GLeS, Inc.t/a Sweet Oil company) and B.C. G. Inc T/A Oasis Travel Plaza.

Dear Sirs,

You have failed to provide an adequate response to our multiple attempts to obtain your compliance with the contracts you assumed from Peninsula Oil company. You are not operating "within the boundaries" of the contract, you have not bargained in good faith, and you have not only repeatedly breached the contract, but you have gone so far as to indicate that you will not comply with the contract in the future because it is not profitable to you to do so. In essence, you have indicated your intent to terminate, actually or constructively, our franchise contract in bad faith. Moreover, your company has significantly deviated in the performance of the contract in an obvious attempt to put our company in an economic disadvantage so as to gain the contract terms you desire. Your actions have included but are not limited to the following:

1. You informed us that the Texaco brand was "going away"and that we could no longer be branded Texaco, when in reality we find the brand is not going away, and we could have kept that brand and the goodwill customer base of that brand that we had built up for 20 years.

2. You placed our retail gasoline prices up to 20 cents higher than the competition.

3. You have charged over 1 cent more for diesel fuel than the contract terms specify.

4. You have unlawfully transferred monies Electronically out of our bank account.

5. You have refused to pay our gasoline commission in direct breach of the contract.

6. You have overcharged us on the freight rate of our Delmar location, in an attempt to influence more favorable contract terms in a new agreement here.

Additionally, you have failed to give us adequate assurances that you will abide by our franchise agreement.

Your actions have indeed forced the termination of the contract, and that contract, will be deemed formally terminated on  7-11-06 . In an attempt to mitigate the damages you have caused through your material breaches and actions, we will offset from amounts owed to you for diesel fuel purchases the amounts listed below. These  amounts do not include other damages sustained as a result of your multiple breaches of the contract, including but not limited to loss of profits, future profits, ancillary sales and profits, credit card costs, and all other damages incurred. These amounts will be offset against sums that would otherwise arguably be owed on the motor fuel dispensing and other equipment, which was at the conclusion of the contract to become our property.

-gas commission payment up to 7/6/06 (copy of itemized enclosed)     $ 11,402.56
-gas commission payment 7/6/06 to present                            $    193.76
  (As listed in the above noted contract item #5)
-repair bills for equipment                                          $    450.00
  (As listed in the above noted contract item #12)
-credit card fees and network fees                                   $ 3,787.41
  (Unauthorized EFT swept from our account)
  (As listed in the above noted contract, credit card loan equipment agreement)
-over charge on diesel  fuel (total gallons x overcharges)           $17,288.05
  (As listed in the above noted contract "*Not to exceed Salisbury Rack prices by more
  than .025 per gallon.")
- citgo credit cards Batch 34-36 plus manual          $ 6,583.39
  Total:  $ 39705.17

If you have any questions about any of the above, please contact me. Thank you.

Sincerely,

Charlie Glenn VP

EXHIBIT "V"



# GLeS, Inc.
## t/a
## Sweet Oil Company

Chesapeake Products & Services Inc.                     July 11, 2006
Mr. Charlie Glenn
PO Box 311
Laurel, Delaware
19956

Dear Sir,

    I am in receipt of your letter today dated July 11, 2006 in which you assert you believe we have "failed to provide you with adequate response to your multiple attempts to obtain our compliance with the contracts we assumed from Peninsula Oil Company." I must again dispute this statement. I have responded to you verbally, via email, and by letter on numerous occasions. You don't seem to like my answer and are looking for a different response than you are getting and therefore not accepting the answer you receive. I will again attempt to explain our position to you, and must be perfectly clear WE WILL DO EVERYTHING LEGALLY PERMISSABLE TO ENFORCE OUR POSITION UNDER THE CONTRACTS WE PURCHASED FROM PENINSULA OIL, and furthermore, we do not recognize your right to terminate this agreement without proper authorization, and dispute your statement "In essence, you have indicated your intent to terminate, actually or constructively". If you do not like the answer you get to a question, it does not mean the answer is wrong. You must accept the fact a business relationship is a two way street not a one way street going your way. People in business together have disagreements, but these disagreements do not give the other the right to summarily dismiss the rights of the other as you are attempting.

To address the numbered points in your letter:

1.   Peninsula Oil was supplying you Texaco branded products through a supply agreement with Motiva Enterprises, LLC. Motiva's right to sell Texaco products did in fact terminate on June 30, 2006 as part of a Federal Trade Commission (FTC) decree. At the time of our purchase of Peninsula Oil's agreement with you we informed you we did not have a supply agreement with Motiva, nor would we attempt to obtain one since their right to the Texaco brand was due to terminate prior to your supply agreement and a brand change was inevitable. We discussed this with you the menu of brands we had to offer and as per your contract, we "mutually agreed" to the replacement brand (Citgo) after several meetings, some of which including Terry Sullivan, Territory Manager for Citgo Petroleum.

2.   It is difficult to determine when you are referring too in you comment "You placed our retail prices up to 20 cents higher than our competition" as you have been inconsistently providing us with price surveys. Without this information which is required to be provided daily, we must price based on product cost rather than competitive street prices, until you furnish us with this required information. As per the Commission Agency Agreement, we reserve the exclusive right to price our product as we determine responsible. I understand you would like us to be the lowest price on the street all of the time, but we must react to product cost changes, and be fiscally responsible in our actions.

3.   This is the first time I have been told we charged you the incorrect price on the diesel fuel

---

2604 EASTBURN CENTER • NEWARK, DELAWARE • 19711
PHONE: 302.368.9095 • FAX: 302.368.9045

· 2                                                July 11, 2006

delivered to Oasis Citgo. I will be happy to review any documentation you have to validate this new claim of pricing error. We have provided you documentation on every other claim of inaccurate pricing you have made, showing our records to be correct. We will be happy to investigate this latest claim if you can provide us any documentation to back up your request. Your contract states you will purchase all gasoline at "Retail posted price less commission" and diesel fuel at "our posted full transport price" at time of delivery. There is a footnote which states " Not to exceed Salisbury Rack prices by more than .025 per gallon". In fact, we have been charging you Salisbury rack price plus only .01 per gallon which means we have the right to charge you more than we have been charging you in the past. Your comments in your letter dated 5/22/06 about "the most cost competitive common carrier freight company to haul our fuels" is of course an ideal situation to request. You stated "historically your previous carrier was .0075 per gallon less expensive". This may be a true statement, however rates change now almost weekly due to federal department of transportation fuel surcharge rates which are posted on the DOT website. We routinely bid our common carrier freight every year to get a very competitive rate, but no where in your contract, or any other Peninsula Oil dealers contract is it mandated we use any specific carrier, nor does it state we must use the cheapest one, or the one you chose for any other reason. I will state again as I have in many of my previous letters responding to your letters, WE ARE NOT OVERCHARGING YOU FOR FREIGHT. You do not have the right in any of your agreements to audit, accept, or not accept any transport carrier we hire to make deliveries to your locations. The carrier we are currently using is certified by the refinery and terminal owners where your products come from, and carry all licenses, permits, and insurances legally required to make these deliveries.

4. We have not "unlawfully transferred monies Electronically" from your bank account. It was mutually agreed in September 2005 we would EFT your account every Wednesday for diesel fuel product delivered to Oasis Citgo over the previous week, until you notified us in writing in March 2006 that you wanted to discontinue this practice and pay future invoices by check. We have not EFT'd your account since receipt of your letter.

5. You allege we have refused to pay you your commission for gasoline sold under the Commission Agency Agreement. In fact, we paid you for the period of September 2005 through January 2006 based on our best estimate of what we believe due to you since you have refused to provide us with the daily sales reports which our Verifone Ruby equipment (loaned equipment) provides everyday at the time of closing of business, in addition to the reconciliation forms provided to you when you, your brother Bill, Adam Gray, Bill Sweet and I met with you live in your office back in September. We would like nothing more than to pay you properly, but without your cooperation in providing us with this very basic information we can not determine exactly what you are due. We have made numerous requests over several months, and still to this day have not received this information. If you provide us with this information in a timely manner, we can issue you checks immediately for any money which you are due.

Now that I have responded to your items, I must address additional items. It has come to our attention you have tampered with and damaged our loaned equipment by deleting proprietary software required by Citgo to process Citgo branded credit cards through our gasoline dispensers which are also loaned equipment. You do not have the right to take this action, and as required by your Citgo franchise, must pay to have this repaired. In addition, you have illegally seized possession of our credit card transaction receipts for all sales of gasoline owned by Sweet Oil Company, beginning with your tampering on June 19, 2006. This action must be corrected immediately, and all monies due to Sweet Oil must be immediately paid in full, or we will seek criminal prosecution for this theft.

We are in receipt of two checks from you which accompanied your letter today in which you have deducted what you believe to be your commission due from the sale of gasoline under the Commission Agency Agreement. We will be applying these checks toward your open balance due for diesel fuel sold to you at the Oasis Citgo location, as well as any money due to us which you collected from the cash sales of our

— 3 —                                                                    July 11, 2006

gasoline at Oasis Citgo. These checks are # 12137 in the amount of $39,870.99 and # 12138 in the amount of $36,369.27.

Your letter states "our actions indeed force the termination of the contract" which we must again dispute. We have not violated any written agreement. We have no intention of terminating this agreement, or allowing you to unlawfully terminate this agreement and any action on your part to remove our signage, or any of the other loaned equipment on your site will trigger legal action on our part to defend our position to the full extent of the law under the contracts we purchased from Peninsula Oil Company, including but not limited to removing our loaned equipment from your location as allowed in the loaned equipment agreement if necessary.

We look forward to your response.

Sincerely Yours,

Mark L. Greco

EXHIBIT "W"

B.C.G., Inc. t/a The Laurel Oasis
P.O. Box 311
Laurel, DE 19956
302-875-6014

*Sent*
*Certified 7/20/06*

GleS, Inc. t/a Sweet Oil Co.
2604 Eastburn Center
Newark, DE19711
302-368-9095

7/20/06

Re: material breach of the Franchise commission agency agreement dated 2/13/1990  extended
by  letter dated 11/15/1993, and as thereafter supplemented and amended  Between Peninsula Oil
company (as subsequently assigned to and assumed by GLeS, Inc.t/a Sweet Oil company) and
B.C. G. Inc T/A Oasis Travel Plaza.

Dear Sirs,

We are in receipt of your letter dated 7-11-06. The claims are denied. Any adverse actions Sweet
Oil takes that result in further damages to B.C.G. Inc. will be dealt with accordingly.

Sincerely,

Charles Glenn

EXHIBIT "X"

*1/11/06*



GLeS, Inc.

Sweet Oil Company

Date: July 19, 2006    *Fad to us 7/19/06*

Chesapeake Products & Services
PO Box 311
Laurel, DE 19956

Re: Sale of Unbranded Gasoline to Laurel Oasis, Sweet Oil Co. supplied CITGO

To Whom It May Concern:

Sweet Oil Company has an exclusive Sales Agreement (the "Agreement") with B.C.G., Inc. t/a The Laurel Oasis, operating as a SWEET OIL COMPANY SUPPLIED CITGO gasoline station at Sussex Highway (the "Station"). Under the terms of the Agreement, Sweet Oil has the exclusive right sell and B.C.G., Inc. t/a The Laurel Oasis has the duty to exclusively purchase motor fuel branded under the SWEET OIL COMPANY SUPPLIED CITGO name at the Station.

This letter is written to put you on notice of the Agreement and that any sale of motor fuel products to the Station will be deemed to be with full knowledge that the motor fuel product was not a SWEET OIL. COMPANY SUPPLIED CITGO branded product. Such a sale constitutes, at a minimum, a deceptive trade practice, and further constitutes tortious interference with Sweet Oil's exclusive contract with B.C.G., Inc., t/a The Laurel Oasis. The Office of Retail Gasoline Sales will be notified if such a sale occurs. **Currently, the station is being monitored to evaluate compliance/non-compliance with the Agreement.**

Accordingly, Sweet Oil has initiated legal action to **enjoin** any company from selling and /or transporting any motor fuel with the intention that it be sold to the public from this location. Said legal action may include a lawsuit seeking an injunction against any offending company for the sale of motor fuel, as well as a lawsuit for damages. In addition, the state may choose to proceed against an offending party and impose a penalty for a willful violation of the applicable laws.

This letter serves as notice to cease and desist from any sales and/or transport of motor fuel to B.C.G., Inc. t/a The Laurel Oasis,.

Very truly yours,

Ben LeRoy

cc:  Bill Sweet
    Mark Greco
    John McTear
    Adam Gray
    Valero Energy Corporation (Mike Tuker , Sales & Marketing)
    Valero Energy Corporation (Elliot Bowytz, esq. Legal)
    Valero Energy Corporation, DE City Refinery (Jack Frost, Distribution)
    Eagle Transport (Rich McBride, Marketing)
    Carroll Independent Fuel
    CATO, Inc

– 2 –

July 19, 2006

Eastern Petroleum
Ewing Oil Company
J. Wm. Gordy, Fuel
Ocean Petroleum
Pep-Up
PMG
Service Energy, LLP
Wilson Baker

# EXHIBIT B

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

**COUNTY:**     N     **K**     S          **CIVIL ACTION NUMBER:** 06C-10-024 RBY

**Civil Case Code:** CDBT_____          **Civil Case Type:** Debt/Breach of Contract

(See Reverse Side For Code And Type)

| CAPTION: | NAME AND STATUS OF PARTY FILING DOCUMENT: |
|---|---|
| BCG, INC., a Delaware corporation, CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>v<br><br>GLES, INC., a Delaware corporation, d/b/a SWEET OIL COMPANY,<br>Defendant. | DEFENDANT GLES, INC. D/B/A SWEET OIL COMPANY<br><br>DOCUMENT TYPE: (E.G., COMPLAINT; ANSWER WITH COUNTERCLAIM)<br><br>ANSWER WITH COUNTERCLAIM<br>NON-ARBITRATION ☐          eFILE ☒<br>(CERTIFICATE OF VALUE MAY BE REQUIRED)<br><br>ARBITRATION ☐     MEDIATION ☐     NEUTRAL ASSESSMENT ☐<br>DEFENDANT (CIRCLE ONE)     **ACCEPT**     **REJECT**<br>JURY DEMAND     YES ☒     No ☐<br>TRACK ASSIGNMENT REQUESTED: (CIRCLE ONE)<br>**EXPEDITED     STANDARD     COMPLEX** |
| ATTORNEY NAME(S):<br><br>SETH J. REIDENBERG<br><br>ATTORNEY ID(S):<br><br>3657<br><br>FIRM NAME:<br><br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>ADDRESS:<br><br>THE BRANDYWINE BUILDING<br>1000 WEST STREET, 17TH FLOOR<br>WILMINGTON, DELAWARE 19801<br>P.O. BOX 391<br>WILMINGTON, DELAWARE 19899-0391 | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS |
| | EXPLAIN THE RELATIONSHIP(S): |
| TELEPHONE NUMBER:<br><br>302-571-6706<br><br>FAX NUMBER:<br><br>302-576-3442 | OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: |
| E-MAIL ADDRESS:<br><br>SREIDENBERG@YCST.COM | (IF ADDITIONAL SPACE IS NEEDED PLEASE ATTACH PAGE) |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR THE SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESONSIVE PLEADING BEING STRICKEN.

Revised 9/2003

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, | : | |
| CHESAPEAKE PRODUCTS & | : | C.A. No. 06C-10-024 (RBY) |
| SERVICES, INC., a Delaware corporation | : | |
| | : | TRIAL BY JURY |
| Plaintiffs, | : | OF TWELVE DEMANDED |
| | : | |
| v. | : | NON-ARBITRATION CASE |
| | : | |
| GLES, INC., a Delaware corporation, | : | |
| d/b/a SWEET OIL COMPANY, | : | |
| | : | |
| Defendant | : | |

## DEFENDANT'S ANSWER TO COMPLAINT WITH COUNTERCLAIM

### The Parties

1.    Admitted.

2.    Admitted.

### Jurisdiction

3.    Admitted.

### Nature of the Case

4.    Admitted only that Defendant is the successor in interest as a party to certain supply

and related agreements with Plaintiffs.  The remaining allegations are denied.

5.    Admitted only that Plaintiffs seek certain remedies.  It is denied that Plaintiffs are

entitled to any remedies as alleged.

### Background Facts

6.    Admitted only that Plaintiffs are the owners of two gas stations located in

Delmar, Maryland and Laurel, Delaware respectively. The remaining allegations are denied.

### The Delmar Station

7.    It is admitted only that on October 3, 2002, Plaintiffs and Peninsula Oil Company

entered into an agreement, a true and correct copy of which is attached as Exhibit A to the

Complaint.  The remaining allegations and any attempt to characterize the terms of the

agreement are denied.

8.    Denied.  To the extent that the allegations contained in Paragraph 8 purport to

characterize the terms of the Dealer Agreement, the same are denied as the Dealer

Agreement is an integrated agreement that can only be interpreted as a complete document.

9.    It is admitted only that a second mortgage secures certain obligations at the Delmar

Station premises.  The remaining allegations are denied.  To the extent that the allegations

contained in Paragraph 9 purport to characterize the terms of the Dealer Agreement, the same

are denied since the agreement has to be read in whole.

10.    Denied.  To the extent that the allegations contained in Paragraph 10 purport to

characterize the terms of the Dealer Agreement, the same are denied as the Dealer

Agreement is an integrated agreement that can only be interpreted as a complete document.

11.    Denied.  To the extent that the allegations contained in Paragraph 11 purport to

characterize the terms of the Dealer Agreement, the same are denied as the Dealer

Agreement is an integrated agreement that can only be interpreted as a complete document.

12.    Denied.  To the extent that the allegations contained in Paragraph 12 purport to

characterize the terms of the Dealer Agreement, the same are denied as the Dealer

Agreement is an integrated agreement that can only be interpreted as a complete document.

13.    It is admitted only that Exhibit B is a true and correct copy of correspondence dated

August 16, 2005.  The remaining allegations are denied.

14.    Denied. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 14.

15.    Denied.

16.    It is admitted only that the document attached as Exhibit C is a true and correct copy of correspondence dated March 15, 2006. The remaining allegations are denied.

17.    Denied.

18.    It is admitted only that the document attached as Exhibit D is a true and correct copy of a correspondence dated March 20, 2006. The remaining allegations are denied.

19.    It is admitted only that Exhibit E is a true and correct of an email dated April 17, 2006. The remaining allegations are denied.

20.    Denied.

21.    It is admitted only that a document identified as Exhibit F is a true and correct copy of a correspondence dated April 18, 2006. The remaining allegations are denied.

22.    It is admitted only that a document identified as Exhibit G is a true and correct copy of a correspondence dated May 16, 2006. The remaining allegations are denied.

23.    It is admitted only that a document identified as Exhibit H is a true a correct copy of a document dated May 22, 2006. The remaining allegations are denied.

24.    It is admitted only that a document identified as Exhibit I is a true a correct copy of a document dated June 5, 2006. The remaining allegations are denied.

25.    It is admitted only that a document identified as Exhibit J is a true a correct copy of a document dated June 20, 2006 . The remaining allegations are denied.

26.    It is admitted only that a document identified as Exhibit K is a true a correct copy of a document dated June 28, 2006. The remaining allegations are denied.

27.    It is admitted only that a document identified as Exhibit L is a true a correct copy of a document dated August 30, 2006. The remaining allegations are denied.

28.    Admitted.

### The Laurel Oasis

29.    It is admitted only that a document identified as Exhibit M is an agency agreement and Exhibit N is an equipment and loan agreement dated February 13, 1990, and Exhibit O is a document dated November 15, 1993. The remaining allegations are denied.

30.    Denied. To the extent that the allegations contained in Paragraph 30 purport to characterize the terms of the agency agreement, same are denied as the agency agreement is an integrated agreement that can only be interpreted as a complete document.

31.    It is admitted only that a document identified as Exhibit P is a true and correct copy of a document dated February 13, 1990. The remaining allegations are denied.

32.    It is admitted only that a document identified as Exhibit Q is a true and correct copy of a Credit Card Loan Equipment Agreement dated March 16, 1994. The remaining allegations are denied.

33.    Denied. To the extent that the allegations contained in Paragraph 33 purport to characterize the terms of the Agency Agreement, the same are denied as the Agency Agreement is an integrated agreement that can only be interpreted as a complete document. The remaining allegations are denied.

34.    Denied.

35.    It is admitted only that Plaintiffs have periodically sent faxes to Sweet Oil regarding gas pricing at certain other locations. It is further admitted that Exhibit R contains examples of certain of those faxes. It is denied that the faxes contained in Exhibit R are representative

of all the information regarding gas prices at selected local locations or are consistent with Plaintiff's obligations to provide volume and competitive pricing information.

36.    Denied.

37.    Denied.

38.    Denied.

39.    Denied. Defendant is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 39 and the same are therefore denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    It is admitted only that a document identified as Exhibit T is a true a correct copy of a document dated March 15, 2006. The remaining allegations are denied.

45.    Denied.

46.    Denied.

47.    It is admitted only that a document identified as Exhibit U is a true and correct copy of document dated July 11, 2006. The remaining allegations are denied.

48.    It is admitted only that a document identified as Exhibit V is a true and correct copy of document dated July 11, 2006. The remaining allegations are denied.

49.    Denied.

50.    It is admitted only that a document identified as Exhibit W is a true and correct copy of document dated July 20, 2006. The remaining allegations are denied.

51.    It is admitted only that a document identified as Exhibit X is a true and correct copy of document dated July 19, 2006. The remaining allegations are denied.

Denied. Defendant is without sufficient knowledge to formal belief as to the truth of the allegations contained in Paragraph 52 and the same are denied.

### COUNT I

### Breach of Contract – The Delmar Station

53.    Admitted and denied. The allegations contained in Paragraph 53 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraph 1-52 inclusive which are incorporated herein by reference.

54.    Denied.

55.    Denied.

### COUNT II

### Declaratory Judgment – The Delmar Station

56.    Admitted and denied. The allegations contained in Paragraph 56 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraph 1-55 inclusive which are incorporated herein by reference.

57.    Denied.

58.    Denied. To the extent that the allegations contained in Paragraph 58 purport to characterize terms of which any portion of the Dealer Agreement, the same are denied as a Dealer Agreement is an integrated agreement that could only be interpreted as a complete document.

59.    Denied. To the extent that the allegations contained in Paragraph 59 purport to characterize terms of which any portion of the Dealer Agreement, the same are denied as a Dealer Agreement is an integrated agreement that could only be interpreted as a complete document.

60.    Admitted only that the parties have an interest in a prompt resolution of their rights under the Dealer Agreement. The remaining allegations are denied.

61.    Denied.

62.    Denied.

## COUNT III

### Breach of Contract – The Oasis Station

63.    Admitted and denied.  The allegations contained in Paragraph 63 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraph 1-62 inclusive which are incorporated herein by reference.

64.    Denied.

65.    Denied.

## COUNT IV

### Declaratory Judgment – The Oasis Station

66.    Admitted and denied.  The allegations contained in Paragraph 66 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraph 1-65 inclusive which are incorporated herein by reference.

67.    Denied.

68.    Admitted only that the parties have an interest in a prompt resolution of their rights under the Agency Agreement.  The remaining allegations are denied.

69.    Denied.

70.    Denied.

## COUNT V

### Tortious Interference– The Oasis Station

71.    Admitted and denied.  The allegations contained in Paragraph 71 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraph 1-70 inclusive which are incorporated herein by reference.

72.    Denied.

73.    Denied.

74.  Denied.

75.  Admitted.

76.  Admitted.

77.  Denied.

78.  Denied.

## COUNT VI

### Bad Faith – The Delmar Station & The Oasis Station

82.(sic)   Admitted and denied.  The allegations contained in Paragraph 82 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraph 1-78 inclusive which are incorporated herein by reference.

83.  Denied.

84.  Denied.

85.  Denied.

## COUNT VII

### Delaware Franchise Security Law

### The Oasis Station and The Delmar Station

86.  Admitted and denied.  The allegations contained in Paragraph 86 are admitted or denied for the reasons set forth in response to the allegations contained in Paragraph 1-85 inclusive which are incorporated herein by reference.

87.  Denied.

88.  Denied.

89.  Denied.

90.  Denied.

91.  Denied.

## COUNT VIII

### Attorney's Fees – The Delmar Station and The Oasis Station

92.    Admitted and denied.  The allegations contained in Paragraph 92 are admitted or

denied for the reasons set forth in response to the allegations contained in Paragraph 1-91

inclusive which are incorporated herein by reference.

93.    Denied.  To the extent that the allegations contained in Paragraph 93 purport to

characterize the terms of the Dealer Agreement, the same are denied as the Dealer

Agreement is an integrated agreement that can only be interpreted as a complete document.

94.    Denied.

95.    Denied.

### FIRST AFFIRMATIVE DEFENSE

1.    Plaintiff's Complaint fails to state a claim against answering Defendant upon relief

can be granted.

### SECOND AFFIRMATIVE DEFENSE

2.    Defendant had no obligation to seek Plaintiffs' consent and/or approval to take an

assignment of the interests of Peninsula Oil Company, Inc.

### THIRD AFFIRMATIVE DEFENSE

3.    Defendant had no contractual obligation to provide Plaintiffs with the lowest available

freight charges.

### FOURTH AFFIRMATIVE DEFENSE

4.    The contractual obligations between Plaintiffs and Defendant are set forth in written

documents that cannot be altered or amended by a course of performance by Peninsula Oil

Company, Inc. or any other party.

## FIFTH AFFIRMATIVE DEFENSE

5.    In April 2004, Sunoco, Inc. acquired all right title and interest in the Mobil brand for stations in Delaware and Maryland.

## SIXTH AFFIRMATIVE DEFENSE

6.    The incentive payment program in which Plaintiffs participated at the Delmar Station was acquired by and supported by Sunoco, Inc. and all right title and interest in the benefits and obligations related to that program inure to the benefit of Sunoco, Inc.

7.    Subsequent to its acquisition of the rights and interest in the Mobil name, all use and/or modification of the Mobil brand is subject to the direction and control of Sunoco, Inc.

8.    As the owner of the Mobil brand, Sunoco has the right to determine its use, including the substitution of the designation "Sunoco" for the brand name "Mobil."

9.    At no time has Defendant imposed obligations or demands upon Plaintiffs that have required Plaintiffs to make any additional capital investment other than as required by its existing contractual obligations.

10.    Subsequent to the acquisition of the Mobil brand by Sunoco, the Mobil credit card processing system was no longer operational for any station in Delaware or Maryland.

11.    Plaintiffs have failed and refused to honor their obligations under the incentive program to continue as a Sunoco brand station despite that fact that "Mobil" became "Sunoco" by virtue of a transaction in which neither Plaintiffs nor Defendant was a party.

## SIXTH AFFIRMATIVE DEFENSE

12.    Plaintiffs' failure to allow Sunoco to substitute their name for Mobil is in violation of the obligation assumed under the incentive agreement contained in the Dealer Agreement.

## SEVENTH AFFIRMATIVE DEFENSE

13.    Plaintiffs' refusal to adopt the Sunoco brand is in breach of their obligations under the Dealer Agreement and all incentive payments received by Plaintiffs are now due and payable to Sunoco.

## EIGHTH AFFIRMATIVE DEFENSE

14.    Plaintiffs have failed and refused to comply with the terms of the Agency Agreement by, among other things, failing to provide timely information on the volume of fuel sold and its competitive market.

## NINTH AFFIRMATIVE DEFENSE

15.    Plaintiffs have failed to purchase all gasoline motor fuels and diesel fuels exclusively from Defendant.

## TENTH AFFIRMATIVE DEFENSE

16.    Plaintiffs have failed and refused to cooperate with Defendant to repair and maintain Defendant's equipment in good and serviceable order.

## ELEVENTH AFFIRMATIVE DEFENSE

17.    Plaintiffs have wrongfully withheld funds owed and owing to Defendant.

## TWELFTH AFFIRMATIVE DEFENSE

18.    Plaintiffs have failed and refused to cooperate by timely providing sales reports and other information that is required under the agreement.

## THIRTEENTH AFFIRMATIVE DEFENSE

19.    Plaintiffs tampered with and damaged Defendant's propriety software and has otherwise failed and refused to comply with their obligations to complete credit transactions pursuant to their agreements.

WHEREFORE, Defendant respectfully requests that Plaintiffs' claims be denied and that judgment be entered in favor of Defendant, together with costs and counsel fees.

## COUNTERCLAIM

### Count I
### Breach of Contract – Delmar Station

1. Defendant hereby restates and realleges each of the allegations set forth in the foregoing Answer and Affirmative Defenses as if fully set forth herein.

2. Plaintiffs are in breach of the Dealer Agreement as aforesaid, have failed and refused to permit the Sunoco name to be substituted for Mobil despite being advised that the Mobil brand has become Sunoco, have violated the incentive program by refusing to substitute Sunoco for the Mobil brand, have violated the incentive program by refusing to repay the incentive money they have received from Sunoco/Mobil after being instructed to substitute the Sunoco name for Mobil at the Delmar Station, have violated their obligation to maintain all equipment and communication costs associated with the acceptance of credit cards, and have otherwise failed to comply with the terms of the Dealer Agreement.

3. As a direct and proximate result of the conduct of Plaintiffs as aforesaid, Sunoco has demanded the repayment of all incentive fees paid or payable to Plaintiffs in an amount in excess of $100,000.00.

4. Pursuant to the terms of the Dealer Agreement, Plaintiffs agreed to reimburse Defendant for any amount of the incentive payments they were required to repay.

5. Plaintiffs have failed and refused to reimburse Defendant to Defendant's great detriment and loss.

WHEREFORE Defendant respectfully judgment in its favor and against Plaintiffs in amount sufficient compensate Defendant for all for any and all damages sustained by

Defendant as a result of Plaintiffs' breach of contract together with interest and attorney's fees.

## Count II
### Breach of Contract – Laurel Oasis

6.    Defendant hereby restates and realleges each of the allegations set forth in the foregoing Answer and Affirmative Defenses as if fully set forth herein.

7.    The Equipment Loan Agreement for the Laurel Oasis location remains in full force and effect as it has not been terminated pursuant to its terms.

8.    Commencing on July 11, 2006 at all times thereafter, in breach of the Agreement Plaintiffs have failed and refused to dispense fuels supplied by Defendant.

9.    Commencing on July 11, 2006 at all times thereafter, in breach of the Agreement Plaintiffs have dispensed fuels supplied by suppliers other than Defendant through the equipment owned and maintained by Defendant.

10.    For sometime prior to July 11, 2006, Plaintiffs failed and refused to maintain daily records of motor fuels which they dispensed and to provide additional marketing information pertaining to their competitive market, all to Defendant's great detriment and loss.

11.    Plaintiffs have tampered with and damaged Defendant's property and equipment, have deleted propriety software and have otherwise damaged equipment loaned by Defendant.

WHEREFORE Defendant respectfully requests that judgment be entered in its favor and against Plaintiffs awarding Defendant compensatory damages in amount sufficient to fully compensate Defendant for any and all damages sustained as a result of Plaintiffs' breach of contract together with interests and counsel fees.

## Count III
### Conversion – Laurel Oasis

12.    Defendant hereby restates and realleges each of the allegations set forth in the foregoing Answer and Affirmative Defenses as if fully set forth herein.

13.    Plaintiffs have seized possession of credit card transaction receipts for gasoline owned by Defendant and has converted the same to their own use.

14.    Plaintiffs have failed and refused to turn over the credit card receipts to Defendant despite demand for the same.

WHEREFORE Defendant demands judgment in its favor and against Plaintiffs for an amount sufficient to fully compensate Defendant for any and all damages sustained by Defendant as a result of Plaintiff's conversion of Defendant's property together with interest, punitive damages and counsel fees.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Seth J. Reidenberg_
Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530

Attorneys for Defendant GLES, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Dated: December 18, 2006

## CERTIFICATE OF SERVICE

I, Seth J. Reidenberg, Esquire, do hereby certify that on December 18, 2006, I caused the *Answer With Counterclaim* to be served via electronic filing on the following counsel of record:

John W. Paradee, Esquire
D. Benjamin Snyder, Esquire
Glenn C. Mandalas, Esquire
PRICKETT, JONES & ELLIOTT, P.A.
11 North State Street
Dover, Delaware 19901


Seth J. Reidenberg, Esquire (No. 3657)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Attorneys for Defendant GLES, Inc.,
a Delaware corporation, d/b/a Sweet Oil Company

Dated: December 18, 2006

# EXHIBIT C

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

**COUNTY:**   N   **K**   S       **CIVIL ACTION NUMBER:** <u>06C-10-024 (RBY)</u>

**Civil Case Code:** <u>CDBT</u>        **Case Type:** <u>Debt/Breach of Contract</u>

| CAPTION: | Name And Status Of Party Filing Document: |
|---|---|
| BCG, INC., a Delaware corporation, CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware corporation<br><br>                                    Plaintiffs,<br><br>                        V.<br><br>GLES, INC., a Delaware corporation, d/b/a SWEET OIL COMPANY,<br>                Defendant/ Third-Party Plaintiff,<br><br>                        V.<br><br>Sunoco, Inc.<br>                        Third-Party Defendant. | <u>Defendant/Third-Party Plaintiff GLES, Inc. d/b/a Sweet Oil Company</u><br>Document Type: (E.G., Complaint; Answer With Counterclaim)<br><br><u>Third Party Complaint for Interpleader and Declaratory Judgment</u><br><br>NON-ARBITRATION ☒          eFILE ☒<br><br>(CERTIFICATE OF VALUE MAY BE REQUIRED)<br><br>ARBITRATION ☐    MEDIATION ☐    NEUTRAL ASSESSMENT ☐<br><br>DEFENDANT (CIRCLE ONE)       **ACCEPT**       **REJECT**<br><br>JURY DEMAND    YES ☒    No ☐<br><br>TRACK ASSIGNMENT REQUESTED: (CIRCLE ONE)<br><br>Expedited    **Standard**    Complex |
| Attorney Name(s):<br><br>Seth J. Reidenberg<br><br>Attorney ID(S):<br><br>3657<br><br>Firm Name:<br><br>Young Conaway Stargatt & Taylor, LLP | Identify Any Related Cases Now Pending In The Superior Court By Caption And Civil Action Number Including Judge's Initials |
| Address:<br><br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, Delaware 19801<br>P.O. Box 391<br>Wilmington, Delaware 19899-0391<br><br>Telephone Number:<br><br>302-571-6706 | EXPLAIN THE RELATIONSHIP(S): |
| Fax Number:<br><br>302-576-3442<br><br>E-Mail Address:<br><br>sreidenberg@ycst.com | OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: |
| | (IF ADDITIONAL SPACE IS NEEDED PLEASE ATTACH PAGE) |

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR THE SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

IN THE SUPERIOR COU~~~ ~~ ~HE STATE OF DELAWARE
IN AN~ ~~ ~~ ~NT COUNTY

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, | : | |
| CHESAPEAKE PRODUCTS & | : | C.A. No. 06C-10-024 (RBY) |
| SERVICES, INC., a Delaware corporation | : | |
| | : | TRIAL BY JURY |
| Plaintiffs, | : | OF TWELVE DEMANDED |
| | : | |
| v. | : | NON-ARBITRATION CASE |
| | : | |
| GLES, INC., a Delaware corporation, | : | |
| d/b/a SWEET OIL COMPANY, | : | |
| | : | |
| Defendant/Third Party Plaintiff | : | |
| v. | : | |
| | : | |
| Sunoco, Inc. | : | |
| | : | |
| Third-Party Defendant. | : | |
| | : | |

## PRAECIPE

To:    Prothonotary
       Kent County
       Kent County Courthouse
       38 The Green
       Dover, DE 19901

PLEASE ISSUE SUMMONS to the New Castle County Sheriff's Office to serve copies

of the within Complaint upon Third-Party Defendant as follows:

Serve Third-Party Defendant by serving their registered agent The Corporation Trust

Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 pursuant to

Del. C. 8 § 321.

YOUNG CONAWA???  ??RGATT & TAYLOR, LLP

_____
Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530

Attorneys for Defendant GLES, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Dated: January 3, 2007

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, | : | |
| CHESAPEAKE PRODUCTS & | : | C.A. No. 06C-10-024 (RBY) |
| SERVICES, INC., a Delaware corporation | : | |
| | : | |
| | : | TRIAL BY JURY |
| Plaintiffs, | : | OF TWELVE DEMANDED |
| | : | |
| v. | : | NON-ARBITRATION CASE |
| | : | |
| GLES, INC., a Delaware corporation, | : | |
| d/b/a SWEET OIL COMPANY, | : | |
| | : | |
| Defendant/Third Party Plaintiff | : | |
| v. | : | SUMMONS |
| | : | |
| Sunoco, Inc. | : | |
| | : | |
| Third-Party Defendant. | : | |

**THE STATE OF DELAWARE**
**TO THE SHERIFF OF NEW CASTLE COUNTY:**
**YOU ARE COMMANDED:**

To summon the above named Third-Party Defendant so that, withing 20 days after service hereof upon Third-Party Defendant exclusive of date of service, Third-Party Defendant shall serve upon Seth J. Reidenberg, Esquire, Defendant/Third-Party Plaintiff's attorney, whose address is Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, and answer to the Complaint (and, if an affidavit of demand has been filed, an affidavit of defense).

To serve upon Third-Party Defendant a copy hereof, the complaint and of the affidavit of demand, if any has been filed by Defendant/Third-Party Plaintiff.

Dated: _____

_____
Prothonotary

_____
Per Deputy

**TO THE ABOVE NAMED THIRD-PARTY DEFENDANT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve upon Defendant/Third-Party Plaintiff's attorney named above an answer to the Complaint and, if an affidavit of demand has been filed, an affidavit of defense, judgment by default will be rendered against you for the relief demanded in the Complaint or in the affidavit of demand, if any.

Dated: _____

_____
Prothonotary

_____
Per Deputy

DB02:5685101.1                                                          900001.0008

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

BCG, INC., a Delaware corporation,  :
CHESAPEAKE PRODUCTS &              :      C.A. No. 06C-10-024 (RBY)
SERVICES, INC., a Delaware corporation  :
                                   :      TRIAL BY JURY
            Plaintiffs,            :      OF TWELVE DEMANDED
                                   :
v.                                 :      NON-ARBITRATION CASE
                                   :
                                   :
GLES, INC., a Delaware corporation, :
d/b/a SWEET OIL COMPANY,           :
                                   :
       Defendant/Third-Party Plaintiff  :
v.                                 :
                                   :
Sunoco, Inc.                       :
                                   :
        Third-Party Defendant      :
                                   :

### Third-Party Complaint for Interpleader and Declaratory Judgment

1.    This action was instituted by Complaint wherein Plaintiffs, BCG, Inc. and

Chesapeake Products & Services, Inc., asserted a claim against Defendant, Sweet Oil

Company for, inter alia, breach of a certain Dealer Agreement dated October 3, 2002,

relating to a retail gas station located in Delmar, Maryland. A true and correct copy of

the Complaint is attached hereto and incorporated herein as Exhibit "1."

### The Parties

2.    Plaintiffs, BCG, Inc. and Chesapeake Products & Services, Inc.

(collectively hereinafter "Plaintiffs") are Delaware corporations that own and operate

a retail gasoline station in Delmar, Maryland.

3.    Defendant, Third-Party Plaintiff, GLES Inc. d/b/a/ Sweet Oil Company

("Sweet Oil"), is a Delaware corporation and is the successor in interest to Peninsula

Oil Company ("Peninsula") with respect to certain contractual agreements with

Plaintiffs and with Tosco Refining, L.P.

4.    Third-Party Defendant, Sunoco Inc. ("Sunoco"), is a Pennsylvania

corporation doing business in the State of Delaware with a registered address at the

Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,

Wilmington, Delaware 19801. Sunoco is the successor in interest to Tosco Refining,

L.P. ("Tosco") with respect to certain agreements with Peninsula.

### The Contractual Relationships

### Mobil Branded Distributor Agreement

5.    On or about September 18, 2000, Tosco and Peninsula entered into a

Mobil Branded Distributor Agreement (the "Mobil Distributor Agreement") whereby

Tosco agreed to supply Mobil motor fuels for resale by Peninsula at certain marketing

premises. The Mobil Distributor Agreement, by its terms, expired on September 30,

2005.

6.    On or about April 28, 2004, Tosco assigned its rights under the Mobil

Distributor Agreement to Sunoco. The Mobil Distributor Agreement has been

extended on a month to month basis since September 30, 2005.

7.    By Agreement dated August 31 2005, Peninsula assigned all of its rights

under the Mobil Distributor Agreement to Sweet Oil.

8.    By letter dated November 2, 2006, Sunoco notified Sweet Oil that, as of

February 2, 2007, it will no longer supply Mobil brand motor fuels to Sweet Oil

under the Mobil Distributor Agreement. Attached hereto and incorporated herein as

Exhibit "2" is a true and correct copy of the correspondence dated November 2, 2006
from Sunoco to Sweet Oil.

### Tosco Distributor Image Incentive Program Agreement

9.      On or around February 25, 2002, Tosco and Peninsula entered into a
Tosco Distributor Image Incentive Program Agreement (the "Incentive Agreement")
whereby Tosco agreed to provide certain incentives to Peninsula to encourage the
Delmar retail station to continue to purchase Mobil brand products. Attached hereto
and incorporated herein as Exhibit "3" is a true and correct copy of the Tosco
Incentive Agreement.

10.     By the terms of the Incentive Agreement, Tosco agreed to pay to
Peninsula an "incentive fee" of three cents per gallon for each gallon of gasoline sold
at the Delmar station for forty-eight months on the condition that the Delmar station
remain branded as a Mobil station for not less than ten years after the initiation of the
sale of gasoline products under the incentive program or the remaining term of
Tosco's license agreement for the Mobil brand.

11.     By the terms of the Incentive Agreement, Peninsula agreed to repay the
incentive payments to Tosco, on a fixed amortization schedule, if the Delmar station
was rebranded from a Mobil station during the term of the Incentive Agreement.

12.     The repayment of the incentive fees is deemed to constitute liquidated
damages for the repudiation of the Incentive Agreement.

13.     On information and belief, Tosco assigned its rights under the Incentive
Agreement to Sunoco.

3

14.    By Agreement dated August 31, 2005, Peninsula assigned all of its interest in the Incentive Agreement to Sweet Oil.

### The Dealer Agreement

15.    On or around October 3, 2002, Plaintiffs entered into a Dealer Agreement with Peninsula whereby Peninsula agreed to supply and Plaintiffs agreed to purchase all of Plaintiffs' requirements for gasoline, diesel, fuel and kerosene for the period ending on March 1, 2012. A true and correct copy of the Dealer Agreement is attached to the Complaint (Exhibit "1") as Exhibit "A."

16.    Pursuant to the terms of the Dealer Agreement, Peninsula agreed to pay a three cent per gallon "incentive fee" to Plaintiffs under the same terms and conditions as the Incentive Agreement between Peninsula and Tosco.

17.    Pursuant to the terms of the Dealer Agreement, Plaintiffs agreed to repay Peninsula any amount that Peninsula was required to repay Tosco.

18.    On or about August 31, 2005, Peninsula assigned all of its rights under the Dealer Agreement to Sweet Oil.

### The Dispute

19.    Commencing on or after March 1, 2002, Tosco supplied to Peninsula and Peninsula supplied to Plaintiffs all of Plaintiffs requirements for Mobil brand gasoline, diesel, fuel and kerosene.

20.    Commencing on or after August 2002, Tosco paid to Peninsula and Peninsula paid to Plaintiffs the three cent "incentive payment" for each gallon of gasoline sold by Plaintiffs.

After it acquired Tosco's interest, Sunoco continued to pay the incentive fee pursuant to the Incentive Agreement to Peninsula/Sweet Oil.

22.    On or about December 2005, after multiple notifications to the Plaintiffs that their credit card processing software needed to be upgraded as required in paragraph 10 of the Dealer Agreement, Plaintiffs ceased to accept Mobil Credit Cards, Speedpass, and debit cards in violation of the Dealer Agreement, causing Sunoco to demand that Sweet Oil cover the Mobil signs at the Delmar station until the site resumed acceptance of Mobil Cards.

23.    At the time that Sweet Oil purchased the Peninsula Dealer Agreement in September 2005, Sunoco notified Sweet Oil that it intended to discontinue the supply of Mobil brand products and demanded that the Delmar station be converted to a Sunoco station when the Mobil brand was no longer be available.

24.    Sweet Oil notified Plaintiffs that the Mobil brand would no longer be available and that Sunoco demanded that the Delmar station be converted to a Sunoco station.

25.    Plaintiffs have failed and refused to agree to convert the Delmar station to a Sunoco station, asserting that they have no contractual obligation to rebrand the station as a Sunoco station.

26.    Sunoco notified Sweet Oil that the refusal of Plaintiffs to accept Mobil credit cards and Speedpass and to convert the Delmar station to a Sunoco station is in violation of its contractual obligations and, as a result, it will not "renew" the Mobil Distributor Agreement with Sweet Oil.

27.    Sunoco has further advised Sweet Oil that the failure to "rebrand" the Delmar station to a Sunoco station requires Sweet Oil to return all incentive payments made to Peninsula/Plaintiffs during the term of the Tosco Incentive Agreement to Sunoco.

28.    As a result of Sunoco's demand for repayment of the incentive fees, Sweet Oil has withheld payment of incentive fees to Plaintiffs in the sum of $13,258.84.

29.    As a result of Sunoco's demand for repayment of incentive fees, Sweet Oil has refrained from submitting a claim to Sunoco for additional incentive payments in the amount of $8,731.10 based on gasoline sold by Plaintiffs during the period April-July 2006, inclusive.

30.    Plaintiffs have asserted that their refusal to convert the Delmar station to Sunoco station and their refusal to upgrade their credit card software is not in breach of the Dealer Agreement and has demanded that the incentive payments earned under the Dealer Agreement be paid in full.

### Count I - Interpleader

31.    Defendant/Third-Party Plaintiff, Sweet Oil, realleges each and every allegation set forth in Paragraphs 1-30, inclusive, as if the same had been set forth at length herein.

32.    Sweet Oil is currently holding the sum of $13,258.84 in incentive payments that have neither been paid to Plaintiffs nor returned to Sunoco.

33.    Sweet Oil has never claimed an interest in the disputed incentive payments currently in its possession.

34.    Sweet Oil is exposed to double liability if it pays the sum it is holding to

6

either the Plaintiffs or to Sunoco.

35.     Sweet Oil requests leave to pay the sum into Court pending the determination by the Court as to the rightful recipient of the funds.

WHEREFORE, Sweet Oil respectfully requests that its Complaint for Interpleader be GRANTED and that this Court Order as follows:

a) That the funds representing "incentive payments" currently in the possession of Sweet Oil be paid into Court pending the determination of the proper recipient of those funds;

b) That it be absolved of all liability to any party with respect to the funds;

c) That it be awarded counsel fees and costs for defending any and all claims made against those funds.

### Count II – Declaratory Judgment

36.     Defendant/Third-Party Plaintiff, Sweet Oil, realleges each and every allegation set forth in Paragraphs 1-30, inclusive, as if the same had been set forth at length herein.

37.     Plaintiffs have asserted that their refusal to convert the Delmar station to a Sunoco station is not a breach of their contractual obligations because there is no provision that requires Plaintiffs to rebrand the station as a Sunoco station.

38.     Third-Party Defendant, Sunoco, has asserted that the failure to convert the Delmar station to a Sonoco station is a breach of the Mobil Distributor Agreement /Incentive Agreement and that Sunoco will not "renew" the Mobil Distributor Agreement unless the Delmar station is "rebranded" as a Sunoco station.

900001.0008

39.    The claims of the Plaintiffs and Third-Party Defendant Sun⋯ ⋯ ⋯ mutually exclusive and each has made inconsistent demands on Defendant/Third-Party Plaintiff based on their respective interpretation of the rights and liabilities of the parties to the Dealer Agreement, the Incentive Agreement and the Mobil Distributor Agreement.

WHEREFORE, Defendant/Third-Party Plaintiff, Sweet Oil, respectfully requests that the Court enter an Order declaring the legal rights and liabilities of the parties with respect to the Delmar station.

### Count III – Indemnification Against Third-Party Defendant, Sunoco

40.    Defendant/Third-Party Plaintiff, Sweet Oil, realleges each and every allegation set forth in Paragraphs 1-30, inclusive, as if the same had been set forth at length herein.

41.    If Defendant/Third-Party Plaintiff, Sweet Oil, is liable in whole or in part to Plaintiffs with respect to the incentive fees as alleged in the Complaint, any such liability is solely due to the demands made upon Sweet Oil by Third-Party Defendant, Sunoco.

42.    If Defendant/Third-Party Plaintiff, Sweet Oil, is liable in whole or in part to Plaintiffs with respect to the incentive fees as alleged in the Complaint, Third-Party Defendant, Sunoco, is liable to Sweet Oil for indemnification for any amount that Sweet Oil is liable to Plaintiffs.

WHEREFORE, Third-Party Plaintiff, Sweet Oil demands judgment in its favor and against Third-Party Defendant, Sunoco, by way of indemnification, for any

amount it is found liable to Plaintiffs with respect to the incentive payments for the

Delmar station.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

Attorneys for Defendant GLES, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Dated: January 3, 2007



November 2, 2006

*VIA CERTIFIED MAIL*
*AND OVERNIGHT DELIVERY*

Mr. Bill Sweet
GleS, Inc. d/b/a
Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re:    **NONRENEWAL OF MOBIL BRANDED DISTRIBUTOR AGREEMENT**
       **Contract # 0970-7399-00**

Dear Mr. Sweet:

Please refer to the Mobil Branded Distributor Agreement, dated September 18,
2000, between Peninsula Oil and Tosco Refining, L.P. ("Agreement"), which Agreement
was assigned to Sunoco Inc. (R&M) ("Sunoco") by ConocoPhillips on or about April 28,
2004, and was assigned to you by Peninsula on or about September 15, 2005. This
Agreement by its terms expired September 30, 2005, and has been extended on a month
to month basis since then.

As you know, we have offered to re-brand the remaining three (3) Mobil sites to
Sunoco and supply said sites under your Sunoco Distributor Branded Motor Fuel
Agreement dated March 21, 2003. As you have been previously advised, Mobil brand
motor fuels will no longer be offered by Sunoco after February, 2007. Sunoco needs to
advise you that your failure to agree to the re-brand of the remaining Mobils to Sunoco is a
ground for nonrenewal of the Agreement and the Mobil franchise relationship. While we
want to continue business with you, we need to notify you that **Sunoco intends to**
**terminate and nonrenew its Agreement with you effective 12:01 A.M. February 2, 2007**

Gles, Inc. d/b/a
Sweet Oil Company

Page 2

(**"Nonrenewal Effective Date"**).  Termination and nonrenewal are permitted under the
following provisions of the Federal Petroleum Marketing Practices Act ("PMPA"):

Section 102(b)(2)(C)          The occurrence of an event relevant to franchise relationship
                              as a result of which termination or nonrenewal is reasonable.

Section 102(b)(3)(A)          Failure of franchisor and franchisee to agree to changes or
                              additions to the provisions of the franchise.

Please also be aware that any unamortized balances owed by you with respect to the
referenced Mobil sites supplied under the Agreement shall be due and payable on the
Nonrenewal Effective Date.

Should you agree to and timely execute an amendment to your Sunoco Branded
Distributor Agreement within a reasonable period of time prior to the Nonrenewal Effective
Date, your franchise relationship will continue with respect to these sites under your Sunoco
Branded Distributor Agreement. This amendment will have an effective date of on or before
February 2, 2007.  In no event will the Agreement continue beyond February 2, 2007.

Please be advised that, in order to provide you with the full notice period required
under the PMPA, **the term of your current Agreement will be extended until the
Nonrenewal Effective Date**.

If you have not already done so, we recommend you so advise any impacted Mobil
dealer accounts of this date so that all Mobil signage and trade dress is timely removed,
loaned equipment is returned, and any necessary alternative supply arrangements are made.

Until the Nonrenewal Effective Date, you are bound by the terms and conditions
of your Agreement.

M:\Moore\Nonrenewal Contract\Gles  Inc.d.b.a. Sweet Oil Co..doc

Gles, Inc. d/b/a
Sweet Oil Company

Page 3


Please contact your Sunoco Marketing Manager, Dan Moore, if you have any
questions.


These stated rights are without prejudice to any additional rights or remedies
Sunoco has or may have with respect to this matter, all of which are expressly reserved.


Enclosed is a copy of a summary of Title I of the Petroleum Marketing Practices
Act ("PMPA") for your review, as required by law.

Very truly yours,

Jeffrey W. Byard
Branded Distributor Manager

**Enclosure – PMPA Summary**
cc:    D. Moore
        Credit
        Contract Administration

M:\Moore\Nonrenewal Contracts\Gles Inc.d.b.a. Sweet Oil Co..doc

6104505242                    SUNOCO INC. ENGINEERING        01:18:11 p.    12-19-2006    1/2

12/09/02 01:19pm P. 007

# Tosco Distributor Image Incentive Program Agreement    Mid-Atlantic

## Project Proposal/Completion/Termination Statement

Distributor: Peninsula Oil Company
Project Name: Delmar (Mobil)
Project Address: 9521 Ocean Hwy.
Delmar, MD 21895

Distrib Cust #: 7-9-8-6-0-7-2-1
Distrib Lease #: 3-1-3-8-9-1-3
Project Site #: 2-4-4-9-0-2-2

### Level 5
☑ "Super Site" Incentive
3.0 cpg - 48 months

*Starts August 2002* **Business Enhancement Fund**

Ends July 2006
☐ .20 cpg of total gasoline
purchases (Jan-Dec)
60% re-imbursement up to fund total.
(submit separate reimbursement form)

### Level 4
☐ New to Industry Program
2.0 cpg - 48 months

### Level 3
☐ Competitive Conversion
Program
2.0 cpg - 36 months
☐ Razed or New
2.0 cpg - 36 months

### Level 2
☐ Gas Bar Program
1.0 cpg - 60 months

*Participation in all programs requires Tosco's Wholesale Strategy Specialist pre-approval. Additionally Distributor must meet all criteria as outlined in program brochure.

### Level 1
Pay-at-the-Pump Card Terminal Programs

| | # of units | Reimbursement per unit | Project Reimbursement |
|---|---|---|---|
| ☑ Pay-at-the-Pump Incentive | 7 | $2,000 | 14000.00 |
| ☑ Speedpass Incentive | 7 | $1,000 | 7000.00 |

### Gasoline Volume Projections:

EYG YEAR 1  1.9 Million    EYG YEAR 2  2.1 Million    EYG YEAR 3  2.3 Million    EYG YEAR 4  2.4 Million

Note: • Acceptance of this proposal by Tosco in no way implies or guarantees any increase in gasoline volume to Distributor's existing base as stated in Distributor's existing PMPA Motors Fuels Franchise Agreement.
• Wholesale Strategy Specialist has reviewed applicable plot plans, elevation drawings, paint schedules and equipment lists for all three zones. Plans for all three zones will meet Tosco's small business guidance.
• Distributor acknowledges that the financial aspects of this program are confidential and agrees to treat them accordingly. A failure of Distributor to do so is a violation of this Agreement.

Distributor Signature _____ Date: 2/25/02
Accepted: _____ Wholesale Strategy Specialist    2/25/02    Date:

### Distributor Certification:
I hereby certify that all work and construction,
in accordance with plans and specifications
submitted to and approved by Tosco, was
completed on 2/22/02. This project
opened for business on ___
Distributor Signature _____ Date: __

### Certification of Project Completion:
I inspected this project on 2/25/02 and
found the work to be completed in accordance
with the project proposal, program guidelines
and Mobil standards of appearance and
graphics.
Wholesale Strategy Specialist _____ 2/25/02 Date:

### Project Termination:
This project was not completed by the date
specified in the applicable incentive
Agreement. The project is therefore
terminated effective ___

Accepted: Distributor Signature _____ Date:
Wholesale Strategy Specialist _____ Date:

Mid-Atlantic
2001

# Terms & Conditions

**Pre-Approval Qualifications**

To be eligible to participate in any of Tosco's image incentive programs, and to receive reimbursement throughout the specified program term, Distributors must obtain prior project approval from Tosco's Wholesale Strategy Specialist and must agree to the following criteria:

1) participate in a Mystery Shopper program at the station,
2) have all station employees in Tosco approved uniforms, and
3) participate in all Tosco's sponsored promotional programs
4) If the station sells diesel, it must be Mobil branded diesel and identified accordingly
5) Participate in Tosco's Five Star Appearance Standards Program

**Distributor Image Incentive Program Requirements:**

■ A project proposal/completion/termination statement for the proposed project will be jointly prepared by the Distributor and Tosco's Wholesale Strategy Specialist

■ Distributor must receive Tosco's prior written acceptance for the project to be covered by the image incentive program. Distributor must then complete the project and brand the location to Mobil's image specifications. If the project is not completed by the specified date, the proposal will terminate.

■ A final inspection of the project by Tosco's Wholesale Strategy Specialist is required before the project is eligible for the program.

■ Distributor is responsible for obtaining all licenses and permits, and is responsible for all aspects of construction.

■ The term during which Tosco will make incentive payments is 36 (or 48 months, depending upon the program) consecutive months beginning with the first month for which Distributor reports volume for the project after Tosco's Wholesale Strategy Specialist verifies that the project was properly completed.

■ Distributor forfeits all rights, present and future, under the image incentive program for all locations if Distributor is in violation of the Distributor PMPA Motor Fuels Franchise Agreement or if Distributor commingles Mobil brand with non-Mobil brand product.

■ Distributor agrees to allow an audit of gasoline sales at any location where Distributor reports volume to Tosco for an incentive payment, including locations that receive up front incentive payments.

■ Distributor will return to Tosco all incentive payment made by Tosco as a result of distributor overstating volume reports.

■ Distributor forfeits all rights, present and future, under the image incentive program for all of the Distributor's locations if Distributor knowingly submits an overstated gasoline volume report for any location that is eligible to receive an incentive payment.

■ Distributor recognizes that it would be difficult to quantify Tosco's economic losses if Distributor's franchise relationship with Tosco terminated or non-renewed or the retail facility is debranded. Thus, Distributors agrees that if Distributor's contract is terminated/ non-renewed, or the retail facility is debranded within ten (10) years after the first month Distributor reports volume for incentive payment purposes, Distributor will pay to Tosco as liquidated damages, to compensate Tosco for such losses, the following amounts:

## Reimbursement Schedule

| Year/Location Debranded | % of Incentive to be Reimbursed to Tosco by Distributor |
|---|---|
| Years/1 - 5 . | 100% |
| Year     6 | 80% |
| Year     7 | 60% |
| Year     8 | 40% |
| Year     9 | 30% |
| Year    10 | 20% |

* Year One begins with the first month the Distributor reports volume for reimbursement.

■ The damages here liquidated are confined to losses resulting from your repudiation of this Incentive Agreement, and shall not affect such other rights and remedies as Tosco may have under this Incentive Agreement, under any other agreement with Tosco, and under applicable law including, but not limited to, the PMPA and the Uniform Commercial Code.

■ Tosco reserves the right to stop accepting new entrants into the Distributor Image Incentive Programs at any time.

■ Tosco also has the right it cancel these programs at any time in the event of supply disruptions or to withdraw these program at any time from any relevant geographic/market area.

■ Distributor acknowledges that this Incentive Agreement supplements the terms and conditions of the Distributors PMPA Motor Fuels Franchise Agreement.

■ Distributor represents that it will brand the retail facility as a Mobil facility for not less than 10 years or the remaining term of Tosco's license agreement for the Mobil brand, and Distributor acknowledges that Tosco has relied upon this representation in making incentive payment under this agreement.

■ Incentive payments shall be make by credit to Distributor's accounts receivable or other mutually acceptable method and shall be paid quarterly or as one-time lump sum payment, depending upon the program.

■ For quarterly payments, Tosco shall make such payment within a reasonable time after Tosco's receipt of Distributor's statement certifying the volume of Mobil gasoline purchased by Distributor and sold through the retail location during the preceding three (3) calendar months.

■ If the retail location fails to comply with this Incentive Agreement, or Distributor fails to comply with Distributor's PMPA Motor Fuels Franchise Agreement, or retail facility is debranded, then, in addition to any other rights or remedies available to Tosco, Tosco may cancel this Incentive Agreement and all other incentive programs in which Distributor participates and immediately cease making incentive payment for all of Distributor's locations. Distributor's shall also be required to reimburse Tosco for any incentive payments made prior to such cancellation.

# EXHIBIT D

EFiled: Mar 27 2007 3:44PM EDT
Transaction ID 14274450
Case No. 06C-10-024 RBY

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| BCG, INC., a Delaware corporation, CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware corporation, | : : C.A. No. 06C-10-024 (RBY) : : TRIAL BY JURY |
| Plaintiffs, | : OF TWELVE DEMANDED : |
| v. | : NON-ARBITRATION CASE : |
| GLES, INC., a Delaware corporation, d/b/a SWEET OIL COMPANY, | : : : |
| Defendant/Third Party Plaintiff, | : : : |
| v. | : : |
| SUNOCO, INC., | : : |
| Third-Party Defendant. | : |

## AMENDED COMPLAINT

COME NOW BCG, Inc. and Chesapeake Products & Services, Inc., the

Plaintiffs in the above-captioned action, by and through their attorneys, Prickett,

Jones & Elliott, P.A., who hereby allege as follows:

### The Parties

1.    The Plaintiffs are BCG, Inc. (hereinafter referred to as "BCG"), a

Delaware corporation doing business in the State of Delaware, with a business

address of 30759 Sussex Highway (P.O. Box 311) Laurel, Delaware 19956, and

Chesapeake Products & Services, Inc. (hereinafter referred to as "Chesapeake"), a

Delaware corporation doing business within the State of Delaware with a business

address of 30759 Sussex Highway (P.O. Box 311) Laurel, DE 19956.

2.     The Defendant is GLeS, Inc., a Delaware corporation doing business within the State of Delaware as Sweet Oil Company (hereinafter referred to as "Sweet Oil"), with a business address of 2604 Eastburn Center, Newark, Delaware 19711, and that may be served upon its registered agent, GLES, Inc., at 2604 Eastburn Center, Newark, Delaware 19711. Sweet Oil is a distributor of motor fuel and related products.

### Jurisdiction

3.     This Court has jurisdiction over the subject matter of this action pursuant to 10 Del. C. § 6501, et. seq.

### Nature of the Case

4.     This is an action for, among other things, breach of contract and tortious interference against the supplier of motor fuel to two retail stations owned by the Plaintiffs.  The exclusive supply agreements for the two stations were assigned along with the original supplier's other supply agreements to the Defendant, Sweet Oil, approximately one year ago in September of 2005.  Since Sweet Oil has assumed the obligations under the aforesaid supply agreements, it has intentionally and utterly failed to abide by the clear and unambiguous terms of the supply agreements (and the well-established course of performance between the Plaintiffs and their previous supplier) by, among other things, refusing (even to this day) to pay the Plaintiffs' incentive fees, refusing to competitively price the Plaintiffs' gasoline, which was often priced up to twenty cents (20¢) per gallon more

2

than the Plaintiffs' immediate competitors, and threatening baseless criminal prosecutions, all of which was undertaken in a concerted effort to coerce new, more favorable, long-term supply agreements from the Plaintiffs for the two gas stations.

5.     The Plaintiffs seek compensatory, punitive and statutory damages from Sweet Oil, including, but not limited to, compensation for unpaid incentive fees, lost profits and goodwill, and reimbursement for credit card fees, equipment repairs, and overcharged freight paid by the Plaintiffs, as well as a declaratory judgment stating that Sweet Oil has breached the exclusive supply agreements, thereby rendering them null and void.

### Background Facts

6.     The Plaintiffs are the owners of two gas stations, a Mobil gas station located in Delmar, Maryland (the "Mobil Station") and a non-branded gas station in Laurel, Delaware named the Laurel Oasis (the "Oasis Station"). The Mobil Station was built and opened in March of 2002, has a convenience store on site and two restaurants, has 13 pumps and sold approximately 1.5 million gallons of gas and fuel in 2005. The Oasis Station was purchased in 1985, has a convenience store and two restaurants on site, has 12 pumps, and sold approximately 2.2 million gallons of gas and fuel in 2005.

### The Mobil Station

7.     On October 3, 2002, the Plaintiffs and Peninsula Oil Company ("Peninsula") entered into an agreement ("the Dealer Agreement"), whereby Peninsula agreed to, among other things, supply Mobil branded gasoline to the

3

Mobil Station, and the Plaintiffs agreed to purchase all of their motor fuel from Peninsula for a term of ten (10) years. *See* Dealer Agreement attached as Exhibit "A". The Mobil brand was an important and material part of the Dealer Agreement.

8.  Pursuant to Paragraph 2(a) of the Dealer Agreement, Peninsula agreed to pay a three-cent (3¢) incentive payment to the Plaintiffs for each gallon of Mobil gasoline sold to the Plaintiffs from August 1, 2002 to July 31, 2006.

9.  Pursuant to Paragraph 2(b) of the Dealer Agreement, the Plaintiffs' obligation to repay Peninsula for the incentive payments in the event that the Plaintiffs defaulted under the terms of the Dealer Agreement and Peninsula was required to repay the incentive money to Mobil is secured by a second mortgage on the Mobil Station's premises (the "Second Mortgage").

10.  The Dealer Agreement further provides that the price paid by the Plaintiffs for gasoline and fuel from Peninsula is to be set at a price that provides Peninsula a profit of one-cent (1¢) per gallon in addition to common carrier freight and certain fees and taxes.

11.  Paragraph 6 of the Dealer Agreement provides that Peninsula "shall make deliveries in its usual manner."

12.  Paragraph 8 of the Dealer Agreement provides that "[i]f the Mobil Brand becomes unavailable, [the parties] shall mutually agree on what brand the Dealer will resell."

13.  On or about August 16, 2005, Peninsula notified the Plaintiffs that it was transferring its business to Sweet Oil Company as of September 1, 2005. *See*

4

Letter attached as Exhibit "B". Plaintiffs were not asked to, nor did they, consent to the assignment to Sweet Oil. As a result of the assignment, Plaintiffs' risks and burdens were materially increased.

14.    Prior to assigning the Dealer Agreement to Sweet Oil, Peninsula faithfully and timely performed its obligations under the aforesaid agreement for more than three and one-half years.

15.    Almost immediately after accepting an assignment of the Dealer Agreement, however, Sweet Oil failed to perform its obligations thereunder, including, but not limited to, its obligations to (1) pay the Plaintiffs the Mobil incentive fees, (2) use the least expensive common carrier as Peninsula had previously done, (3) provide transportation without charging an additional administrative fee as Peninsula had previously done, and (4) continue to allow the Plaintiffs to sell Mobil brand products.

16.    On March 15, 2006, the Plaintiffs sent a letter to Sweet Oil requesting that Sweet Oil provide adequate assurances that it would cease deviating from the prior course of performance over the previous three and one-half years between the Plaintiffs and Peninsula Company, specifically noting that the Plaintiffs had not received payments of the Mobil incentive money owed and that the Plaintiffs were being overcharged for freight on product deliveries. *See* Letter attached as Exhibit "C".

17.    Despite the Plaintiffs' request, Sweet Oil failed to provide adequate assurances of future performance within a reasonable time, which, therefore,

5

constitutes a repudiation of the Dealer Agreement.

18.   On March 20, 2006, Sweet Oil notified Plaintiffs that it had been assigned Peninsula's agreements with the Plaintiffs, but that it did not owe the Plaintiffs any money and was not overcharging the Plaintiffs for freight. *See* Letter attached as Exhibit "D".

19.   On April 17, 2006, Sweet Oil sent the Plaintiffs an email stating that Sunoco had purchased the Plaintiffs' Mobil supply agreement and intended to convert the Plaintiffs' Mobil gas station "effective immediately" to a "Sunoco" gas station. Sweet Oil also threatened that, if the Plaintiffs' did not convert to (and pay for) Sunoco's credit card system, the Plaintiffs' gas station would "be cash only in less than 2 weeks." *See* E-Mail attached as Exhibit "E".

20.   In keeping with the Defendant's threat, the Plaintiffs have been unable to accept purchases on Mobil credit cards since approximately July 2, 2006.

21.   On April 18, 2006, the Plaintiffs sent a letter to Sweet Oil asking when Sweet Oil intended to remove the Mobil brand from the Delmar gas station as Sweet had advised it intended to do, when the Plaintiffs could expect to receive the Mobil unpaid incentive money, and whether Sweet Oil would cease overcharging the Plaintiffs for freight. *See* Letter attached as Exhibit "F".

22.   On May 16, 2006, Sweet Oil offered the Plaintiffs a one-cent per gallon Sunoco incentive fee and to pay the brand conversion costs if the Plaintiffs signed a new ten-year deal with Sunoco. *See* Letter attached as Exhibit "G".

23.   On May 22, 2006, the Plaintiffs sent Sweet Oil a letter following up on

6

their letter dated April 18, 2006 and again soliciting a response from Sweet Oil regarding its intentions for removing the Mobil brand from the Delmar location, for paying the Plaintiffs the three-cent per gallon Mobil incentive fee, and for continuing to overcharge the Plaintiffs on freight. *See* Letter attached as Exhibit "H".

24.    On June 5, 2006, Sweet Oil wrote a letter that fails to address the Plaintiffs' previous inquiries and instead takes the untenable legal position that Sweet Oil has not breached paragraph 8 of the Dealer Agreement, which requires mutual consent to establish a replacement brand in the event the Mobil brand becomes unavailable. Sweet Oil falsely wrote that "Mobil has become Sunoco in the Mid-Atlantic states by FTC decree." *See* Letter attached as Exhibit "I".

25.    On June 20, 2006, the Plaintiffs sent Sweet Oil a letter indicating that it would not grant approval to change its brand to Sunoco and noting that (1) Sweet Oil has been overcharging the Plaintiffs on freight, (2) Sweet Oil had agreed to have the fuel delivered by the least expensive common carrier without the addition of a carrier administration fee that the Plaintiffs had never agreed to pay and is not charged by any other common carrier, (3) Sweet Oil has failed to pay the three-cent Mobil incentive money for a period of more than ten months, and (4) Sweet Oil attempted to convince the Plaintiffs to pay for credit card processing changes by representing that they were Mobil upgrades when, in fact, it would have switched the Plaintiffs over to the Sunoco credit card network, for which Sweet Oil now says Sunoco will pay. *See* Letter attached hereto as Exhibit "J".

7

26.    On June 28, 2006, Sweet Oil forwarded to the Plaintiffs an email ostensibly from a representative of Sunoco threatening the Plaintiffs with penalties and stating that Sweet Oil should "bag" the Plaintiffs' Mobil sign and refuse to provide Mobil brand gas in direct contravention of the Dealer Agreement. *See* E-Mail attached as Exhibit "K".

27.    On August 30, 2006, Sweet Oil sent a letter to all of the gas stations that it supplies indicating that it had agreed to sell its assets to GPM Investments, which owns and operates the Fasmart/Shore Stop franchise. *See* Letter attached as Exhibit "L".

28.    Upon information and belief, as of the filing of this Amended Complaint, the Plaintiffs' agreements with Sweet Oil have not been assigned or otherwise transferred to GPM Investments.

29.    On January 29, 2007, Sweet Oil sent a letter to Plaintiffs' counsel notifying the Plaintiffs that Sweet Oil would cease providing Mobil branded products to the Mobil Station and that Sweet Oil would take steps to de-identify the Mobil Station as a Mobil retailer. *See* Letter attached as Exhibit "M".

30.    On February 2, 2007, Sweet Oil removed the Mobil identification faces and the Mobil canopy letters at the Mobil Station, covered the Mobil logos on the pumps and building, thereby removing all faces and letters related to the Mobil brand, and ceased providing any further deliveries of Mobil branded fuels to the Mobil Station.

31.    On February 7, 2007, the Plaintiffs, through their legal counsel, sent

Sweet Oil a letter stating that the Plaintiffs deemed the Dealer Agreement terminated effective immediately as a result of Sweet Oil's actions as aforesaid. *See* Letter attached as Exhibit "N".

### The Laurel Oasis

32.    On February 13, 1990, BCG entered into an agency agreement with Peninsula (the "Agency Agreement") with regard to the Oasis Station in Laurel, Delaware. Pursuant to this ten (10) year Agency Agreement, Peninsula agreed (i) to install certain fuel dispensing equipment (which Peninsula Oil would own until the expiration of that Agency Agreement), and (ii) to maintain the oil and gas pumps at the Oasis Station. Pursuant to the Agency Agreement, Peninsula supplied BCG with gasoline on consignment, which BCG would sell to the public at retail prices set exclusively by Peninsula, and BCG purchased diesel fuel from Peninsula, and resold that diesel fuel to the motoring public at retail prices set by BCG. *See* Agency Agreement attached as Exhibit "O" and Equipment and Loan Agreement attached as Exhibit "P". The Agency Agreement superseded a previous agency agreement dated January 2, 1986 and was later extended to January 31, 2008. *See* Letter attached as Exhibit "Q".

33.    Under paragraph 4 of the Agency Agreement, Peninsula reserved "absolute control" to set the price of gasoline sold to customers at the Oasis Station, "except that the price shall be competitively priced with locations in that area."

34.    On February 13, 1990, Peninsula and BCG entered into an additional

agreement (hereinafter referred collectively with the Agency Agreement as the "Agency Agreement"), whereby, among other things, Peninsula promised to set the wholesale price for diesel based upon Peninsula's posted transport price at the time of delivery and, in any event, no higher than .025 per gallon over Salisbury Rack prices (the "Price Cap"). *See* Agreement attached as Exhibit "R". Plaintiffs would thereafter set the retail price for diesel fuel.

35.    In addition, the Plaintiffs and Peninsula entered into a Credit Card Loan Equipment Agreement (hereinafter referred to collectively with the Agency Agreement as the "Agency Agreement"), whereby they agreed that the Plaintiffs were not responsible for paying any credit card fees, and that any such fees were to be paid by Peninsula. *See* Credit Card Loan Equipment Agreement attached as Exhibit "S".

36.    Under paragraph 5 of the Agency Agreement, Peninsula also agreed to pay BCG four cents (4¢) for each gallon of unleaded and unleaded plus gasoline and six cents (6¢) for each gallon of premium unleaded gasoline sold by BCG (the "Gas Commissions").

37.    Since accepting an assignment of the Agency Agreement, Sweet Oil has failed and/or refused to perform the above-mentioned provisions of the Agency Agreement.

38.    Over the past twelve months, the Plaintiffs have sent Sweet Oil hundreds of daily faxes that provided gas prices for three locations in BCG's local area, identified daily gas and fuel sales, requested that Sweet Oil abide by the

contract and keep retail prices competitive with BCG's competitors, and explained the damage Sweet Oil's overpricing was causing BCG's business. *See* Faxes attached as Exhibit "T".

39.    In direct violation of its obligation pursuant to the Agency Agreement to competitively price at retail its gasoline and to set the wholesale diesel fuel price below the Price Cap, Sweet Oil ignored the previous well-established course of performance between BCG and Peninsula. Sweet Oil knowingly priced BCG's gasoline ten to twenty cents higher than BCG's direct competitors, and exceeded the Price Cap for diesel fuel, thereby placing BCG at a severe competitive disadvantage.

40.    In direct contravention of its obligations under the Agency Agreement, Sweet Oil also refused and/or failed to pay Gas Commissions to the Plaintiffs for seven (7) of the ten (10) applicable months.

41.    On December 8, 2005, the Plaintiffs' bookkeeper called Sweet Oil's bookkeeper asking for the Plaintiffs' gas commission checks, but Sweet Oil's bookkeeper said he did not know anything about Gas Commissions and that the Plaintiffs needed to contact John Collins or Mark Greco of Sweet Oil.

42.    On December 9, 2005, the Plaintiffs' bookkeeper faxed to Sweet Oil a recap summary of the first three (3) months of Gas Commissions owed by Sweet Oil, but Sweet Oil failed and/or refused to provide a response.

43.    On December 31, 2005, the Plaintiffs' bookkeeper faxed a recap summary for the first four (4) months of Gas Commissions with a note asking what the problem was regarding the Gas Commissions, but Sweet Oil failed and/or

11

refused to provide a response.

44.    On March 6, 2006, the Plaintiffs' bookkeeper discovered an electronic funds transfer deposit in the Plaintiffs' bank account statement for the month of January of 2006. While Sweet Oil said that it did not know why the money was deposited, this money was clearly the payment for the first three months of Gas Commissions as it equaled the exact amount owed by Sweet Oil for those months.

45.    In direct contravention of its obligations under the Agency Agreement, Sweet Oil also electronically transferred funds out of the Plaintiffs' bank account for equipment repairs and continued to send the Plaintiffs repair bills after the Plaintiffs eliminated Sweet Oil's access to the Plaintiffs' bank account.

46.    In direct contravention of its obligations under the Credit Card Loan Equipment Agreement and the Plaintiffs and Peninsula's previous course of performance, Sweet Oil began subtracting credit card fees from the Plaintiffs' credit card monthly settlement payments. *See* Documents attached as Exhibit "U".

47.    On March 15, 2006, the Plaintiffs sent a letter advising Sweet Oil that it would no longer be authorized to electronically transfer funds from the Plaintiffs' checking account. *See* Letter attached as Exhibit "V".

48.    Sweet Oil has wrongfully transferred at least Three Thousand Seven Hundred Eighty Seven Dollars and Forty One Cents ($3,787.41) through unauthorized electronic transfers from the Plaintiffs' accounts for credit card fees, which were the sole responsibility of (and should have been paid for by) Sweet Oil.

49.    On June 21, 2006, Sweet Oil also sent a letter to the Plaintiffs

12

demanding that they repair Sweet Oil's equipment. Sweet Oil's failure to do so is in direct contravention of the Plaintiffs' written agreements and course of performance with Peninsula.

50.    On July 11, 2006, the Plaintiffs sent a letter to Sweet Oil terminating the Agency Agreement given Sweet Oil's multiple, bad-faith breaches of the aforesaid agreement, and explaining that the Plaintiffs were going to offset the Gas Commissions, overcharges on diesel fuel, costs of equipment repairs, and credit card fees incurred prior to that date from amounts owed by BCG to Sweet Oil for diesel fuel. *See* Letter attached as Exhibit "W".

51.    On or about July 11, 2006, Sweet Oil responded to the Plaintiffs' termination letter by refusing to accept the aforesaid termination and claiming that the Plaintiffs and Sweet Oil "mutually agreed" to re-brand the Oasis station from Texaco to Citgo, that due to the Plaintiffs' failures it lacked sufficient information to determine whether it was competitively pricing the gasoline, that Sweet Oil has been only charging the Plaintiffs the Salisbury rack price plus .01 per gallon consistent with the Agency Agreement, that Sweet Oil had not wrongfully electronically transferred funds from the Plaintiffs' accounts, and that due to the Plaintiffs' failures it lacked sufficient information to determine whether it was properly paying the Plaintiffs' Gas Commissions.    Furthermore, the letter threatened "criminal prosecution for . . . theft" for "illegally [seizing] possession of [Sweet Oil's] credit card transaction receipts for all sales" and alleged damage to Citgo credit card software, which had suddenly "come to [their] attention." *See*

13

Letter attached as Exhibit "X".

52.    The Plaintiffs only agreed to re-brand to Citgo because the Defendant told the Plaintiffs that the Texaco brand was going to be eliminated, which the Plaintiffs later learned was false.

53.    On July 20, 2006, the Plaintiffs sent Sweet Oil a letter stating that its "claims are denied" and that "[a]ny adverse actions Sweet Oil takes that result in further damages to BCG will be dealt with accordingly." *See* Letter attached as Exhibit "Y".

54.    The Plaintiffs later learned that, on July 19, 2006, Sweet Oil sent a letter (the "Letter"), which contained several absolute misrepresentations and falsehoods, to numerous companies that might supply gasoline to the Plaintiffs, including Valero Energy Corporation, the Delaware City Refinery, Eagle Transport, Carroll Independent Fuel, CATO, Inc., Eastern Petroleum, Ewing Oil Company, J. Wm. Gordy Fuel, Ocean Petroleum, Pep-Up, PMG, Service Energy, LLP, and Wilson Baker, stating as follows:

> Sweet Oil Company has an exclusive Sales Agreement (the "Agreement") with B.C.G., Inc. t/a the Laurel Oasis, operating as a SWEET OIL COMPANY SUPPLIED CITGO gasoline station at Sussex Highway (the "Station"). Under the terms of the Agreement, Sweet Oil has the exclusive right [sic] sell and B.C.G., Inc. t/a The Laurel Oasis has the duty to exclusively purchase motor fuel branded under the SWEET OIL COMPANY SUPPLIED CITGO name at the Station.
>
> This letter is written to put you on notice of the Agreement and that any sale of motor fuel products to the Station will be deemed to be with full knowledge that the motor fuel product was not a SWEET OIL COMPANY SUPPLIED CITGO branded product. Such a sale constitutes, at a minimum, a deceptive trade practice, and further

14

constitutes tortuous interference with Sweet Oil's exclusive contract with B.C.G., Inc. t/a The Laurel Oasis. The Office of Retail Gasoline Sales will be notified if such a sale occurs. **Currently, the station is being monitored to evaluate compliance/non-compliance with the Agreement.**

Accordingly, Sweet Oil has initiated legal action to **enjoin** any company from selling and/or transporting any motor fuel with the intention that it be sold to the public from this location. Said legal action may include a lawsuit seeking an injunction against any offending company for the sale of motor fuel, as well as a lawsuit for damages. In addition, the state may choose to proceed against an offending party and impose a penalty for a willful violation of the applicable laws.

This letter serves as notice to cease and desist from any sales and/or transport of motor fuel to B.C.G., Inc. t/a The Laurel Oasis.

*See* Letter attached as Exhibit "Z" (emphasis in original).

55.    Shortly after the Letter was sent, several companies have told the Plaintiffs that they will not supply the Plaintiffs because of the threats made by the Defendant in the Letter.

## COUNT I
### Breach of Contract - The Mobil Station

56.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 55 above, as if fully set forth herein.

57.    The Defendant's conduct as aforesaid, including the Defendant's failure to pay the Mobil incentive fees to the Plaintiff, the Defendant's unilateral attempt at re-branding the Mobil station to Sunoco, the Defendant's continued overcharging for freight, the Defendant's unilateral institution of an administrative fee for shipping, and the Defendant's elimination of the Plaintiffs' ability to accept Mobil credit card payments, constitutes material breaches of the Dealer Agreement

and the well-established course of performance between the Plaintiffs and Peninsula.

58.    As a direct and proximate result of the Defendant's material breaches as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to lost customers, lost gas and ancillary sales, lost goodwill, lost incentive fees, overcharges on freight, and unwarranted administrative fees on shipping.

## COUNT II
## Declaratory Judgment - The Mobil Station

59.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 58 above, as if fully set forth herein.

60.    Pursuant to 10 Del. C. § 6501, et. seq., the Plaintiffs request that the Court find that the Plaintiffs are entitled to enforce their rights under the Dealer Agreement, and declare that (1) the assignment from Peninsula to Sweet Oil materially increased Plaintiffs' risks and burdens and was therefore unlawful, (2) the Defendant has breached material provisions of the Dealer Agreement, violated the provisions of the Petroleum Marketing Practices Act, and/or failed to provide timely adequate assurances of future performance, such that the Dealer Agreement is rendered, null, void and unenforceable, and (3) the Defendant is therefore obligated to release and/or satisfy the Second Mortgage.

61.    In this regard, paragraph 4 of the Dealer Agreement provides that "[i]f [Peninsula] fails to comply with any payment requirements as herein provided, the Dealer may terminate this Agreement."

62.    Similarly, paragraph 9 of the Dealer Agreement provides that "[i]n the

16

event [Peninsula] breaches and [sic] of the provisions of this Agreement, the Dealer, at its sole option, may terminate this Agreement and the Dealer will not be precluded from seeking other remedies which the Dealer may have against the Company for said breach."

63.    Plaintiffs have a legitimate interest in a prompt resolution of their rights under the Dealer Agreement given the Defendant's stated intention to refuse to abide by the terms of the Dealer Agreement, and the Defendant's near absolute failure to abide by the terms of the Dealer Agreement thus far.

64.    Plaintiffs face considerable hardship, including severe economic hardship and further delay on behalf of the Defendants, should the parties dispute regarding the Dealer Agreement not be resolved immediately and/or the need to enforce the terms of the Dealer Agreement arises again in the future.

65.    Given that questions of breach and enforcement of the Dealer Agreement are now before the Court, any further issues regarding the rights and obligations of the parties under the Dealer Agreement are ripe for judicial action and hereby made part of this action.

## COUNT III
## Breach of Contract - The Oasis Station

66.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 65 above, as if fully set forth herein.

67.    The Defendant's conduct as aforesaid, including the Defendant's failure to competitively price gasoline at the Oasis Station, overcharging of BCG for the price of diesel fuel, failure to pay the Gas Commissions, failure to make repairs

17

to the Defendant's equipment at the Oasis Station, and charging BCG for repairs to the Defendant's equipment at the Oasis Station, constitutes material breaches of the Agency Agreement and the well-established course of performance between the Plaintiffs and Peninsula.

68.    As a direct and proximate result of the Defendant's material breaches as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, lost customers, lost gas and ancillary sales, lost goodwill, lost Gas Commissions, overcharges on diesel fuel, equipment repairs, and credit card fees.

<div align="center">

COUNT IV
**Declaratory Judgment - The Oasis Station**

</div>

69.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 68 above, as if fully set forth herein.

70.    Pursuant to 10 Del. C. § 6501, et. seq., the Plaintiffs request that the Court find that the Plaintiffs are entitled to enforce their rights under the Agency Agreement, declare that the Defendant has breached material provisions of the Agency Agreement such that the Agency Agreement was rendered, null, void and unenforceable pursuant to the Plaintiffs' letter terminating the aforesaid Agreement, and declare that the assignment from Peninsula to Sweet Oil materially increased Plaintiffs' risks and burdens and was therefore unlawful.

71.    Plaintiffs have a legitimate interest in a prompt resolution of their rights under the Agency Agreement given the Defendant's stated refusal to accept the Plaintiffs' termination of the Agency Agreement, the Defendant's tortious interference with its contractual and expectancy relationships, the Defendant's

<div align="center">18</div>

threats of criminal prosecution, and the Defendant's near absolute failure to abide by the terms of the Agency Agreement.

72.    Plaintiffs face considerable hardship, including severe economic hardship and further delay on behalf of the Defendants, should the parties' dispute regarding the Agency Agreement not be resolved immediately and/or the need to enforce the terms of the Agency Agreement arises again in the future.

73.    Given that questions of breach and enforcement of the Agency Agreement are now before the Court, any further issues regarding the rights and obligations of the parties under the Dealer Agreement are ripe for judicial action and hereby made part of this action.

## COUNT V
### Tortious Interference - The Oasis Station

74.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 73 above, as if fully set forth herein.

75.    Sweet Oil directed the Letter, which contains representations that Sweet Oil knew to be false, to businesses with which Sweet Oil knew the Plaintiffs had valid business relationships and expectancies for such relationships.

76.    Sweet Oil's conduct as aforesaid has wrongfully caused the Plaintiffs to lose valid business relationships and expectancies for such relationships.

77.    Sweet Oil intentionally interfered with the Plaintiffs' actual and prospective business relationships and expectancies without justification and has induced and caused businesses to breach and terminate their relationship or expectancy with the Plaintiffs, which has caused the Plaintiffs substantial damages.

78.   This case involves the rights and legal relations of the Plaintiffs and Sweet Oil.

79.   The Plaintiffs and Sweet Oil have an interest in pursuing and/or contesting the Plaintiffs' claims.

80.   Sweet Oil's and Plaintiffs' interests are real, adverse, and ripe for judicial determination.

81.   As a direct and proximate result of the Defendant's tortious interference as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, the attorneys' fees incurred to prosecute the above-captioned action.

<div align="center">

**COUNT VI**
**Bad Faith - The Mobil Station & The Oasis Station**

</div>

82.   The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 81 above, as if fully set forth herein.

83.   Notwithstanding repeated demands by the Plaintiffs, the Defendant has failed and/or refused to abide by the clear and unambiguous terms of the Dealer Agreement, the Agency Agreement and the well-established course of performance between the Plaintiffs and Peninsula as aforesaid.

84.   The Defendant's actions in refusing to meet and fulfill its obligations as aforesaid, solely in an effort to force a renegotiation of the aforesaid agreements to include terms less favorable to the Plaintiffs, constitute deliberate bad faith and unfair dealing, in blatant and unconscionable breach of the terms and conditions of the aforesaid agreements and the obligation of good faith and fair dealing implied in

every contract.

85.    As a direct and proximate result of the Defendant's bad faith and unfair dealing, the Plaintiffs have suffered substantial damages.

## COUNT VII
### Delaware Franchise Security Law
### The Oasis Station and The Mobil Station

86.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 85 above, as if fully set forth herein.

87.    The Plaintiffs are Franchised Distributors and the Defendant is a Franchisor pursuant to the Delaware Franchise Security Law, 6 Del. C. § 2551, et seq.

88.    Pursuant to 6 Del. C. § 2552, a Franchisor may not attempt to unjustly terminate a franchise and/or attempt to purge itself of the relationship by refusing to deal with the Franchised Distributor.

89.    The Defendant's actions in refusing to meet and fulfill its obligations as aforesaid, tortiously interfering with the Plaintiffs' actual and prospective contractual relationships, and intentionally misrepresenting the availability of the Mobil and Texaco brands, solely in an effort to terminate and purge its existing contractual obligations to the Plaintiffs and force a renegotiation of the aforesaid agreements to include terms less favorable to the Plaintiffs, constitute violations of the Delaware Franchise Security Law.

90.    As a direct and proximate result of the Defendant's violations of the

21

Delaware Franchise Security Law, as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, lost customers, lost gas and ancillary sales, and lost goodwill.

91.    Pursuant to 6 Del. C. § 2553, the Plaintiffs are entitled to recover damages, including loss of profits, which shall be presumed to be no less than five (5) times the profit obtained by the franchised distributor, by virtue of the terminated franchise, in the most recently completed fiscal year.

## COUNT VIII
### Petroleum Marketing Practices Act
### The Mobil Station

92.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 91 above, as if fully set forth herein.

93.    The Plaintiffs are Franchisees and the Defendant is a Franchisor pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq.

94.    Pursuant to 15 U.S.C. § 2802, a Franchisor may not terminate a franchise except upon the grounds set forth therein, and in strict compliance with the notice requirements set forth at 15 U.S.C. § 2804.

95.    The Defendant willfully terminated the Plaintiffs' franchise at the Mobil Station without the requisite notice or grounds by debranding the Mobil Station (and eliminating the trademark), and ceasing to supply trademarked "Mobil" branded products.

96.    As a direct and proximate result of the Defendant's violations of the Petroleum Marketing Practices Act, as aforesaid, the Plaintiffs have suffered

substantial damages, including, but not limited to, lost customers, lost gas and ancillary sales, and lost goodwill.

## COUNT IX
### Attorneys' Fees - The Mobil Station And The Oasis Station

97.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 96 above, as if fully set forth herein.

98.    The Plaintiffs are entitled to reasonable attorneys' fees pursuant to paragraph 20(d) of the Dealer Agreement, which provides that "[i]n the event either party breaches any of the terms of this Agreement and the party not in default employs Attorneys to protect or enforce its rights hereunder and prevails, the defaulting party agrees to pay the other party reasonable Attorneys fees and costs it so incurred."

99.    Furthermore, because the Defendant's conduct as aforesaid is both willful and malicious, the Court should also award the Plaintiffs their reasonable attorneys' fees.

100.    In addition, the Plaintiffs are entitled to recover attorneys' fees and costs incurred in establishing their rights under and securing enforcement of the Dealer Agreement and the Agency Agreement pursuant to 10 Del. C. § 6510, to recover reasonable counsel fees and costs pursuant to 6 Del. C. § 2553 as a result of the Defendant's violation of the Delaware Franchise Security Law, and to recover reasonable counsel fees and costs pursuant to 15 U.S.C. § 2805 as a result of the Defendant's violation of the Petroleum Marketing Practices Act.

WHEREFORE, the Plaintiffs respectfully request a judgment in favor of the

Plaintiffs and against the Defendant be entered by this Court:

   A. Awarding the Plaintiffs compensatory damages in an amount sufficient to fully compensate the Plaintiffs for any and all damages sustained by the Plaintiffs as a result of the Defendant's conduct as foresaid, together with pre-judgment and post-judgment interest;

   B. Awarding the Plaintiffs statutory damages pursuant to 6 <u>Del. C.</u> § 2553;

   C. Awarding the Plaintiffs exemplary damages pursuant to 15 U.S.C. § 2805(d) for Defendant's willful violation of the Petroleum Marketing Practices Act;

   D. Awarding the Plaintiffs punitive damages for the Defendant's bad faith and tortious conduct in an amount sufficient to punish and deter the Defendant from engaging in similar conduct in the future;

   E. Awarding the Plaintiffs all of their costs and reasonable attorneys' fees incurred in pursuing the claims set forth herein and securing enforcement of the Plaintiffs' contractual rights, including attorneys' fees and expert witness fees pursuant to 15 U.S.C. § 2805; and

   F. Declaring that:

   (1) The Defendant has breached material provisions of the Dealer Agreement, violated the provisions of the Petroleum Marketing Practices Act, and/or failed to provide timely adequate assurances of future performance, such that the Dealer Agreement is rendered, null, void and unenforceable;



(2)    The assignment of the Dealer Agreement and the Agency Agreement from Peninsula to Sweet Oil materially and unreasonably increased the Plaintiffs' risks and burdens, such that the Dealer Agreement and the Agency Agreement are rendered null, void and unenforceable;

(3)    The Defendant is obligated to release and/or satisfy the Second Mortgage; and

(4)    The Defendant has breached material provisions of the Agency Agreement and/or violated the provisions of the Petroleum Marketing Practices Act, such that the Agency Agreement was rendered, null, void and unenforceable pursuant to the Plaintiffs' letter terminating the aforesaid Agreement.

G.    Granting such further relief as the interests of equity and justice may require.

PRICKETT, JONES & ELLIOTT, P.A.

John W. Paradee (DE Bar No. 2767)
D. Benjamin Snyder (DE Bar No. 4038)
Glenn C. Mandalas (DE Bar No. 4432)
11 North State Street
Dover, Delaware 19901
(302) 674-3841

*and*
Harry C. Storm
Lerch, Early & Brewer, Chartered
3 Bethesda Metro Center, Suite 460
Bethesda, MD 20814

Date: March 27, 2007                    *Attorneys for the Plaintiffs*

EFiled: Mar 27 2007 3:44PM EDT
Transaction ID 14274450
Case No. 06C-10-024 RBY

# EXHIBIT "A"

JAN. 3-03 FRI  3:07 PM  PENINSULA OIL                FAX NO.  30302.  10

*10/3/02*

PENINSULA OIL CO., INC.

and

CHESAPEAKE PRODUCTS & SERVICE, INC.

Dealer Agreement

Motor Fuels

THIS AGREEMENT ("Agreement") is made this ___3___ day of *October*_____,
A.D. 2002, between PENINSULA OIL CO., INC., a Delaware corporation (hereinafter the
"Company"), with offices at South Market Street, P. O. Box 389, Seaford, Delaware  19973,
party of the first part, and CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware
corporation, and B.C.G., INC., a Delaware corporation (hereinafter collectively called the
"Dealer"), doing business at premises located at Map 11 Grid 24 Parcel 44, Wicomico County,
Maryland, (hereinafter called the "Premises"), parties of the second part.

WITNESSETH

1.     TERM OF AGREEMENT:    This Agreement shall be in effect for a period of
ten (10) years, beginning on or about March 1, 2002, and terminating on or about March 1, 2012,
unless sooner terminated as herein provided or unless renewed by agreement of the parties.

2.     PRODUCTS AND QUANTITIES:

a.     The Company shall sell and deliver to the Dealer and the Dealer shall
purchase and take from the Company during the above term, the Dealer's requirements of
the Company's gasolines, diesel, fuel and kerosene at the above Premises of the Dealer.
The Dealer shall not, during the term of this Agreement, sell any goods of any other
person or entity, which shall, in any way, compete with the sale of the goods covered by
this Agreement. This Agreement shall only apply to the above location, unless the parties
amend this Agreement to include other locations.

b.     If the Dealer breaches any of the provisions of this Agreement, the Dealer
agrees to reimburse the Company in the amount of three cents (3¢) per gallon for each
gallon of gasoline sold by the Dealer during the four-year period beginning on or about
March 1, 2002, and terminating on or about March 1, 2006.  This is in recognition that
the Company will receive from Mobil three cents (3¢) per gallon for gasoline sold to the
Dealer during the above four-year period (which payment is referred to among the
Company, the Dealer and Mobil as an incentive payment), that the Company will, in turn,
pay such three cents (3¢) to the Dealer, and that the Company is liable to repay Mobil
such three cents (3¢) per gallon according to the following schedule:

EARNE & BAILEY, P. A.
ATTORNEYS AT LAW
P. O. BOX 155
LILSBERY, MD 21802-0155

PHONE:  (410) 749-5144
FAX:    (410) 749 8178

FRI 1:08 PM  PENN. A OIL                    FAX NO.  8015_ 570              2. -

| Year Debranded | % of Incentive to be Returned to Mobil |
|---|---|
| Years 1 through 5 | 100% |
| Year 6 | 80% |
| Year 7 | 60% |
| Year 8 | 40% |
| Year 9 | 30% |
| Year 10 | 20% |

Should the Company be required to repay Mobil any incentive payment because of debranding prior to March 1, 2012, the Dealer agrees to pay the Company such amount repaid to Mobil. As partial security for the Dealer's obligation to the Company, the Dealer agrees to execute a mortgage on the Premises, which mortgage shall be at least a second mortgage.

3.　　**GASOLINE PRICING.**　　The price the Dealer pays the Company for gasoline will be computed pursuant to the following formula: the posted terminal price on the date of delivery, plus any federal, state or local environmental fees charged at the terminal rack, plus any taxes now or thereafter charged by Federal, State or Local authorities collected at the terminal rack or collected from the Dealer and paid by the Company, plus the common carrier freight rate per gallon from the terminal to the Premises including any fuel or other surcharges charged by the common carrier, plus profit to the Company of $.01 per gallon, plus current and future taxes, such as gross receipts taxes. The Dealer will receive the benefit of any discounts or TVAs below the rack price, but not any prompt pay discounts received by the Company.

4.　　**TERMS.**　　The Dealer shall pay the Company within seven (7) days following delivery. The Company shall reconcile all credit card payments weekly from the previous week's credit card purchases. If the Dealer fails to comply with any payment requirements imposed by the Company, the Company is entitled to suspend its deliveries pending such failure or refusal or it may terminate this Agreement. If the Company fails to comply with any payment requirements as herein provided, the Dealer may terminate this Agreement.

5.　　**TAXES.**　　In addition to the provided purchase price, the Dealer shall pay all duties, taxes and other charges now or hereafter imposed by any federal, state or other governmental authority in the United States with respect to the importation, production, transportation, manufacture, sale, delivery or use of any of the products covered by this contract which the Company may be required by any such authority or otherwise to assume, pay or collect.

6.　　**DELIVERIES AND INVENTORY RECONCILIATION.**　　All products shall be delivered to the above Premises of the Dealer and the Company shall make deliveries in its usual manner. The Dealer shall keep accurate records on the Premises showing the type or product and periodic reconciliation between sales, use, receipts and inventory on hand and the Company shall have the right to inspect the same at any reasonable time. The Company reserves

2

FRI 5:08 PM PENIN. OIL          FAX NO. 50282 70

the right to refuse to make deliveries into any storage equipment of the Dealer, which, in the sole judgement of the Company, is unsafe or otherwise unsatisfactory for the receipt of deliveries.

7. **TITLE OF FUELS TO REMAIN IN COMPANY UNTIL PAYMENT.** Title to the fuels shall remain in the Company until the purchase price herein specified has been received.

8. **BRANDS.** The Dealer shall resell the products purchased under the Company's names, trademarks and brands. The Company reserves the right to change, discontinue, add and/or adopt any product, grade, brand and /or trade name of its products. If the Mobil Brand becomes unavailable, the Company and the Dealer shall mutually agree on what brand the Dealer will resell.

9. **BREACH.** In the event the Dealer breaches any of the provisions of this Agreement, the Company, at its sole option, may suspend or refuse deliveries hereunder and the Dealer's obligation to repay the debranding incentive set forth in paragraph 2 shall remain an obligation of the Dealer according to the terms of this Agreement. Upon the expiration or any termination of the term hereof, any unpaid account of the Dealer with the Company shall become immediately due and payable. In the event the Company breaches and of the provisions of this Agreement, the Dealer, at its sole option, may terminate this Agreement and the Dealer will not be precluded from seeking other remedies which the Dealer may have against the Company for said breach.

10. **COSTS TO BE PAID BY DEALER.** The Dealer agrees to pay all equipment and communication costs associated with the acceptance of credit cards whether or not processed through the Company.

11. **WAIVER AND AMENDMENTS.** No representative of the Company has authority to waive any provisions or to modify or to change the terms of this Agreement except by supplemental written agreement executed by a duly authorized officer of both the Company and the Dealer.

12. **NOTICES.** All notices shall be in writing, may be given to the Dealer by personal service or to either the Dealer or the Company by certified or registered letter or telegram and, in the latter instances, notice shall be deemed given when the letter is deposited in the mail or telegram is deposited with the telegraph company, postage or charges prepaid and directed to the party for whom intended, at such party's address first herein specified or such other address as such party may have substituted therefore by notice so given to the other.

13. **THE COMPANY AND THE DEALER.** The relationship between the Company and the Dealer is that of vendor and purchaser. The Dealer is an independent contractor and shall not have authority to act for or to bind the Company, in any way, or to represent that the Company, in any way, is responsible for the acts of the Dealer. The company shall not have authority to act for or bind the Dealer, in any way, or to represent that the Dealer, in any way, is responsible for the acts of the Company. This Agreement does not establish a joint venture.

- 3 -

agency or partnership between the parties nor does it create an employer-employee or franchisor-franchisee relationship. The Dealer shall bear sole responsibility for any statements or claims of the Dealer regarding the products which have not been authorized in advance and in writing by the Company. The parties shall indemnify and save each other harmless from and against any and all liability, loss, damages, costs or expenses which they may incur in the event a party does not comply with the obligations specified in this paragraph.

14.    **TERMINATION OF CONTRACT.** The parties reserves the right to terminate this Agreement prior to the end of the primary term hereof, and prior to the end of any term thereafter, by notice given in accordance with applicable law, upon any grounds provided in any applicable law, statute, rule or regulation, including by way of illustration, but not limited to:

     a.    A party's failure to comply with any reasonable and material provision hereof;

     b.    A party's failure to exert good faith efforts to carry out a provision of this Agreement;

     c.    The occurrence of any event which is reasonable relevant to the relationship of the parties under this Agreement including, for example, but not by way of limitation:

       1.    Fraud or criminal misconduct by a party;

       2.    A party's bankruptcy or judicially-determined insolvency;

       3.    A party's failure to pay the other party in a timely manner when due all sums to which either party is legally entitled; or

       4.    Purposeful adulteration, mislabeling of motor fuels or other trademark violations by a party.

     d.    In addition to the above, the Dealer reserves the right to terminate this Agreement at any time in the event the Dealer, in its sole discretion, determines that the Company's fuel prices are not competitive.

15.    **PAYMENT OF COMPENSATION UPON TERMINATION.**  Upon the termination of this Agreement, all accrued but unpaid amounts up to and through the date of such termination, including Mobil incentive money, shall be paid to the party entitled thereto. Payment shall be made as soon as the amount due is determined.

16.    **INSURANCE.**  The Dealer shall maintain pollution liability insurance in amounts reasonably satisfactory to the Company, naming the Company as an additional insured party. The Dealer shall also maintain liability insurance in amounts as required by law. This liability policy shall name the Company as an additional insured. The Dealer shall annually provide the Company with copies of certificates evidencing these insurance coverages.

- 4 -

FRI 5:13 PM PENINSU OIL                    FAX NO. 3026235 0                    P. 5

17.    **FORCE MAJEURE.**    The Company shall not be held responsible for any damage or loss to the Dealer resulting from failure or delay in making deliveries which may be due to strike, accident, fire, war, insufficient supply of such products, failure or delay in transportation, Act of God or any other cause beyond the Company's control, whether or not similar to the causes enumerated herein. The Company may apportion its available supply among its customers in such manner as is required by law.

18.    **ASSIGNMENT.**    This Agreement is not assignable by the Dealer without the prior written consent of the Company, which shall not be unreasonably withheld, and otherwise is binding on and for the benefit of the Company and the Dealer and their respective legal representatives, successors and assigns. Notwithstanding a permitted assignment by the Dealer, the Dealer's obligation to repay the debranding incentive set forth in Paragraph 2 shall survive such assignment and shall remain an obligation of the Dealer following such assignment.

19.    **ENTIRETY-RELEASE-EXECUTION-SUCCESSION.**    This Agreement comprises the entire agreement, and merges and supersedes all prior contracts, representations and warranties (oral or written, express or implied) between the Company and the Dealer concerning the subject matter or in consideration hereof. Neither this Agreement nor any subsequent agreement amending or supplementing this Agreement shall be binding on the parties unless it is signed by authorized representatives of the parties.

20.    **MISCELLANEOUS.**

a.    This Agreement shall be construed under and in accordance with the laws of the State of Delaware, notwithstanding the fact the Premises are situate in Maryland.

b.    In case any one or more of the provisions contained in this Agreement shall be, for any reason, held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not effect any other provision and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

c.    No waiver by the parties hereto of any breach or default of any term, condition or covenant of this Agreement shall be deemed to be a waiver of any other breach of the same or any other term, condition or covenant contained herein.

d.    In the event either party breaches any of the terms of this Agreement and the party not in default employs Attorneys to protect or enforce its rights hereunder and prevails, the defaulting party agrees to pay the other party reasonable Attorneys fees and costs it so incurred.

EXECUTED as of the date first herein specified.

ATTEST:                          PENINSULA OIL CO., INC.
                                 A Delaware Corporation

_____          BY: _____
Secretary                             President

                                 (Corporate Seal)


ATTEST:                          CHESAPEAKE PRODUCTS & SERVICES, INC.

_____          BY: _____
Secretary                             President

                                 (Corporate Seal)


ATTEST:                          B. C. G., INC., a Delaware corporation

_____          BY: _____
Secretary                             President

                                 (Corporate Seal)


F:\Users\sf\34971\Agrt

6

EXHIBIT "B"



*8/16/05*

S. MARKET ST. • P.O. BOX 389 • SEAFORD, DE 19973 • 5 MILL ST. • P.O. BOX D • MILFORD, DE 19963
ELLIS AVE. • P.O. BOX 146 • SELBYVILLE, DE 19975
WWW.PENOIL.COM

August 16, 2005

Dear Retail Dealer:

Thank you for your valued business over the past years. As Peninsula Oil & Propane moves out of the dealer gasoline business our plan is to place more emphasis on our heating oil, propane and HVAC business.

I anticipate that Sweet Oil Company will be a good partner for you in the years ahead.

When the transfer of business to Sweet Oil Company occurs, a representative of Peninsula Oil Company and Sweet Oil Company will be at your site to take a final inventory. During the weeks prior to transfer, we will conduct business as usual.

I am requesting that all monies due to Peninsula Oil Company be paid on or before September 1, 2005. If you have any questions please do not hesitate to call me at 302-629-2480, Ext. 19.

Sincerely,

Donald Williams, V.P. Operations

WE MAKE IT EASY ... *for you*

| Seaford | Milford | Hickman & Willey |
|---------|---------|------------------|
| 629-3001 | 422-6691 | 436-8533 |

EXHIBIT "C"

*3/15/06*

Chesapeake Products and Services Inc.
P.O. Box 311
Laurel, DE 19956
302-875-6014

3/15/06

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re: Peninsula Oil Co., Inc. And Chesapeake Products and Service, Inc. Dealer Agreement
Motor Fuels dated 10/3/02

Dear Sirs,

Since the assignment of the above referenced contract from Peninsula Oil Inc. To GleS, Inc. t/a
Sweet Oil Company has taken place, you have deviated from the course of performance as
established by Peninsula Oil Co., Inc. during the first three and half years. Specifically we have
not received payments of all moneys owed and by being overcharged the freight rate of product
deliveries. We need assurances that you are going to perform the contract as it was historically
preformed by Peninsula Oil Co., Inc. Provide these assurances in writing within 30 days.

Thank You

Charlie Glenn VP

*sent certified 3/17/06*

EXHIBIT "D"



3/20/06

# GLeS, Inc.
## t/a
## Sweet Oil Company

Chesapeake ·roducts & Services Inc.
Mr. Charlie Glenn

March 20, 2006

Dear Sir,

I am in receipt of your letter dated March 15, 2006 and have the following comments in response:

GLeS, Inc. t/a Sweet Oil Company did in fact take assignment of the Peninsula Oil agreements and is in compliance with those agreements and to the best of our knowledge has not "deviated in our course of performance" as you stated in your letter. No two distributors operate exactly the same. Peninsula had reasons for selling this business, as did we for purchasing it. We believe we operate very efficiently, and competitively and have been very successful as referenced by our tremendous growth not only in your market, but in all five states we operate in. As you are aware we have made you an extremely competitive offer to extend our relationship for another ten years, and have met nearly all of your requests. I believe this shows our commitment to you as our customer, by meeting or exceeding our competition for your business. Is it possible we do not have copies of a specific written agreement which you are basing your comments on? If you believe you have such document, please provide us with a copy and we will fulfill our obligations as always. If not, we must continue to operate within the boundries of the written documents which we received in our purchase of Peninsula's dealer business.

In addition, you state you have not received all payments of monies owed by being overcharged on freight of product. You are being charged Sweet Oil's applicable delivery to your locations which is not subject to audit under the contract. I do not see how you could establish if you were overcharged when there is no basis for this discrepancy.

Sincerely Yours,

Mark L. Greco

EXHIBIT "E"

Re: Delmar EOL

4/17/06

Page 1 of 2

4/17/06

Reminder: AOL will never ask you to send us your password or credit card number in an email.  This message has been scanned for known viruses.

**From:** Mark L Greco

**To:** Bill Glenn

**Cc:** Adam Gray,  DOLORES LOVE

**Subject:** Re: Delmar EOL

**Date:** Mon, 17 Apr 2006 15:34:55 -0400

**Files:** Mark_Greco.vcf (126)

Bill,

We have notified you many times on this but you continue to ignore the fact that your credit card processing system is going to be shut off at the end of this month. Your speedpass is already off, as is your debit processing. JCV gave you a quote last September to make the upgrades to process on the new system. Peninsula gave you notices begining May 2005, and I personally notified you in writing on April 4, March 6, December 21, as well as being told by our Marketing Representative Adam Gray several times verbally, and you still ignor these notices. I do not want you to call on May 1st when your system is shut off and say you didn't know.

In addition, Sunoco purchased your Mobil supply agreement and intends to convert your Mobil as well as all other Mobil branded sites in Delaware, Maryland, Washington DC, and Virginia to the Sunoco brand effective immediately. The credit card processing system you are currently using is being shut off and replaced with Sunoco's system. Without upgrades to your G-site, you will be cash only in less than 2 weeks. I urge you to call JCV or the contractor of your choice right away to make this necessary upgrade, otherwise you will be cash only on May 1st.

Why do you not respond to our messages?

Do you intend to continue to operate with cash only after May 1st?

Please respond.

Mark Greco
Sweet Oil

CONFIDENTIALITY NOTICE: This Electronic Mail (e-mail) contains confidential and privileged information intended only for the use of the individual or entity to which it is sent. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please immediately notify the sender by reply e-mail or telephone

>>> LOVE, DOLORES<DLOVE@sunocoinc.com> 04/13 9:01 AM >>>

Mark:
Once again I have been notified that the Delmar site is still running on an EOL. We are now about two weeks away from his system being shut down.  There have been so many communications to you to get this site changed out, and now you're in a situation were you are just asking for problems.  I don't know how you are going to do this, but you need to get on this immediately.  It's disturbing that the lack of action on your part will now only create a disruption in service to all

EXHIBIT "F"

4/18/06

Chesapeake Products and Services Inc.
P.O. Box 311
Laurel, DE 19956
302-875-6014

4/18/06

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re: Peninsula Oil Co., Inc. And Chesapeake Products and Service, Inc. Dealer Agreement
    Motor Fuels dated 10/3/02

Dear Sirs,

In response to our recent conversations and letters, please provide written confirmation on the following;

1. When do you intend to remove the Mobil brand from our Delmar location?

2. When can we expect to receive our Mobil incentive money as specified in 2.b. of the contract? (Contract enclosed.)

3. Historically we had used the most cost competitive common carrier freight company to haul our fuels. You have been overcharging us on the freight, as we have quotes from the historical carrier that are $.0075 cheaper, including all surcharges than you are billing us for.

Thank You

Charlie Glenn VP

sent certified

# EXHIBIT "G"



5/16/06

# GLeS, Inc.
## t/a
## Sweet Oil Company

Chesapeake Products & Services Inc.                    May 16, 2006
Mr. Charlie Glenn
Mr. Bill Glenn

Dear Sirs,

In response to your telephone call with Adam this morning I have attached the Sunoco brand conversion incentive program. As you are aware up until now you have been on the current Mobil incentive program and are due to receive your final payment next month. Your current contract has approximately 6 years left before it expires. Sunoco has made a generous offer which I think you will be excited about. They are going to cover the brand conversion cost in full, including the hardware & software upgrade necessary for you to accept credit and debit cards at the dispenser islands. In addition, for resetting your contract term to 10 years, Sunoco has offered to pay you an additional incentive of 1 cent per gallon for all gasoline gallons purchased for the entire new term of 10 years. They would like the brand conversion to occur immediately, as they are converting the entire market to Sunoco over the summer months. Sweet Oil has already begun our brand conversion efforts at our other Sunoco supplied Mobil sites and will be completed within the next 60 days. We would like your station to begin the brand conversion process in June so your new incentive program can be effective July 1st when your current incentive program payments end. This will enhance the strength of the Sunoco brand in your market and give you the maximum benefit of converting your site during the period in which all other Mobil's become Sunoco.

If you choose not to extend your contract to allow for a 10 year term, Sunoco will still re-brand your site, and pay for the brand conversion cost, however there will be no incentive program. At your current volume, this incentive program is valued at approximately $ 150,000.00 to you.

Please contact Adam at your earliest convenience to let us know if you would like to extend your contract term and receive the new incentive program or not, as we need to file the necessary paperwork with Sunoco to insure your payments will begin on time.

Sincerely Yours,

Mark L. Greco

2604 EASTBURN CENTER • NEWARK, DELAWARE • 19711
PHONE: 302.368.9095 • FAX: 302.368.9045

#0190 P.001 /003                              MAY.16.2006 12:39 3023689045

EXHIBIT "H"

5/22/06

Chesapeake Products and Services Inc.
P.O. Box 311
Laurel, DE 19956
302-875-6014

5/22/06

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711
Attn: Mark Greco

Re: no written response to letter dated 4/18/06

Dear Sirs,

We have yet to get a response to our letter dated 4/18/06, please provide written confirmation on the following;

1. When do you intend to remove the Mobil brand from our Delmar location?
   (Second request: 1st from letter dated 4/18/06)

2. When can we expect to receive our Mobil incentive money as specified in 2.b. of the contract?
   (Third request: 1st from letter dated 3/15//06 "Specifically we have not received payments Of all moneys owed" 2nd from letter dated 4/18/06 "When can we expect to receive our Mobil incentive money?")

3. Historically we had used the most cost competitive common carrier freight company to haul our fuels. You have been overcharging us on the freight, as we have quotes from the historical carrier that are $.0075 cheaper, including all surcharges than you are billing us for. Do you intend to continue to overcharge us on freight?

We can't make any future business decision without these issues being addressed.

Please send all corespondents in writing to the address above.

Thank You,

Charlie Glenn VP



6/5/06

# GLeS, Inc.
## t/a
## Sweet Oil Company

Chesapeake Products & Services Inc.                    June 5, 2006
Mr. Charlie Glenn
PO Box 311
Laurel, Delaware
19956

Dear Sir,

I am in receipt of a letter today dated May 22, 2006 titled "no response to letter dated 4-18-06" and do not understand as we have addressed these items in several previous letters dated (1) March 20, 2006 in which I addressed your freight concerns (see copies attached of price breakdown spreadsheets sent to you on your request in September 2005) and questioned your basis for accusing us of overcharging you, as well as addressing any monies due to you from Sunoco (as successor to your Mobil agreement) as they are paid to you as we receive them from Sunoco (see attached submittals for the 4th quarter 2005, and the 1st quarter 2006), and (2) May 16, 2006 outlining Sunoco's conversion incentive program. Additionally, we have communicated through a multitude of email messages informing you of the purchase of all Mobil rights by Sunoco and their approval of assumption of rights by the FTC in which we addressed these issues, as well as the providing you with faxes of Sunoco's credit card processing fees and Honor All credit card conversion program, and VSAT agreement, all of which are attached to this letter again for your files, as well as providing you with Sunoco's market share report to help you feel good about your conversion (also attached to this letter).

We have previously been instructed by your brother Bill that you haven't decided whether you will be converting to Sunoco or buying out your contractual obligations. Adam furnished to Bill, Sunoco's brand substitution incentive program (and I followed up by sending another copy to the site by fax on May 16, 2006) but received no response. We have sent many notices in addition to the notices sent to you by ExxonMobil and Peninsula Oil of Sunoco's intention to stop supporting the Mobil credit card network, and the roll over to their network which began in December of last year.

You received a quote from JCV outlining your cost to upgrade your system to become compatible with the new network (approx cost $4500.00) almost a year ago. In my May 16th letter, I informed you it was our intention to convert all of our other Mobil sites to the Sunoco brand beginning this month, stating "We would like your station to begin the brand conversion process in June so your new incentive program can be effective July 1st when your current incentive program payments end.", however we never received a response from you regarding your acceptance or rejection of the program.

You sent me another copy of your Delmar contract with your April 18, 2006 letter which states in paragraph 8 labeled "Brands" in which a case arises whereby the Mobil brand becomes unavailable, both you and Sweet Oil would mutually agree on a replacement brand. This is not the case, as Mobil has become Sunoco in the Mid-Atlantic states by FTC decree. We came to you as a courtesy and asked for your input regarding this event. We were told you reserved your right to buy-out the recapture agreement as provided in your contract and were evaluating whether or not you would consent to becoming Sunoco.

We would like to convert your Mobil signs to Sunoco this month, but are waiting for you to respond to us with your intentions. We will **not** move forward until we hear from you. By your letter asking when we will

– 2 –                                                                    June 5, 2006

remove the Mobil sign, are you granting approval to convert to Sunoco?

**Do you consent to being converted to Sunoco?**  If so we will begin immediately with ordering materials and will paint your facility to Sunoco specs. If not, we should get together for a meeting to discuss your intentions as soon as possible.

We look forward to your response.

Sincerely Yours,

Mark L. Greco

EXHIBIT "J"

Chesapeake Products and Services Inc.
P.O. Box 311
Laurel, DE 19956
302-875-6014

6/20/06

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re: Peninsula Oil Co., Inc. And Chesapeake Products and Service, Inc. Dealer Agreement
    Motor Fuels dated 10/3/02

Dear Sirs,

 We are in receipt of your letter dated June 5, 2006. It has never been our intent and we are not
granting approval to change our branded location to Sunoco, or buy out our contract. The FTC
decree does not mandate that we change to Sunoco, nor does our contract require this brand
change. We have spent four years building up our Exxon/Mobil credit card base, only to see the
brand threatened to be removed from our location. You have still never answered when you
intend to remove the brand from our location, or when the brand will become unavailable.


Since your company has taken over our contract: You have been overcharging us on freight, and
claim to have addressed this by stating that "the delivery to our location is not subject to audit
under the contract". Although in a previous letter you had agreed to have our product delivered
by the least expensive common carrier as was done historically without adding on a carrier
administration fee that we have never agreed to pay, and is not charged by any other common
carrier. You have failed to pay us three cents per gallon incentive money due us for the last ten
months, and your letter states you intend to pay us only two cents per gallon. You tried to get us
to pay $4500.00 for credit card processing changes by saying they were Mobil upgrades, when in
fact it would have switched us over to the Sunoco credit card network, which you now state
Sunoco will pay for.

We can't make any future business decisions without these issues being addressed.


Thank You

Charlie Glenn VP

EXHIBIT "K"

Jo - Delmar

6/28/06

From: LOVE, DOLORES<DLOVE@sunocoinc.com>
To: mgreco@sweetoil.com
Date: 6/20/2006 11:22:00 AM
Subject: Delmar

Mark:
Please give me a status on this site. Now that they are not processing
credit cards, they are in violation of their contract. You should no
longer supply
them Mobil branded gas and the sign needs to be bagged until we can get
it debranded or preferably converted to Sunoco. Should they decide not
to
convert to Sunoco immediately, I will have to have the penalty clause in
their contract reviewed and any penalties due will have to be paid.

Please contact Tania Kahmer for the sign bag. Either way, this sign
needs to be bagged.

Dolores Love
936 Skyline Drive
Chester Springs, PA 19425
Telephone: 610-220-5768
Fax: 610-827-2041

This message and any files transmitted with it is intended solely for the designated recipient and may
contain privileged, proprietary or otherwise private information. Unauthorized use, copying or distribution of
this e-mail, in whole or in part, is strictly prohibited. If you have received it in error, please notify the sender
immediately and delete the original and any attachments.

CC: TKAHMER@sunocoinc.com

Charlie, Bill,
Please advise,
What is your decision?

Rec Certified
6/28/06

EXHIBIT "L"

8/30/06



*Gl.eS, Inc.*

*Sweet Oil Company*

August 30, 2006

TO ALL Sweet Oil Company owned and/or supplied stations:

In a strategic move to help grow our chain's competitive edge, and as a response to the overwhelming dealer survey as well as in keeping with our commitment to better serve our customers, Sweet Oil Co. has signed preliminary agreements to sell our assets and merge our operations with a company by the name of GPM Investments. GPM owns and operates the Fasmart/Shore Stop franchise and with the addition of our sites will have over 300 locations throughout the mid Atlantic.

After combining our locations with theirs, the company will become the strongest marketer in Delaware and has aggressive plans for immediate additional growth throughout the east coast.

**There will be:**
> More Market Share
> More competitive pricing
> More branding opportunities
> More growth throughout the east coast

**There will be NO:**
> Immediate brand changes
> Personnel changes

Our Entire Chain will benefit from **GPM's buying power** in terms of **guaranteed supply, better pricing**, and **more competitive brand offerings**. We anticipate this transaction to be smooth with absolutely **no interruption of service** to you.

We expect that you may have questions, and have made arrangements to visit your location within the next 24 to 48 hours to discuss in more detail this exciting news.

Thank you for your support,
Sweet Oil Company
Mark Greco
Ben LeRoy
Bill Sweet

EXHIBIT "M"



# LEONARD, SCIOLLA, HUTCHISON, LEONARD & TINARI, LLP
### ATTORNEYS AT LAW

John J. Leonard
Gregory E. Sciolla *†
Hugh J. Hutchison
Keith N. Leonard *
Michael V. Tinari *
Stephen J. Labroli *
Heidi E. Anderson *
Albert J. Talone *
Michelle L. Hodak *†
Paul H. Schultz *

\* Also admitted in New Jersey
† Also admitted in New York

1515 Market Street
Suite 1800
Philadelphia, Pennsylvania 19102
(215) 567-1530
Fax: (215) 564-4611

Moorestown, New Jersey
(856) 273-6679

West Chester, Pennsylvania
(610) 701-6455

www.leonardsciolla.com

January 29, 2007

VIA E-MAIL: dbsnyder@prickett.com
AND REGULAR MAIL

D. Benjamin Snyder, Esquire
Prickett, Jones & Elliott, P.A.
1310 King Street, Box 1328
Wilmington, Delaware 19899

**Re:    Delmar Mobil, 9251 Ocean Highway, Delmar, MD**

Dear Mr. Snyder:

Enclosed please find correspondence from Sunoco, Inc. indicating that, based upon, *inter alia,* its determination that the above-referenced gasoline station operated by your clients BCG, Inc. and Chesapeake Products & Services, Inc. (the "Station") is in breach of its obligations to accept Mobil credit cards, Sunoco, Inc. will no longer provide Mobil branded products to the Station. Therefore, Sweet Oil Company ("Sweet Oil") will take steps to de-identify the Station as a Mobil retailer.

Pursuant to Paragraph 8 of the Dealer Agreement dated October 3, 2002 between Peninsula Oil Company, Inc. and the Station ("Agreement"), which Peninsula Oil Company thereafter assigned to Sweet Oil, beginning immediately Sweet Oil will provide unbranded gasoline to the Station unless and until Sweet Oil and the Station can mutually agree on a brand. Sweet Oil intends to enforce its rights under the Agreement and trust that the Station will honor its purchasing requirements thereunder. Feel free to contact me should you wish to discuss the matter.

Sincerely,
/s/
Hugh J. Hutchison

Enclosure
cc:    Sweet Oil Company
       Harry C. Storm, Esquire

EXHIBIT "N"



SUITE 460 | 3 BETHESDA METRO CENTER | BETHESDA, MD 20814-5367 | TEL 301.907.2817 | FAX 301.347.1520 | WWW.LERCHEARLY.COM

L E R C H
E A R L Y &
B R E W E R
C H A R T E R E D

ATTORNEYS

**HARRY C. STORM**
HCSTORM@LERCHEARLY.COM

February 7, 2007

**VIA FACSIMILE (215) 564-4611
AND FEDERAL EXPRESS**

*FEB 1 4 2007*

Hugh J. Hutchinson, Esq.
Leonard, Sciolla, Hutchinson,
    Leonard &Tinari, LLP
1515 Market Street, Suite 1800
Philadelphia, PA 19102

RE:   **Delmar Mobil
9251 Ocean Highway
Delmar, MD**

Dear Mr. Hutchison:

In conjunction with Prickett, Jones & Elliott, P.A., this firm represents BCG, Inc.,
Chesapeake Products & Services, Inc. and their principals.  This letter responds to your
January 29th letter to Mr. Snyder.

Your letter states that "beginning immediately Sweet Oil will provide unbranded
gasoline to the Station unless and until Sweet Oil and the Station can mutually agree on a
brand." It is obvious that Sweet Oil is not now (and has never been) willing to "mutually
agree" upon a new brand of gasoline pursuant to its contract with my clients given that it
has unilaterally and repeatedly demanded that my client re-brand the above-referenced
station to "Sunoco," which my client has no obligation to do.  Moreover, as evidenced by
its numerous material breaches of its contracts with my clients, including its
uncompetitive pricing, it is apparent that Sweet Oil had no intention of honoring any of
its contractual obligations. *Hence, my clients will not purchase any additional gasoline
from Sweet Oil. And, in any event as discussed below, the agreement is deemed
terminated effectively immediately.*

Sweet Oil's inability to provide Mobil branded fuels to my clients has nothing to
do with credit card processing or any FTC mandate.  Instead, it is due entirely to the fact
that ConocoPhillips (as successor to Tosco) and Sunoco voluntarily agreed by contract to
shorten the time during which Sunoco could use the Mobil brand.  It had nothing to do
with the FTC, and Mobil has not "become Sunoco in the Mid-Atlantic states by FTC
decree" as your client suggested in a letter dated June 5, 2006.

Your client's actions have now culminated in the improper termination of my
clients' franchise by completely withdrawing the use of the Mobil mark under the pretext

*p. contacts check*



**ATTORNEYS**

Hugh J. Hutchinson, Esq.
February 7, 2007
Page 2

that this action is due to my clients' inability to accept Mobil credit cards. However, my clients' ability to process credit cards was terminated by Sunoco against my clients' wishes for the sole reason that my client would not accede to Sweet Oil's demands to rebrand the station as aforesaid. Thus, it is entirely disingenuous for Sunoco/Sweet Oil to demand the return of the Mobil incentive money for debranding the station when it was Sunoco/Sweet Oil which at first demanded and later caused the debranding. Sweet Oil's actions in this regard are not only material breaches of the parties' contract, but also a willful violation of the grounds and notice requirements of the Petroleum Marketing Practices Act. Needless to say, our clients' relationship has been, <u>through Sweet Oil's conduct,</u> terminated.

If you have any questions, please call. Thank you.

Sincerely,

Harry C. Storm

HCS\mef

cc:    D. Benjamin Snyder, Esq.
       Messrs. Bill and Charlie Glenn

657277v1
79205.001

EFiled: Mar 27 2007 3:44PM EDT
Transaction ID 14274450
Case No. 06C-10-024 RBY

# EXHIBIT "O"

AGENCY AGREEMENT

This is a Agency Agreement, entered into this _____ day

of _____, A. D. 197_, between Peninsula Oil Company, Inc., a

corporation of the state of Delaware, hereinafter referred to as "principal"

—AND—

BCG Inc.  DBA The Laurel Oasis

_____

hereinafter referred to as "Agent."

Now, witnesseth, Principal agrees to appoint Agent custody of certain

petroleum products and equipment listed in the Equipment Loan Agreement dated

_____ and _____ installed on Agents real estate

located at    Route 13, Laurel, Delaware.

subject to the following uses, covenants and conditions:

1) The term of the agreement shall be for a period of 10 years,

commencing the 1st day of Feb.  A D 1990, to the 31st day of

Feb  A D 19     Should the Agency continue at the expiration of

the above noted term, the Agency shall thereafter continue on a year-to-year

basis until either party thereafter gives sixty (60) days notice prior to the

expiration of the term or extension indicating termination of the Agency.

2) It is understood and agreed among the parties hereto that the

oil and gas pumps and other equipment used and needed in the dispensing

of oil and motor fuel products shall be and remain under the exclusive owner-

ship and control of Principal with the exception that Agent shall dispense the

motor fuels supplied by Principal through the equipment owned by Principal.

3) Principal shall supply and maintain, at its own expense and cost,

all motor fuel contemplated to be dispensed during the regular business hours

of the Agent.  Agent shall maintain daily records of the motor fuels which are

dispensed.  Agent shall pay to Principal at 10 days from billing the sums

received from the sale of gasoline and Agent will pay for diesel fuel 10 days

from the billing date.

4) In the dispensing of gasoline  , the price of such fuel shall

at all times be under the absolute control of Principal.

(1)

10) It is further convenanted and agreed that if the Agent shall
from gasoline
fail to pay over the daily receipts intact or shall otherwise fail to comply
with the conditions set forth herein, when and as the same should be done and
as and when the same shall fall due and become due, or shall fail to keep and
perform any of the covenants or agreements herein contained, then the Principal,
at its option, may terminate the Agency and shall have the right to remove all
equipment listed in the Equipment Loan Agreement dated __2/3/90__ and
Principal's gasoline.

11) Agent covenant and agree that they shall not at any time
Principal's
dispose of ∧ inventory, property or equipment except in the usual course
of business when they are delinquent in any manner in the payment of any sums
specified in this agreement.

equipment listed in the Equipment ∧ and shall, in the sole descretion, supply the
necessary major fuel equip

The equipment listed in the Equipment shall at all times be maintained by

that Agent shall at all times during the hours of business have available proper
personnel to dispense the motor fuels which will be available on the premises
for sale as supplied by Principal during the minimum business hours as set forth
herein.  13) This Agency Agreement is expressly subject to the terms and conditions
of the Recovery Agreement dated __2/3/90__
14) This agreement shall be binding upon the parties hereto, their
heirs, successors, administrators and assigns.

IN WITNESS WHEREOF, the parties hereto have set their hands and sea
the day and year aforesaid.

By: _____

Attest: _____        _____ Pres.
                                        For BCG, Inc

_____        _____

(3)

5/76

# TEXACO RETAILER TRAVEL CARD AGREEMENT

Agreement made this _____ day of _____, 19__, between TEXACO INC., a Delaware corporation, having offices at __303 Fellowship Rd., Moorestown, N.J. 08057__ (hereinafter called "TEXACO") and __BCG, Inc. DBA The Laurel Oasis__

having a place of business at __Route 13, Laurel, Del. 19956__ (hereinafter called "Retailer");

## WITNESSETH THAT:

WHEREAS, Retailer is engaged in the sale of Texaco petroleum products at the above address in connection with which Retailer wishes to avail himself of the benefits of Texaco's Travel Card Program; and

WHEREAS, Texaco is willing to authorize Retailer to honor Texaco Travel Cards and hereinafter set forth:

IT IS THEREFORE AGREED:

(1) Authorized Travel Card Transactions. Texaco hereby authorizes Retailer to honor at his place of business unexpired and uncancelled Texaco Travel Cards and any other special credit cards authorized by Texaco, for the sale on credit of the following goods and services:

    (a) All Texaco brand products for motor vehicles, watercraft, home and gardens, but sales of motor fuel may not exceed the capacity of the vehicle's or craft's fuel tank, plus an additional 25 gallons of motor fuel or one case of motor oil.

    (b) Other merchandise sold by Texaco to Retailers or Retailer's suppliers for resale. Tires, tubes, batteries and automotive accessories must be mounted on the vehicle or craft at time of sale. If customer wishes, TBA purchases may be made under Texaco's Time Charge Plan.

    (c) Marfak lubrication, Texaco rustproofing, car washing and polishing services.

    (d) Emergency and/or mechanical repairs including all parts, labor, and services to a maximum of $250.00 provided that such equipment is attached to or mounted on the vehicle or craft. If customer wishes, such purchases may be made under Texaco's Time Charge Plan.

Credit Cards issued by Texaco Puerto Rico Inc. and Texaco Canada Limited may be honored in the same manner as Texaco Travel Cards, except that Texaco Time Charge Plan purchases are not authorized. Credit Cards other than those referred to above may be honored only in accordance with special written authorization issued to Retailer by Texaco from time to time.

Texaco may tentatively credit to Retailer's account the face value of invoices remitted by him, reserving the right to charge back to his account, within nine (9) months of date of sale, the face value, or any portion thereof, of unauthorized, illegible, improperly prepared and disputed invoices, as more fully set forth in (3) below.

(2) Requirements of a Valid Travel Card Transaction. When a travel card bearing an expiration date is presented, Retailer must seek approval of credit sales of a certain dollar amount as designated by special written notification by telephoning Texaco's Authorization Center; and if credit is approved, Retailer will record on the invoice in the space marked "Authorization Code", the authorization code number furnished. If the sale is disapproved, Retailer will be requested either:

    (a) "DO NOT HONOR CARD"

    (b) "PICK UP CARD—$25 REWARD".

    (c) Since Retailers are independent businessmen, Texaco does not have the right to tell them how to conduct their private business affairs. However, this Agreement will serve to confirm that Texaco has not and will not request and does not authorize any Retailer to accuse any person of a crime or to file any complaint, civil or criminal, against any person for or in Texaco's name arising out of any credit card or other transaction. The instructions furnished by Texaco's "Charge Authorization Center" in connection with credit card transactions is not intended in any way to represent that any person has violated any law or ordinance.

    It is suggested that a Retailer not take steps to make any accusations, file a complaint or otherwise cause the arrest of a customer without first consulting his personal attorney.

After filling in the details of the transaction legibly with a ballpoint pen or pencil, Retailer must insert the invoice and the purchaser's travel card in the imprinter and imprint the travel card account number, the purchaser's name and the total amount of the transaction on the invoice. (The written and imprinted totals must agree. If they do not, the imprinted amount shall prevail.) The customer must then sign the invoice for the products and services and to confirm the accuracy of the completed invoice.

The Texaco Travel Card imprinter is the property of Texaco Inc. and may be used by Retailer only to imprint Texaco invoices with Texaco Travel Cards and any other special credit cards authorized by Texaco.

(3) Texaco's Chargeback Rights. Texaco may charge back to Retailer's account, within nine (9) months of date of sale, the face value, or any portion thereof, of invoices:

    (a) Bearing an illegible travel card number or pricing entries;

    (b) imprinted with an expired travel card;

    (c) with missing entries or notations where entries or notations are required by this Agreement;

    (d) remitted by Retailer more than 30 days after the date of purchase;

    (e) in amount so specified which does not bear an authorization code number;

    (f) covering general repairs or replacements, mechanical and body work not specifically authorized by Texaco;

    (g) covering sales which subsequently become the subject of disputes between Retailer and his customers, except disputes solely involving the quality or performance of Texaco products.

    (h) with a customer's name signed by Retailer or one of his employes without the authority of the travel card holder;

    (i) covering fraudulent sales or other activities by Retailer or his employes whether done alone or in concert with others;

    (j) Covering sales made contrary to special written instructions from Texaco to Retailer; and

    (k) Bearing incorrect, illegible, or missing license number or state of issue entries.

    (l) In any other manner not authorized by or conforming to this Agreement.

From time to time new styled travel card invoices are furnished by Texaco to Retailers. Upon receipt of the new forms all obsolete travel card invoices should not be used. Any credit card sale made on an obsolete invoice will be subject to charge back three (3) months after notification.

Texaco will return, or furnish the Retailer with photocopies of unauthorized, illegible, improperly prepared and disputed invoices which are charged back.

(4) No Waiver of Chargeback and Termination Rights. It is understood that failure by Texaco to charge back to Retailer any such invoices from time to time shall not operate as a waiver of its right thereafter to charge back any invoices, within nine (9) months of the date of sale, which may thereafter be prepared in violation of the provisions of this Agreement and shall not operate as a waiver by Texaco of its right to terminate this Agreement or any other contractual arrangements between Texaco and Retailer relating to the place of business at the above address.

(5) In line with this Agreement, it is recommended that the Retailer refer to the booklet Form S-452 (Retailer) "Information on the Handling of Texaco Travel Card Transactions".

(6) Other Agreements Between the Parties. Retailer understands and agrees that any material violation of the provisions of this Agreement shall give Texaco the right, in addition to all other rights it may have hereunder, to terminate forthwith any or all other contractual arrangements between Texaco and Retailer relating to the place of business at the above address.

(7) Modification and Termination. Texaco reserves the right to modify this Agreement by written notice to Retailer. Texaco reserves the right to cancel this Agreement at any time and to repossess its travel card imprinter, other travel card equipment, completed and blank invoices and other travel card forms. This Agreement shall terminate automatically upon the termination or cancellation of the Agreement of Sale under which Retailer buys petroleum products from Texaco.

(8) Annual Travel Card Service Charge. The Retailer agrees to pay an annual charge for Texaco Travel Card service. The charge shall equal one-half of one percent (.5%) of the total amount of Texaco Travel Card and affiliated credit card invoices submitted by Retailer to Texaco during a representative month, selected by Texaco in each calendar year, but in no event shall the annual Travel Card service charge exceed thirty-six dollars ($36.00).

TEXACO INC.

by_____

_____
Retailer

EXHIBIT "P"

# EQUIPMENT LOAN AGREEMENT

Made this ___13th___ day of ___FEB___ 19 _90_

by and between THE PENINSULA OIL COMPANY, a body corporate of the State of Delaware, with offices at Seaford, Delaware, hereinafter called the "SELLER" and

BCG Inc. DBA The Laurel Oasis          of     Laurel, Del.

hereinafter called "CUSTOMER" owning or leasing premises above.

No. 1  EQUIPMENT: Seller agrees to lend and hereby lends to Customer the equipment installed at the above premises for the active and continuous storage, handling and dispensing of Seller's products exclusively, as follows:

| QUANTITY | EQUIPMENT |
|---|---|
| 1 | Automated Texaco Credit Card Machine |
| 1 | Automated Cascard Credit Card Machine |
| 8 | Electronic Gasoline and DIesel Fuel dispensers |
| 1 | Electronic Console system for Motor Fuel Sales |
| 1 | 2 pole Texaco ID sign, Module Sign, Island Canopy and signs |
| 1 | Texaco Moduler ID sign |

Said equipment shall remain the property of the Seller and be considered and treated as personal property and in no sense fixtures or part of the real estate regardless of the manner in which the same may be installed or placed on premises. Customer hereby acknowledges receipt of said equipment and agrees not to remove same without written consent, and guarantee to return said equipment upon expiration or termination of contract in good condition and without loss or impairment of Seller's title thereto unless title has been acquired by Customer under bill of sale.

No. 2  MAINTENANCE:  Customer shall maintain said equipment in good condition and in event of partial or total destruction of all or any of the same, shall reimburse Seller for damaged equipment or cost of replaced or restored equipment, which shall become the property of the Seller and be governed by this contract.

No. 3  DEFAULT AND TERMINATION:  If upon the expiration or termination of the contract said equipment is not sold to the Customer or to any other party, the Seller may without notice to the Customer at any time enter upon the premises and remove the equipment.

No. 4  INDEMNITY: Customer shall indemnify and save the Seller harmless from all liability, cost and expense for any loss, damage, injury or expenses to Customer or any person or property in any way caused by said equipment or any property of the Seller or the use or handling thereof, whether or not due to any imperfection therein or arising from negligence or otherwise. Customer hereby waives and releases any claim against the Seller hereunder in respect to the foregoing, however caused and for any losses or shortages arising out of the use of any measuring devices furnished or due to any other matter or anything whatsoever.

No. 5  DURATION:  This contract shall continue in effect for a period of _10_ year from the date hereof and thereafter from year to year unless terminated at the end of the initial period or any such subsequent year by either party upon sixty days prior written notice to the other party at their above respective addresses.

No. 6  ADDITIONAL EQUIPMENT:  Any and all additional equipment loaned or installed or placed for the use of the Customer, shall be deemed to be loaned upon the terms and conditions of this agreement during the period of this contract.

No. 7  ASSIGNMENT: This contract is not assignable by the Customer but otherwise is binding on and for the benefit of the Customer and the Seller and respective legal representatives, successors and assigns.

In Witness whereof, the parties have duly executed this agreement the above day and year.

THE PENINSULA OIL COMPANY

By _____

Witness

Customer _____

# EXHIBIT "Q"

# PENINSULA OIL CO., Inc *Extra Copy*

PLANTS:

SEAFORD
HARRINGTON
MILLSBORO
MILFORD
GEORGETOWN



DISTRIBUTORS OF

### Heating Oil - Gasoline
### Lubricants



P. O. BOX 389
SOUTH MARKET STREET
SEAFORD, DE. 19973
(302) 629 - 3001
Fax (302) 629-3870

November 15, 1993

William Glenn
Charles Glenn
T/A Laurel Oasis
Rte 13
Laurel, DE  19956

As per our meeting on November 9, 1993 we agree to participate in the following improvements at your Rte 13 facility.

An expenditure in the amount of $130,000 towards the purchase and installation of new pumps, canopy, console, signage, etc. needed for the resale of motor fuels.

An extension of your present contract by eight years which will now expire in January 31, 2008.

The signing of a new recovery agreement with the 31,249.85 remainder of the existing  payout, and the $130,000 we are agreeing to expend with this new arrangement for a total of $161,249.85 to be recovered at the rate of $948.53 per month for 170 months ending 1/31/2008.

~~same with the existing payout, and the $130,000 we are agreeing which will also read...~~

Yours truly,
PENINSULA OIL CO., INC.

Donald W. Williams

pt

in

EXHIBIT "R"

es

nt

regoing
and to all
and now or
.ade to said
s or assigns
.pon said
ent or distre
time enter
.sary in
aid property.

(SEAI

(SE

# EXHIBIT "S"

PENINSULA OIL CO., INC.
SEAFORD, DELAWARE

CREDIT CARD LOAN EQUIPMENT AGREEMENT

This agreement made this _16th_ day of _March_ 19 _94_ and
by and between _Peninsula Oil Co. Inc_ of _Laurel, De 19956_
_B & G, Inc. TA Laurel Esso_ of _Laurel, De 19956_
hereafter called retailer owning or leasing premises above.

The monthly charges for leasing this
automated Credit Card Terminal with electronic printer will be as
follows:

1.)
2.)
3.)

This agreement shall be in effect for _14_ years, commencing on
_March 16, 1994_ and ending on _Jan 31, 2008_ "

Retailer agrees to be responsible to _Peninsula Oil Co. Inc._
for the performance of his employees using the automated system and
all conditions set forth in _The Seaford_ manual of "Handling
Credit Cards" and any further changes they may make to the program
from time to time.

PENINSULA OIL CO., INC.

BY _____

_____
Witness

                              _B & G, Inc._
                              Retailer

_____
Witness

EXHIBIT "T"

JUN.17.2000 12:01                                                  #0640 P.001/002

 

# FAX COVER SHEET

Sweet Oil Company
GLeS, Incorporated
2604 Eastburn Center
Newark, DE 19711
Phone: 302-368-9095
Fax: 302-368-9045

| Company Name: Laurel Oasis CITGO | From: Chad |
|---|---|
| Attention: Shelly Domingo | Date: 12·6·05 |
| RE: Prices | Number of Pages-Including Cover Page: 2 |
| Fax Number: 1-302-875-6010 | Phone Number: (302) 368-9095 |

[ ] URGENT  [ ] REPLY ASAP  [✓] PLEASE REVIEW  [ ] FOR YOUR INFO

**COMMENTS:**

Shelly,
Per your request I am faxing you Laurel Oasis Citgo's Diesel price for today.

~~Also I~~ the retail gasoline prices. I personally can not (do not have the authority) determine what gas price should be posted at the station. I have been passing your notes on to the appropriate staff. They have met with the owner(s) of Laurel Oasis regarding this issue. If you have any other question or concerns, feel free to contact myself and/or Adam Gray 1-410-430-5216.

Sincerely,
Chad

NET/OIL                    #22   2,002,002

# Laurel Oasis CITGO

(Daily Sales Reconciliation)

#: _____

lat: _____

Date: [ 7  13 /2006 ]

|  | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
|  | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| (gallons) | 925.331 | 105.589 | 40.289 | 177955 |  |
| Price: Laurel Oasis | $ 3.09 | $ 3.19 | $ 3.29 | $ | $ |
| Shell Sunoco | 2.99 | 3.09 | 3.19 |  |  |
| Exxon | 2.99 | 3.09 | 3.19 |  |  |
| Royal Farms | 2.91 | 3.01 | 3.11 |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| ases (gallons) |  |  |  |  |  |
| ning Inventory |  |  |  |  |  |
| g Inventory | 6789 |  | 8456 | 17,731 |  |

|  | Shift Report |  | Memo / Brief Description |  |
|---|---|---|---|---|
| Fuel Sales | $ |  | NET Credit Cards | $ |
| Car Wash |  |  |  |  |
| Total Sales |  |  |  |  |
| EPOS | $ |  |  |  |
| House Acct | $ |  |  |  |
| Manual CC | $ |  |  |  |
| Gas Card | $ |  |  |  |
| Foreman | $ |  |  |  |
| Total Card Sales | $ |  |  |  |
| Deposit Amount | $ |  |  |  |

Store Sales: _____

Lottery Sales: _____

Date _____ Deposit Amt: $ _____

_Shelly Domingo_ (signature)

SHLRT/OLD                                #1    P.002/002

# Laurel Oasis CITGO

## (Daily Sales Reconciliation)

L #: _____

nlnal: _____

Date: 6 / 22 / 2005

| | Regular Price: $ | Plus Price: $ | Super Price: $ | Diesel Price: $ | Kerosene Price: $ |
|---|---|---|---|---|---|
| es (gallons) | 197,155 | 144,345 | 116,348 | 14,205 | 308 |
| ell Price: Laurel Oasis | $ 2.94 | $ 3.09 | $ 3.19 | $ | $ |
| Shell | 2.85 | 2.95 | 3.05 | | |
| Sunoco | | | | | |
| Exxon | 2.85 | 2.95 | 3.05 | | |
| Royal Farms | 2.85 | 2.95 | 3.05 | | |
| | | | | | |
| | | | | | |
| hases (gallons) | | | | | |
| nning Inventory | | | | | |
| ng Inventory | | | | | |

Veeder (Root)

| Shift Report | | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |

| | | |
|---|---|---|
| EPOS | $ | |
| House Acct | $ | |
| Manual CC | $ | |
| Gas Card | $ | |
| Fuelman | $ | |
| Total Card Sales | $ | |

Deposit Amount $ _____

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

*Shelly Domingo*

# Laurel Oasis CITGO

Gas Sales Reconciliation

Date: 6 8 2006

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| Gallons | 101300.06 | 103975 | 26484 | 623886.2 | |
| Laurel Oasis | 2.99 | 3.14 | 3.19 | | |
| Shell | 2.93 | 3.03 | 3.13 | | |
| exxon | 2.93 | 3.03 | 3.13 | | |
| Royal Farms | 2.89 | 3.09 | 3.09 | | |

Meter Reading
11:00pm
6/7/06

| | | 4514 | | | 2527 | 8645 | |

Shift Report

Manual Print Description

Shelly Domingo

# Laurel Oasis CITGO

(Daily Sales Reconciliation)

2006

Date: 4 /13/ 2005

BOL #: _____

Terminal: _____

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price. $ | Price.: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) 4/12 | 1279.566 | 79.368 | 80.104 | 4851.577 | |
| Retail Price. Laurel Oasis | $ 2.64 | $ 2.74 | $ 2.84 | $ | $ |
| Shell Sunoco | 2.59 | 2.69 | 2.79 | | |
| Exxon | 2.59 | 2.69 | 2.79 | | |
| Royal Farms | 259 | 2.69 | 2.79 | | |
| | 259 | 2.69 | 2.79 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 2387 | | 3137 | 12,395 | |

| Shift Report | | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |

| | | | | |
|---|---|---|---|---|
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |

Deposit Amount $ _____

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

Shelley Domingo

SWEET/OIL

# Laurel Oasis CITGO

(Daily Sales Reconciliation)

BOL #: _____

Terminal: _____

Date: **4 / 12 / 2005**

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) | 1237.051 | 76.174 | 69.389 | 7312.398 | |
| Retail Price: Laurel Oasis | $ 2.64 | $ 2.74 | $ 2.84 | $ | $ |
| Shell | 2.59 | 2.69 | 2.79 | | |
| Sunoco | | | | | |
| Exxon | 2.59 | 2.69 | 2.79 | | |
| Royal Farms | 2.59 | 2.69 | 2.79 | | |
| ShopTop | 2.59 | 2.69 | 2.79 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 3504 | | 3262 | 9964 | |

11:15 AM

| | Shift Report | | Memo / Brief Description |
|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards $ |
| Car Wash | | | |
| Total Sales | | | |
| EPOS | $ | | |
| House Acct | $ | | |
| Manual CC | $ | | |
| Gas Card | $ | | |
| Fuelman | $ | | |
| Total Card Sales | $ | | |
| Deposit Amount | $ | | |

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

er out contract it states that we must be competive with our competition. Please price us competively. We are .05 cents higher than our competitors.
Per your request dated 4/11/06 Sunoco is not our competition the are a full service station only.
Exxon Royal Farms and Shell are our competition.

APR.11.2006 09:23 3023689045          OASIS TRAVELPLAZA          #5195 P.001 /001.
                                                                 PAGE 01
                                                                 #2258 P.002/002

# Laurel Oasis CITGO
### (Daily Sales Reconciliation)

*Please fill in Price Survey Especially "SUNOCO".* 2006

*Thankyou Chad*

Date: 4 /11 /2006

BOL #: _____

Terminal: _____

| | Regular | | Plus | | Super | | Diesel | | Kerosene |
|---|---|---|---|---|---|---|---|---|---|
| | Price: $ | | Price: $ | | Price: $ | | Price: $ | | Price: $ |
| Sales (gallons) | 1270.733 | | 78.889 | | 80.882 | | 5474.495 | | |
| Retail Price: Laurel Oasis | $ 2.54 | | $ 3.69 | | $ 2.79 | | $ | | $ |
| Sunoco | | | | | | | | | |
| Exxon | | | | | | | | | |
| Royal Farms | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| Purchases (gallons) | | | | | | | | | |
| Beginning Inventory | | | | | | | | | |
| Ending Inventory | 5149 | | | | 5311 10170 | | | | |

7:26 AM
4/11/06

| Shift Report | | Memo / Brief Description | |
|---|---|---|---|
| Fuel Sales | $ | NET Credit Cards | $ |
| Car Wash | | | |
| Total Sales | | | |
| | | | |
| EPOS | $ | | |
| House Acct | $ | | |
| Manual CC | $ | | |
| Gas Card | $ | | |
| Fuelman | $ | | |
| Total Card Sales | $ | | |
| | | | |
| Deposit Amount | $ | | |

Store Sales: _____

Lottery Sales: _____

Date: _____    Deposit Amt: $ _____

*Shelly Domingo*

045            SWEET/OIL                    #2258 P.002/002

# Laurel Oasis CITGO

**(Daily Sales Record)**

BOL #: _____                                    Date: | 4 /10/ ~~2005~~ | 2006

Termnal: _____

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) | 1087.663 | 121.220 | 149.159 | 3142.68 | |
| Retail Price: Laurel Oasis | $ 2.50 | $ 2.69 | $ 2.71 | $ | $ |
| Sunoco | 253 | 2.63 | 2.73 | | |
| Exxon | | | | | |
| Royal Farms | 253 | 2.63 | 2.73 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 10173 | | 3463 | 15.029 | |

10:00AM

| | Shift Report | | Memo / Brief Description | | |
|---|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ | |
| Car Wash | | | | | |
| Total Sales | | | | | |
| | | | | | |
| EPOS | $ | | | | |
| House Acct | $ | | | | |
| Manual CC | $ | | | | |
| Gas Card | $ | | | | |
| Fuelman | $ | | | | |
| Total Card Sales | $ | | | | |
| | | | | | |
| Deposit Amount | $ | | | | |

Store Sales: _____

Lottery Sales: _____

Date: _____  Deposit Amt: $ _____

Shelly Domingo

Chad When I get the paper work for 4/7/06
-that gets dated for 4/8/06 I will send
it to you. TY Shelley

# Laurel Oasis CITGO

(Daily Sales Reconciliation)

Date: 7 / 4 / 2006

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price $ | Price $ | Price $ | Price $ | Price $ |
| | 866.039 | 31.159 | 105.335 | 4689.034 | |
| Laurel Oasis | $ 2.59 | $ 2.69 | $ 2.79 | $ | $ |
| Sonoco | 2.54 | 2.54 | 2.64 | | |
| Exxon | 2.54 | 2.64 | 2.64 | | |
| Royal Farms | 2.54 | 2.54 | 2.64 | | |
| | | | | | |
| | | | | | |
| Sales (gallons) | | | | | |
| using to inventory | | | | | |
| end of January | 8168 | | 413 | 9271 | |

| Shift Report | | | Memo / Brief Description | |
|---|---|---|---|---|
| | | | Net Credit Cards | $ |
| | | | | |
| Total Sales | | | | |
| | | | | |
| | $ | | | |
| | $ | | | |
| | $ | | | |
| | $ | | | |
| | $ | | | |
| Total Card Sales | $ | | | |

Deposit Amount | $ |

Store Sales

Lottery Sales

Date _____ Deposit Amt $ _____

Shelly Domingo

La _____

(Daily Sales Reconciliation)

DL #: _____                    Date: | 3 / 29 / 2006 |

rminal: _____

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| ales (gallons) | 9391646 | 12.297 | 54.420 | 7899.734 | |
| etail Price: Laurel Oasis | $ 2.44 | $ 2.54 | $ 2.64 | $ | $ |
| Sunoco | | | | | |
| Exxon | 2.37 | 2.47 | 2.57 | | |
| Royal Farms | 2.35 | 2.45 | 2.55 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| rchases (gallons) | | | | | |
| ginning Inventory | | | | | |
| g inventory | 3028 | | 1598 | 15787 | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |
| | | | | |
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |
| | | | | |
| Deposit Amount | $ | | | |

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

Per our contract it states we must be competive!
Are we going to price our gasoline competive or not?
These prices have been 10-20 cents higher for the
last 8 months!    Thank you

3023689015

.58 P.002/002

# Laurel Oasis CITGO

## (Daily Sales Reconciliation)

Date: 1 /19 / 2006

BOL #: _____

Terminal: _____

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) 1/18 | 502.192 | | 18.724 | 1864.738 | |
| Retail Price: Laurel Oasis | $ 2.39 | $ 2.49 | $ 2.59 | $ | $ |
| Sunoco | 2.29 | 2.39 | 2.49 | | |
| Exxon | 2.25 | 2.35 | 2.49 | | |
| Royal Farms | 2.29 | 2.39 | 2.49 | | |
| Sheetz Stop | 2.29 | 2.39 | 2.49 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory 1/19 | 3413 | | 5281 | 9097 | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |
| | | | | |
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |
| | | | | |
| Deposit Amount | $ | | | |

Store Sales: _____  _____

Lottery Sales: _____  _____

Date: _____ Deposit Amt: $ _____

MR. Sweet,
    This is what these prices have done to gas
Sales. Can you Just Imagine what it has
done to my store Sales. ??      Thanks,
                    Shelly M. Jimenez Domingo

EP.19.2005 09:13 3023669

8 P.002/002

# Laurel Oasis CITGO

## (Daily Sales Reconciliation)

Date: | 1 | 1 | 1 | 2005

OL #: _____

erminal: _____

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: | Price: $ | Price: $ | Price: $ |
| ales (gallons) | 1183.143 | 735.169 | 155.641 | 5079.599 | |
| etail Price: *Laurel Oasis* | $ 2.39 | $ 2.49 | $ 2.59 | $ | $ |
| Sunoco | 2.29 | 2.39 | 2.49 | | |
| Exxon | 2.35 | 2.35 | 2.45 | | |
| Royal Farms | 2.29 | 2.39 | 2.49 | | |
| ShoreStop | 2.29 | 2.39 | 2.49 | | |
| | | | | | |
| urchases (gallons) | | | | | |
| eginning Inventory | | | | | |
| n ·  Inventory | 1648 | | 5787 | 10274 | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |

| | | |
|---|---|---|
| EPOS | $ | |
| House Acct | $ | |
| Manual CC | $ | |
| Gas Card | $ | |
| Fuelman | $ | |
| Total Card Sales | $ | |

Deposit Amount | $ | |

Store Sales: _____

Lottery Sales: _____

Date: _____  Deposit Amt: $ _____

Chad,
we are .10¢ to .14¢ Higher than
Everyone around here. whats up
With that? Shelley Jimenez' Domingo

# La

### (Daily Sales Reconciliation)

BOL #: _____

Terminal: _____

Date: | 12 | 8 | 2005 |

| | Regular Price: $ | Plus Price: $ | Super Price: $ | Diesel Price: $ | Kerosene Price: $ |
|---|---|---|---|---|---|
| Sales (gallons) 12/7 | 827.915 | 53391 | 51.083 | 4450659 | |
| Retail Price: Laurel Oasis | $ 2.14 | $ 2.24 | $ 2.34 | $ | $ |
| Sunoco | 1.99 | 2.09 | 2.19 | | |
| Exxon | 1.99 | 2.09 | 2.19 | | |
| Royal Farms | 1.99 | 2.09 | 2.19 | | |
| ShoreStop | 1.99 | 2.09 | 2.19 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 5008 | | 3879 | 9100 | |

Vendor Fee

| Shift Report | | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |

| | | | | |
|---|---|---|---|---|
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |

Deposit Amount | $ | | |

Store Sales: _____

Lottery Sales: _____

Date: _____  Deposit Amt: $ _____

Happy Holidays Please Lower Prices Shelly Domingo

#2258 P.002/002

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

BOL #: _____

Terrance: ...... .

Date: | 12 | 5 | 2005

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) | 720419 | 41.930 | 109.6074 | 988.636 | |
| Retail Price. Laurel Oasis | $ 2.15 | $ 2.24 | $ 2.34 | $ | $ |
| Sunoco | 1.99 | 2.09 | 2.19 | | |
| Exxon | 1.95 | 2.05 | 2.15 | | |
| Royal Farms | 1.99 | 2.09 | 2.19 | | |
| Store Stop | 1.99 | 2.09 | 2.19 | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 7530 | | 4115 | 15824 | |

| Shift Report | | Memo / Brief Description | |
|---|---|---|---|
| Fuel Sales | $ | | |
| Car Wash | | NET Credit Cards | $ |
| Total Sales | | | |

| | | | |
|---|---|---|---|
| EPOS | $ | | |
| House Acct | $ | | |
| Manual CC | $ | | |
| Gas Card | $ | | |
| Fuelman | $ | | |
| Total Card Sales | $ | | |

Deposit Amount | $

Store Sales: _____

Lottery Sales: _____

Date: _____ Deposit Amt: $ _____

Chad-
These don't look like very competitive prices here?? Shelley Domingo

Whats up call me so we can get these prices lowered

#2258 P.002/002

# Laurel Oasis CITGO
(Daily Sales Reconciliation)

BOL #: _____

Terminal: _____

Date: [ 12 / 1 / 2005 ]

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) | 74203 | 55.669 | 08.661 | 5633262 | |
| Retail Price: Laurel Oasis | $ 2.059 | $ 2.099 | $ 2.19 | $ | $ |
| Sunoco | 1.95 | 2.25 | 2.15 | | |
| Exxon | 1.95 | 2.05 | 2.15 | | |
| Royal Farms | 1.95 | 2.05 | 2.15 | | |
| Shore Stop | 1.94 | 2.04 | 2.14 | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 4342 | | 2491 | 7748 | |

Veeder Root

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |
| | | | | |
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelman | $ | | | |
| Total Card Sales | $ | | | |
| | | | | |
| Deposit Amount | $ | | | |

Store Sales: _____

Lottery Sales: _____

Date: _____   Deposit Amt: $ _____

Shelly Domingo

?HAO, we have talked about this many times
you are not keeping me competable with the other
stations. gas sales have dropped and this is

:L                                              #2258 P.002/002

# Laurel Oasis CITGO

### (Daily Sales Reconciliation)

BOL #: _____                         Date: | 11 | 30 | 2005 |

Terminal: _____

| | Regular | Plus | Super | Diesel | Kerosene |
|---|---|---|---|---|---|
| | Price: $ | Price: $ | Price: $ | Price: $ | Price: $ |
| Sales (gallons) | 1171.003 | 39.118 | 11.058 | 5208.06 | |
| Retail Price: Laurel Oasis | $ 2.05 | $ 2.09 | $ 2.19 | $ | $ |
| Sunoco | 1.95 | 2.05 | 2.15 | | |
| Exxon | 1.95 | 2.05 | 2.15 | | |
| Royal Farms | 1.95 | 2.05 | 2.15 | | |
| Shorestop | 1.94 | 2.04 | 2.14 | | |
| | | | | | |
| | | | | | |
| Purchases (gallons) | | | | | |
| Beginning Inventory | | | | | |
| Ending Inventory | 5250 | | 2539 | 13135 | |

| | Shift Report | | Memo / Brief Description | |
|---|---|---|---|---|
| Fuel Sales | $ | | NET Credit Cards | $ |
| Car Wash | | | | |
| Total Sales | | | | |
| | | | | |
| EPOS | $ | | | |
| House Acct | $ | | | |
| Manual CC | $ | | | |
| Gas Card | $ | | | |
| Fuelus | $ | | | |
| Total Card Sales | $ | | | |

Deposit Amount | $ _____

Store Sales: _____

Lottery Sales: _____

Date: _____   Deposit Amt: $ _____

*Check please Shelly Domingo woul on Loweeing our prices were are 10s and 11s higher than Everyone Shelly*

EFiled: Mar 27 2007 3:44PM EDT
Transaction ID 14274450
Case No. 06C-10-024 RB

# EXHIBIT "U"

GLES, INC.  DBA SWEET OIL COMPANY
CPS, Inc.

Pd thru 06/17/06

1010 WSRS

6/21/2006

32,678.01

32,678.01

7305

6-26-6

Paid $32,678.01
Owed 33,446.01
Less $768-

| eliveries | | Invoice | Credit Card | Citgo Owed | Citgo Paid | plus minus | | Manual | Fee |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | batch 15 | | | $0.00 | | | |
| | | | thru | | | $0.00 | | | |
| | | | batch 33 | $33,446.01 | $33,446.01 | $0.00 | | | $768.00 |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | $0.00 | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| | | | | | | $0.00 | | | |
| ve owe | $0.00 | | | $33,446.01 | $33,446.01 | $0.00 | | $0.00 | $768.00 |
| hey owe | $32,678.01 | | | | | | | | |
| sweep | -$32,678.01 | | | | | | | | |

$33,446.01

# Sweet Oil Company

6/21/2006

Register: Undeposited Funds:37030 - 13959009
From 06/12/2006 through 06/21/2006
Sorted by: Date, Type, Number/Ref

| Date | Ref. | Payee | Account | Memo | Decrease | C | Increase | Balance |
|------|------|-------|---------|------|----------|---|----------|---------|
| 06/12/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/10/06 Citgo ... | 765.03 | | | -29,126.34 |
| 06/12/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/11/06 Citgo ... | 6,459.12 | | | -35,585.46 |
| 06/13/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/12/06 Citgo ... | 3,230.98 | | | -38,816.44 |
| 06/13/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/13/06 Citgo ... | 2,302.93 | | | -41,119.37 |
| 06/14/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/13/06 Citgo ... | 3,345.65 | | | -44,465.02 |
| 06/15/2006 | 7276 | CPS, Inc. | Cash:1010 WSFS | Pd thru 06/11/06 | | | 35,585.46 | -8,879.56 |
| 06/16/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/14/06 Citgo ... | 5,993.99 | | | -14,873.55 |
| 06/16/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/15/06 Citgo ... | 3,406.20 | | | -18,279.75 |
| 06/16/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/15/06 Citgo ... | 3,997.07 | | | -22,276.82 |
| 06/16/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/16/06 Citgo ... | 2,333.48 | | | -24,610.30 |
| 06/18/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/16/06 Citgo ... | 6,007.98 | | | -30,618.28 |
| 06/18/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/17/06 Citgo ... | 2,059.73 | | | -32,678.01 |
| 06/19/2006 | Citgo Cre... | Citgo Petroleum | 2001 · Accounts Payab... | 06/18/06 Citgo ... | 6,329.77 | | | -39,007.78 |
| 06/21/2006 | | CPS, Inc. | Cash:1010 WSFS | Pd thru 06/17/06 | | | 32,678.01 | -6,329.77 |

| Merchant | Term | Batch | Date 1 | Date 2 | Count | I/O | Card Type | Amount | Fee | Net |
|---|---|---|---|---|---|---|---|---|---|---|
| 409 | 01 | 16 | 06/12/2006 | 06/13/2006 | 2 | I | POS AMERICAN EXPRESS | $388.52 | $12.62 | $375.90 |
| 59009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 1 | I | POS DEBIT CARD | $26.52 | $0.30 | $26.22 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 7 | I | POS VISA | $892.08 | $15.33 | $876.75 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 5 | I | POS WEX FLEET | $1,090.99 | $33.23 | $1,057.76 |
| **Total for Term 01 Batch: 16 Inside Rdr** | | | | | **15** | | | **$2,398.11** | **$61.48** | **$2,336.63** |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 2 | O | POS AMERICAN EXPRESS | $110.59 | $3.59 | $107.00 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 1 | O | POS CITGO PROPRIETARY | $29.80 | $0.00 | $29.80 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 1 | O | POS MASTERCARD | $53.00 | $1.00 | $52.00 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 15 | O | POS VISA | $462.68 | $9.66 | $453.02 |
| 13959009 | 01 | 16 | 06/12/2006 | 06/13/2006 | 1 | O | POS VOYAGER FLEET | $74.71 | $2.34 | $72.37 |
| **Total for Term 01 Batch: 16 Outside Rdr** | | | | | **20** | | | **$730.78** | **$16.59** | **$714.19** |
| **Total for Term 01 Batch: 16 (all)** | | | | | **35** | | | **$3,128.89** | **$78.07** | **$3,0??.?2** |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 2 | I | POS DEBIT CARD | $14.24 | $0.60 | $13.64 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 1 | I | POS VISA | $12.05 | $0.34 | $11.71 |
| **Total for Term 01 Batch: 17 Inside Rdr** | | | | | **3** | | | **$26.29** | **$0.94** | **$25.35** |
| 59009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 1 | O | POS AMERICAN EXPRESS | $35.03 | $1.14 | $33.89 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 1 | O | POS DEBIT CARD | $40.00 | $0.30 | $39.70 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 1 | O | POS MASTERCARD | $23.00 | $0.52 | $22.48 |
| 13959009 | 01 | 17 | 06/12/2006 | 06/13/2006 | 2 | O | POS VISA | $60.00 | $1.26 | $58.74 |
| **Total for Term 01 Batch: 17 Outside Rdr** | | | | | **5** | | | **$158.03** | **$3.22** | **$154.81** |
| **Total for Term 01 Batch: 17 (all)** | | | | | **8** | | | **$184.32** | **$4.16** | **$180.??** |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 2 | I | POS DEBIT CARD | $12.20 | $0.60 | $11.60 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 1 | I | POS MASTERCARD | $97.25 | $1.71 | $95.54 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 2 | I | POS MASTERCARD FLEET | $296.18 | $9.09 | $287.09 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 11 | I | POS VISA | $1,086.95 | $19.04 | $1,067.91 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 1 | I | POS VOYAGER FLEET | $58.00 | $1.84 | $56.16 |
| 959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 2 | I | POS WEX FLEET | $284.15 | $8.73 | $276.42 |
| **Total for Term 01 Batch: 18 Inside Rdr** | | | | | **19** | | | **$1,834.73** | **$41.01** | **$1,793.72** |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 3 | O | POS AMERICAN EXPRESS | $150.27 | $4.69 | $145.38 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 1 | O | POS CITGO PROPRIETARY | $24.30 | $0.00 | $24.30 |

JUN.21.2006 15:12     #1680 P.004/011

| Merchant | Term | Batch | Date 1 | Date 2 | Count | I/O | Card Type | Amount | Fee | Net |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | I | POS ... | | | |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 5 | I | POS DEBIT CARD | $254.17 | $1.50 | $252.67 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 12 | I | POS VISA | $1,358.25 | $23.55 | $1,334.70 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 4 | I | POS WEX FLEET | $508.04 | $15.64 | $492.40 |
| **Total for Term 01 Batch: 21 Inside Rdr** | | | | | **24** | | | **$2,735.13** | **$44.77** | **$2,690.36** |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | O | POS CITGO PROPRIETARY | $75.00 | $0.00 | $75.00 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | O | POS MASTERCARD | $29.83 | $0.63 | $29.20 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 5 | O | POS VISA | $150.34 | $3.15 | $147.19 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 4 | O | POS WEX FLEET | $267.68 | $8.43 | $259.25 |

JO MarketNet ... Card - POS Settlement Search Results

| Acct | Term | Batch | Date | Date | Ct | I/O | Type | Gross | Fee | Net |
|---|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 1 | O | POS MASTERCARD | $35.97 | $0.73 | $35.24 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 8 | O | POS VISA | $151.15 | $3.62 | $147.63 |
| 13959009 | 01 | 18 | 06/13/2006 | 06/13/2006 | 3 | O | POS WEX FLEET | $161.91 | $5.15 | $156.76 |
| Total for Term 01 Batch: 18 Outside Rdr | | | | | 16 | | | $523.60 | $14.39 | $509.21 |
| Total for Term 01 Batch: 18 (all) | | | | | 35 | | | $2,358.33 | $55.40 | $2,302.93 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 1 | I | POS DEBIT CARD | $5.49 | $0.30 | $5.19 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 4 | I | POS MASTERCARD | $649.84 | $11.00 | $638.84 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 4 | I | POS VISA | $415.96 | $7.26 | $408.70 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 7 | I | POS WEX FLEET | $914.01 | $28.11 | $885.90 |
| Total for Term 01 Batch: 19 Inside Rdr | | | | | 16 | | | $1,985.30 | $46.67 | $1,938.63 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 2 | O | POS AMERICAN EXPRESS | $86.05 | $2.80 | $83.25 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 2 | O | POS DEBIT CARD | $83.79 | $0.60 | $83.19 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 2 | O | POS MASTERCARD | $68.65 | $1.40 | $67.25 |
| 13959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 11 | O | POS VISA | $310.20 | $6.62 | $303.58 |
| 959009 | 01 | 19 | 06/13/2006 | 06/14/2006 | 2 | O | POS WEX FLEET | $87.79 | $2.83 | $84.96 |
| Total for Term 01 Batch: 19 Outside Rdr | | | | | 19 | | | $636.48 | $14.25 | $622.23 |
| Total for Term 01 Batch: 19 (all) | | | | | 35 | | | $2,621.78 | $60.92 | $2,560.86 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 2 | I | POS DEBIT CARD | $14.71 | $0.60 | $14.11 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 2 | I | POS MASTERCARD | $26.01 | $0.71 | $25.30 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 1 | I | POS VISA | $150.00 | $2.55 | $147.45 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 1 | I | POS WEX FLEET | $113.75 | $3.51 | $110.24 |
| Total for Term 01 Batch: 20 Inside Rdr | | | | | 6 | | | $304.47 | $7.37 | $297.10 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 1 | O | POS CITGO PROPRIETARY | $52.80 | $0.00 | $52.80 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 2 | O | POS MASTERCARD | $86.00 | $1.68 | $84.32 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 9 | O | POS VISA | $185.56 | $4.32 | $181.24 |
| 13959009 | 01 | 20 | 06/13/2006 | 06/14/2006 | 2 | O | POS WEX FLEET | $174.77 | $5.44 | $169.33 |
| Total for Term 01 Batch: 20 Outside Rdr | | | | | 14 | | | $499.13 | $11.44 | $487.69 |
| Total for Term 01 Batch: 20 (all) | | | | | 20 | | | $803.60 | $18.81 | $784.79 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 2 | I | POS AMERICAN EXPRESS | $125.72 | $4.08 | $121.64 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | I | POS CITGO PROPRIETARY | $488.95 | $0.00 | $488.95 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 5 | I | POS DEBIT CARD | $254.17 | $1.50 | $252.67 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 12 | I | POS VISA | $1,358.25 | $23.55 | $1,394.70 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 4 | I | POS WEX FLEET | $508.04 | $15.64 | $492.40 |
| Total for Term 01 Batch: 21 Inside Rdr | | | | | 24 | | | $2,735.13 | $44.77 | $2,690.36 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | O | POS CITGO PROPRIETARY | $75.00 | $0.00 | $75.00 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 1 | O | POS MASTERCARD | $29.83 | $0.63 | $29.20 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 5 | O | POS VISA | $150.34 | $3.15 | $147.19 |
| 13959009 | 01 | 21 | 06/14/2006 | 06/15/2006 | 4 | O | POS WEX FLEET | $267.68 | $8.43 | $259.25 |

iO MarketNet, Payment Card - POS Settlement Search Results

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total for Term 01 Batch: 21 Outside Rdr | | | | 11 | | | $522.85 | $12.21 | $510.64 |
| Total for Term 01 Batch: 21 (all) | | | | 35 | | | $3,257.98 | $56.98 | $3,200.00 |
| 13959009 | 01 | 22 | 08/14/2006 06/15/2006 | 2 | I | POS AMERICAN EXPRESS | $172.18 | $5.60 | $166.68 |
| 13959009 | 01 | 22 | 08/14/2006 06/15/2006 | 4 | I | POS DEBIT CARD | $36.14 | $1.20 | $34.94 |
| 13959009 | 01 | 22 | 08/14/2006 06/15/2006 | 1 | I | POS MASTERCARD | $5.86 | $0.24 | $5.62 |
| 13959009 | 01 | 22 | 06/14/2006 06/15/2006 | 7 | I | POS VISA | $823.56 | $14.23 | $809.33 |
| 13959009 | 01 | 22 | 08/14/2006 06/15/2006 | 3 | I | POS WEX FLEET | $649.57 | $19.79 | $629.78 |
| Total for Term 01 Batch: 22 Inside Rdr | | | | 17 | | | $1,687.31 | $41.06 | $1,646.25 |
| 13959009 | 01 | 22 | 06/14/2006 08/15/2006 | 1 | O | POS MASTERCARD | $5.00 | $0.23 | $4.77 |
| 13959009 | 01 | 22 | 06/14/2006 08/15/2006 | 1 | O | POS MASTERCARD FLEET | $34.09 | $1.12 | $32.97 |
| 13959009 | 01 | 22 | 08/14/2006 08/15/2006 | 14 | O | POS VISA | $386.76 | $8.26 | $378.50 |
| 13959009 | 01 | 22 | 08/14/2006 08/15/2006 | 1 | O | POS VOYAGER FLEET | $75.00 | $2.35 | $72.65 |
| 13959009 | 01 | 22 | 08/14/2006 08/15/2006 | 1 | O | POS WEX FLEET | $62.80 | $1.98 | $60.82 |
| Total for Term 01 Batch: 22 Outside Rdr | | | | 18 | | | $563.67 | $13.96 | $549.71 |
| Total for Term 01 Batch: 22 (all) | | | | 35 | | | $2,250.98 | $55.02 | $2,195.96 |
| 13959009 | 01 | 23 | 06/14/2006 06/15/2006 | 1 | I | POS DEBIT CARD | $6.70 | $0.30 | $6.40 |
| 13959009 | 01 | 23 | 08/14/2006 06/15/2006 | 1 | I | POS MASTERCARD | $70.53 | $1.28 | $69.25 |
| 13959009 | 01 | 23 | 08/14/2006 06/15/2006 | 2 | I | POS VISA | $29.22 | $0.77 | $28.45 |
| 13959009 | 01 | 23 | 06/14/2006 06/15/2006 | 1 | I | POS WEX FLEET | $269.15 | $8.17 | $260.98 |
| Total for Term 01 Batch: 23 Inside Rdr | | | | 5 | | | $375.60 | $10.52 | $365.08 |
| 13959009 | 01 | 23 | 08/14/2006 06/15/2006 | 1 | O | POS MASTERCARD | $51.37 | $0.97 | $50.40 |
| 13959009 | 01 | 23 | 06/14/2006 06/15/2006 | 7 | O | POS VISA | $185.57 | $4.02 | $181.55 |
| Total for Term 01 Batch: 23 Outside Rdr | | | | 8 | | | $236.94 | $4.99 | $231.95 |
| Total for Term 01 Batch: 23 (all) | | | | 13 | | | $612.54 | $15.51 | $597.03 |
| 13959009 | 01 | 24 | 06/15/2006 06/15/2006 | 2 | I | POS DEBIT CARD | $267.14 | $0.60 | $266.54 |
| 13959009 | 01 | 24 | 06/15/2006 08/15/2006 | 2 | I | POS MASTERCARD | $495.71 | $8.23 | $487.48 |
| 13959009 | 01 | 24 | 08/15/2006 06/15/2006 | 1 | I | POS MASTERCARD FLEET | $110.79 | $3.42 | $107.37 |
| 13959009 | 01 | 24 | 06/15/2006 06/15/2006 | 13 | I | POS VISA | $1,071.10 | $19.09 | $1,052.01 |
| 13959009 | 01 | 24 | 06/15/2006 06/15/2006 | 1 | I | POS VOYAGER FLEET | $130.00 | $4.00 | $126.00 |
| 13959009 | 01 | 24 | 08/15/2006 06/15/2006 | 7 | I | POS WEX FLEET | $937.39 | $28.81 | $908.58 |
| Total for Term 01 Batch: 24 Inside Rdr | | | | 26 | | | $3,012.13 | $64.15 | $2,947.98 |
| 13959009 | 01 | 24 | 06/15/2006 06/15/2006 | 1 | O | POS CITGO PROPRIETARY | $25.33 | $0.00 | $25.33 |
| 13959009 | 01 | 24 | 06/15/2006 06/15/2006 | 2 | O | POS MASTERCARD | $99.91 | $1.90 | $98.01 |
| 13959009 | 01 | 24 | 06/15/2006 06/15/2006 | 4 | O | POS VISA | $224.89 | $4.20 | $220.69 |
| 13959009 | 01 | 24 | 08/15/2006 06/15/2006 | 2 | O | POS WEX FLEET | $117.93 | $3.74 | $114.19 |
| Total for Term 01 Batch: 24 Outside Rdr | | | | 9 | | | $468.06 | $9.84 | $458.22 |
| Total for Term 01 Batch: 24 (all) | | | | 35 | | | $3,480.19 | $73.99 | $3,406.20 |

#1680 P.006/011

JUN.21.2006 12:13

JO MarketNet, Payment Card - POS Settlement Search Results

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total for Term 01 Batch: 27 (all) | | | 35 | | | | $2,387.78 | $54.30 | $2,333.48 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | I | POS DEBIT CARD | $50.00 | $0.30 | $49.70 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | I | POS MASTERCARD | $15.05 | $0.39 | $14.66 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 2 | I | POS MASTERCARD FLEET | $585.01 | $17.75 | $567.26 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 7 | I | POS VISA | $201.25 | $4.25 | $197.00 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 4 | I | POS WEX FLEET | $799.17 | $24.37 | $774.80 |
| Total for Term 01 Batch: 28 Inside Rdr | | | 15 | | | | $1,650.48 | $47.06 | $1,603.42 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | O | POS AMERICAN EXPRESS | $13.26 | $0.43 | $12.83 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 2 | O | POS DEBIT CARD | $70.00 | $0.60 | $69.40 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 4 | O | POS MASTERCARD | $149.48 | $2.99 | $146.49 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | O | POS MASTERCARD FLEET | $36.24 | $1.19 | $35.05 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 10 | O | POS VISA | $317.71 | $6.59 | $311.12 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | O | POS VOYAGER FLEET | $28.50 | $0.96 | $27.54 |
| 13959009 | 01 | 28 | 06/16/2006 | 06/18/2006 | 1 | O | POS WEX FLEET | $80.02 | $2.50 | $77.52 |
| Total for Term 01 Batch: 28 Outside Rdr | | | 20 | | | | $695.21 | $15.26 | $679.95 |
| al for Term 01 Batch: 28 (all) | | | 35 | | | | $2,345.69 | $62.32 | $2,283.37 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 1 | I | POS DEBIT CARD | $101.00 | $0.30 | $100.70 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 2 | I | POS MASTERCARD | $75.26 | $1.51 | $73.75 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 4 | I | POS VISA | $306.76 | $5.50 | $301.26 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 3 | I | POS WEX FLEET | $468.88 | $14.37 | $454.51 |
| Total for Term 01 Batch: 29 Inside Rdr | | | 10 | | | | $951.90 | $21.68 | $930.22 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 2 | O | POS AMERICAN EXPRESS | $87.12 | $2.83 | $84.29 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 1 | O | POS CITGO FLEET (IFCS) | $24.18 | $0.00 | $24.18 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 1 | O | POS CITGO PROPRIETARY | $65.00 | $0.00 | $65.00 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 3 | O | POS MASTERCARD | $125.01 | $2.45 | $122.56 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 15 | O | POS VISA | $355.17 | $7.93 | $347.24 |
| 13959009 | 01 | 29 | 06/16/2006 | 06/18/2006 | 3 | O | POS WEX FLEET | $147.70 | $4.73 | $142.97 |
| Total for Term 01 Batch: 29 Outside Rdr | | | 25 | | | | $804.18 | $17.94 | $786.24 |
| Total for Term 01 Batch: 29 (all) | | | 35 | | | | $1,756.08 | $39.62 | $1,716.46 |
| 13959009 | 01 | 30 | 06/16/2006 | 06/18/2006 | 1 | I | POS MASTERCARD | $101.64 | $1.78 | $99.86 |
| 13959009 | 01 | 30 | 06/16/2006 | 06/18/2006 | 2 | I | POS VISA | $76.41 | $1.52 | $74.89 |
| Total for Term 01 Batch: 30 Inside Rdr | | | 3 | | | | $178.05 | $3.30 | $174.75 |
| 13959009 | 01 | 30 | 06/16/2006 | 06/18/2006 | 1 | O | POS MASTERCARD | $60.00 | $1.11 | $58.89 |
| 13959009 | 01 | 30 | 06/18/2006 | 06/18/2006 | 7 | O | POS VISA | $200.25 | $4.26 | $195.99 |
| Total for Term 01 Batch: 30 Outside Rdr | | | 8 | | | | $260.25 | $5.37 | $254.88 |
| Total for Term 01 Batch: 30 (all) | | | 11 | | | | $438.30 | $8.67 | $429.63 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 1 | I | POS AMERICAN EXPRESS | $112.98 | $3.67 | $109.31 |

JO MarketNet, Payment Card - POS Settlement Search Results

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 2 | I | POS MASTERCARD | $67.34 | | $65.96 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 1 | I | POS MASTERCARD FLEET | $164.04 | | $159.02 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 5 | I | POS VISA | $118.45 | $2.65 | $116.80 |
| 13959009 | 01 | 31 | 06/18/2006 | 06/18/2006 | 1 | I | POS VISA | $30.00 | $0.63 | $29.37 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 2 | I | POS WEX FLEET | $442.98 | $13.49 | $429.47 |
| Total for Term 01  Batch: 31 Inside Rdr | | | | | 12 | | | $935.77 | $26.84 | $908.93 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 1 | O | POS AMERICAN EXPRESS | $36.00 | $1.17 | $34.83 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 2 | O | POS CITGO PROPRIETARY | $40.65 | $0.00 | $40.68 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2006 | 2 | O | POS DEBIT CARD | $85.39 | $0.60 | $84.79 |
| 13959009 | 01 | 31 | 06/18/2006 | 06/18/2006 | 4 | O | POS MASTERCARD | $154.39 | $3.06 | $151.33 |
| 13959009 | 01 | 31 | 06/17/2006 | 06/18/2005 | 14 | O | POS VISA | $365.90 | $7.94 | $357.96 |
| Total for Term 01  Batch: 31 Outside Rdr | | | | | 23 | | | $682.36 | $12.77 | $669.59 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total for Term 01  Batch: 31 (all) | | | | | 35 | | | $1,618.13 | $39.61 | $1,578.52 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | I | POS AMERICAN EXPRESS | $67.49 | $2.19 | $65.30 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | I | POS DEBIT CARD | $5.00 | $0.30 | $4.70 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 2 | I | POS MASTERCARD | $132.51 | $2.42 | $130.09 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 10 | I | POS VISA | $505.17 | $9.60 | $495.57 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | I | POS WEX FLEET | $93.24 | $2.90 | $90.34 |
| Total for Term 01  Batch: 32 Inside Rdr | | | | | 15 | | | $803.41 | $17.41 | $786.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 2 | O | POS AMERICAN EXPRESS | $96.87 | $3.15 | $93.72 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | O | POS CITGO PROPRIETARY | $32.29 | $0.00 | $32.29 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 2 | O | POS DEBIT CARD | $60.14 | $0.60 | $59.54 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 1 | O | POS DISCOVER | $42.50 | $1.28 | $41.22 |
| 13959009 | 01 | 32 | 06/17/2006 | 06/18/2006 | 14 | O | POS VISA | $517.23 | $10.37 | $506.86 |
| Total for Term 01  Batch: 32 Outside Rdr | | | | | 20 | | | $749.03 | $15.40 | $733.63 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total for Term 01  Batch: 32 (all) | | | | | 35 | | | $1,552.44 | $32.81 | $1,519.63 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 4 | I | POS DEBIT CARD | $131.85 | $1.20 | $130.65 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 1 | I | POS MASTERCARD | $12.67 | $0.35 | $12.32 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 3 | I | POS VISA | $44.90 | $1.17 | $43.73 |
| Total for Term 01  Batch: 33 Inside Rdr | | | | | 8 | | | $189.42 | $2.72 | $186.70 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 2 | O | POS CITGO PROPRIETARY | $63.78 | $0.00 | $63.78 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 1 | O | POS DEBIT CARD | $6.30 | $0.30 | $6.00 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 1 | O | POS DISCOVER | $51.33 | $1.54 | $49.79 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 1 | O | POS MASTERCARD | $24.75 | $0.55 | $24.20 |
| 13959009 | 01 | 33 | 06/17/2006 | 06/18/2006 | 6 | O | POS VISA | $213.95 | $4.32 | $209.63 |
| Total for Term 01  Batch: 33 Outside Rdr | | | | | 11 | | | $360.11 | $6.71 | $353.40 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total for Term 01  Batch: 33 (all) | | | | | 19 | | | $549.53 | $9.43 | $540.10 |

jO MarketNet, Payment Card - POS Settlement Search Results          Page 7 of 11

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 2 | I | POS DEBIT CARD | $25.34 | $0.60 | $24.74 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 3 | I | POS VISA | $82.05 | $1.77 | $80.28 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 6 | I | POS WEX FLEET | $1,089.00 | $33.27 | $1,055.73 |
| Total for Term 01  Batch: 25 Inside Rdr | | | | | 11 | | | $1,196.39 | $35.64 | $1,160.75 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 3 | O | POS AMERICAN EXPRESS | $167.16 | $5.44 | $161.72 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 3 | O | POS CITGO PROPRIETARY | $98.40 | $0.00 | $98.40 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 1 | O | POS DEBIT CARD | $24.00 | $0.30 | $23.70 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 3 | O | POS MASTERCARD | $128.36 | $2.50 | $125.88 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 13 | O | POS VISA | $412.61 | $8.56 | $404.05 |
| 13959009 | 01 | 25 | 06/15/2006 | 06/16/2006 | 1 | O | POS VOYAGER FLEET | $60.29 | $1.91 | $58.38 |
| Total for Term 01  Batch: 25 Outside Rdr | | | | | 24 | | | $890.84 | $18.71 | $872.13 |
| Total for Term 01  Batch: 25 (all) | | | | | 35 | | | $2,087.23 | $54.35 | $2,032.88 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | I | POS AMERICAN EXPRESS | $109.28 | $3.55 | $105.73 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 2 | I | POS DEBIT CARD | $18.46 | $0.60 | $17.86 |
| 9009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 2 | I | POS MASTERCARD | $321.50 | $5.44 | $316.06 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 5 | I | POS VISA | $484.85 | $8.51 | $476.34 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | I | POS VOYAGER FLEET | $50.00 | $1.60 | $48.40 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 4 | I | POS WEX FLEET | $420.28 | $13.01 | $407.27 |
| Total for Term 01  Batch: 26 Inside Rdr | | | | | 15 | | | $1,404.37 | $32.71 | $1,371.66 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | O | POS AMERICAN EXPRESS | $74.00 | $2.41 | $71.59 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | O | POS DEBIT CARD | $34.00 | $0.30 | $33.70 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 1 | O | POS DISCOVER | $42.06 | $1.26 | $40.80 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 2 | O | POS MASTERCARD | $59.28 | $1.25 | $58.03 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 10 | O | POS VISA | $253.41 | $5.55 | $247.86 |
| 13959009 | 01 | 26 | 06/15/2006 | 06/16/2006 | 2 | O | POS WEX FLEET | $145.10 | $4.55 | $140.55 |
| Total for Term 01  Batch: 26 Outside Rdr | | | | | 17 | | | $607.85 | $15.32 | $592.53 |
| tal for Term 01  Batch: 26 (all) | | | | | 32 | | | $2,012.22 | $48.03 | $1,964.19 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 2 | I | POS AMERICAN EXPRESS | $85.80 | $2.79 | $83.01 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 3 | I | POS DEBIT CARD | $183.91 | $0.90 | $183.01 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 1 | I | POS DISCOVER | $6.17 | $0.19 | $5.98 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 3 | I | POS MASTERCARD | $254.69 | $4.52 | $250.17 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 11 | I | POS VISA | $692.51 | $12.74 | $679.77 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 6 | I | POS WEX FLEET | $831.28 | $25.54 | $805.74 |
| Total for Term 01  Batch: 27 Inside Rdr | | | | | 26 | | | $2,054.36 | $46.68 | $2,007.68 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 1 | O | POS MASTERCARD | $10.00 | $0.31 | $9.69 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 7 | O | POS VISA | $252.61 | $5.09 | $247.52 |
| 13959009 | 01 | 27 | 06/16/2006 | 06/16/2006 | 1 | O | POS WEX FLEET | $70.81 | $2.22 | $68.59 |
| Total for Term 01  Batch: 27 Outside Rdr | | | | | 9 | | | $333.42 | $7.62 | $325.80 |

EXHIBIT "V"

B.C.G., Inc.
t/a The Laurel Oasis
P.O. Box 311
Laurel, DE 19956
302-875-6014

3/15/06     *sent certified 3/15/06*

GleS, Inc.
t/a Sweet Oil Company
2604 Eastburn Center
Newark, DE 19711

Re: unauthorized electronic funds transfer (EFT) sweep for Laurel DE location

Dear Sirs,

Effective 3/20/06 you are no longer authorized to EFT sweep any moneys from any of our checking accounts pertaining to our Laurel Delaware location.  Per our contract "Agent shall pay to Principal net 10 days from billing the sums received from the sale of gasoline and Agent will pay for diesel fuel 10 days from the billing date."  All payments after 3/20/06 will be paid by check.

Thank You

Charlie Glenn VP

EXHIBIT "W"

Your actions have in [illegible] forced the termination of the contract, and that contract, will be deemed formally to [illegible] on _7-11-06_ . In an attempt to mitigate the damages you have caused through your material breaches and actions, we will offset from amounts owed to you for diesel fuel purchases the amounts listed below. These amounts do not include other damages sustained as a result of your multiple breaches of the contract, including but not limited to loss of profits, future profits, ancillary sales and profits, credit card costs, and all other damages incurred. These amounts will be offset against sums that would otherwise arguably be owed on the motor fuel dispensing and other equipment, which was at the conclusion of the contract to become our property.

-gas commission payment up to 7/6/06 (copy of itemized enclosed)    $ 11,402.56
-gas commission payment 7/6/06 to present    $  .193·76
  (As listed in the above noted contract item #5)
-repair bills for equipment    $   450.00
  (As listed in the above noted contract item #12)
-credit card fees and network fees    $ 3,787.41
  (Unauthorized EFT swept from our account)
  (As listed in the above noted contract, credit card loan equipment agreement)
-over charge on diesel fuel (total gallons x overcharges)    $17,288.05
  (As listed in the above noted contract "*Not to exceed Salisbury Rack prices by more
   than .025 per gallon")
- citgo credit cards Billed 34-36 plus 1 manual    $ 6,583.39
  Total: $ 39705.17

If you have any questions about any of the above, please contact me. Thank you.

Sincerely,

*[signature]*

Charlie Glenn VP



*GLeS, Inc.*

*Sweet Oil Company*

Chesapeake Products & Services Inc.
Mr. Charlie Glenn
PO Box 311
Laurel, Delaware
19956

July 11, 2006

Dear Sir,

I am in receipt of your letter today dated July 11, 2006 in which you assert you believe we have "failed to provide you with adequate response to your multiple attempts to obtain our compliance with the contracts we assumed from Peninsula Oil Company." I must again dispute this statement. I have responded to you verbally, via email, and by letter on numerous occasions. You don't seem to like my answer and are looking for a different response than you are getting and therefore not accepting the answer you receive. I will again attempt to explain our position to you, and must be perfectly clear WE WILL DO EVERYTHING LEGALLY PERMISSABLE TO ENFORCE OUR POSITION UNDER THE CONTRACTS WE PURCHASED FROM PENINSULA OIL, and furthermore, we do not recognize your right to terminate this agreement without proper authorization, and dispute your statement "In essence, you have indicated your intent to terminate, actually or constructively". If you do not like the answer you get to a question, it does not mean the answer is wrong. You must accept the fact a business relationship is a two way street not a one way street going your way. People in business together have disagreements, but these disagreements do not give the other the right to summarily dismiss the rights of the other as you are attempting.

To address the numbered points in your letter:

1. Peninsula Oil was supplying you Texaco branded products through a supply agreement with Motiva Enterprises, LLC, Motiva's right to sell Texaco products did in fact terminate on June 30, 2006 as part of a Federal Trade Commission (FTC) decree. At the time of our purchase of Peninsula Oil's agreement with you we informed you we did not have a supply agreement with Motiva, nor would we attempt to obtain one since their right to the Texaco brand was due to terminate prior to your supply agreement and a brand change was inevitable. We discussed this with you the menu of brands we had to offer and as per your contract, we "mutually agreed" to the replacement brand (Citgo) after several meetings, some of which including Terry Sullivan, Territory Manager for Citgo Petroleum.

2. It is difficult to determine when you are referring too in you comment "You placed our retail prices up to 20 cents higher than our competition" as you have been inconsistently providing us with price surveys. Without this information which is required to be provided daily, we must price based on product cost rather than competitive street prices, until you furnish us with this required information. As per the Commission Agency Agreement, we reserve the exclusive right to price our product as we determine responsible. I understand you would like us to be the lowest price on the street all of the time, but we must react to product cost changes, and be fiscally responsible in our actions.

3. This is the first time I have been told we charged you the incorrect price on the diesel fuel

---

2604 EASTBURN CENTER • NEWARK, DELAWARE • 19711
PHONE: 302.368.9095 • FAX: 302.368.9045

· 2                                                   July 11, 2006

delivered to Oasis Citgo. I will be happy to review any documentation you have to validate this new claim of pricing error. We have provided you documentation on every other claim of inaccurate pricing you have made, showing our records to be correct. We will be happy to investigate this latest claim if you can provide us any documentation to back up your request. Your contract states you will purchase all gasoline at "Retail posted price less commission" and diesel fuel at "our posted full transport price" at time of delivery. There is a footnote which states " Not to exceed Salisbury Rack prices by more than .025 per gallon". In fact, we have been charging you Salisbury rack price plus only .01 per gallon which means we have the right to charge you more than we have been charging you in the past.  Your comments in your letter dated 5/22/06 about "the most cost competitive common carrier freight company to haul our fuels" is of course an ideal situation to request. You stated "historically your previous carrier was .0075 per gallon less expensive". This may be a true statement, however rates change now almost weekly due to federal department of transportation fuel surcharge rates which are posted on the DOT website. We routinely bid our common carrier freight every year to get a very competitive rate, but no where in your contract, or any other Peninsula Oil dealers contract is it mandated we use any specific carrier, nor does it state we must use the cheapest one, or the one you chose for any other reason. I will state again as I have in many of my previous letters responding to your letters, WE ARE NOT OVERCHARGING YOU FOR FREIGHT. You do not have the right in any of your agreements to audit, accept, or not accept any transport carrier we hire to make deliveries to your locations. The carrier we are currently using is certified by the refinery and terminal owners where your products come from, and carry all licenses, permits, and insurances legally required to make these deliveries.

4.   We have not "unlawfully transferred monies Electronically" from your bank account. It was mutually agreed in September 2005 we would EFT your account every Wednesday for diesel fuel product delivered to Oasis Citgo over the previous week, until you notified us in writing in March 2006 that you wanted to discontinue this practice and pay future invoices by check. We have not EFT'd your account since receipt of your letter.

5.   You allege we have refused to pay you your commission for gasoline sold under the Commission Agency Agreement. In fact, we paid you for the period of September 2005 through January 2006 based on our best estimate of what we believe due to you since you have refused to provide us with the daily sales reports which our Verifone Ruby equipment (loaned equipment) provides everyday at the time of closing of business, in addition to the reconciliation forms provided to you when you, your brother Bill, Adam Gray, Bill Sweet and I met with you live in your office back in September. We would like nothing more than to pay you properly, but without your cooperation in providing us with this very basic information we can not determine exactly what you are due. We have made numerous requests over several months, and still to this day have not received this information. If you provide us with this information in a timely manner, we can issue you checks immediately for any money which you are due.

Now that I have responded to your items, I must address additional items. It has come to our attention you have tampered with and damaged our loaned equipment by deleting proprietary software required by Citgo to process Citgo branded credit cards through our gasoline dispensers which are also loaned equipment. You do not have the right to take this action, and as required by your Citgo franchise, must pay to have this repaired. In addition, you have illegally seized possession of our credit card transaction receipts for all sales of gasoline owned by Sweet Oil Company, beginning with your tampering on June 19, 2006. This action must be corrected immediately, and all monies due to Sweet Oil must be immediately paid in full, or we will seek criminal prosecution for this theft.

We are in receipt of two checks from you which accompanied your letter today in which you have deducted what you believe to be your commission due from the sale of gasoline under the Commission Agency Agreement. We will be applying these checks toward your open balance due for diesel fuel sold to you at the Oasis Citgo location, as well as any money due to us which you collected from the cash sales of our

– 3 –                                                                    July 11, 2006

gasoline at Oasis Citgo. These checks are # 12137 in the amount of $39,870.99 and # 12136 in the amount of $36,369.27.

Your letter states "our actions indeed force the termination of the contract" which we must again dispute. We have not violated any written agreement. We have no intention of terminating this agreement, or allowing you to unlawfully terminate this agreement and any action on your part to remove our signage, or any of the other loaned equipment on your site will trigger legal action on our part to defend our position to the full extent of the law under the contracts we purchased from Peninsula Oil Company, including but not limited to removing our loaned equipment from your location as allowed in the loaned equipment agreement if necessary.

We look forward to your response.

Sincerely Yours,

Mark L. Greco

# EXHIBIT "Y"

B.C.G., Inc. t/a The Laurel Oasis
P.O. Box 311
Laurel, DE 19956
302-875-6014

GleS, Inc. t/a Sweet Oil Co.
2604 Eastburn Center
Newark, DE19711
302-368-9095

7/20/06

Re: material breach of the Franchise commission agency agreement dated 2/13/1990  extended
by  letter dated 11/15/1993, and as thereafter supplemented and amended  Between Peninsula Oil
company (as subsequently assigned to and assumed by GLeS, Inc.t/a Sweet Oil company) and
B.C. G. Inc T/A Oasis Travel Plaza.

Dear Sirs,

We are in receipt of your letter dated 7-11-06. The claims are denied. Any adverse actions Sweet
Oil takes that result in further damages to B.C.G. Inc. will be dealt with accordingly.

Sincerely,

Charles Glenn

EXHIBIT "Z"



*7/19/06*

G L o S , Inc.

*Sweet Oil Company*

Date: July 19, 2006   *Faxed to us 7/19/06*

Chesapeake Products & Services
PO Box 311
Laurel, DE 19956

Re: Sale of Unbranded Gasoline to Laurel Oasis, Sweet Oil Co. supplied CITGO

To Whom It May Concern:

Sweet Oil Company has an exclusive Sales Agreement (the "Agreement") with B.C.G., Inc. t/a The Laurel Oasis, operating as a SWEET OIL COMPANY SUPPLIED CITGO gasoline station at Sussex Highway (the "Station"). Under the terms of the Agreement, Sweet Oil has the exclusive right sell and B.C.G., Inc. t/a The Laurel Oasis has the duty to exclusively purchase motor fuel branded under the SWEET OIL COMPANY SUPPLIED CITGO name at the Station.

This letter is written to put you on notice of the Agreement and that any sale of motor fuel products to the Station will be deemed to be with full knowledge that the motor fuel product was not a SWEET OIL COMPANY SUPPLIED CITGO branded product. Such a sale constitutes, at a minimum, a deceptive trade practice, and further constitutes tortious interference with Sweet Oil's exclusive contract with B.C.G., Inc. t/a The Laurel Oasis. The Office of Retail Gasoline Sales will be notified if such a sale occurs. **Currently, the station is being monitored to evaluate compliance/non-compliance with the Agreement.**

Accordingly, Sweet Oil has initiated legal action to **enjoin** any company from selling and /or transporting any motor fuel with the intention that it be sold to the public from this location. Said legal action may include a lawsuit seeking an injunction against any offending company for the sale of motor fuel, as well as a lawsuit for damages. In addition, the state may choose to proceed against an offending party and impose a penalty for a willful violation of the applicable laws.

This letter serves as notice to cease and desist from any sales and/or transport of motor fuel to B.C.G., Inc. t/a The Laurel Oasis,.

Very truly yours,

Ben LeRoy

cc: Bill Sweet
Mark Greco
John McTear
Adam Gray
Valero Energy Corporation (Mike Tuker , Sales & Marketing)
Valero Energy Corporation (Elliot Bowytz, esq. Legal)
Valero Energy Corporation, DE City Refinery (Jack Frost, Distribution)
Eagle Transport (Rich McBride, Marketing)
Carroll Independent Fuel
CATO, Inc

2604 EASTBURN CENTER • NEWARK, DELAWARE • 19711
PHONE: 302.368.9095 • FAX: 302.368.9045

—2—                                July 19, 2006

Eastern Petroleum
Ewing Oil Company
J. Wm. Gordy, Fuel
Ocean Petroleum
Pep-Up
PMG
Service Energy, LI.P
Wilson Baker

EFiled: Mar 27 2007 3:44PM EDT
Transaction ID 14274450
Case No. 06C-10-024 RBY

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | |
|---|---|
| BCG, INC. and<br>CHESAPEAKE PRODUCTS &<br>SERVICES,<br><br>                 Plaintiffs,<br><br>     v.<br><br>GLES, INC., d/b/a SWEET OIL<br>COMPANY,<br><br>          Defendant/Third Party<br>          Plaintiff,<br><br>     v.<br><br>SUNOCO, INC.,<br><br>          Third-Party Defendant. | ) C.A. No.: 06C-10-024 (RBY)<br>)<br>)<br>)<br>) TRIAL BY JURY<br>) OF TWELVE DEMANDED<br>)<br>)<br>) NON-ARBITRATION CASE<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I, D. Benjamin Snyder, certify that a true and correct copy of the **AMENDED COMPLAINT** in the above-captioned matter was served on the below counsel of record via e-file and U.S. First Class Mail, postage prepaid, as follows:

<div align="center">

Thomas H. Kovach, Esquire
Pepper Hamilton, LLC
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
*Attorney for Third-Party Defendant,
Sunoco, Inc.*

</div>

20083.1\330319v1

Seth J. Reidenberg, Esquire
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
*Attorney for Defendant/Third Party*
*Plaintiff, GLES, Inc. d/b/a Sweet Oil Company*

**PRICKETT, JONES & ELLIOTT, P.A.**

BY: _____
John W. Paradee, Esquire (#2767)
D. Benjamin Snyder, Esquire (#4038)
11 North State Street
Dover, Delaware 19901
(302) 674-3841
*Attorneys for the Plaintiffs,*
*BCG, Inc., et. al.*

DATED: 3/27/07

# EXHIBIT E

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, | : | |
| CHESAPEAKE PRODUCTS & | : | C.A. No. 06C-10-024 |
| SERVICES, INC., a Delaware corporation | : | |
| | : | TRIAL BY JURY |
| Plaintiffs, | : | OF TWELVE DEMANDED |
| | : | |
| v. | : | NON-ARBITRATION CASE |
| | : | |
| GLES, INC., a Delaware corporation, | : | |
| d/b/a SWEET OIL COMPANY, | : | |
| | : | |
| Defendant/Third-Party Plaintiff | : | |
| v. | : | |
| | : | |
| Sunoco, Inc. | : | |
| | : | |
| Third-Party Defendant | : | |

## NOTICE OF FILING OF NOTICE OF REMOVAL

To:    Clerk of the Court
       Superior Court of Kent County
       Kent County Courthouse
       38 The Green
       Dover, DE 19901

       PLEASE TAKE NOTICE that Defendant GLeS, Inc., d/b/a Sweet Oil Company,

has removed the above-styled action from the Superior Court of the State of Delaware in and for

Kent County, in which it was initially filed, to the United States District Court for the District of

Delaware.

054769.1031

Attached hereto, and made a part hereof, is a copy of the Notice of Removal that has been filed in the United States District Court for the District of Delaware.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
(302) 576-3442 (fax)

Attorneys for Defendant GLeS, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Of Counsel:

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

Dated:  April 19, 2007

DB02:5892947.1                                                                054769.1031

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

|  |  |  |
|---|---|---|
| BCG, INC., a Delaware corporation, | : | |
| CHESAPEAKE PRODUCTS & | : | C.A. No. 06C-10-024 |
| SERVICES, INC., a Delaware corporation | : | |
|  | : | TRIAL BY JURY |
| Plaintiffs, | : | OF TWELVE DEMANDED |
|  | : | |
| v. | : | NON-ARBITRATION CASE |
|  | : | |
| GLES, INC., a Delaware corporation, | : | |
| d/b/a SWEET OIL COMPANY, | : | |
|  | : | |
| Defendant/Third-Party Plaintiff | : | |
| v. | : | |
|  | : | |
| Sunoco, Inc. | : | |
|  | : | |
| Third-Party Defendant | : | |

### NOTICE OF REMOVAL

TO:    The Prothonotary
       Kent County Courthouse
       The Green
       Dover, DE 19901

        PLEASE TAKE NOTICE that the Defendant/Third-Party Defendant, GLeS, Inc.,

d/b/a Sweet Oil Company, has removed the above-captioned case to the United States District

Court for the District of Delaware.  A copy of the Notice of Removal, filed with the United

States District Court on April 19, 2007, is attached hereto as Exhibit A.  Service of this notice

effects removal; federal statute requires that the state court proceed no further unless and until

the case is remanded.  28 U.S.C. §1446(d); *Resolution Trust Corp. v. Bayside Developers*, 43

F.3d 1230, 1238 (4th Circuit 1994) ("thus the clear language of the general removal statute

provides that the state court loses jurisdiction upon the filing of the petition of removal").

3

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
(302) 576-3442 (fax)

Attorneys for Defendant GLeS, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Of Counsel:

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)


Dated:  April 19, 2007

4

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| BCG, INC., a Delaware corporation, : <br> CHESAPEAKE PRODUCTS & : <br> SERVICES, INC., a Delaware corporation : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> GLES, INC., a Delaware corporation, : <br> d/b/a SWEET OIL COMPANY, : <br> : <br> Defendant/Third-Party Plaintiff : <br> v. : <br> : <br> Sunoco, Inc. : <br> : <br> Third-Party Defendant : <br> : | C.A. No. <br><br> TRIAL BY JURY <br> OF TWELVE DEMANDED |

## NOTICE OF REMOVAL

Defendant/Third-Party Plaintiff, GLeS, Inc., d/b/a Sweet Oil Company, by and
through its undersigned counsel, hereby gives notice that this matter has been removed, pursuant
to 28 U.S.C. § 1441, to the United States District Court for the District of Delaware. The
grounds for removal are as follows:

1.    Plaintiffs, BCG, Inc., and Chesapeake Products & Services, Inc.

("Plaintiffs"), commenced this action, entitled *BCG, Inc. and Chesapeake Products & Services,
Inc. v. GLES, Inc., d/b/a Sweet Oil Company,* No. 06C-10-024, in the Superior Court of the State
of Delaware in and for Kent County. The complaint was filed on or about October 19, 2006. A
copy is attached as Exhibit "A".

2.     In the original complaint, Plaintiffs alleged claims for breach of contract, declaratory judgment, tortious interference with contract, bad faith, and violation of a Delaware Franchise Security Law.  There were no federal claims asserted.

3.     On or about December 18, 2006, GLeS filed an answer and a counterclaim for declaratory relief and indemnification. A copy is attached as Exhibit "B".

4.     On or about January 3, 2007, GLeS filed a third-party complaint against Sunoco, Inc. for declaratory relief and filed an interpleader action.  A copy is attached as Exhibit "C".

5.     On or about March 27, 2007, the Plaintiffs amended their original complaint to add claims against GLeS pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq.   A copy is attached as Exhibit "D".

6.     No further proceedings in this matter have occurred since March 27, 2007.

7.     By filing of the amended complaint, this action now includes federal claims under the Petroleum Marketing Practices Act, conferring original jurisdiction upon this Court.

8.     To the extent the Plaintiffs are asserting any claims under state law, this Court has supplemental jurisdiction over said claims pursuant to 28 U.S.C. § 1367.

9.     This Notice of Removal is being filed within thirty (30) days of the Defendant's receipt of the Plaintiffs' amended complaint and is hereby timely filed under 28 U.S.C. § 1446(b).

10.     Defendant/Third-Party Plaintiff, GLeS, has filed a true and correct copy of the Notice of Removal with the Superior Court of the State of Delaware in and for Kent County. A copy of the Notice is attached as Exhibit "E".

DB02:5892871.1                                                    054769.1031

WHEREFORE, Defendant, GLeS, Inc., d/b/a Sweet Oil Company, respectfully requests that this action, now pending against it in the Superior Court of the State of Delaware in and for Kent County, be removed therefrom to this Court and that this action be placed on the docket of this Court for further proceedings as though this action originally had been instituted in this Court.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
(302) 576-3442 (fax)

Attorneys for Defendant GLeS, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Of Counsel:

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

Dated: April 19, 2007

3

## CERTIFICATE OF SERVICE

I, Seth J. Reidenberg, Esquire, hereby certify that the foregoing Notice of

Removal, along with related attachments, and this certificate of service, was served on April 19,

2007, by hand delivery on the following counsel of record:

John W. Paradee, Esquire
D. Benjamin Snyder, Esquire
Glenn C. Mandalas, Esquire
PRICKETT, JONES & ELLIOTT, P.A.
11 North State Street
Dover, Delaware 19901

Thomas H. Kovach, Esquire
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709

_____
Seth J. Reidenberg, Esquire (No. 3657)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
(302) 576-3442 (fax)

Attorneys for Defendant GLeS, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

5

## CERTIFICATE OF SERVICE

I, Seth J. Reidenberg, Esquire, hereby certify that the foregoing Notice of Filing

Notice of Removal, along with related attachments, and this certificate of service, was served on

April 19, 2007, by hand delivery on the following counsel of record:

John W. Paradee, Esquire
D. Benjamin Snyder, Esquire
Glenn C. Mandalas, Esquire
PRICKETT, JONES & ELLIOTT, P.A.
11 North State Street
Dover, Delaware 19901

Thomas H. Kovach, Esquire
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709

Seth J. Reidenberg, Esquire (No. 3657)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
(302) 576-3442 (fax)

Attorneys for Defendant GLeS, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

# All Remaining Process, Pleadings and Orders

EFiled: Nov 17 2006 4:43PM EST
Transaction ID 12952514

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, | : | |
| CHESAPEAKE PRODUCTS & | : | C.A. NO. O6C-10-024 (RBY) |
| SERVICES, INC., a Delaware corporation, | : | |
| | : | TRIAL BY JURY |
| Plaintiffs, | : | OF TWELVE DEMANDED |
| v. | : | NON-ARBITRATION CASE |
| | : | |
| GLES, INC., a Delaware corporation, | : | |
| d/b/a SWEET OIL COMPANY, | : | |
| Defendant. | : | |
| | : | |

## ENTRY OF APPEARANCE

PLEASE ENTER THE APPEARANCE of Young Conaway Stargatt & Taylor,

LLP by Seth J. Reidenberg as counsel of record in this action for Defendant GLES, Inc., a

Delaware corporation, d/b/a Sweet Oil Company, in the above-referenced matter.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Seth J. Reidenberg, Esquire (No.3657)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

Attorneys for Defendant GLES, Inc.,
a Delaware corporation, d/b/a Sweet Oil Company

Dated: November 17, 2006

**EFiled: Nov 17 2006 4:43PM EST**
**Transaction ID 12952514**

<u>**CERTIFICATE OF SERVICE**</u>

I, Seth J. Reidenberg, Esquire, do hereby certify that on November 17, 2006, I

caused the Entry of Appearance to be served via electronic filing on the following counsel of

record:

> John W. Paradee, Esquire
> D. Benjamin Snyder, Esquire
> Glenn C. Mandalas, Esquire
> PRICKETT, JONES & ELLIOTT, P.A.
> 11 North State Street
> Dover, Delaware 19901

Seth J. Reidenberg, Esquire (No. 3657)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

Attorneys for Defendant GLES, Inc.,
a Delaware corporation, d/b/a Sweet Oil Company

Dated: November 17, 2006

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

COUNTY:    N ☐    K ☒    S ☐         CIVIL ACTION NUMBER: **06C-10-024 (RBY)**

CIVIL CASE CODE: CDBT                CIVIL CASE TYPE: **Debt/Breach of Contract**

| | |
|---|---|
| CAPTION:<br><br>BCG, INC., A DELAWARE CORPORATION,<br>CHESAPEAKE PRODUCTS & SERVICES, INC.,<br>A DELAWARE CORPORATION<br><br>                          PLAINTIFFS<br><br>**vs.**<br><br>GLES, INC., A DELAWARE CORPORATION,<br>D/B/A SWEET OIL COMPANY,<br><br>                         DEFENDANT | NAME AND STATUS OF PARTY FILING DOCUMENT:<br>**Plaintiffs, BCG, Inc., a Delaware Corporation,<br>Chesapeake Products & Services, Inc. , a Delaware<br>Corporation.**<br>DOCUMENT TYPE: (E.G., COMPLAINT, ANSWER WITH COUNTERCLAIM)<br>**Plaintiffs' Reply to Defendants Counterclaim**<br><br>NON-ARBITRATION ☒<br>(CERTIFICATE OF VALUE MAY BE REQUIRED)<br>ARBITRATION ☐   MEDIATION ☐   NEUTRAL ASSESSMENT ☐<br>DEFENDANT    **ACCEPT** ☐    **REJECT** ☐<br>JURY DEMAND    ☒ YES  ☐ NO<br>TRACK ASSIGNMENT REQUESTED: (CHECK ONE)<br>**EXPEDITED** ☐        **STANDARD** ☒        **COMPLEX** ☐ |
| ATTORNEY NAME(S): D. BENJAMIN SNYDER, ESQUIRE<br><br>FIRM NAME:    **Prickett Jones & Elliott, P.A.**<br><br>ADDRESS:<br>       **11 North State Street<br>       Dover DE  19901**<br><br><br>TELEPHONE NUMBER:<br>**302-674-3841**<br><br>FAX NUMBER:<br>**302-674-5864**<br><br>E-MAIL ADDRESS:<br>***dbsnyder@prickett.com*** | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGES' INITIALS<br>———<br><br><br>EXPLAIN THE RELATIONSHIP(S):  ———<br><br><br><br><br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:  ———<br><br><br><br><br>(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGES) |

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED.  THE FAILURE TO FILE THE CIS AND TO HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN**

Revised 6/2002

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| BCG, INC., a Delaware corporation,<br>CHESAPEAKE PRODUCTS &<br>SERVICES, INC., a Delaware corporation, | :<br>: C.A. No. 06C-10-024 (RBY)<br>: |
| Plaintiffs, | : TRIAL BY JURY<br>: OF TWELVE DEMANDED<br>: |
| v. | : NON-ARBITRATION CASE<br>: |
| GLES, INC., a Delaware corporation,<br> d/b/a SWEET OIL COMPANY, | :<br>: |
| Defendant. | :<br>: |

### PLAINTIFFS' REPLY TO DEFENDANT'S COUNTERCLAIM

COMES NOW, BCG, Inc. and Chesapeake Products & Services, Inc. (hereinafter referred to as the "Plaintiffs"), the Plaintiffs in the above-captioned action, by and through their counsel, who hereby answers the allegations of the Counterclaim filed by GLES, Inc. d/b/a Sweet Oil Company (hereinafter referred to as "Defendant"), as follows:

### Count I

1.    Plaintiffs respond to each of the allegations contained within the Defendant's Affirmative Defenses, as follows:

(1)    Denied.

(2)    The allegations set forth in this paragraph state legal conclusions to which no response is required, and the Plaintiffs therefore deny same.

(3)    Denied.

(4)    The allegations set forth in this paragraph state legal conclusions to which no response is required, and the Plaintiffs therefore deny same.

(5)    The Plaintiffs are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in this paragraph.

(6)    The Plaintiffs are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in this paragraph.

(7)    The Plaintiffs are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in this paragraph.

(8)    The Plaintiffs are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in this paragraph.

(9)    Denied.  By way of further response, the documents speak for themselves.

(10)    The Plaintiffs are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in this paragraph.

(11)    Denied that the Plaintiffs have failed or refused to honor any obligation under the incentive program. The Plaintiffs are without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in this paragraph.   By way of further response, the documents speak for themselves.

(12)    Denied.  By way of further response, the documents speak for themselves.

(13)    Denied.  By way of further response, the documents speak for themselves.

(14)    Denied.

(15)    Admitted that Plaintiff BCG purchased motor fuels for the Oasis Station from suppliers other than the Defendant following BCG's termination of its contract with the Defendant because of the Defendant's multiple breaches of its contractual obligations.  The remaining allegations set forth in this paragraph are denied.

(16)    Denied.

(17)    Denied.

(18)    Denied.

(19)    Denied.

2.    Denied that the Plaintiffs have violated any contractual or other obligation owed to the Defendant.  By way of further response, the documents speak for themselves.

3.    The Plaintiffs are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in paragraph 3.

4.    Denied.  By way of further response, the documents speak for themselves.

5.    Admitted that the Plaintiffs have not repaid any incentive fees to the Defendant, and the Plaintiffs specifically deny they had or have any such obligation. The remaining allegations set forth in paragraph 5 are denied.

## Count II

6.    The Plaintiffs repeat and reallege their responses to the allegations set forth in paragraphs 1 through 6 above as though each such response were fully restated herein.

7.    Denied.

8.    Admitted that Plaintiff BCG has refused to purchase motor fuels for the Oasis Station from the Defendant since BCG terminated its contract with the Defendant because of the Defendant's multiple breaches of its contractual obligations. The remaining allegations set forth in this paragraph are denied.

9.    Admitted that Plaintiff BCG purchased motor fuels for the Oasis Station from suppliers other than the Defendant following BCG's termination of its contract with the Defendant because of the Defendant's multiple breaches of its contractual obligations. The remaining allegations set forth in this paragraph are denied.

10.    Denied.

11.    Denied.

## Count III

12.    The Plaintiffs repeat and reallege their responses to the allegations set forth in paragraphs 1 through 11 above as though each such response were fully restated herein.

13.    Admitted that BCG offset the Gas Commissions, overcharges on diesel fuel, costs of equipment repairs, and credit card fees owed by the Defendant from

amounts owed by BCG to Defendant for diesel fuel at the Oasis Station. The remaining allegations set forth in paragraph 13 are denied.

14.    Denied.

### FIRST AFFIRMATIVE DEFENSE

1.    The Defendant's Counterclaim fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

2.    The Defendant's Counterclaim is barred by the doctrines of set off and recoupment.

WHEREFORE, the Plaintiffs respectfully pray that this Honorable Court award judgment in favor of the Plaintiffs and against the Defendant, dismiss the Defendant's Counterclaim, and grant the Plaintiffs their costs, reasonable attorney's fees, and such other and further relief as this Court may deem equitable and just.

PRICKETT, JONES & ELLIOTT, P.A.

John W. Paradee  (DE Bar No. 2767)
D. Benjamin Snyder (DE Bar No. 4038)
Glenn C. Mandalas (DE Bar No. 4432)
11 North State Street
Dover, Delaware 19901
(302) 674-3841

*and*

Harry C. Storm
Lerch, Early & Brewer, Chartered
3 Bethesda Metro Center, Suite 460
Bethesda, MD 20814

Date: January 8, 2007          *Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I, D. Benjamin Snyder, Esquire, do hereby certify that on January 8, 2007, I caused the

**Plaintiffs' Reply to Defendant's Counterclaim** to be served via electronic filing on the

following counsel of record:

Seth J. Reidenberg, Esquire (No. 3657)
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801


**PRICKETT, JONES & ELLIOTT, P.A.**


BY: _____
D. Benjamin Snyder, Esquire (#4038)
11 North State Street
Dover, Delaware 19901
(302) 674-3841
*Attorney for the Plaintiffs*


DATED:  1/8/07

20083.1\323518v1

EFiled: Feb 9 2007 2:52P
Transaction ID 13767358
Case No. 06C-10-024 RBY

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

BCG INC, A DELAWARE CORPORATIO
CHESAPEAKE PRODUCTS & SERVICES
CORPORATION

         -- VS --

GLES INC, A DELAWARE CORPORATI
COMPANY

         -- VS --

SUNOCO, INC.

C.A. NO 06C-10-024

SCHEDULING ORDER

WHEREAS, THE COURT HAVING REVIEWED THE PROTHNOTARY FILE
IN THE ABOVE-CAPTIONED CASE,

IT IS ORDERED, THAT THE FOLLOWING WILL CONTROL ALL FUTURE
EVENTS IN THIS CASE.  ANY AMENDMENTS OR MODIFICATIONS TO THE
EVENT DEADLINES ESTABLISHED IN THIS ORDER WILL REQUIRE A
SCHEDULED OFFICE CONFERENCE.

(1)   FILING OF MOTIONS TO ADD OR AMEND    05/14/2007

(2)   DISCOVERY CUTOFF    06/25/2007

(3)   DISPOSITIVE MOTION DEADLINE    07/25/2007

(4)   PRETRIAL CONFERENCE (8:30 A.M.)    09/05/2007

(5)   TRIAL CALENDAR CONFERENCE (10:45 A.M.)  10/05/2007

(7)   TRIAL (JURY)/NON-JURY   (10:00 A.M.)   10/09/2007

THE ANTICIPATED LENGTH OF TRIAL IS  3  DAYS.

DATED:02/05/2007

ROBERT B YOUNG

OC:PROTHONOTARY
XC:ALL PARTIES

David Snyder
Seth Reidenberg

EFiled: Mar 13 2007 3:33PM EDT
Transaction ID 14107795
Case No. 06C-10-024 RBY

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

BCG, INC., a Delaware corporation and :
CHESAPEAKE PRODUCTS & SERVICES, :
                                                          :    C.A. NO. 06C-10-024 (RBY)
                                   Plaintiffs,        :
                    v.                                   :    TRIAL BY JURY
                                                          :    OF TWELVE DEMANDED
GLES, INC., a Delaware corporation, d/b/a    :
SWEET OIL COMPANY,                          :
                                                          :    NON-ARBITRATION CASE
          Defendant/Third-Party Plaintiff      :
                                                          :
SUNOCO, INC.,                                    :
                                                          :
                   Third-Party Defendant.      :

## MOTION FOR ADMISSION *PRO HAC VICE*

Pursuant to Rule 90.1(a) of the Superior Court Rules, Thomas H. Kovach, a member

of the Delaware Bar maintaining an office in this State for the practice of law, moves the admission

*pro hac vice* of A. Christopher Young, Pepper Hamilton LLP, 3000 Two Logan Square, 18th and

Arch Streets, Philadelphia, PA 19103-2799, and certifies, pursuant to Rule 90.1(a), that I find Mr.

Young to be a reputable and competent attorney, and that on the basis of my personal acquaintance

with Mr. Young, I am in a position to recommend his admission *pro hac vice*.

Dated: March 13, 2007                      Respectfully submitted,


                                                      /s/ *Thomas H. Kovach*
                                                      Thomas H. Kovach (Bar No. 3964)
                                                      PEPPER HAMILTON LLP
                                                      Hercules Plaza, Suite 5100
                                                      1313 N. Market Street
                                                      P.O. Box 1709
                                                      Wilmington, DE   19899-1709
                                                      Telephone No.: (302) 777-6500
                                                      Facsimile No.: (302) 421-8390

                                                      Attorneys for Third Party Defendant Sunoco,
                                                      Inc. (R&M)

#8304510 v1 (29125.255)

EFiled: Mar 13 2007 3:33PM EDT
Transaction ID 14107795
Case No. 06C-10-024 RBY

### CERTIFICATION PURSUANT TO SUPERIOR COURT
### RULE 90.1(b)

I, A. Christopher Young, hereby certify:

1.    That I am a member in good standing of the Bars of the Commonwealth of Pennsylvania and the State of New Jersey. I have also been admitted to practice before the United States Supreme Court, and the United States Court of Appeals for the Third, Fourth, and Sixth Circuits, and the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the Middle District of Pennsylvania, and the United States District Court for the District of New Jersey, and the United States District Court for the Eastern District of Michigan.

2.    That I shall be bound by the Delaware Lawyer's Rules of Professional Conduct and that I have reviewed the Statement of Principles of Lawyer Conduct;

3.    That I and all attorneys of my firm who directly or indirectly provide services to the third-party defendant in this action shall be bound by all Rules of the Court;

4.    That I have consented to the appointment of the Prothonotary as agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law under Rule 90.1 and any activities related thereto;

5.    That I have not been admitted *pro hac vice* in a different action of record in this Court in the preceding 12 months;

6.    That a *pro hac vice* admission assessment in the amount of $300 is being paid by Pepper Hamilton LLP through LexisNexis, and is to be deposited in the Supreme Court registration fund for the purpose of the governance of the Bar of its Court and may be distributed pursuant to Supreme Court Rule 69;

7.    That I do not personally maintain an office in the State of Delaware; and

-2-

#8304510 v1 (29125.255)

8.    That I have not been disbarred or suspended and am not the object of pending disciplinary proceedings in any jurisdiction where I have been admitted generally, *pro hac vice*, or in any other way.


A. Christopher Young
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799
Telephone No.:  (215) 981-4000
Facsimile No.: (215) 981-4750

-3-



EFiled: Mar 13 2007 3:33PM EDT
Transaction ID 14107795
Case No. 06C-10-024 RBY

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

BCG, INC., a Delaware corporation and :
CHESAPEAKE PRODUCTS & SERVICES, :
 : C.A. NO. 06C-10-024 (RBY)
        Plaintiffs, :
 :
    v. : TRIAL BY JURY
 : OF TWELVE DEMANDED
GLES, INC., a Delaware corporation, d/b/a :
SWEET OIL COMPANY, :
 : NON-ARBITRATION CASE
   Defendant/Third-Party Plaintiff :
 :
SUNOCO, INC., :
 :
     Third-Party Defendant. :

## ORDER

The foregoing application for the admission of A. Christopher Young, Esquire to

practice in this action *pro hac vice* is hereby granted.

IT IS SO ORDERED this ___ day of March, 2007..

_____
Robert B. Young, J.

#8304510 v1 (29125.255)

EFiled: Mar 13 2007 3:33PM EDT
Transaction ID 14107795
Case No. 06C-...RBY

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2007, a copy of the foregoing Third Party

Defendant's Motion for Admission *Pro Hac Vice* was served upon the following via Lexis/Nexis File

& Serve:

Seth J. Reidenberg, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
*Attorneys for Defendant/Third-Party Plaintiff*

D. Ben Snyder, Esq.
Prickett Jones & Elliott, P.A.
11 North State Street
Dover, DE  19901
*Attorneys for Plaintiffs*

/s/ Thomas H. Kovach
Thomas H. Kovach (DE Bar No. 3964)

EFiled: Mar 27 2007 3:18PM EDT
Transaction ID 14273925
Case No. 06C-10-024 RBY

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | |
|---|---|
| BCG, INC. and<br>CHESAPEAKE PRODUCTS &<br>SERVICES, | ) C.A. No.: 06C-10-024 (RBY)<br>)<br>) |
| Plaintiffs, | ) TRIAL BY JURY<br>) OF TWELVE DEMANDED<br>) |
| v. | )<br>) NON-ARBITRATION CASE |
| GLES, INC., d/b/a SWEET OIL<br>COMPANY, | )<br>)<br>) |
| Defendant/Third Party<br>Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| SUNOCO, INC., | )<br>) |
| Third-Party Defendant. | )<br>) |

### STIPULATION TO AMEND COMPLAINT

COME NOW the parties, by and through their respective counsel, who hereby stipulate

pursuant to Superior Court Civil Rule 15 that the Plaintiffs may amend their Complaint by filing

the attached Amended Complaint.

| PRICKETT, JONES & ELLIOTT, P.A. | PEPPER HAMILTON, LLC |
|---|---|
| /s/D. Benjamin Snyder, Esquire<br>D. Benjamin Snyder, Esquire (#4038)<br>11 North State Street<br>Dover, Delaware 19901<br>(302) 674-3841<br>*Attorney for the Plaintiffs,*<br>*BCG, Inc., et. al.* | /s/ Thomas H. Kovach, Esquire<br>Thomas H. Kovach, Esquire (#3964)<br>Hercules Plaza, Suite 5100<br>1313 Market Street<br>P.O. Box 1709<br>Wilmington, Delaware 19899-1709<br>(302) 777-6500<br>*Attorney for Third-Party Defendant,*<br>*Sunoco, Inc.* |
| Dated: 3/27/07 | Dated: 3/27/07 |

| **YOUNG, CONAWAY, STARGATT & TAYLOR, LLP** |  |
| --- | --- |
| /s/ Seth J. Reidenberg, Esquire<br>Seth J. Reidenberg, Esquire (#3657)<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, Delaware 19899-0391<br>*Attorney for Defendant/Third Party*<br>*Plaintiff, GLES, Inc. d/b/a Sweet Oil Company* |  |
| Dated: 3/27/07 |  |



**EFiled: Mar 27 2007  3:18**
**Transaction ID 14273925**
**Case No. 06C-10-024 RBY**

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | |
|---|---|
| BCG, INC., a Delaware corporation, | : |
| CHESAPEAKE PRODUCTS & | : C.A. No. 06-10-024 (RBY) |
| SERVICES, INC., a Delaware corporation, | : |
| | : TRIAL BY JURY |
| Plaintiffs, | : OF TWELVE DEMANDED |
| | : |
| v. | : NON-ARBITRATION CASE |
| | : |
| GLES, INC., a Delaware corporation, | : |
| d/b/a SWEET OIL COMPANY, | : |
| | : |
| Defendant. | : |

## AMENDED COMPLAINT

~~COMES~~COME NOW BCG, Inc. and Chesapeake Products & Services, Inc.,
the Plaintiffs in the above-captioned action, by and through their attorneys,
Prickett, Jones & Elliott, P.A., who hereby allege as follows:

### The Parties

1.      The Plaintiffs are BCG, Inc. (hereinafter referred to as "BCG"), a
Delaware corporation doing business in the State of Delaware, with a business
address of 30759 Sussex Highway (P.O. Box 311) Laurel, Delaware 19956, and
Chesapeake Products & Services, Inc. (hereinafter referred to as "Chesapeake"), a
Delaware corporation doing business within the State of Delaware with a business
address of 30759 Sussex Highway (P.O. Box 311) Laurel, DE 19956.

2.      The Defendant is GLeS, Inc., a Delaware corporation doing
business within the State of Delaware as Sweet Oil Company (hereinafter referred
to as "Sweet Oil"), with a business address of 2604 Eastburn Center, Newark,

Delaware 19711, and that may be served upon its registered agent, GLES, Inc., at 2604 Eastburn Center, Newark, Delaware 19711. Sweet Oil is a distributor of motor fuel and related products.

<div align="center">

**Jurisdiction**

</div>

3.     This Court has jurisdiction over the subject matter of this action pursuant to 10 Del. C. § 6501, et. seq.

<div align="center">

**Nature of the Case**

</div>

4.     This is an action for, among other things, breach of contract and tortious interference against the supplier of motor fuel to two retail stations owned by the Plaintiffs.  The exclusive supply agreements for the two stations were assigned along with the original supplier's other supply agreements to the Defendant, Sweet Oil, approximately one year ago in September of 2005.  Since Sweet Oil has assumed the obligations under the aforesaid supply agreements, it has intentionally and utterly failed to abide by the clear and unambiguous terms of the supply agreements (and the well-established course of performance between the Plaintiffs and their previous supplier) by, among other things, refusing (even to this day) to pay the Plaintiffs' incentive fees, refusing to competitively price the Plaintiffs' gasoline, which was often priced up to twenty cents (20¢) per gallon more than the Plaintiffs' immediate competitors, and threatening baseless criminal prosecutions, all of which was undertaken in a concerted effort to coerce new, more favorable, long-term supply agreements from the Plaintiffs for the two gas stations.

5.     The Plaintiffs seek compensatory, punitive and statutory

2

damages from Sweet Oil, including, but not limited to, compensation for unpaid incentive fees, lost profits and goodwill, and reimbursement for credit card fees, equipment repairs, and overcharged freight paid by the Plaintiffs, as well as a declaratory judgment stating that Sweet Oil has breached the exclusive supply agreements, thereby rendering them null and void.

## Background Facts

6.      The Plaintiffs are the owners of two gas stations, a Mobil gas station located in Delmar, Maryland (the "Mobil Station") and a non-branded gas station in Laurel, Delaware named the Laurel Oasis (the "Oasis Station"). The Mobil Station was built and opened in March of 2002, has a convenience store on site and two restaurants, has 13 pumps and sold approximately 1.5 million gallons of gas and fuel in 2005. The Oasis Station was purchased in 1985, has a convenience store and two restaurants on site, has 12 pumps, and sold approximately 2.2 million gallons of gas and fuel in 2005.

## The Mobil Station

7.      On October 3, 2002, the Plaintiffs and Peninsula Oil Company ("Peninsula") entered into an agreement ("the Dealer Agreement"), whereby Peninsula agreed to, among other things, supply Mobil branded gasoline to the Mobil Station, and the Plaintiffs agreed to purchase all of their motor fuel from Peninsula for a term of ten (10) years. *See* Dealer Agreement attached as Exhibit "A". The Mobil brand was an important and material part of the Dealer Agreement.

8.      Pursuant to Paragraph 2(a) of the Dealer Agreement, Peninsula

3

agreed to pay a three-cent (3¢) incentive payment to the Plaintiffs for each gallon of Mobil gasoline sold to the Plaintiffs from August 1, 2002 to July 31, 2006.

9.     Pursuant to Paragraph 2(b) of the Dealer Agreement, the Plaintiffs' obligation to repay Peninsula for the incentive payments in the event that the Plaintiffs defaulted under the terms of the Dealer Agreement and Peninsula was required to repay the incentive money to Mobil is secured by a second mortgage on the Mobil Station's premises (the "Second Mortgage").

10.     The Dealer Agreement further provides that the price paid by the Plaintiffs for gasoline and fuel from Peninsula is to be set at a price that provides Peninsula a profit of one-cent (1¢) per gallon in addition to common carrier freight and certain fees and taxes.

11.     Paragraph 6 of the Dealer Agreement provides that Peninsula "shall make deliveries in its usual manner."

12.     Paragraph 8 of the Dealer Agreement provides that "[i]f the Mobil Brand becomes unavailable, [the parties] shall mutually agree on what brand the Dealer will resell."

13.     On or about August 16, 2005, Peninsula notified the Plaintiffs that it was transferring its business to Sweet Oil Company as of September 1, 2005. *See* Letter attached as Exhibit "B". Plaintiffs were not asked to, nor did they, consent to the assignment to Sweet Oil. As a result of the assignment, Plaintiffs' risks and burdens were materially increased.

14.     Prior to assigning the Dealer Agreement to Sweet Oil, Peninsula

4

faithfully and timely performed its obligations under the aforesaid agreement for more than three and one-half years.

15.      Almost immediately after accepting an assignment of the Dealer Agreement, however, Sweet Oil failed to perform its obligations thereunder, including, but not limited to, its obligations to (1) pay the Plaintiffs the Mobil incentive fees, (2) use the least expensive common carrier as Peninsula had previously done, (3) provide transportation without charging an additional administrative fee as Peninsula had previously done, and (4) continue to allow the Plaintiffs to sell Mobil brand products.

16.      On March 15, 2006, the Plaintiffs sent a letter to Sweet Oil requesting that Sweet Oil provide adequate assurances that it would cease deviating from the prior course of performance over the previous three and one-half years between the Plaintiffs and Peninsula Company, specifically noting that the Plaintiffs had not received payments of the Mobil incentive money owed and that the Plaintiffs were being overcharged for freight on product deliveries. *See* Letter attached as Exhibit "C".

17.      Despite the Plaintiffs' request, Sweet Oil failed to provide adequate assurances of future performance within a reasonable time, which, therefore, constitutes a repudiation of the Dealer Agreement.

18.      On March 20, 2006, Sweet Oil notified Plaintiffs that it had been assigned Peninsula's agreements with the Plaintiffs, but that it did not owe the Plaintiffs any money and was not overcharging the Plaintiffs for freight. *See* Letter

"H".

24.    On June 5, 2006, Sweet Oil wrote a letter that fails to address the Plaintiffs' previous inquiries and instead takes the untenable legal position that Sweet Oil has not breached paragraph 8 of the Dealer Agreement, which requires mutual consent to establish a replacement brand in the event the Mobil brand becomes unavailable. Sweet Oil falsely wrote that "Mobil has become Sunoco in the Mid-Atlantic states by FTC decree." *See* Letter attached as Exhibit "I".

25.    On June 20, 2006, the Plaintiffs sent Sweet Oil a letter indicating that it would not grant approval to change its brand to Sunoco and noting that (1) Sweet Oil has been overcharging the Plaintiffs on freight, (2) Sweet Oil had agreed to have the fuel delivered by the least expensive common carrier without the addition of a carrier administration fee that the Plaintiffs had never agreed to pay and is not charged by any other common carrier, (3) Sweet Oil has failed to pay the three-cent Mobil incentive money for a period of more than ten months, and (4) Sweet Oil attempted to convince the Plaintiffs to pay for credit card processing changes by representing that they were Mobil upgrades when, in fact, it would have switched the Plaintiffs over to the Sunoco credit card network, for which Sweet Oil now says Sunoco will pay. *See* Letter attached hereto as Exhibit "J".

26.    On June 28, 2006, Sweet Oil forwarded to the Plaintiffs an email ostensibly from a representative of Sunoco threatening the Plaintiffs with penalties and stating that Sweet Oil should "bag" the Plaintiffs' Mobil sign and refuse to provide Mobil brand gas in direct contravention of the Dealer Agreement. *See* E-

7

Mail attached as Exhibit "K".

27.     On August 30, 2006, Sweet Oil sent a letter to all of the gas stations that it supplies indicating that it had agreed to sell its assets to GPM Investments, which owns and operates the Fasmart/Shore Stop franchise.     *See* Exhibit Letter attached as Exhibit "L".

28.     Upon information and belief, as of the filing of this Amended Complaint, the Plaintiffs' agreements with Sweet Oil have not been assigned or otherwise transferred to GPM Investments.

29.     On January 29, 2007, Sweet Oil sent a letter to Plaintiffs' counsel notifying the Plaintiffs that Sweet Oil would cease providing Mobil branded products to the Mobil Station and that Sweet Oil would take steps to de-identify the Mobil Station as a Mobil retailer. *See* Letter attached as Exhibit "M".

30.     On February 2, 2007, Sweet Oil removed the Mobil identification faces and the Mobil canopy letters at the Mobil Station, covered the Mobil logos on the pumps and building, thereby removing all faces and letters related to the Mobil brand, and ceased providing any further deliveries of Mobil branded fuels to the Mobil Station.

31.     On February 7, 2007, the Plaintiffs, through their legal counsel, sent Sweet Oil a letter stating that the Plaintiffs deemed the Dealer Agreement terminated effective immediately as a result of Sweet Oil's actions as aforesaid. *See* Letter attached as Exhibit "N".

8

### The Laurel Oasis

~~29.~~  32. On February 13, 1990, BCG entered into an agency agreement with Peninsula (the "Agency Agreement") with regard to the Oasis Station in Laurel, Delaware.  Pursuant to this ten (10) year Agency Agreement, Peninsula agreed (i) to install certain fuel dispensing equipment (which Peninsula Oil would own until the expiration of that Agency Agreement), and (ii) to maintain the oil and gas pumps at the Oasis Station.  Pursuant to the Agency Agreement, Peninsula supplied BCG with gasoline on consignment, which BCG would sell to the public at retail prices set exclusively by Peninsula, and BCG purchased diesel fuel from Peninsula, and resold that diesel fuel to the motoring public at retail prices set by BCG.  *See* Agency Agreement attached as Exhibit "~~M~~O" and Equipment and Loan Agreement attached as Exhibit "~~N~~P".  The Agency Agreement superseded a previous agency agreement dated January 2, 1986 and was later extended to January 31, 2008. *See* Letter attached as Exhibit "~~O~~Q".

~~30.~~  33. Under paragraph 4 of the Agency Agreement, Peninsula reserved "absolute control" to set the price of gasoline sold to customers at the Oasis Station, "except that the price shall be competitively priced with locations in that area."

~~31.~~  34. On February 13, 1990, Peninsula and BCG entered into an additional agreement (hereinafter referred collectively with the Agency Agreement as the "Agency Agreement"), whereby, among other things, Peninsula promised to set the wholesale price for diesel based upon Peninsula's posted transport price at the time of delivery and, in any event, no higher than .025 per gallon over Salisbury Rack

9

prices (the "Price Cap"). *See* Agreement attached as Exhibit "P̶R̶". Plaintiffs would thereafter set the retail price for diesel fuel.

3̶2̶. __35.__ In addition, the Plaintiffs and Peninsula entered into a Credit Card Loan Equipment Agreement (hereinafter referred to collectively with the Agency Agreement as the "Agency Agreement"), whereby they agreed that the Plaintiffs were not responsible for paying any credit card fees, and that any such fees were to be paid by Peninsula. *See* Credit Card Loan Equipment Agreement attached as Exhibit "Q̶S̶".

3̶3̶. __36.__    Under paragraph 5 of the Agency Agreement, Peninsula also agreed to pay BCG four cents (4¢) for each gallon of unleaded and unleaded plus gasoline and six cents (6¢) for each gallon of premium unleaded gasoline sold by BCG (the "Gas Commissions").

3̶4̶. __37.__ Since accepting an assignment of the Agency Agreement, Sweet Oil has failed and/or refused to perform the above-mentioned provisions of the Agency Agreement.

3̶5̶. __38.__    Over the past twelve months, the Plaintiffs have sent Sweet Oil hundreds of daily faxes that provided gas prices for three locations in BCG's local area, identified daily gas and fuel sales, requested that Sweet Oil abide by the contract and keep retail prices competitive with BCG's competitors, and explained the damage Sweet Oil's overpricing was causing BCG's business. *See* Faxes attached as Exhibit "R̶T̶".

3̶6̶. __39.__    In direct violation of its obligation pursuant to the Agency Agreement

10

to competitively price at retail its gasoline and to set the wholesale diesel fuel price below the Price Cap, Sweet Oil ignored the previous well-established course of performance between BCG and Peninsula. Sweet Oil knowingly priced BCG's gasoline ten to twenty cents higher than BCG's direct competitors, and exceeded the Price Cap for diesel fuel, thereby placing BCG at a severe competitive disadvantage.

37. _40. In direct contravention of its obligations under the Agency Agreement, Sweet Oil also refused and/or failed to pay Gas Commissions to the Plaintiffs for seven (7) of the ten (10) applicable months.

38. _41, On December 8, 2005, the Plaintiffs' bookkeeper called Sweet Oil's bookkeeper asking for the Plaintiffs' gas commission checks, but Sweet Oil's bookkeeper said he did not know anything about Gas Commissions and that the Plaintiffs needed to contact John Collins or Mark Greco of Sweet Oil.

39. _42. On December 9, 2005, the Plaintiffs' bookkeeper faxed to Sweet Oil a recap summary of the first three (3) months of Gas Commissions owed by Sweet Oil, but Sweet Oil failed and/or refused to provide a response.

40. _43. On December 31, 2005, the Plaintiffs' bookkeeper faxed a recap summary for the first four (4) months of Gas Commissions with a note asking what the problem was regarding the Gas Commissions, but Sweet Oil failed and/or refused to provide a response.

41. _44. On March 6, 2006, the Plaintiffs' bookkeeper discovered an electronic funds transfer deposit in the Plaintiffs' bank-account statement for the month of January of 2006. While Sweet Oil said that it did not know why the money was deposited,

11

this money was clearly the payment for the first three months of Gas Commissions as it equaled the exact amount owed by Sweet Oil for those months.

42. 45. In direct contravention of its obligations under the Agency Agreement, Sweet Oil also electronically transferred funds out of the Plaintiffs' bank account for equipment repairs and continued to send the Plaintiffs repair bills after the Plaintiffs eliminated Sweet Oil's access to the Plaintiffs' bank account.

43. 46. In direct contravention of its obligations under the Credit Card Loan Equipment Agreement and the Plaintiffs and Peninsula's previous course of performance, Sweet Oil began subtracting credit card fees from the Plaintiffs' credit card monthly settlement payments. *See* Documents attached as Exhibit "SU".

44. 47. On March 15, 2006, the Plaintiffs sent a letter advising Sweet Oil that it would no longer be authorized to electronically transfer funds from the Plaintiffs' checking account. *See* Letter attached as Exhibit "TV".

45. 48. Sweet Oil has wrongfully transferred at least Three Thousand Seven Hundred Eighty Seven Dollars and Forty One Cents ($3,878.41) through unauthorized electronic transfers from the Plaintiffs' accounts for credit card fees, which were the sole responsibility of (and should have been paid for by) Sweet Oil.

46. 49. On June 21, 2006, Sweet Oil also sent a letter to the Plaintiffs demanding that they repair Sweet Oil's equipment. Sweet Oil's failure to do so is in direct contravention of the Plaintiffs' written agreements and course of performance with Peninsula.

47. 50. On July 11, 2006, the Plaintiffs sent a letter to Sweet Oil terminating

12

the Agency Agreement given Sweet Oil's multiple, bad-faith breaches of the aforesaid agreement, and explaining that the Plaintiffs were going to offset the Gas Commissions, overcharges on diesel fuel, costs of equipment repairs, and credit card fees incurred prior to that date from amounts owed by BCG to Sweet Oil for diesel fuel. *See* Letter attached as Exhibit "U̶W̲".

48.  51.    On or about July 11, 2006, Sweet Oil responded to the Plaintiffs' termination letter by refusing to accept the aforesaid termination and claiming that the Plaintiffs and Sweet Oil "mutually agreed" to re-brand the Oasis station from Texaco to Citgo, that due to the Plaintiffs' failures it lacked sufficient information to determine whether it was competitively pricing the gasoline, that Sweet Oil has been only charging the Plaintiffs the Salisbury rack price plus .01 per gallon consistent with the Agency Agreement, that Sweet Oil had not wrongfully electronically transferred funds from the Plaintiffs' accounts, and that due to the Plaintiffs' failures it lacked sufficient information to determine whether it was properly paying the Plaintiffs' Gas Commissions.    Furthermore, the letter threatened "criminal prosecution for . . . theft" for "illegally [seizing] possession of [Sweet Oil's] credit card transaction receipts for all sales" and alleged damage to Citgo credit card software, which had suddenly "come to [their] attention." *See* Letter attached as Exhibit "V̶X̲".

49.  52.    The Plaintiffs only agreed to re-brand to Citgo because the Defendant told the Plaintiffs that the Texaco brand was going to be eliminated, which the Plaintiffs later learned was false.

13

50. 53. On July 20, 2006, the Plaintiffs sent Sweet Oil a letter stating that its "claims are denied" and that "[a]ny adverse actions Sweet Oil takes that result in further damages to BCG will be dealt with accordingly." *See* Letter attached as Exhibit "WY".

51. 54. The Plaintiffs later learned that, on July 19, 2006, Sweet Oil sent a letter (the "Letter"), which contained several absolute misrepresentations and falsehoods, to numerous companies that might supply gasoline to the Plaintiffs, including Valero Energy Corporation, the Delaware City Refinery, Eagle Transport, Carroll Independent Fuel, CATO, Inc., Eastern Petroleum, Ewing Oil Company, J. Wm. Gordy Fuel, Ocean Petroleum, Pep-Up, PMG, Service Energy, LLP, and Wilson Baker, stating as follows:

> Sweet Oil Company has an exclusive Sales Agreement (the "Agreement") with B.C.G., Inc. t/a the Laurel Oasis, operating as a SWEET OIL COMPANY SUPPLIED CITGO gasoline station at Sussex Highway (the "Station"). Under the terms of the Agreement, Sweet Oil has the exclusive right [sic] sell and B.C.G., Inc. t/a The Laurel Oasis has the duty to exclusively purchase motor fuel branded under the SWEET OIL COMPANY SUPPLIED CITGO name at the Station.

> This letter is written to put you on notice of the Agreement and that any sale of motor fuel products to the Station will be deemed to be with full knowledge that the motor fuel product was not a SWEET OIL COMPANY SUPPLIED CITGO branded product. Such a sale constitutes, at a minimum, a deceptive trade practice, and further constitutes tortuous interference with Sweet Oil's exclusive contract with B.C.G., Inc. t/a The Laurel Oasis. The Office of Retail Gasoline Sales will be notified if such a sale occurs. **Currently, the station is being monitored to evaluate compliance/non-compliance with the Agreement.**

> Accordingly, Sweet Oil has initiated legal action to **enjoin** any company from selling and/or transporting any motor fuel with the

14

intention that it be sold to the public from this location. Said legal action may include a lawsuit seeking an injunction against any offending company for the sale of motor fuel, as well as a lawsuit for damages. In addition, the state may choose to proceed against an offending party and impose a penalty for a willful violation of the applicable laws.

This letter serves as notice to cease and desist from any sales and/or transport of motor fuel to B.C.G., Inc. t/a The Laurel Oasis.

*See* Letter attached as Exhibit "XZ" (emphasis in original).

~~52.~~ **55.** Shortly after the Letter was sent, several companies have told the Plaintiffs that they will not supply the Plaintiffs because of the threats made by the Defendant in the Letter.

<div align="center">

**COUNT I**
**Breach of Contract - The Mobil Station**

</div>

**56.** ~~53.~~ The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through ~~52~~55 above, as if fully set forth herein.

**57.** ~~54.~~ The Defendant's conduct as aforesaid, including the Defendant's failure to pay the Mobil incentive fees to the Plaintiff, the Defendant's unilateral attempt at re-branding the Mobil station to Sunoco, the Defendant's continued overcharging for freight, the Defendant's unilateral institution of an administrative fee for shipping, and the Defendant's elimination of the Plaintiffs' ability to accept Mobil credit card payments, constitutes material breaches of the Dealer Agreement and the well-established course of performance between the Plaintiffs and Peninsula.

**58.** ~~55.~~ As a direct and proximate result of the Defendant's material

15

breaches as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to lost customers, lost gas and ancillary sales, lost goodwill, and lost incentive fees, overcharges on freight, and unwarranted administrative fees on shipping.

## COUNT II
## Declaratory Judgment - The Mobil Station

59. ~~56.~~ The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through ~~55~~58 above, as if fully set forth herein.

60. ~~57.~~ Pursuant to 10 Del. C. § 6501, et. seq., the Plaintiffs request that the Court find that the Plaintiffs are entitled to enforce their rights under the Dealer Agreement, and declare that (1) the assignment from Peninsula to Sweet Oil materially increased Plaintiffs' risks and burdens and was therefore unlawful, (2) the Defendant has breached material provisions of the Dealer Agreement, violated the provisions of the Petroleum Marketing Practices Act, and/or failed to provide timely adequate assurances of future performance, such that the Dealer Agreement is rendered, null, void and unenforceable ~~at the election of the Plaintiffs~~, and (3) the Defendant is therefore obligated to release and/or satisfy the Second Mortgage.

~~58.~~ 61. In this regard, paragraph 4 of the Dealer Agreement provides that "[i]f [Peninsula] fails to comply with any payment requirements as herein provided, the Dealer may terminate this Agreement."

~~59.~~ 62. Similarly, paragraph 9 of the Dealer Agreement provides that "[i]n the event [Peninsula] breaches and [sic] of the provisions of this Agreement, the Dealer,

16

at its sole option, may terminate this Agreement and the Dealer will not be precluded from seeking other remedies which the Dealer may have against the Company for said breach."

60.    63. Plaintiffs have a legitimate interest in a prompt resolution of their rights under the Dealer Agreement given the Defendant's stated intention to refuse to abide by the terms of the Dealer Agreement, and the Defendant's near absolute failure to abide by the terms of the Dealer Agreement thus far.

61. 64. Plaintiffs face considerable hardship, including severe economic hardship and further delay on behalf of the Defendants, should the parties dispute regarding the Dealer Agreement not be resolved immediately and/or the need to enforce the terms of the Dealer Agreement arises again in the future.

62. 65. Given that questions of breach and enforcement of the Dealer Agreement are now before the Court, any further issues regarding the rights and obligations of the parties under the Dealer Agreement are ripe for judicial action and hereby made part of this action.

## COUNT III
### Breach of Contract - The Oasis Station

66.    63. The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 6265 above, as if fully set forth herein.

64. 67. The Defendant's conduct as aforesaid, including the Defendant's failure to competitively price gasoline at the Oasis Station, overcharging of BCG for the price of diesel fuel, failure to pay the Gas Commissions, failure to make repairs

17

to the Defendant's equipment at the Oasis Station, and charging BCG for repairs to the Defendant's equipment at the Oasis Station, constitutes material breaches of the Agency Agreement and the well-established course of performance between the Plaintiffs and Peninsula.

65.   68. As a direct and proximate result of the Defendant's material breaches as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, lost customers, lost gas and ancillary sales, lost goodwill, and lost Gas Commissions, overcharges on diesel fuel, equipment repairs, and credit card fees.

## COUNT IV
## Declaratory Judgment - The Oasis Station

66.   69. The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 6568 above, as if fully set forth herein.

67.  70.    Pursuant to 10 Del. C. § 6501, et. seq., the Plaintiffs request that the Court find that the Plaintiffs are entitled to enforce their rights under the Agency Agreement, declare that the Defendant has breached material provisions of the Agency Agreement such that the Agency Agreement was rendered, null, void and unenforceable pursuant to the Plaintiffs' letter terminating the aforesaid Agreement, and declare that the assignment from Peninsula to Sweet Oil materially increased Plaintiffs' risks and burdens and was therefore unlawful.

68.   71. Plaintiffs have a legitimate interest in a prompt resolution of their rights under the Agency Agreement given the Defendant's stated refusal to accept the Plaintiffs' termination of the Agency Agreement, the Defendant's tortious

18

interference with its contractual and expectancy relationships, the Defendant's threats of criminal prosecution, and the Defendant's near absolute failure to abide by the terms of the Agency Agreement.

69. 72. Plaintiffs face considerable hardship, including severe economic hardship and further delay on behalf of the Defendants, should the parties' dispute regarding the Agency Agreement not be resolved immediately and/or the need to enforce the terms of the Agency Agreement arises again in the future.

70. 73. Given that questions of breach and enforcement of the Agency Agreement are now before the Court, any further issues regarding the rights and obligations of the parties under the Dealer Agreement are ripe for judicial action and hereby made part of this action.

### COUNT V
### Tortious Interference - The Oasis Station

74. 71. The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 70 73 above, as if fully set forth herein.

75. 72. Sweet Oil directed the Letter, which contains representations that Sweet Oil knew to be false, to businesses with which Sweet Oil knew the Plaintiffs had valid business relationships and expectancies for such relationships.

76. 73. Sweet Oil's conduct as aforesaid has wrongfully caused the Plaintiffs to lose valid business relationships and expectancies for such relationships.

77. 74. Sweet Oil intentionally interfered with the Plaintiffs' actual and

19

prospective business relationships and expectancies without justification and has induced and caused businesses to breach and terminate their relationship or expectancy with the Plaintiffs, which has caused the Plaintiffs substantial damages.

78.    ~~75.~~    This case involves the rights and legal relations of the Plaintiffs and Sweet Oil.

79.    ~~76.~~    The Plaintiffs and Sweet Oil have an interest in pursuing and/or contesting the Plaintiffs' claims.

80.    ~~77.~~    Sweet Oil's and Plaintiffs' interests are real, adverse, and ripe for judicial determination.

81.    ~~78.~~    As a direct and proximate result of the Defendant's tortious interference as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, the attorneys' fees incurred to prosecute the above-captioned action.

### COUNT VI
### Bad Faith - The Mobil Station & The Oasis Station

82.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through ~~78~~81 above, as if fully set forth herein.

83.    Notwithstanding repeated demands by the Plaintiffs, the Defendant has failed and/or refused to abide by the clear and unambiguous terms of the Dealer Agreement, the Agency Agreement and the well-established course of performance between the Plaintiffs and Peninsula as aforesaid.

84.    The Defendant's actions in refusing to meet and fulfill its obligations as aforesaid, solely in an effort to force a renegotiation of the aforesaid

20

agreements to include terms less favorable to the Plaintiffs, constitute deliberate bad faith and unfair dealing, in blatant and unconscionable breach of the terms and conditions of the aforesaid agreements and the obligation of good faith and fair dealing implied in every contract.

85.    As a direct and proximate result of the Defendant's bad faith and unfair dealing, the Plaintiffs have suffered substantial damages.

### COUNT VII
### Delaware Franchise Security Law
### The Oasis Station and The Mobil Station

86.    The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through ~~82~~85 above, as if fully set forth herein.

87.    The Plaintiffs are Franchised Distributors and the Defendant is a Franchisor pursuant to the Delaware Franchise Security Law, 6 Del. C. § 2551, et seq.

88.    Pursuant to 6 Del. C. § 2552, a Franchisor may not attempt to unjustly terminate a franchise and/or attempt to purge itself of the relationship by refusing to deal with the Franchised Distributor.

89.    The Defendant's actions in refusing to meet and fulfill its obligations as aforesaid, tortiously interfering with the Plaintiffs' actual and prospective contractual relationships, and intentionally misrepresenting the availability of the Mobil and Texaco brands, solely in an effort to terminate and purge its existing contractual obligations to the Plaintiffs and force a renegotiation of the aforesaid agreements to include terms less favorable to the Plaintiffs,

21

constitute violations of the Delaware Franchise Security Law.

90.     As a direct and proximate result of the Defendant's violations of the Delaware Franchise Security Law, as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, lost customers, lost gas and ancillary sales, and lost goodwill.

91.     Pursuant to 6 Del. C. § 2553, the Plaintiffs are entitled to recover damages, including loss of profits, which shall be presumed to be no less than five (5) times the profit obtained by the franchised distributor, by virtue of the terminated franchise, in the most recently completed fiscal year.

### COUNT VIIIIX
### Petroleum Marketing Practices Act
### Attorneys' Fees – The Mobil Station And The Oasis Station

92.     The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 91 above, as if fully set forth herein.

93.     The Plaintiffs are Franchisees and the Defendant is a Franchisor pursuant to the Petroleum Marketing Practices Act. 15 U.S.C. § 2801. et seq.

94.     Pursuant to 15 U.S.C. § 2802. a Franchisor may not terminate a franchise except in the manner and upon the grounds set forth therein.

95.     The Defendant terminated the Plaintiffs' franchises without the requisite notice and without cause by refusing to meet and fulfill its obligations under the franchise agreements as aforesaid. tortiously interfering with the Plaintiffs' actual and prospective contractual relationships. intentionally misrepresenting the availability of the Mobil and Texaco brands. debranding the

22

Mobil Station, and ceasing to supply Mobil branded products.

96. As a direct and proximate result of the Defendant's violations of the Petroleum Marketing Practices Act, as aforesaid, the Plaintiffs have suffered substantial damages, including, but not limited to, lost customers, lost gas and ancillary sales, and lost goodwill.

<div align="center">

**COUNT VIII**
**Attorneys' Fees - The Mobil Station And The Oasis Station**

</div>

97. The Plaintiffs hereby restate and reallege each of the allegations set forth in paragraphs 1 through 96 above, as if fully set forth herein.

98. 93. The Plaintiffs are entitled to reasonable attorneys' fees pursuant to paragraph 20(d) of the Dealer Agreement, which provides that "[i]n the event either party breaches any of the terms of this Agreement and the party not in default employs Attorneys to protect or enforce its rights hereunder and prevails, the defaulting party agrees to pay the other party reasonable Attorneys fees and costs it so incurred."

99. 94. Furthermore, because the Defendant's conduct as aforesaid is both willful and malicious, the Court should also award the Plaintiffs their reasonable attorneys' fees.

100. 95. In addition, the Plaintiffs are entitled to recover attorneys' fees and costs incurred in establishing their rights under and securing enforcement of the Dealer Agreement and the Agency Agreement pursuant to 10 Del. C. § 6510, and to recover reasonable counsel fees pursuant to 6 Del. C. § 2553 as a result of the

23

Defendant's violation of the Delaware Franchise Security Law and the Petroleum Marketing Practices Act.

WHEREFORE, the Plaintiffs respectfully request a judgment in favor of the Plaintiffs and against the Defendant be entered by this Court:

A.    Awarding the Plaintiffs compensatory damages in an amount sufficient to fully compensate the Plaintiffs for any and all damages sustained by the Plaintiffs as a result of the Defendant's breach of contractconduct as foresaid, together with pre-judgment and post-judgment interest at the legal rate;

B.    Awarding the Plaintiffs statutory damages pursuant to 6 Del. C. § 2553.2553;

C.    Awarding the Plaintiffs exemplary damages pursuant to 15 U.S.C. § 2805(d);

D.    Awarding the Plaintiffs punitive damages for the Defendant's bad faith and tortious conduct in an amount sufficient to punish and deter the Defendant from engaging in similar conduct in the future;

DE.    Awarding the Plaintiffs all of their costs and reasonable attorneys' fees incurred in pursuing the claims set forth herein and securing enforcement of the Plaintiffs' contractual rights; and

EF.    Declaring that:

(1)    The Defendant has breached material provisions of the Dealer Agreement, violated the provisions of the Petroleum Marketing Practices Act, and/or failed to provide timely adequate assurances of future performance,

24

such that the Dealer Agreement is rendered, null, void and unenforceable ~~at the election of the Plaintiffs~~;

    (2)    The assignment of the Dealer Agreement and the Agency Agreement from Peninsula to Sweet Oil materially and unreasonably increased the Plaintiffs' risks and burdens, such that the Dealer Agreement and the Agency Agreement are rendered null, void and unenforceable ~~at the election of the Plaintiffs~~;

    (3)    The Defendant is obligated to release and/or satisfy the Second Mortgage; and

    (4)    The Defendant has breached material provisions of the Agency Agreement <ins>and/or violated the provisions of the Petroleum Marketing Practices Act,</ins> such that the Agency Agreement was rendered, null, void and unenforceable pursuant to the Plaintiffs' letter terminating the aforesaid Agreement.

    ~~FG.~~  Granting such further relief as the interests of equity and justice may require.

                          **PRICKETT, JONES & ELLIOTT, P.A.**

                          /s/ D. Benjamin Snyder
                          John W. Paradee  (DE Bar No. 2767)
                          D. Benjamin Snyder (DE Bar No. 4038)
                          Glenn C. Mandalas (DE Bar No. 4432)
                          11 North State Street
                          Dover, Delaware 19901
                          (302) 674-3841

*and*

Harry C. Storm
Lerch, Early & Brewer, Chartered
3 Bethesda Metro Center, Suite 460
Bethesda, MD 20814

Date: March 1, 2007                    *Attorneys for the Plaintiffs*

26

EFiled: Mar 27 2007  3:18PM EDT
Transaction ID 14273925
Case No. 06C-10-024 RBY

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR KENT COUNTY

| | |
|---|---|
| BCG, INC. and<br>CHESAPEAKE PRODUCTS &<br>SERVICES, | ) C.A. No.: 06C-10-024 (RBY)<br>)<br>) |
|          Plaintiffs, | ) TRIAL BY JURY<br>) OF TWELVE DEMANDED<br>) |
|     v. | )<br>) NON-ARBITRATION CASE |
| GLES, INC., d/b/a SWEET OIL<br>COMPANY, | )<br>)<br>) |
|       Defendant/Third Party<br>      Plaintiff, | )<br>)<br>) |
|     v. | )<br>) |
| SUNOCO, INC., | )<br>) |
|       Third-Party Defendant. | )<br>) |

### CERTIFICATE OF SERVICE

I, D. Benjamin Snyder, certify that a true and correct copy of the **STIPULATION TO
AMEND COMPLAINT** in the above-captioned matter was served on the below counsel of
record via e-file and U.S. First Class Mail, postage prepaid, as follows:

Thomas H. Kovach, Esquire
Pepper Hamilton, LLC
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
*Attorney for Third-Party Defendant,*
*Sunoco, Inc.*

Seth J. Reidenberg, Esquire
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
*Attorney for Defendant/Third Party*
*Plaintiff, GLES, Inc. d/b/a Sweet Oil Company*

**PRICKETT, JONES & ELLIOTT, P.A.**


BY: /s/D. Benjamin Snyder
        John W. Paradee, Esquire (#2767)
        D. Benjamin Snyder, Esquire (#4038)
        11 North State Street
        Dover, Delaware 19901
        (302) 674-3841
        *Attorneys for the Plaintiffs,*
        *BCG, Inc., et. al.*

DATED: 3/27/07

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 0 7 - 2 0 7

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___2___ COPIES OF AO FORM 85.

_4|19|07_
(Date forms issued)

_Mike Bobish_
(Signature of Party or their Representative)

_Mike Bobish_
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action

07-207

≈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

BCG, Inc., Chesapeake Products & Services, Inc.

**DEFENDANTS**

GLeS, Inc. d/b/a Sweet Oil Company v. Sunoco, Inc. (Third-Party Defendant)

(b)  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)
John W. Paradee, Esq., D. Benjamin Snyder, Esq., PRICKETT, JONES & ELLIOTT, P.A.
11 North State Street, Dover, Delaware 19901  (302) 674-3841

Attorneys (If Known)
For Defendant: Seth J. Reidenberg, Esq. Young Conaway Stargatt & Taylor, LLP
For Third-Party Defendant: Thomas H. Kovach, Esq.  Pepper Hamilton, LLP

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** · ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury |  | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 442 Employment |  | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 444 Welfare | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty ☐ 540 Mandamus & Other |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  |  |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN  (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. sec. 2801, et. seq.

Brief description of cause:
Plaintiff filed action pursuant to Petroleum Marketing Practices Act, 15 U.S.C. sec. 2801, et. seq.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____   DOCKET NUMBER _____

DATE  4/20/07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____