IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware corporation | : : : | C.A. No. 07-cv-207 (GMS) |
| | : | TRIAL BY JURY |
| Plaintiffs, | : : | OF TWELVE DEMANDED |
| v. | : : | |
| GLES, INC.,  a Delaware corporation, d/b/a SWEET OIL COMPANY, | : : : | |
| Defendant/Third-Party Plaintiff | : : | |
| SUNOCO, INC. (R&M) Third-Party Defendant | : : | |

## MOTION TO AMEND THIRD-PARTY COMPLAINT

Defendant/Third-Party Plaintiff, GLES, d/b/a Sweet Oil Company, hereby moves, pursuant to Fed. R. Civ. P 15(a), for leave to amend its Third-Party Complaint Against Sunoco, Inc. (R&M) in the form attached hereto as Exhibit A. A black line version of the proposed Amended Third-Party Complaint Against Sunoco, Inc. (R&M) is attached hereto as Exhibit B.

The Third-Party Complaint has not been previously amended and the amendment is required by intervening events that have made certain claims from the original Third-Party Complaint moot. Counsel for Third-Party Defendant has given written consent to the proposed amendments in all respects other than the claim for punitive damages in the requested relief for Count III of the proposed Amended Third-Party Complaint.

Defendant/Third-Party Plaintiff Sweet Oil Company respectfully represents that justice requires that it be allowed to amend its Third-Party Complaint and requests that leave to file the Amended Third-Party Complaint Against Sunoco, Inc. (R&M) be granted.

YOUNG CONAWAY STARGATT& TAYLOR, LLP

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison,
Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

Attorneys for Defendant GLES, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Dated: September 6, 2007

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware corporation | : : : | C.A. No. 07-cv-207 (GMS) |
| | : | TRIAL BY JURY |
| Plaintiffs, | : : | OF TWELVE DEMANDED |
| v. | : : | |
| GLES, INC.,  a Delaware corporation, d/b/a SWEET OIL COMPANY, | : : : | |
| Defendant/Third-Party Plaintiff | : : | |
| SUNOCO, INC. (R&M) Third-Party Defendant | : | |

## Amended Third-Party Complaint Against Sunoco, Inc. (R&M)

1.  This action was instituted by Complaint wherein Plaintiffs, BCG, Inc. and Chesapeake Products & Services, Inc., asserted a claim against Defendant, Sweet Oil Company for, inter alia, breach of a certain Dealer Agreement dated October 3, 2002, relating to a retail gas station located in Delmar, Maryland. A true and correct copy of the Complaint is attached hereto and incorporated herein as Exhibit "1."

### The Parties

2.  Plaintiffs, BCG, Inc. and Chesapeake Products & Services, Inc. are Delaware corporations that own and operate a retail gasoline station in Delmar, Md.

3.  Defendant, Third-Party Plaintiff, GLES Inc. d/b/a/ Sweet Oil Company, is a Delaware corporation and is the successor in interest to Peninsula Oil Company.

4. Third-Party Defendant, Sunoco Inc. (R&M), is a Pennsylvania corporation doing business in the state of Delaware with a registered address at the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware. Sunoco is the successor in interest to Tosco, a distributor of gasoline and related products under the Mobil brand.

### The Contractual Relationships

### Mobil Branded Distributor Agreement

5. On or around September 18, 2000, Tosco and Peninsula entered into a Mobil Branded Distributor Agreement (the "Mobil Distributor Agreement") whereby Tosco agreed to Supply Mobil motor fuels for resale by Peninsula at certain marketing premises. The Mobil Distributor Agreement, by its terms expired on September 30, 2005.

6. On or about April 28, 2004, Sunoco became the successor in interest to Tosco's rights under the Mobil Distributor Agreement. The Mobil Distributor Agreement was extended on a month to month basis subsequent to September 30, 2005.

7. By Agreement dated August 31, 2005, Peninsula assigned all of its rights under the Mobil Distributor Agreement to Sweet Oil.

8. By letter dated November 2, 2006, Sunoco notified Sweet Oil that, as of February 2, 2007, the Agreement would not be renewed and would be terminated. Attached hereto and incorporated herein as Exhibit "2" is a true and correct copy of the correspondence dated November 2, 2006 from Sunoco to Sweet Oil.

## Tosco Distributor Image Incentive Program Agreement

9. On or around February 25, 2002, Tosco and Peninsula entered into a Tosco Distributor Image Incentive Program Agreement (the "Incentive Agreement") whereby Tosco agreed to provide certain incentives to Peninsula to encourage the Delmar retail station to continue to purchase Mobil brand products and to protect the Mobil brand name. Attached hereto and incorporated herein as Exhibit "3" is a true and correct copy of the Tosco Incentive Agreement.

10. By the terms of the Incentive Agreement, Tosco agreed to pay to Peninsula an "incentive fee" of three cents per gallon for each gallon of gasoline sold at the Delmar station for forty-eight months on the condition that the Delmar station remain branded as a Mobil station for not less than ten years after the initiation of the sale of gasoline products under the incentive program or the remaining term of Tosco's license agreement for the Mobil brand.

11. By the terms of the Incentive Agreement, Peninsula agreed to repay the incentive payments to Tosco, on a fixed amortization schedule, if the Delmar station was rebranded from a Mobil station during the term of the Incentive Agreement.

12. The repayment of the incentive fees is deemed to constitute liquidated damages for the repudiation of the Incentive Agreement.

13. Sunoco is the successor in interest to Tosco's rights and obligations under the Incentive Agreement

14. By Agreement dated August 31, 2005, Peninsula assigned all of its interest in the Incentive Agreement to Sweet Oil.

### The Dealer Agreement

15. On or around October 3, 2002, Plaintiffs entered into a Dealer Agreement with Peninsula whereby Peninsula agreed to supply and Plaintiffs agreed to purchase all of Plaintiffs' requirements for gasoline, diesel, fuel and kerosene for the period ending on March 1, 2012. A true and correct copy of the Dealer Agreement is attached to the Complaint (Exhibit "1") as Exhibit "A."

16. Pursuant to the terms of the Dealer Agreement, Peninsula agreed to pay a three cent per gallon "incentive fee" to BCG under the same terms and conditions as the Incentive Agreement between Peninsula and Tosco.

17. Pursuant to the terms of the Dealer Agreement, Plaintiffs agreed to repay Peninsula any amount that Peninsula was required to repay Tosco.

18. On or about August 31, 2005, Peninsula assigned all of its rights under the Dealer Agreement to Sweet Oil.

### The Dispute

19. Commencing on or after March 1, 2002, Tosco supplied to Peninsula and Peninsula supplied to BCG/Chesapeake all of its requirements for Mobil brand gasoline, diesel, fuel and kerosene.

20. Commencing on or after August 2002, Tosco paid to Peninsula and Peninsula paid to Plaintiffs the three cent "incentive payment" for each gallon of gasoline sold by Plaintiffs.

21. After it acquired Tosco's interest, Sunoco continued to pay the incentive fee pursuant to the Incentive Agreement to Peninsula/Sweet Oil.

22. On or about December 2005, after multiple notifications to the Plaintiffs that their credit card processing software needed to be upgraded as required that their credit card processing software needed to be upgraded as required in paragraph 10 of the Dealer Agreement, Plaintiffs ceased to accept Mobil Credit Cards, Speedpass, and debit cards in violation of the Dealer Agreement, causing Sunoco to demand that Sweet Oil cover the Mobil signs at the Delmar station until the site resumed acceptance of Mobil Cards.

23. At the time that Sweet Oil acquired the Peninsula Dealer Agreement in September 2005, Sunoco notified Sweet Oil that it intended to discontinue the supply of Mobil brand products and demanded that the Delmar station be converted to a Sunoco station when the Mobil brand was no longer be available.

24. Sweet Oil notified Plaintiffs that the Mobil brand would no longer be available and that Sunoco demanded that the Delmar station be converted to a Sunoco station.

25.    Plaintiffs have failed and refused to agree to convert the Delmar station to a Sunoco station, asserting that they have no contractual obligation to rebrand the station as a Sunoco station.

26. Sunoco notified Sweet Oil that the refusal of Plaintiffs to accept Mobil credit cards and Speedpass and to convert the Delmar station to a Sunoco station is in violation of its contractual obligations and, as a result, it would not "renew" the Mobil Distributor Agreement with Sweet Oil.

27. Sunoco further advised Sweet Oil that the. failure to "rebrand" the Delmar station to a Sunoco station as required by the Mobil Distributor Agreement was a breach of the Tosco Incentive Agreement and required Sweet Oil to return all incentive payments made to Peninsula/Plaintiffs during the term of the Tosco Incentive Agreement.

28. Plaintiffs have asserted that their refusal to convert the Delmar station to a Sunoco station and their refusal to upgrade their credit card software is not in breach of the Dealer Agreement and has demanded that the incentive payments earned under the Dealer Agreement be paid in full.

29. As of November 27, 2006, the balance of the unamortized incentive payments made to Peninsula/Sweet Oil for the Delmar station was $102,606.00.

30. As of the date that Sunoco notified Sweet Oil that demand would be made for the return of all unamortized incentive payments, Sweet Oil had received the sum of $13,258.84 in incentive payments under the Tosco Incentive Agreement for the sale of motor fuel at the Delmar Station that had not yet been paid to Plaintiffs.

31. As a result of Sunoco's demand for repayment of incentive fees, Sweet Oil refrained from submitting a claim to Sunoco for additional incentive payments in the amount of $8,731.10 based on motor fuel sold by Plaintiffs during the period April-July 2006, inclusive.

32. The claims of Plaintiffs and Sunoco with respect to the incentive payments for motor fuel sold at the Delmar station during the term of the Incentive Agreement are mutually exclusive and each has made inconsistent demands on the Defendant/Third Party Plaintiff based on their respective interpretation of the rights and liabilities of the parties to the Dealer Agreement, the Incentive Agreement and the Mobil Distributor Agreement, exposing Defendant/Third Party Plaintiff to double liability if it satisfies the demands of either Plaintiffs or Sunoco with regard to those payments.

33. On January 3, 2007, Sweet Oil filed a "Third-Party Complaint for Interpleader and Declaratory Judgment" against Sunoco in the Superior Court of Kent County,

054769.1031

Delaware, asserting a claim for declaratory judgment by the Court as to the respective rights and liabilities of the parties to the Dealer Agreement, the Incentive Agreement and the Mobil Distributor Agreement.

34. Sunoco was served with the Third-Party Complaint and filed an Answer and Affirmative Defenses of Third-Party Defendant Sunoco, Inc. (R&M) to the Complaint for Interpleader and Declaratory Judgment on February 22, 2007.

35. Sunoco was fully aware that its claim for the return of the unamortized balance of the incentive payments made for the Delmar station were disputed and were the subject of a proceeding in court intended to determine the competing claims over the rights and liabilities of the respective parties to the Dealer Agreement, the Incentive Agreement and the Mobil Distributor Agreement.

36. On March 7, 2007, Sunoco unilaterally issued "Invoice No. 16232781" to Sweet Oil in the amount of $112,306.54, purportedly for the unamortized balance of the incentive payments made for motor fuel sales at the Delmar station. Attached hereto and incorporated herein as Exhibit "4" is a true and correct copy of the Invoice No. 16232781.

37. On March 7, 2007, Sunoco unilaterally issued "Invoice No. 16232775" to Sweet Oil in the amount of $11,416.36, purportedly for the unamortized balance of the incentive payments made for motor fuel sales at a separate station, unrelated to Plaintiffs, located in Snow Hill, MD. Attached hereto and incorporated herein as Exhibit "5" is a true and correct copy of the Invoice No. 16232775.

38. On March 22, 2007, without prior notice to Sweet Oil, Sunoco, purportedly under the authorization to draft funds via electronic funds transfer from Sweet Oil's account for

debts due and owing under the Mobil Distributor Agreement, drafted funds totaling
$117,448.84 from Sweet Oil's account to satisfy its claim for repayment of the
unamortized incentive payments represented by Invoice Numbers 16232775 and
16232781.

## Count I – Declaratory Judgment

39. Defendant/Third Party Plaintiff, Sweet Oil, realleges each and every allegation set
forth in Paragraphs 1-38, inclusive, as if the same had been set forth at length herein.

40. Plaintiffs have asserted that their refusal to convert the Delmar station to a Sunoco
station is not a breach of their contractual obligations because there is no provision that
requires Plaintiffs to rebrand the station as a Sunoco station and their refusal to rebrand
the station as a Sunoco station is not in violation of the Dealer Agreement requiring the
repayment of incentive payments made during the term of the Incentive Agreement.

41. Third-Party Defendant, Sunoco, has asserted that the failure to convert the Delmar
station to a Sunoco station is a breach of the Mobil Distributor Agreement and the
Incentive Agreement that requires the repayment of the unamortized balance of incentive
payments made for motor fuel sales at the Delmar station.

42. The claims of the Plaintiffs and Third-Party Defendant Sunoco are mutually
exclusive and each has made inconsistent demands on Defendant/Third-Party Plaintiff
based on their respective interpretation of the rights and liabilities of the parties to the
Dealer Agreement, the Incentive Agreement and the Mobil Distributor Agreement.

WHEREFORE, Defendant/Third Party Plaintiff, Sweet Oil, respectfully requests that
the Court enter an Order declaring the legal rights and liabilites of the parties with respect
to the Delmar station.

### Count II – Indemnification Against Third-Party Defendant, Sunoco

43. Defendant/Third Party Plaintiff, Sweet Oil, realleges each and every allegation set forth in Paragraphs 1-38, inclusive, as if the same had been set forth at length herein.

44. If Defendant/Third Party Plaintiff, Sweet Oil, is liable in whole or in part to Plaintiffs with respect to the incentive fees as alleged in the Complaint, any such liability is solely due to the demands made upon Sweet Oil by Third-Party Defendant, Sunoco.

45. If Defendant/Third-Party Plaintiff, Sweet Oil, is liable in whole or in part to Plaintiffs with respect to the incentive fees as alleged in the Complaint, Third-Party Defendant, Sunoco, is liable to Sweet Oil for indemnification for any amount that Sweet Oil is liable to Plaintiffs.

WHEREFORE, Third-Party Plaintiff, Sweet Oil, demands judgment in its favor and against Third-Party Defendant, Sunoco, by way of indemnification, for any amount it is found liable to Plaintiffs with respect to the incentive payments for the Delmar station.

### Count III – Conversion

46. Defendant/Third Party Plaintiff, Sweet Oil, realleges each and every allegation set forth in Paragraphs 1-38, inclusive, as if the same had been set forth at length herein.

47. The Incentive Agreement is a fully integrated agreement that contains no provision authorizing the drafting of funds by Sunoco via electronic funds transfer from the account of Sweet Oil.

48. The drafting of $117,448.84 via electronic funds transfer from Sweet Oil's account by Sunoco was an unauthorized taking of Sweet Oil's property and converting the same to its own use despite demands by Sweet Oil for return of the same constitutes a conversion of Sweet Oil's property.

49. The unauthorized drafting of $117,448.84 via electronic funds transfer from Sweet Oil's account by Sunoco was a knowing and willful attempt to circumvent the legal process that had been instituted specifically for the purpose of determining disputed issues regarding the right of Sunoco, if any, to receive repayment of those funds.

50. Under the circumstances, the conduct of Sunoco in converting Sweet Oil's funds with full knowledge that the funds were the specific subject of pending litigation was outrageous and warrants the imposition of punitive damages.

WHEREFORE, Third-Party Plaintiff, Sweet Oil, demands judgment in its favor and against Third-Party Defendant, Sunoco, in the amount of $117,448.84, together with interest, punitive damages, costs, attorneys fees and such other relief as the court may deem appropriate.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

Attorneys for Defendant GLES, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

IN THE ~~SUPERIOR~~UNITED STATES DISTRICT COURT ~~OF THE STATE~~
DISTRICT OF DELAWARE
~~IN AND FOR KENT COUNTY~~

| | |
|---|---|
| BCG, INC., a Delaware corporation,     : <br> CHESAPEAKE PRODUCTS &       : <br> (~~RBY~~GMS) <br> SERVICES, INC., a Delaware corporation   : | C.A. No. ~~06C-10-024~~07-cv-207 |

:
Plaintiffs,                          :          TRIAL BY JURY
:          OF TWELVE DEMANDED
:
~~v.~~                                   ~~:~~          ~~NON-ARBITRATION CASE~~
v.                                   :
:
GLES, INC.,  a Delaware corporation,  :
d/b/a SWEET OIL COMPANY,               :
:
Defendant/Third-Party Plaintiff  :
~~v.~~                                  ~~:~~
~~:~~
~~Sunoco, Inc.~~                        ~~:~~
~~:~~
~~:~~
SUNOCO, INC. (R&M)                  ~~:~~
Third-Party Defendant        ~~:~~

_____    ~~:~~ __

**Amended Third-Party Complaint ~~for Interpleader and Declaratory~~**

**~~Judgment~~Against Sunoco, Inc. (R&M)**

1.     This action was instituted by Complaint wherein Plaintiffs, BCG, Inc. and

Chesapeake Products & Services, Inc., asserted a claim against Defendant, Sweet Oil

Company for, inter alia, breach of a certain Dealer Agreement dated October 3, 2002,

relating to a retail gas station located in Delmar, Maryland. A true and correct copy of the

Complaint is attached hereto and incorporated herein as Exhibit "1."

**The Parties**

2.  Plaintiffs, BCG, Inc. and Chesapeake Products & Services, Inc. ~~(collectively hereinafter "Plaintiffs")~~ are Delaware corporations that own and operate a retail gasoline station in Delmar, ~~Maryland~~Md.

3.  Defendant, Third-Party Plaintiff, GLES Inc. d/b/a/ Sweet Oil Company ~~("Sweet Oil")~~, is a Delaware corporation and is the successor in interest to Peninsula Oil Company ~~("Peninsula") with respect to certain contractual agreements with Plaintiffs and with Tosco Refining, L.P.~~

4.  Third-Party Defendant, Sunoco Inc. (~~"Sunoco"~~R&M), is a Pennsylvania corporation doing business in the ~~State~~state of Delaware with a registered address at the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware ~~19801.~~. Sunoco is the successor in interest to Tosco ~~Refining, L.P. ("Tosco") with respect to certain agreements with Peninsula~~, a distributor of gasoline and related products under the Mobil brand.

### The Contractual Relationships

### Mobil Branded Distributor Agreement

5.  On or ~~about~~around September 18, 2000, Tosco and Peninsula entered into a Mobil Branded Distributor Agreement (the "Mobil Distributor Agreement") whereby Tosco agreed to ~~supply~~Supply Mobil motor fuels for resale by Peninsula at certain marketing premises. The Mobil Distributor Agreement, by its terms~~,~~ expired on September 30, 2005.

6.  On or about April 28, 2004, ~~Tosco assigned its~~Sunoco became the successor in interest to Tosco's rights under the Mobil Distributor Agreement ~~to Sunoco~~. The Mobil

Distributor Agreement ~~has been~~was extended on a month to month basis ~~since~~subsequent to September 30, 2005.

7.  By Agreement dated August ~~31~~31, 2005, Peninsula assigned all of its rights under the Mobil Distributor Agreement to Sweet Oil.

8.  By letter dated November 2, 2006, Sunoco notified Sweet Oil that, as of February 2, 2007, ~~it will no longer supply Mobil brand motor fuels to Sweet Oil under the Mobil Distributor~~the Agreement would not be renewed and would be terminated. Attached hereto and incorporated herein as Exhibit "2" is a true and correct copy of the correspondence dated November 2, 2006 from Sunoco to Sweet Oil.

**Tosco Distributor Image Incentive Program Agreement**

9.   On or around February 25, 2002, Tosco and Peninsula entered into a Tosco Distributor Image Incentive Program Agreement (the "Incentive Agreement") whereby Tosco agreed to provide certain incentives to Peninsula to encourage the Delmar retail station to continue to purchase Mobil brand products and to protect the Mobil brand name. Attached hereto and incorporated herein as Exhibit "3" is a true and correct copy of the Tosco Incentive Agreement.

10. By the terms of the Incentive Agreement, Tosco agreed to pay to Peninsula an "incentive fee" of three cents per gallon for each gallon of gasoline sold at the Delmar station for forty-eight months on the condition that the Delmar station remain branded as a Mobil station for not less than ten years after the initiation of the sale of gasoline products under the incentive program or the remaining term of Tosco's license agreement for the Mobil brand.

11. By the terms of the Incentive Agreement, Peninsula agreed to repay the incentive payments to Tosco, on a fixed amortization schedule, if the Delmar station was rebranded from a Mobil station during the term of the Incentive Agreement.

12. The repayment of the incentive fees is deemed to constitute liquidated damages for the repudiation of the Incentive Agreement.

13. On information and belief, Sunoco is the successor in interest to Tosco assigned its's rights and obligations under the Incentive Agreement to Sunoco.

14. By Agreement dated August 31, 2005, Peninsula assigned all of its interest in the Incentive Agreement to Sweet Oil.

### The Dealer Agreement

15. On or around October 3, 2002, Plaintiffs entered into a Dealer Agreement with Peninsula whereby Peninsula agreed to supply and Plaintiffs agreed to purchase all of Plaintiffs' requirements for gasoline, diesel, fuel and kerosene for the period ending on March 1, 2012. A true and correct copy of the Dealer Agreement is attached to the Complaint (Exhibit "1") as Exhibit "A."

16. Pursuant to the terms of the Dealer Agreement, Peninsula agreed to pay a three cent per gallon "incentive fee" to ~~Plaintiffs~~BCG under the same terms and conditions as the Incentive Agreement between Peninsula and Tosco.

17. Pursuant to the terms of the Dealer Agreement, Plaintiffs agreed to repay Peninsula any amount that Peninsula was required to repay Tosco.

18. On or about August 31, 2005, Peninsula assigned all of its rights under the Dealer Agreement to Sweet Oil.

### The Dispute

19. Commencing on or after March 1, 2002, Tosco supplied to Peninsula and Peninsula supplied to ~~Plaintiffs~~BCG/Chesapeake all of ~~Plaintiffs~~its requirements for Mobil brand gasoline, diesel, fuel and kerosene.

20. Commencing on or after August 2002, Tosco paid to Peninsula and Peninsula paid to Plaintiffs the three cent "incentive payment" for each gallon of gasoline sold by Plaintiffs.

21. After it acquired Tosco's interest, Sunoco continued to pay the incentive fee pursuant to the Incentive Agreement to Peninsula/Sweet Oil.

22. On or about December 2005, after multiple notifications to the Plaintiffs that their credit card processing software needed to be upgraded as required ~~that their credit card processing software needed to be upgraded as required~~ in paragraph 10 of the Dealer Agreement, Plaintiffs ceased to accept Mobil Credit Cards, Speedpass, and debit cards in violation of the Dealer Agreement, causing Sunoco to demand that Sweet Oil cover the Mobil signs at the Delmar station until the site resumed acceptance of Mobil Cards.

23. At the time that Sweet Oil ~~purchased~~acquired the Peninsula Dealer Agreement in September 2005, Sunoco notified Sweet Oil that it intended to discontinue the supply of Mobil brand products and demanded that the Delmar station be converted to a Sunoco station when the Mobil brand was no longer be available.

24. Sweet Oil notified Plaintiffs that the Mobil brand would no longer be available and that Sunoco demanded that the Delmar station be converted to a Sunoco station.

25. Plaintiffs have failed and refused to agree to convert the Delmar station to a Sunoco station, asserting that they have no contractual obligation to rebrand the station as a Sunoco station.

26. Sunoco notified Sweet Oil that the refusal of Plaintiffs to accept Mobil credit cards and Speedpass and to convert the Delmar station to a Sunoco station is in violation of its contractual obligations and, as a result, it ~~will~~would not ~~"~~renew~~"~~ the Mobil Distributor Agreement with Sweet Oil.

27. Sunoco ~~has~~ further advised Sweet Oil that the, failure to ~~"~~rebrand~~"~~ the Delmar station to a Sunoco station ~~requires~~as required by the Mobil Distributor Agreement was a breach of the Tosco Incentive Agreement and required Sweet Oil to return all incentive

payments made to Peninsula/Plaintiffs during the term of the Tosco Incentive Agreement to Sunoco.

28. ~~As a result of Sunoco's demand for repayment of the incentive fees, Sweet Oil has withheld payment of incentive fees to Plaintiffs in the sum of $13,258.84.~~

~~29.    As a result of Sunoco's demand for repayment of incentive fees, Sweet Oil has refrained from submitting a claim to Sunoco for additional incentive payments in the amount of $8,731.10 based on gasoline sold by Plaintiffs during the period April-July 2006, inclusive.~~30.    Plaintiffs have asserted that their refusal to convert the Delmar station to <u>a</u> Sunoco station and their refusal to upgrade their credit card software is not in breach of the Dealer Agreement and has demanded that the incentive payments earned under the Dealer Agreement be paid in full.

~~**Count I - Interpleader**~~

~~31.    Defendant/Third-Party Plaintiff, Sweet Oil, realleges each and every allegation set forth in Paragraphs 1-30, inclusive, as if the same had been set forth at length herein.~~

<u>29.    As of November 27, 2006, the balance of the unamortized incentive payments made to Peninsula/Sweet Oil for the Delmar station was $102,606.00.</u>

~~32.~~

~~Sweet Oil is currently holding~~<u>30.    As of the date that Sunoco notified Sweet Oil that demand would be made for the return of all unamortized incentive payments, Sweet Oil had received</u> the sum of $13,258.84 in incentive payments ~~that have neither~~<u>under the Tosco Incentive Agreement for the sale of motor fuel at the Delmar Station that had not yet</u> been paid to Plaintiffs ~~nor returned to Sunoco.~~<u>.</u>

—— 33.    Sweet Oil has never claimed an interest in the disputed incentive payments currently in its possession.

34.    Sweet Oil is exposed to double liability if it pays the sum it is holding to either the Plaintiffs or to Sunoco.

35.    Sweet Oil requests leave to pay the sum into Court pending the determination by the Court as to the rightful recipient of the funds.

WHEREFORE, Sweet Oil respectfully requests that its Complaint for Interpleader be GRANTED and that this Court Order as follows:

——    a) That the funds representing "incentive payments" currently in the possession of Sweet Oil be paid into Court pending the determination of the proper recipient of those funds;

——    b) That it be absolved of all liability to any party with respect to the funds;

——    c) That it be awarded counsel fees and costs for defending any and all claims made against those funds.

### Count II – Declaratory Judgment

31.                                    As a result of Sunoco's demand for repayment of incentive fees, Sweet Oil refrained from submitting a claim to Sunoco for additional incentive payments in the amount of $8,731.10 based on motor fuel sold by Plaintiffs during the period April-July 2006, inclusive.

32.                                    The claims of Plaintiffs and Sunoco with respect to the incentive payments for motor fuel sold at the Delmar station during the term of the Incentive Agreement are mutually exclusive and each has made inconsistent demands on the Defendant/Third Party Plaintiff based on their respective interpretation of the rights and liabilities of the parties to the Dealer Agreement, the Incentive Agreement

and the Mobil Distributor Agreement, exposing Defendant/Third Party Plaintiff to double liability if it satisfies the demands of either Plaintiffs or Sunoco with regard to those payments.

33.    On January 3, 2007, Sweet Oil filed a "Third-Party Complaint for Interpleader and Declaratory Judgment" against Sunoco in the Superior Court of Kent County, Delaware, asserting a claim for declaratory judgment by the Court as to the respective rights and liabilities of the parties to the Dealer Agreement, the Incentive Agreement and the Mobil Distributor Agreement.

34.    Sunoco was served with the Third-Party Complaint and filed an Answer and Affirmative Defenses of Third-Party Defendant Sunoco, Inc. (R&M) to the Complaint for Interpleader and Declaratory Judgment on February 22, 2007.

35.    Sunoco was fully aware that its claim for the return of the unamortized balance of the incentive payments made for the Delmar station were disputed and were the subject of a proceeding in court intended to determine the competing claims over the rights and liabilities of the respective parties to the Dealer Agreement, the Incentive Agreement and the Mobil Distributor Agreement.

36.    On March 7, 2007, Sunoco unilaterally issued "Invoice No. 16232781" to Sweet Oil in the amount of $112,306.54, purportedly for the unamortized balance of the incentive payments made for motor fuel sales at the Delmar station. Attached hereto and incorporated herein as Exhibit "4" is a true and correct copy of the Invoice No. 16232781.

37.    On March 7, 2007, Sunoco unilaterally issued "Invoice No. 16232775" to Sweet Oil in the amount of $11,416.36, purportedly for the unamortized balance of the incentive payments made for motor fuel sales at a separate station, unrelated to Plaintiffs, located in Snow Hill, MD. Attached hereto and incorporated herein as Exhibit "5" is a true and correct copy of the Invoice No. 16232775.

38.                        On March 22, 2007, without prior notice to

Sweet Oil, Sunoco, purportedly under the authorization to draft funds via electronic funds

transfer from Sweet Oil's account for debts due and owing under the Mobil Distributor

Agreement, drafted funds totaling $117,448.84 from Sweet Oil's account to satisfy its

claim for repayment of the unamortized incentive payments represented by Invoice

Numbers 16232775 and 16232781.

### Count I – Declaratory Judgment

39. Defendant/Third- Party Plaintiff, Sweet Oil, realleges each and every allegation

set forth in Paragraphs 1-~~30;~~38, inclusive, as if the same had been set forth at length

herein.

~~37.~~40.    Plaintiffs have asserted that their refusal to convert the Delmar station to a

Sunoco station is not a breach of their contractual obligations because there is no

provision that requires Plaintiffs to rebrand the station as a Sunoco station and their

refusal to rebrand the station as a Sunoco station is not in violation of the Dealer

Agreement requiring the repayment of incentive payments made during the term of the

Incentive Agreement.

~~38.~~41.    Third-Party Defendant, Sunoco, has asserted that the failure to convert the

Delmar station to a ~~Sonoco~~Sunoco station is a breach of the Mobil Distributor Agreement

~~/~~and the Incentive Agreement ~~and that Sunoco will not "renew" the Mobil Distributor~~

~~Agreement unless the Delmar station is "rebranded" as a Sunoco~~that requires the

repayment of the unamortized balance of incentive payments made for motor fuel sales at

the Delmar station.

~~39.~~42.    The claims of the Plaintiffs and Third-Party Defendant Sunoco are

mutually exclusive and each has made inconsistent demands on Defendant/Third-Party

Plaintiff based on their respective interpretation of the rights and liabilities of the parties

to the Dealer Agreement, the Incentive Agreement and the Mobil Distributor Agreement.

WHEREFORE, Defendant/Third- Party Plaintiff, Sweet Oil, respectfully

requests that the Court enter an Order declaring the legal rights and ~~liabilities~~liabilites of

the parties with respect to the Delmar station.

### Count ~~II~~III – Indemnification Against Third-Party Defendant, Sunoco

40.43.   Defendant/Third- Party Plaintiff, Sweet Oil, realleges each and every

allegation set forth in Paragraphs 1-~~30,~~38, inclusive, as if the same had been set forth at

length herein.

41.44.    If  Defendant/Third- Party Plaintiff, Sweet Oil, is liable in whole or in part

to Plaintiffs with respect to the incentive fees as alleged in the Complaint, any such

liability is solely due to the demands made upon Sweet Oil by Third-Party Defendant,

Sunoco.

42.45.    If Defendant/Third-Party Plaintiff, Sweet Oil, is liable in whole or in part

to Plaintiffs with respect to the incentive fees as alleged in the Complaint, Third-Party

Defendant, Sunoco, is liable to Sweet Oil for indemnification for any amount that Sweet

Oil is liable to Plaintiffs.

WHEREFORE, Third-Party Plaintiff, Sweet Oil, demands judgment in its favor

and against Third-Party Defendant, Sunoco, by way of indemnification, for any amount it

is found liable to Plaintiffs with respect to the incentive payments for the Delmar station.

### <u>Count III – Conversion</u>

<u>46. Defendant/Third Party Plaintiff, Sweet Oil, realleges each and every allegation set</u>

<u>forth in Paragraphs 1-38, inclusive, as if the same had been set forth at length herein.</u>

47. The Incentive Agreement is a fully integrated agreement that contains no provision authorizing the drafting of funds by Sunoco via electronic funds transfer from the account of Sweet Oil.

48. The drafting of $117,448.84 via electronic funds transfer from Sweet Oil's account by Sunoco was an unauthorized taking of Sweet Oil's property and converting the same to its own use despite demands by Sweet Oil for return of the same constitutes a conversion of Sweet Oil's property.

49. The unauthorized drafting of $117,448.84 via electronic funds transfer from Sweet Oil's account by Sunoco was a knowing and willful attempt to circumvent the legal process that had been instituted specifically for the purpose of determining disputed issues regarding the right of Sunoco, if any, to receive repayment of those funds.

50. Under the circumstances, the conduct of Sunoco in converting Sweet Oil's funds with full knowledge that the funds were the specific subject of pending litigation was outrageous and warrants the imposition of punitive damages.

WHEREFORE, Third-Party Plaintiff, Sweet Oil, demands judgment in its favor and against Third-Party Defendant, Sunoco, in the amount of $117,448.84, together with interest, punitive damages, costs, attorneys fees and such other relief as the court may deem appropriate.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391

(302) 571-6600

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

Attorneys for Defendant GLES, Inc.,
A Delaware Corporation, d/b/a Sweet Oil Company

Dated: September 6, 2007

054769.1031

Document comparison done by Workshare DeltaView on Thursday, September 06, 2007 5:55:52 PM

| Input: | |
|---|---|
| Document 1 | interwovenSite://wsdms/DB02/5692440/1 |
| Document 2 | interwovenSite://wsdms/DB02/6224505/1 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 83 |
| Deletions | 88 |
| Moved from | 5 |
| Moved to | 5 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 181 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BCG, INC., a Delaware corporation, :
and CHESAPEAKE PRODUCTS & :
SERVICES, INC., a Delaware corporation :
 :
   Plaintiffs, :
 : C.A. No. 07-cv-207 (GMS)
 :
  v. : TRIAL BY JURY OF TWELVE
 : DEMANDED.
GLES, INC., a Delaware corporation, :
d/b/a SWEET OIL COMPANY, :
 :
  Defendant/Third-Party Plaintiff :
 :
  v. :
 :
SUNOCO, INC., (R&M) :
 :
  Third-Party Defendant. :
_____:

## ORDER

   IT IS HEREBY ORDERED this ___ day of _____, 2007, that the

foregoing Defendant/ Third-Party Plaintiff, GLES, d/b/a Sweet Oil Company's Motion to

Amend the Third-Party Complaint is hereby GRANTED.


         _____
             Judge

## LOCAL RULE 7.1.1 STATEMENT

I, Seth J. Reidenberg, Esquire, hereby certify pursuant to D. Del. LR 7.1.1, that counsel

for the Defendant/Third-Party Plaintiff, GLES, Inc. d/b/a Sweet Oil Company, has made

reasonable efforts but was unable to reach agreement with counsel for the Third-Party

Defendant, Sunoco, Inc. (R&M), on the matters set forth in the foregoing motion to amend,

specifically, the parties are unable to agree on the proposed amendment.  Counsel for Third-Party

Defendant has given written consent to the proposed amendments in all respects other than the

claim for punitive damages in the requested relief for Count III of the proposed Amended Third-

Party Complaint.

_____

Seth J. Reidenberg (#3657)