IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BCG, INC., a Delaware corporation, CHESAPEAKE PRODUCTS & SERVICES, INC., a Delaware corporation | : : : | C.A. No. 07-cv-207 (GMS) |
| | : | TRIAL BY JURY |
| Plaintiffs, | : | OF TWELVE DEMANDED |
| v. | : | |
| | : | |
| | : | |
| GLES, INC., a Delaware corporation, d/b/a SWEET OIL COMPANY, | : : | |
| | : | |
| Defendant/Third-Party Plaintiff | : | |
| v. | : | |
| | : | |
| Sunoco, Inc. | : | |
| | : | |
| Third-Party Defendant | : | |
| | : | |

**OPENING BRIEF IN SUPPORT OF MOTION OF THIRD-PARTY PLAINTIFF GLES, INC. d/b/a SWEET OIL COMPANY FOR SUMMARY JUDGMENT ON "COUNT I-DECLARATORY JUDGMENT" OF AMENDED THIRD-PARTY COMPLAINT AGAINST SUNOCO, INC. (R&M)**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Seth J. Reidenberg, Esquire (No.: 3657)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
sreidenberg@ycst.com
*Attorneys for Defendant/Third-Party Plaintiff, GLES, INC., a Delaware corporation, d/b/a Sweet Oil Company*

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison,
Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530

Date: April 7, 2008

## TABLE OF CONTENTS

Page

I.    INTRODUCTION...........................................................................................1

II.   ISSUE PRESENTED ..................................................................................1

III.  STATEMENT OF NATURE AND STAGE OF PROCEEDINGS.............1

IV.   FACTS ......................................................................................................2

V.    ARGUMENT.............................................................................................5

    A.    Summary Judgment Standard............................................................5

    B.    The Incentive Agreements Require the Distributor to
       Maintain the Retail Stations as a Mobil Stations................................6

    C.    The Mobil Distributor Agreement Contains No Provision
       Imposing Liquidated Damages .............................................................9

    D.    Sunoco Never Exercised Its Right to "Substitute" a Brand
       for the Mobil Brand Under the Mobil Distributor Agreement. .....11

VI.   CONCLUSION .........................................................................................13

# TABLE OF AUTHORITIES

**Cases**

Associated/ACC Int'l Ltd. v. DuPont Flooring Sys. Franchise Co.,
    2002 U.S. Dist. LEXIS 6464,
    (D. Del. Mar. 28, 2002) ..................................................................................... 6

Cincinnati SMSA Ltd. P'Ship v. Cincinnati Bell Cellular Sys. Co.,
    708 A.2d 989 n.19 (Del. 1998) ......................................................................... 6

Eon Labs Mfg. Inc. v. Reliance Ins. Co.,
    756 A.2d 889 n.25 (Del. 2000) ......................................................................... 7

O'Brien v. Progressive Ins. Co.,
    785 A.2d 281 (Del. 2001) ................................................................................. 6

Supermex Trading Co. v. Strategic Solutions Group, Inc.,
    1998 Del. Ch. LEXIS 66
    (Del. Ch. May 1, 1998) ..................................................................................... 6

**Rules**

Fed. Civ. P. R. 56 (c) ............................................................................................... 5

## I.    INTRODUCTION

Third- Party Plaintiff GLES, Inc. d/b/a Sweet Oil Company ("Sweet Oil") moves

for  summary judgment pursuant to Federal Rule of Civil Procedure 56 on Count I of the

Amended Third-Party Complaint against Sunoco, Inc. (R&M) ("Sunoco"). Count I of the

Amended Third-Party Complaint seeks a Declaratory Judgment regarding the rights to

certain "incentive payments" under two Tosco Distributor Image Incentive Program

Agreements.  The parties have stipulated to a Statement of Undisputed Facts relevant to

the issues set forth in the Declaratory Judgment claim.  As there are no genuine issues as

to any material fact, Third-Party Plaintiff Sweet Oil asserts that it is entitled to judgment

as a matter of law on the basis of the stipulated record.

## II.    ISSUE PRESENTED

Has Third-Party Plaintiff Sweet Oil repudiated the terms of the Incentive

Agreements with Sunoco so as to be liable for liquidated damages where it was required

by Sunoco to debrand the Mobil retail gasoline stations because the terms of Sunoco's

license to use the Mobil brand had expired?

## III.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

This action was instituted by Plaintiffs, BCG, Inc. and Chesapeake Products &

Services against Defendant/Third Party Plaintiff GLES, Inc. d/b/a/ Sweet Oil Company in

the Superior Court of Delaware in October, 2006. The original Complaint alleges claims

for breach of contract, declaratory judgment, tortuous interference and violation of the

1

Delaware Franchise Law. Defendant filed an Answer and Counterclaim for declaratory relief and indemnification. Defendant/Third Party Plaintiff joined Sunoco, Inc. as a Third Party Defendant asserting certain related claims seeking, inter alia, declaratory relief and an interpleader action.. In March, 2007, Plaintiff filed an Amended Complaint to add claims against GLES, Inc. pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. §2801, et.seq. In April, 2007, this matter was removed to the United States District Court for the District of Delaware. The pleadings are now closed and discovery is complete.

## IV.    FACTS

The material facts that are relevant to the issues raised by this motion are stipulated by the parties and are set forth in the Statement of Undisputed Facts that is attached hereto and incorporated herein as though fully set forth at length. The Statement of Undisputed Facts need not be repeated but, in relevant part, the request for Declaratory Judgment seeks an interpretation, as a matter of law, of a series of contracts between Sweet Oil, in its own right and as successor and interest to Peninsula Oil Company, and Sunoco in its own right and as successor and interest to Tosco Refining, L.P.

Sunoco is a manufacturer and supplier of gasoline and related products that it supplies to various distributors for resale under its trademarks and trade names. Sweet Oil is a distributor of motor fuel and related products. On March 21, 2003, Sweet Oil and Sunoco entered into a "Distributor Branded Motor Fuel Agreement" (Exhibit 5 to Statement of Undisputed Facts) ("Sunoco Distributor Agreement") whereby Sweet Oil agreed to purchase a specified volume of gasoline from Sunoco for a period of ten years.

054769.1031

In September, 2005, Sweet Oil purchased the assets of Peninsula Oil Co., Inc.
Peninsula had likewise been a distributor of motor fuel products. Among the assets
acquired by Sweet Oil was the rights and obligations under a certain "Mobil Branded
Distributer Agreement" dated September 18, 2000. (Exhibit 1) (Mobil Distributor
Agreement). The Mobil Distributor Agreement had originally been between Peninsula
and Tosco Refining, L.P.  Mobil Oil Corporation granted Tosco the right to license and
use its Mobil trademarks in certain parts of the mid-Atlantic region. (See, Exhibit 1,
Recitals) The Mobil Distributor Agreement permitted Peninsula to distribute Mobil brand
motor fuel products for a period of five years commencing on October 4, 2000 and
ending on September 30, 2005. (Mobil Distributor Agreement, Exhibit 1, ¶ 3)

Pursuant to its rights under the Mobil Distributor Agreement, Peninsula entered
into a Dealer Agreement with Chesapeake Products and Services, Inc. and BCG, Inc.
(Exhibit 4) to supply Mobil branded products to BCG's retail gasoline station located in
Delmar, Maryland.

In February, 2002, some eighteen months after entering the Mobil Distributor
Agreement, Tosco and Peninsula entered a "Tosco Distributor Image Incentive Program
Agreement." (Exhibit 2)  (Incentive Agreement) [1] The Incentive Agreement provided that
in exchange for the specific agreement to brand the Delmar station as a Mobil station,
Tosco would make an "incentive payment" of three cents per gallon for a period of forty-

---

[1] In May, 2001, Tosco and Peninsula entered a similar Incentive Agreement for a retail gasoline station
located in Snow Hill, Md. (Exhibit 3)("Duck-In Incentive Agreement) For ease of reference, the parties
have identified correspondence and other documentary evidence in conjunction with the Delmar station for
use in the Statement of Undisputed Facts. Throughout this Motion, references will generally be limited to
the chronology of events relating to the Delmar station. The analysis of the rights and liabilities of the
parties under the "Duck-In Incentive Agreement" are identical to the analysis of the "Incentive Agreement"
and therefore the legal right to the incentive payments under both incentive agreements is the same.

eight months.  It was a condition of the Incentive Agreement that the Delmar location be

branded in a manner consistent with "Mobil Image Specifications." (Exhibit 2, Incentive

Agreement, p. 2, Bullet Point 2).  It was further agreed that the Delmar Station would

remain branded as a Mobil station for a period of "not less than 10 years or the remaining

term of Tosco's license agreement for the Mobil brand." (Exhibit 2, Incentive

Agreement, p. 2, Bullet Point 15)  The Incentive Agreement also contains a provision for

"liquidated damages" to compensate for losses resulting from Peninsula's "repudiation"

of the Incentive Agreement prior to the expiration of its term.  (Exhibit 2, Incentive

Agreement, p. 2, Bullet Point 11)  If the Incentive Agreement is repudiated by the

Peninsula, liquidated damages are calculated on the basis of a set amortization schedule

or "Reimbursement Schedule" that is incorporated into the Agreement. (Exhibit 2,

Incentive Agreement, p. 2, Bullet Point 10)

In April, 2004, all of the rights and obligations originally belonging to Tosco

under the Mobil Distributor Agreement and the Incentive Agreements were assigned to

Sunoco. (Statement of Undisputed Facts, ¶ 14) In August 2005, all of the rights and

obligations originally belonging to Peninsula under the Mobil Distributor Agreement and

the Incentive Agreements were assigned to Sweet Oil. (Statement of Undisputed Facts, ¶

15; Exhibit 6, Assignment and Assumption Agreement) Thus, for purposes of this

motion, "Tosco" is now Sunoco and "Peninsula" is now Sweet Oil.

Commencing in January, 2006, and continuing thereafter, Sunoco informed Sweet

Oil that Sunoco's rights to the Mobil brand would terminate in February 2007 and offered

to convert the Delmar station from a Mobil station to a Sunoco station. (Stipulation of

Undisputed Facts, ¶¶ 18, 19, 22, 23, 24, 25; Exhibits 7, 8, 9)  BCG refused to rebrand its station as a Sunoco station. (Stipulation of Undisputed Facts, ¶ 21)[2]

Sunoco asserts that the refusal to rebrand the Delmar station as a Sunoco station is a violation of the Incentive Agreement, thereby triggering its rights to liquidated damages under the Incentive Agreement. Sunoco has demanded the repayment of the unamortized balance of the incentive payments for the Delmar station pursuant to the Reimbursement Schedule. (Exhibit 2, Incentive Agreement, p. 2, Bullet Point 10) BCG has asserted that it has no obligation to rebrand the Delmar station as a Sunoco station and has made demand that Sweet Oil pay the balance of the incentive payments earned for the sale of Mobil gasoline. The claims of BCG and Sunoco are mutually exclusive and Sweet Oil therefore seeks a declaratory judgment specifying the rights of the parties to certain incentive payments.. For purposes of this motion, Sweet Oil adopts and asserts the position of BCG in response to the position stated by Sunoco.

## V.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In many such motions, the initial analysis of the court is to determine if the record truly demonstrates a lack of "genuine issues as to any material fact." In the present motion, the material facts have been

---

[2] The Duck-In station likewise was not rebranded to a Sunoco station. (Stipulation of Undisputed Facts, ¶ 32)

stipulated. The parties agree that the resolution of the action for declaratory judgment can be made by the court as a matter of law on the basis of the documentary evidence, all of which is incorporated into the Statement of Undisputed Facts.

### B.    The Incentive Agreements Require the Distributor to Maintain the Retail Stations as a Mobil Stations

Under Delaware law, the interpretation of contract language is a question of law.[3] The use of extrinsic evidence to interpret 'clear and unambiguous' language is not permitted. The parties' intent is dispositive when a court construes a contract; however, when the language is unambiguous and has 'an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent.' Associated/ACC Int'l Ltd. v. DuPont Flooring Sys. Franchise Co., 2002 U.S. Dist. LEXIS 6464, at *8-10 (D. Del. Mar. 28, 2002) (granting motion for summary judgment based on unambiguous contract language) (citations omitted). See also Supermex Trading Co. v. Strategic Solutions Group, Inc., 1998 Del. Ch. LEXIS 66, at *7 (Del. Ch. May 1, 1998) (courts must determine whether contract language is clear and unambiguous through examination of the four corners of the parties' contract). And where contract language is clear and unambiguous contract, extrinsic evidence of contractual intent is irrelevant:

> [W]here contract language is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.

Cincinnati SMSA Ltd. P'Ship v. Cincinnati Bell Cellular Sys. Co., 708 A.2d 989, 993 n.19 (Del. 1998). See also O'Brien v. Progressive Ins. Co., 785 A.2d 281, 289 (Del. 2001) ("We have held unequivocally that 'extrinsic evidence is not to be used to interpret

---

[3] The Mobil Distributor Agreement, (Exhibit 1, ¶ 26) provides that the agreement is to be construed under and in accordance with the law of the state in which the stations served by the distributor are principally located. Sweet Oil is a Delaware corporations and the stations served by Sweet Oil are principally located in Delaware.

contract language where the language is plain on its face.'") (citation omitted); <u>Eon Labs Mfg. Inc. v. Reliance Ins. Co.</u>, 756 A.2d 889, 894 n.25 (Del. 2000) ("[I]t is well established that when a contract is unambiguous, extrinsic evidence to vary the terms of the contract is inadmissible, and discovery attempts to that end are not permitted.").

The key claim of Sunoco's interpretation of the agreements is that "the failure to rebrand the Delmar Station to Sunoco is a breach of the ......Incentive Agreement, obligating Sweet Oil to pay liquidated damages under the agreement." (Statement of Undisputed Facts, ¶24) Sweet Oil disagrees. It is the <u>wrongful</u> "debranding" of the Delmar Station during the term of the Incentive Agreement that triggers any obligation to pay liquidated damages.

The intent of the parties to the Incentive Agreement is apparent from the clear terms of the document. An "incentive," by definition, is something that stimulates or encourages certain desired action. In this case, the desired action is the maintenance of the Delmar station as a "Mobil branded station" for a period of ten years <u>or the balance of the term of Tosco's license agreement to use the Mobil brand</u>. (Exhibit 2, p.2, Bullet Point 15) The agreement provided an incentive to the distributor to remain with the Mobil brand by reimbursing three cents per gallon for every gallon of gasoline sold for the first forty-eight months after the inception of the agreement. Thereafter, the agreement provided a disincentive to debrand the station as a Mobil station by requiring the distributor to repay, as liquidated damages, the incentive payments previously received pursuant to a set amortization schedule or "Reimbursement Schedule." The Incentive Agreement, by its terms, is directed at the conduct of the distributor and serves to

7

discourage the distributor from taking any action that would result in the debranding of the station as a Mobil station.

The Incentive Agreement is clearly brand-specific. It does not address or contemplate the possibility of changing brands or "rebranding" the station to a brand other than Mobil. In fact, to the contrary, the Incentive Agreement requires that the station be branded a Mobil station for so long as Tosco retains the right to license the Mobil brand. It does not, by its terms, provide an "incentive" to the distributor to agree to or comply with any other change or amendment that Tosco might propose with respect to the Mobil Distributor Agreement. It does not address Tosco's conduct. Rather, the Incentive Agreement is solely intended to encourage the distributor to refrain from any action that would compromise the use of the Mobil brand or discontinue the use of the Mobil brand. So long as the distributor takes no action to "debrand" the station or otherwise affirmatively engages in conduct in violation of the Mobil Distributor Agreement during the term of that Agreement, the distributor is not in violation of the Incentive Agreement.

The unambiguous language of the Incentive Agreement provides that the obligation to repay any unamortized incentive payments only occurs when the distributor has "repudiated" the Incentive Agreement. "Repudiation" requires affirmative conduct on the part of the distributor to violate or otherwise reject the requirements of the Incentive Agreement. Once again, the language of the Incentive Agreement is addressed to the conduct of the distributor and imposes liquidated damages on the distributor for its affirmative act or acts that reject its obligations under the Agreement. By defining the repayment of the incentive payments as "liquidated damages," the Agreement makes

8

clear that the obligation for repayment is triggered only when the distributor engages in wrongful conduct. Such wrongful conduct would, of course, include the act of debranding the station as a Mobil station prior to the expiration of the obligations imposed by the Incentive Agreement.

The record in support of this motion, as set forth in the Statement of Undisputed Facts, contains no reference to any conduct by Sweet Oil, the distributor, that violates the Incentive Agreement. Indeed, the alleged wrongful conduct of Sweet Oil is the refusal to debrand the station as a Mobil station. That conduct, however, is the very essence of the obligation imposed on it under the Incentive Agreement. The refusal to debrand the station as a Mobil station can hardly be described as a "repudiation" of the Incentive Agreement. It is just the opposite. Having taken no action to repudiate the Incentive Agreement, there is no basis to support a claim against Sweet Oil for the repayment of the unamortized portion of the incentive payments previously paid.

## C.    The Mobil Distributor Agreement Contains No Provision Imposing Liquidated Damages

Sunoco's argument requires the mixing and matching of terms from multiple separate and distinct agreements in a manner that is not contemplated by the parties, as set forth in their written agreements. As set forth in the Statement of Undisputed Facts, Sunoco asserts that Sweet Oil's "failure to rebrand the Delmar Station to Sunoco was a breach of the Incentive Agreement, obligating Sweet Oil to pay liquidated damages under the agreement." (Statement of Undisputed Facts, ¶ 24) Sunoco has not cited a specific provision of the Incentive Agreement to support its position as there is none. Rather, Sunoco relies on the terms of the Mobil Distributor Agreement which provide that

9

Tosco(Sunoco) has the right "to discontinue use of the Mobil trademarks and substitute therefore a license for the use of a different mark or brand." (Exhibit 1, ¶ 11(C))

The Mobil Distributor Agreement is a fully integrated agreement, setting forth the rights and liabilities of the parties. The Agreement makes reference to certain remedies available in the case of a breach of the Agreement. Throughout the Agreement, there are references to conduct that constitute a default, thereby potentially warranting termination of the Distributor Agreement. However, there is nothing in the Distributor Agreement that references or suggests the right to obtain "liquidated damages" for the breach of any of its terms.

It is obvious that the "breach" Sunoco alleges in this matter is the refusal to "rebrand" the Mobil station to a Sunoco station upon the expiration of Sunoco's license to use the Mobil brand. For purposes of argument, the alleged breach might provide a basis to terminate the Mobil Distributor Agreement. It does not, however, provide a basis to obtain liquidated damages. Liquidated damages under the Incentive Agreement are only available where the distributor takes some affirmative action to "repudiate" the Incentive Agreement, not when it refuses to rebrand the Mobil station upon the demand of Sunoco. At the time the Mobil Distributor Agreement was executed, there was no provision of any kind to support the imposition of liquidated damages. The Incentive Agreement was entered long after the Mobil Distributor Agreement was executed and in force. It is a separate and distinct agreement with its own rights and obligations. The Incentive Agreement did not amend the Mobil Distributor Agreement. The Incentive Agreement was not incorporated into the Mobil Distributor Agreement. Rather, the Incentive Agreement is characterized as an agreement that "supplements" the Mobil

10

Distributor Agreement. (Incentive Agreement, p. 2, Bullet Point 14). It does not provide additional penalties for the breach of the Mobil Distributor Agreement.

It is true that the Incentive Agreement provides that the unamortized balance of the incentive payments will be payable as liquidated damages if the distributor's contract is terminated/non-renewed, or the Mobil station is "debranded" during the term of the Agreement. (Exhibit 2, Incentive Agreement, p. 2, Bullet Point 10) In context, however, this remedy clearly is addressed to a termination of the Mobil Distributor Agreement by virtue of some wrongful conduct of the distributor, not the termination of the Mobil Distributor Agreement at the explicit instruction of Sunoco, and particularly not where Sunoco's demand is based on the expiration of its license to use the Mobil mark.

**D.     Sunoco Never Exercised Its Right to "Substitute" a Brand for the Mobil Brand Under the Mobil Distributor Agreement.**

Sunoco's claim is obviously based on its claimed right to substitute another brand for the Mobil brand under the Mobil Distributor Agreement. On the basis of the stipulated record, the argument is clearly misplaced. At the time that Sweet Oil took an assignment of the rights and obligations under the Mobil Distributor Agreement and the Incentive Agreement, the parties recorded their intention in a written Assignment and Assumption Agreement. (Exhibit 6) As set forth in that Agreement, the Mobil Distributor Agreement was assigned to Sweet Oil on the eve of its expiration. (Exhibit 6, Assignment and Assumption Agreement, ¶ 2) All parties knew and understood that Sunoco would not renew the Mobil Distributor Agreement under the Mobil trademark. The non-renewal was not the product of any fault or default by the distributor under the Mobil Distributor Agreement. Rather, Sunoco determined not to renew the Mobil Distributor Agreement because its license to use the Mobil brand was about to expire. It was expressly

11

understood that the relationship between Sweet Oil and Sunoco going forward would be under the existing Sunoco Distributor Agreement between the parties and not the expiring Mobil Distributor Agreement. (Exhibit 6, Assignment and Assumption Agreement, ¶ 4). That was the condition imposed by Sunoco.

Without regard to any other facts or claims with respect to the interpretation of the agreements, these circumstances are dispositive of Sunoco's claim. As a matter of fact and law, Sunoco never intended or required Sweet Oil to "rebrand" the Delmar station under the Mobil Distributor Agreement. Sunoco never exercised the clause in the Mobil Distributor Agreement permitting it to substitute another brand for the Mobil brand at its option. Rather, Sunoco acknowledged that the term of its license to use the Mobil mark was about to expire and therefore abandoned the Mobil Distributor Agreement in favor of the Sunoco Distributor Agreement.

There is nothing in the Mobil Distributor Agreement that requires the distributor to agree to substitute a new and different distributor agreement with a separate and distinct brand when the Mobil Distributor Agreement is abandoned by Sunoco for its own convenience and at Sunoco's own insistence. Sunoco never substituted another mark or brand for Mobil under the Mobil Distributor Agreement. Sweet Oil did not repudiate the Incentive Agreement at any time. Rather, Sweet Oil was faithful to its obligations under both the Mobil Distributor Agreement and the Incentive Agreement for the full term of Sunoco's "license agreement for the Mobil brand." As expressly confirmed by the stipulated record, Sweet Oil employed the Mobil mark for "the remaining term of [Sunoco's] license agreement for the Mobil brand" (Exhibit 2, Incentive Agreement, p. 2, Bullet Point 15). Sweet Oil was therefore in full compliance with its obligations under the

12

Incentive Agreement until it was forced to "debrand" the Delmar station at Sunoco's explicit instruction. (Statement of Undisputed Fact, ¶ 33)

## VI.    CONCLUSION

On the record composed of the undisputed facts, there is no basis upon which to find that Sweet Oil is obligated to repay any incentive payments to Sunoco. As a matter of law,  Sweet Oil is entitled to a declaration that it is not in violation of any obligation for which Sunoco is entitled to liquidated damages under either the Delmar Incentive Agreement or the Duck-In Incentive Agreement. Sweet Oil respectfully requests that summary judgment be granted in its favor and against Sunoco declaring that Sweet Oil does not have an obligation to repay any incentive payments to Sunoco.

YOUNG CONAWAY STARGATT& TAYLOR, LLP

Seth J. Reidenberg, Esquire (No. 3657)
The Brandywine Building
1000 West Street, 17th 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Hugh J. Hutchison, Esquire
Leonard, Sciolla, Hutchison,
Leonard & Tinari, LLP
1515 Market Street, 18th Floor
Philadelphia, PA 19102
(215) 567-1530
(215) 564-4611 (fax)

*Attorneys for Defendant/Third-Party Plaintiff, GLES, INC.,*
*a Delaware corporation, d/b/a Sweet Oil Company*

Dated: April 7, 2008

13