**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BCG, INC. and <br> CHESAPEAKE PRODUCTS & SERVICES, <br><br> Plaintiffs, <br><br> v. <br><br> GLES, INC. d/b/a SWEET OIL COMPANY, <br><br> Defendant/Third-Party Plaintiff, <br> v. <br><br> SUNOCO, INC., <br><br> Third-Party Defendant. | C.A. No. 07-cv-207 (GMS) <br><br> TRIAL BY JURY <br> OF TWELVE DEMANDED <br><br> NON-ARBITRATION CASE |

**THIRD-PARTY DEFENDANT'S RESPONSE TO DEFENDANT/THIRD-PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF THE <u>AMENDED THIRD-PARTY COMPLAINT PURSUANT TO FED. R. CIV. P. 56</u>**

Matthew A. Kaplan (#4956)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone No.: 302-777-6528

A. Christopher Young (*pro hac vice*)
Jennifer Lori Lambert (*pro hac vice*)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone No.: 215-981-4000

Dated: April 24, 2008                    *Attorneys for Third-Party Defendant, Sunoco, Inc. (R&M)*

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

II. SUMMARY OF ARGUMENT ..................................................................................... 1

III. STATEMENT OF THE FACTS ................................................................................... 2

IV. ARGUMENT ................................................................................................................ 2

    A. **Sweet Oil's Narrow Interpretation of the Plain Language of the Incentive Agreements Ignores Its Obligation to Pay Liquidated Damages Upon a Debranding of the Stations** ..................................................................................... 2

        1. Liquidated Damages Are Imposed Upon the Occurrence of an Event, Not Sweet Oil's Wrongful Conduct ................................................... 3

        2. Sweet Oil Narrowly Interprets the Language of the Incentive Agreements ........................................................................................................ 4

        3. Sweet Oil's Argument Overemphasizes the Importance of the Mobil Brand ........................................................................................................ 7

    B. **Sweet Oil's Failure to Fulfill All its Contractual Undertakings Obligates it to Pay Sunoco Liquidated Damages** ................................................................... 9

V. CONCLUSION ........................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.,
  693 A.2d 1059 (Del. 1997) ...........................................................................................5

Haft v. Dart Group Corp.,
  841 F. Supp. 549 (D. Del. 1999) ..................................................................................4

Hudson v. D & V Mason Contractors, Inc.,
  252 A.2d 166 (Del. Super. 1969) .................................................................................5

In re Northwestern Corp.,
  313 B.R. 595 (Bankr. D. Del. 2004) .............................................................................9

Intel Corp. v. Broadcom Corp.,
  173 F. Supp. 2d 201 (D. Del. 2001) .............................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ...............................................................................................................12

**I.      NATURE AND STAGE OF THE PROCEEDINGS**

Sunoco incorporates by reference the Nature and Stage of the Proceedings as stated in its Opening Brief in Support of its Motion for Summary Judgment ("Sunoco's Opening Brief").  (D.I. 42).

**II.     SUMMARY OF ARGUMENT**

Ignoring the plain language of the Incentive Agreements which obligates Defendant/Third-Party Plaintiff GLeS, Inc. d/b/a Sweet Oil ("Sweet Oil") to pay Third-Party Plaintiff Sunoco, Inc. (R&M) ("Sunoco") liquidated damages for the termination of the Mobil Branded Distributor Agreement dated September 18, 2000 (the "Distributor Agreement") and the debranding of the Delmar and Duck-In Stations (collectively the "Stations") and the promise it made to Sunoco in August 2005 to rebrand the Stations to the Sunoco brand, Sweet Oil narrowly interprets a single phrase of an irrelevant provision of the Incentive Agreements to conclude that Sunoco cannot recover liquidated damages because Sweet Oil neither repudiated the Distributor Agreement nor "wrongfully 'debrand[ed]'" the Stations.  (Third-Party Plaintiff's Opening Brief in Support of Motion for Summary Judgment ("Sweet Oil's Opening Brief"), D.I. 41 at 7).  Sweet Oil's argument fails for two separate reasons.

1. First, the Incentive Agreements do not require that Sweet Oil repudiate the Distributor Agreement or "wrongfully 'debrand'" the Stations before Sunoco may recover liquidated damages.  In coming to its conclusion, Sweet Oil narrowly focuses upon a single phrase contained in an irrelevant paragraph of the Incentive Agreements rather than interpreting the Incentive Agreements – and the other contracts between the parties - as a whole.  By doing so, Sweet Oil gives certain words and phrases an interpretation that the parties did not intend and which contradict the overall plan of the parties.

2. Second, even if Sweet Oil's interpretation is correct, Sunoco is still entitled to recover liquidated damages from Sweet Oil because Sweet Oil "repudiated" its affirmative obligation to rebrand the Stations to the Sunoco brand. By erroneously claiming in its brief that it was under no obligation to rebrand the Stations to the Sunoco brand and its only wrong was promoting the Mobil brand, Sweet Oil adopts a revisionist history of the events that preceded Peninsula Oil Company's ("Peninsula") assignment of the Distributor Agreement and Incentive Agreements to it, Sunoco's consent to Peninsula's assignment which was conditioned on, among other things, Sweet Oil's express agreement to rebrand the Stations, and Sweet Oil's affirmative, yet unsuccessful, efforts to rebrand the Stations in 2005 and 2006.

### III.   STATEMENT OF THE FACTS

Sunoco incorporates by reference its Statement of Facts as stated in its Opening Brief in Support of its Motion for Summary Judgment ("Sunoco's Opening Brief"). (D.I. 42).

### IV.   ARGUMENT

#### A.   Sweet Oil's Narrow Interpretation of the Plain Language of the Incentive Agreements Ignores Its Obligation to Pay Liquidated Damages Upon a Debranding of the Stations

Sweet Oil's principal argument that the Incentive Agreements impose liquidated damages only if Sweet Oil "repudiates" the Incentive Agreements fails for a number of reasons. First, the argument ignores the plain language of the section of the Incentive Agreements which defines the triggers for liquidated damages and does not mention the words "repudiation" or "wrongful" in describing the conditions upon which Sweet Oil would be required to pay back the incentive payments it received. Second, Sweet Oil bases its conclusion on a narrow interpretation of the Incentive Agreements which focuses on a phrase found only in a standard preservation of rights paragraph, the purpose of which is entirely irrelevant to whether Sweet Oil

is liable for liquidated damages. The flaw of Sweet Oil's interpretation becomes evident when considering the entire Incentive Agreement and the actual purpose of the paragraph containing the phrase Sweet Oil emphasizes. Lastly, in making its principal argument, Sweet Oil overemphasizes the importance of the Mobil brand to the parties and ignores the practical economic reality of the Incentive Agreements.

        1.      <u>Liquidated Damages Are Imposed Upon the Occurrence of an Event, Not Sweet Oil's Wrongful Conduct</u>

The Incentive Agreements obligate Sweet Oil to return the incentive payments to Sunoco as liquidated damages if the Distributor Agreement is terminated or non-renewed or the Stations are debranded. The paragraph of the Incentive Agreements which defines the triggers for liquidated damages states, as follows:

> Distributor recognizes that it would be difficult to quantify [Sunoco]'s economic losses if Distributor's franchise relationship terminated or non-renewed or the retail facility debranded. Thus, Distributor agrees that if Distributor's contract is terminated/non-renewed, or the retail facility is debranded within ten (10) years after the first month Distributor reports volume for incentive payment purposes, Distributor will pay to [Sunoco] liquidated damages, to compensate [Sunoco] for such losses, the following amounts. . . . [a reimbursement schedule completes the remainder of the pertinent paragraph].

(Delmar Incentive Agreement dated Feb. 25, 2002, and Incentive Agreement dated May 2, 2001, attached as Exhibits "2" and "3" to Statement of Undisputed Facts, D.I. 38 at ¶¶ 6, 8).

Notably, neither the words "repudiation" or "wrongful," nor any other words or phrases which manifest an intent of the parties that liquidated damages would be imposed only if Sweet Oil did anything "wrong," are found in the above paragraph. If Sweet Oil was to be liable for liquidated damages only upon a showing of wrongful conduct, one would expect the language in the above quoted paragraph to have used the word "repudiate" or "wrongful" or some derivations thereof. The absence of such language is a strong indication that the parties

intended what they wrote, i.e. Sweet Oil is liable to repay the incentive payments to Sunoco as liquidated damages whether or not it repudiated the Incentive Agreement or its actions were otherwise wrongful. Haft v. Dart Group Corp., 841 F. Supp. 549, 564 (D. Del. 1993) (holding "unless a contrary intent plainly appears, 'the intent of the parties must be ascertained from the language of the contract'. Courts should not rewrite the plain language of 'an otherwise valid contractual provision', even to supply perceived omissions.")

Further, Sweet Oil's interpretation would completely frustrate the intention of the parties to compensate Sunoco for its economic losses in the event it can no longer supply the Stations. As expressed in the above quoted paragraph, liquidated damages are imposed to compensate Sunoco for its "economic losses" in the event it can no longer supply the Stations with motor fuel because the Distributor Agreement ends or the Stations debrand. As Sunoco's economic losses in the event it cannot supply the Stations are not dependent upon Sweet Oil's wrongful conduct, the above quoted paragraph does not precondition liability for liquidated damages on such a finding.

    2. <u>Sweet Oil Narrowly Interprets the Language of the Incentive Agreements</u>

Notwithstanding the foregoing, Sweet Oil argues that its liability to Sunoco is not triggered unless it repudiated the Incentive Agreements and, since it did nothing of the sort, it cannot be held liable to Sunoco. Such an argument ignores the plain and clear language of the Incentive Agreements set out above, and relies upon language in a separate and distinct paragraph of the Incentive Agreements which is not relevant to the issue to be decided in the motions.

In making its argument, Sweet Oil seizes upon a phrase contained not in the paragraph quoted above, but in the immediately following paragraph of the Incentive Agreements. The paragraph in which the phrase first appears states as follows:

-4-

> The damages here liquidated are confined to losses resulting from *your repudiation of this Incentive Agreement*, and shall not affect such other rights and remedies as [Sunoco] may have under this Incentive Agreement, under any other agreement with [Sunoco], and under applicable law including, but not limited to, the PMPA and the Uniform Commercial Code.

(Delmar Incentive Agreement dated Feb. 25, 2002 and Incentive Agreement dated May 2, 2001, Ex. 2 & 3 to Statement of Undisputed Facts, D.I. 38 at ¶¶ 6, 8).

Brashly extrapolating, Sweet Oil concludes that not only is it not liable for liquidated damages unless it, rather than Sunoco, repudiates the Incentive Agreement but that Sunoco must prove that it engaged in wrongful conduct to be liable to Sunoco. For the reasons that follow, Sweet Oil's interpretation is groundless.

Sweet Oil's narrow reliance on the word "repudiation" to make its argument violates "the cardinal rule that one paragraph in a contract, cannot be read in isolation. . ." Hudson v. D & V Mason Contractors, Inc., 252 A.2d 166, 169 (Del. Super. 1969). Under Delaware law, contracts must be viewed *as a whole* to determine the true intent of the parties. Intel Corp. v. Broadcom Corp., 173 F. Supp. 2d 201, 221 (D. Del. 2001) (emphasis added). "Moreover, the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan."[1] Id. When interpreting the entire contract as a whole, it becomes evidently clear that Sweet Oil's heavy reliance on the phrase "your repudiation of this Incentive Agreement" is entirely misplaced. The Incentive Agreements delineate the specific conditions which will trigger Sweet

---

[1] Sunoco agrees with Sweet Oil's assertion that the language in the contract is clear and unambiguous and that extrinsic evidence is not needed for a proper interpretation of the parties' rights and obligations. (Sweet Oil's Opening Brief, D.I. 41 at 6). It is important to note, though, that even if the parties disagree upon the meaning of the contractual terms, the interpretation of the contract is still a question of law for the courts to decide. E.I. du Pont de Nemours & Co. v. Allstate Ins. Co., 693 A.2d 1059, 1061 (Del. 1997).

Oil's obligation to pay liquidated damages: 1.) a termination or non-renewal of the Distributor Agreement and 2.) a debranding of the Stations. (Delmar Incentive Agreement dated Feb. 25, 2002 and Incentive Agreement dated May 2, 2001, Ex. 2 & 3 to Statement of Undisputed Facts, D.I. 38 at ¶¶ 6, 8). The next paragraph of the Agreement (hereinafter referred to as the "Preservation of Rights Clause") states that the liquidated damages "are confined to losses resulting from your repudiation of this Incentive Agreement, and shall not affect such other rights and remedies as [Sunoco] may have." Id. This is a standard preservation of rights clause serving to inform Sweet Oil that in addition to the recovery of liquidated damages, Sunoco may avail itself of any other rights it may have under the Incentive Agreements.

When the Preservation of Rights Clause is read in the context of the entire agreement, as basic contract interpretation dictates it should be, the phrase can only be understood to refer to and summarize the conditions, expressed in the previous paragraph, under which liquidated damages are due to Sunoco. Here, "your repudiation of this Incentive Agreement" means a termination or non-renewal of the Distributor Agreement or a debranding of the Stations as set forth in the preceding paragraph.

This interpretation is supported by the parties' careful choice of words in both paragraphs. The paragraph preceding the Preservation of Rights Clause does not refer to a breach of the Incentive Agreements as one of the liability triggers. Rather, it refers to the termination or nonrenewal of a separate agreement, the Distributor Agreement, and the debranding of the subject retail facility. In contrast, the Preservation of Rights Clause refers to "your repudiation" not of the Distributor Agreement, but of "this Incentive Agreement." Reading the two paragraphs together leads to the conclusion that a "repudiation of this Incentive

-6-

Agreement" occurs when the Distributor Agreement is terminated/nonrenewed or the subject retail facility debrands as described in the preceding paragraph.

### 3. Sweet Oil's Argument Overemphasizes the Importance of the Mobil Brand

Sweet Oil's interpretation of the Incentive Agreements also improperly emphasizes the importance of the Mobil brand to the parties, and, in doing so, ignores the practical economic reality of the Incentive Agreements. Tosco, and then Sunoco, paid Sweet Oil certain incentives because Sweet Oil purchased Mobil branded motor fuel from either Tosco or Sunoco for resale to the Stations. While Sunoco, through its transaction with ConocoPhillips, obtained the right to sell Mobil branded motor fuel for a finite period of time, its primary business purpose was not selling Mobil branded motor fuel, but rather selling Sunoco branded motor fuel. In fact, Sweet Oil knew that Sunoco did not intend to continue its supply of Mobil branded motor fuel when it executed the Assignment and Assumption Agreement in August 2005. (Assignment and Assumption Agreement ("Assignment Agreement") at ¶ 2-3, attached as Exhibit "6" to the Statement of Undisputed Facts, D.I. 38 at ¶ 16; March 26, 2008 deposition of Mark Greco ("Greco Deposition"), 224:11-225:12, attached as Exhibit "A" to Sunoco's Opening Brief, D.I. 42). Indeed, it agreed to rebrand the Stations to the Sunoco brand as a condition of Sunoco's consent to the assignment of the Distributor Agreement. (Assignment Agreement at ¶ 3, Ex. 6, Statement of Undisputed Facts, D.I. 38 at ¶ 16). In 2005 and 2006, Sweet Oil attempted, although unsuccessfully, to rebrand the Stations. (Greco Deposition, 69:8-70:7; 72:15-73:18; 231:20-232:8, Ex. A, Sunoco's Opening Brief, D.I. 42). Sunoco assisted Sweet Oil in its rebranding efforts by continuing to supply the Stations with Mobil branded motor fuel for as long as possible, but Sunoco's right to the Mobil brand ended in February 2007. Sweet Oil's after the fact contention that it should not be penalized for promoting the Mobil brand is belied

by what it knew, what it promised Sunoco it would do in the Assignment and Assumption Agreement and its failed attempts to rebrand the Stations.

Neither Tosco nor Sunoco had a contractual relationship with the Delmar or Duck-In Stations, only Sweet Oil did.  For that reason, Sunoco's only leverage to ensure the Stations continued purchasing its brand of motor fuel was to impose liquidated damages in the event Sunoco was unable to sell motor fuel to the Stations either because the Distributor Agreement with Sweet Oil came to an end or the subject retail facility changed its brand to one that Sunoco did not supply.  In that regard, the incentive payments were consideration for the Stations to continue selling the brand of motor fuel supplied by Sunoco.  In light of this economic reality, one can understand why the liability triggers in the Incentive Agreements do not require wrongful conduct on the part of Sweet Oil.

Considering the Incentive Agreements in their entirety, the parties intended that Sweet Oil would be liable to repay the incentive payments to Sunoco as liquidated damages upon the termination or nonrenewal of the Distributor Agreement or the debranding of the Duck-In and Delmar Stations.  Mark Greco, Sweet Oil's Vice President and corporate designee, understood the Incentive Agreements to work that way when he negotiated the rebranding the Delmar Station to Sunoco with plaintiffs.  (Greco Deposition, 26:4-10; 224:24-225:4, Ex. A, Sunoco's Opening Brief, D.I. 42).  It is undisputed that the Distributor Agreement was terminated and non-renewed and the Stations were debranded in February 2007 (Statement of Undisputed Facts, D.I. 38 at ¶ 33), triggering Sweet Oil's obligation to pay Sunoco liquidated damages under the Incentive Agreements.

### B. Sweet Oil's Failure to Fulfill All its Contractual Undertakings Obligates it to Pay Sunoco Liquidated Damages

Even if the contracts can be interpreted, as Sweet Oil suggests, to require some type of repudiation by Sweet Oil, it does not obtain a safe harbor from liability for liquidated damages as the undisputed facts show that Sweet Oil repudiated its obligations to Sunoco by failing to rebrand the Stations as it promised in the Assignment and Assumption Agreement.

When interpreting the parties' rights and obligations, the Court must review all the contracts between the parties in an attempt to extrapolate the true intent and meaning of the agreements. In re Northwestern Corp., 313 B.R. 595, 601 (Bankr. D. Del. 2004).

The Assignment and Assumption Agreement, through which Sweet Oil succeeded to Peninsula Oil Co.'s interest in the Distributor Agreement and the Incentive Agreements, set forth the obligations of the parties after August 31, 2005. The Assignment and Assumption Agreement makes Sweet Oil aware of existing obligations, i.e. the Incentive Agreements, and supplements both the Distributor Agreement and the Incentive Agreements by creating new obligations, i.e. Sweet Oil will rebrand the Delmar and Duck-In Stations to the Sunoco brand. (Assignment Agreement at ¶ 3, Ex. 6, Statement of Undisputed Facts, D.I. 38 at ¶ 16). As consideration for Sweet Oil's new obligations, Sunoco consented to Peninsula's assignment of the Distributor Agreement and the Incentive Agreements to Sweet Oil. Therefore, contrary to Sweet Oil's assertion, a failure to perform an obligation contained in the Assignment and Assumption Agreement, would constitute a repudiation of the Incentive Agreements.

The Assignment and Assumption Agreement evidences the parties intention that the Incentive Agreements were to survive the termination of the Distributor Agreement and Sunoco's loss of its license to the Mobil brand. The contract emphasized that full amortization for the incentive payments would not occur for the Delmar Station until July 31, 2012 and for the

Duck-In Station until March 31, 2011, well after the Distributor Agreement expired and Sunoco lost its right to use the Mobil brand. (Assignment Agreement at ¶ 7, Ex. 6, Statement of Undisputed Facts, D.I. 38 at ¶ 16). Anticipating the expiry of the Distributor Agreement (technically triggering Sweet Oil's liability for liquidated damages) and the loss of Sunoco's license to the Mobil brand, Sweet Oil agreed to rebrand the Stations to Sunoco (Id. at ¶ 3). and Sunoco agreed to transfer the motor fuel volume for these stations to Sweet Oil's existing Sunoco Branded Distributor Agreement. (Id. at ¶ 4).

In order to allow for a smooth transition from the Mobil brand to the Sunoco brand, Sunoco extended the Distributor Agreement on a month by month basis subsequent to September 30, 2005.[2] (Amended Third-Party Complaint ("Complaint"), D.I. 23 at ¶ 6; Statement of Undisputed Facts, D.I. 38 at ¶ 17). Sunoco informed Sweet Oil, over one year in advance, that its right to the Mobil brand would end in February 2007 and, thus, Sweet Oil should begin to transition its Mobil stations, including the Stations, to the Sunoco brand pursuant to its obligations under the Assignment and Assumption Agreement. (Statement of Undisputed Facts, D.I. 38 at ¶ 18; Letter dated Jan. 27, 2006, attached as Exhibit "7" to the Statement of Undisputed Facts, D.I. 38 at ¶ 19). Sweet Oil was unsuccessful in its efforts to rebrand the Delmar and Duck-In Stations. When Sunoco lost the right to sell Mobil branded motor fuel in February 2007, Sunoco was unable to supply the stations with anything other than Sunoco branded motor fuel. Consequently, the stations were debranded, entitling Sunoco to a return of the incentive payments as liquidated damages.

---

[2] Sweet Oil's contention that the Distributor Agreement expired by its terms on September 30, 2005 and the Duck-In and Delmar Stations were subsequently supplied Mobil branded motor fuel pursuant to the Sunoco Branded Distributor Agreement is belied by Sweet Oil's own judicial admissions. See Complaint, D.I. 23 at ¶ 6 ("The Mobil Distributor Agreement was extended on a month to month basis subsequent to September 30, 2005."); Statement of Undisputed Facts, D.I. 38 at ¶ 17 ("The Distributor Agreement was extended on a month to month basis subsequent to September 30, 2005.")

Sweet Oil asserts that the terms of the Incentive Agreements obligated it to maintain the Mobil brand at the facilities. However, the Incentive Agreements only obligated Sweet Oil to maintain the Mobil brand at the Stations until Sunoco lost its right to the Mobil brand. (Delmar Incentive Agreement dated Feb. 25, 2002 and Incentive Agreement dated May 2, 2001, Ex. 2 & 3 to Statement of Undisputed Facts, D.I. 38 at ¶¶ 6, 8). When Sunoco's right to the Mobil brand ended in February 2007, Sweet Oil's obligation to rebrand the facilities under the Assignment and Assumption Agreement was breached. Sweet Oil's failure to rebrand the Stations resulted in their inevitable debranding. Sweet Oil's inaction constitutes its repudiation of the Incentive Agreements and obligates it to pay Sunoco liquidated damages.

**V.    CONCLUSION**

For the foregoing reasons, Sunoco respectfully requests that this Court deny Sweet Oil's motion for summary judgment and grant Sunoco's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as there is no genuine issue as to any material fact and Sunoco is entitled to judgment as a matter of law.

Respectfully Submitted,

/s/ Matthew A. Kaplan
Matthew A. Kaplan (#4956)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Telephone No.: 302-777-6528

A. Christopher Young (*pro hac vice*)
Jennifer Lori Lambert (*pro hac vice*)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone No.: 215-981-4190

*Attorneys for Third-Party Defendant, Sunoco, Inc. (R&M)*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2008, a copy of Third-Party Defendant Sunoco, Inc. (R&M)'s Response to Defendant/Third-Party Plaintiff's Motion for Summary Judgment on Count I of the Amended Third-Party Complaint Pursuant to Fed. R. Civ. P. 56 was served electronically upon the following counsel of record via *CM/ECF*:

| | |
|---|---|
| Seth J. Reidenberg, Esq. | Johm W. Paradee, Esq. |
| Young Conaway Stargatt & Taylor LLP | D. Ben Snyder, Esq. |
| The Brandywine Building | Glenn C. Mandalas, Esq. |
| 1000 West Street, 17th Floor | Prickett Jones & Elliott, P.A. |
| P.O. Box 391 | 11 North State Street |
| Wilmington, DE  19899-0391 | Dover, DE  19901 |
| | |
| *Attorneys for Defendant/Third-Party Plaintiff GLeS, Inc., d/b/a Sweet Oil Company* | *Attorneys for Plaintiffs BCG, Inc. and Chesapeake Products & Services* |

        /s/ Matthew A. Kaplan
        Matthew A. Kaplan (DE Bar No. 4956)