IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| BCG, INC., a Delaware corporation,<br>CHESAPEAKE PRODUCTS &<br>SERVICES, INC., a Delaware corporation<br><br>           Plaintiffs,<br>v.<br><br>GLES, INC., a Delaware corporation,<br>d/b/a SWEET OIL COMPANY,<br><br>           Defendant/Third-Party Plaintiff<br>v.<br><br>Sunoco, Inc.<br><br>           Third-Party Defendant | C.A. No. 07-cv-207 (GMS)<br><br>TRIAL BY JURY<br>OF TWELVE DEMANDED |

**REPLY BRIEF OF GLES, INC. d/b/a SWEET OIL COMPANY
IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE THE ADMISSION
OF EVIDENCE AND TESTIMONY OF ALLEGED DAMAGES SUFFERED BY
CHESAPEAKE PRODUCTS & SERVICES**

Plaintiffs' response to Defendant's Motion in Limine is that although BCG is the formal party to the Agency Agreement with Sweet Oil, everyone knew that Chesapeake was the operating entity at the Laurel Oasis and therefore Chesapeake should be deemed to have acquired direct and enforceable rights in the Agreement.

BCG essentially argues that Chesapeake and BCG were one and the same, and that BCG simply operated through Chesapeake. The argument ignores the fact that BCG and Chesapeake are separate corporate entities. Chesapeake was not a party to the contract between BCG and Sweet Oil; Chesapeake was not a third-party beneficiary; and Chesapeake cannot succeed to any rights or entitlement to damages allegedly suffered as a result of any dealings between BCG and Sweet Oil. The Plaintiffs are merely

attempting to play a shell game to optimize their damages and obtain a windfall that was never contemplated by the Agreement.

Chesapeake was not a party to the contract, and a nonparty to a contract has no legal right to enforce it. See Insituform of N. Am., Inc. v. Chandler, 534 A.2d 257, 268 (Del. Ch. 1987) ("[T]he general rule [is] that strangers to a contract ordinarily acquire no rights under it....") Chesapeake was an existing corporate entity in 1994. If the parties so intended, it could have been made a party to the Agreement. The parties did exactly that with respect to the travel plaza located in Delmar, MD. (See Plaintiffs' Exhibit M to its Opposition) Having deliberately excluded Chesapeake from the Agreement, Plaintiffs cannot now assert a claim based on a relationship that was specifically rejected.

Plaintiffs argue that Chesapeake was the party directly dealing with Sweet Oil. The argument is irrelevant. BCG has a right to determine how BCG will perform BCG's obligations under the agreement. Apparently, BCG essentially subcontracted its obligations Chesapeake. A subcontract entered by BCG for BCG's own convenience does not elevate the subcontractor to a position having separate enforceable rights under the Agreement. By complying with BCG's instruction to communicate directly with its subsidiary/designee/subcontractor, Sweet Oil did not cloak Chesapeake with rights and obligations under the Agreement.

The fortuitous circumstance that Chesapeake happens to operate a series of non-fuel related businesses does not suddenly impose upon Sweet Oil an obligation to support Chesapeake's interests in those unrelated businesses. Sweet Oil is in the business of supplying motor fuel products, not servicing convenience stores, Hardees' or other restaurants. Any benefit which was allegedly conferred on Chesapeake's non-fuel related

businesses was wholly incidental to the 1994 Agreement between BCG and Sweet Oil. If a third party benefits from the performance of a promise it does not gain an enforceable right if it was not the promisee's intention to confer direct benefits upon that third person. Insituform of N. Am., Inc., 534 A.2d at 269.

To create the rights of a third party beneficiary, the conferring of a beneficial effect on such third party should be a material part of the contract's purpose. Insituform of N. Am., Inc., 534 A.2d 257; Madison Realty Partners 7, LLC v. AG ISA, LLC, 2001 WL 406268, at *5 (Del. Ch. April 17, 2001).

Chesapeake relies on the authority of Shared Communications Services, Inc. v. Goldenberg Resenthal, LLP, 2004 S.D.N.Y. WL 2609546 (S.D.N.Y. Nov. 16, 2004). The case is clearly distinguishable. Unlike this case, the contract at issue in Shared Communications was a contract between the defendant and a subsidiary. The court held that when the subsidiary was damaged as a result of a breach of its contract, the parent corporation has suffered actual damages. The finding is irrelevant where the breach involves the contract of the parent. A parent corporation reporting financials on a consolidated basis necessarily includes the profits and losses (or damages) of a subsidiary. However, the financial condition of the parent does not similarly directly impact the financial condition of a subsidiary. Plaintiffs' have ignored that distinguishing fact when citing the authority of Shared Communications. The authority is irrelevant as Chesapeake was not a party to the Agreement that was allegedly breached in this case.

Defendant respectfully requests that Plaintiffs be precluded from offering any testimony, evidence or argument regarding damages allegedly suffered by Chesapeake in relation to the Laurel Oasis Station.

                                                Respectfully submitted,

                                                _/s/ Eric_____

| | |
|---|---|
| Hugh J. Hutchison, Esquire | Seth J. Reidenberg, Esquire (No. 3657) |
| Leonard, Sciolla, Hutchison, | Young, Conaway, Stargatt, & Taylor, LLP |
| Leonard & Tinari, LLP | The Brandywine Building |
| 1515 Market Street, 18th Floor | 1000 West Street, 17th 19801 |
| Philadelphia, PA | P.O. Box 391 |
| (215) 567-1530 | Wilmington, DE 19899-0391 |
| (215) 564-4611 (fax) | (302) 571-6600 |
| | |
| | Attorneys for Defendant GLES, Inc., |
| | A Delaware Corporation, |
| Dated: September 2, 2008 | d/b/a Sweet Oil Company |